## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

ASH-SHAKUR SHABAZZ,                )
AIS #244618                        )
                                   )
    Petitioner,              )
                                   )     CIVIL ACTION NO.
vs.                                )     2:08-CV-88-MEF
                                   )          (WO)
                                   )
GRANT CULLIVER, WARDEN,            )
et al.,                            )
                                   )
    Respondents.             )

## ANSWER

Come now Respondents, by and through the Attorney General of Alabama, to respond to the Order to Show Cause issued by this Honorable Court on February 11, 2008.

## PROCEDURAL HISTORY

The Houston County Grand Jury indicted the petitioner, Ash-Shakur Shabazz, on June 5, 2005 for one count of second-degree rape, in violation of Section 13A-6-62 of the <u>Code of Alabama</u> (1975), and one count of second-degree sodomy, in violation of Section 13A-6-64 of the <u>Code of Alabama</u> (1975). (C. 11-

14) The Hon. Martin Adams, the Hon. M. John Steensland, III and the Hon. Mark Johnson represented Shabazz at trial. (R.1)

The trial began on December 15, 2005, and verdicts of guilty on both charges were returned that same day. (C. 37, 38) On that same day, Shabazz waived the right to a presentence investigation and he was sentenced to twenty-six years of imprisonment on each conviction. (R. 115, 116, 122)

Shabazz filed an <u>Anders</u>[1] brief on appeal to the Alabama Court of Criminal Appeals and that court affirmed the convictions in a Memorandum opinion on August 11, 2006. <u>Shabazz v. State</u>, CR-05-0706, (Ala. Crim. App. Aug. 11, 2006) (Mem. op.). The Certificate of Judgment was issued on August 30, 2006.

On March 23, 2006, while his direct appeal was still pending, Shabazz filed a petition under Rule 32 of the <u>Alabama Rules of Criminal Procedure</u> in the Houston County Circuit Court. The Court of Criminal Appeals ordered the circuit court to hold the petition in abeyance until the direct appeal was completed. After the appeal was final, and after the circuit court conducted a hearing on the claims raised in the petition, the circuit court denied the petition on February 23, 2007.

The Alabama Court of Criminal Appeals affirmed the denial on October 26, 2007. <u>Shabazz v. State</u>, CR-06-1124 (Ala. Crim. App. Oct. 26, 2007) (Mem. op.). His petition for rehearing was overruled on November 20, 2007, and his petition

---

[1] <u>Anders v. California</u>, 386 U.S. 738 (1967).

for writ of certiorari filed in the Supreme Court of Alabama was denied on January

11, 2008. The Certificate of Judgment was issued that same day.

## ISSUES RAISED IN THE FEDERAL HABEAS PETITION

Shabazz alleged the following claims in his federal petition:

1.     He was denied his Sixth Amendment right to effective assistance of counsel when counsel failed to object to the trial court's erroneous consolidation of the charges for trial, without first giving him notice and the opportunity to be heard;

2.     Counsel was ineffective, and he was prejudiced thereby, when counsel failed to object to the prosecution's use of its peremptory strikes to remove males from serving on the petit jury;

3.     Counsel was ineffective, and petitioner was prejudiced thereby, when counsel failed to object to the trial court's failure to admonish the jury during the lunch recess; acting in the role of the prosecution;

4.     Trial counsel failed to object to the trial court acting in the role of the prosecution;

5.     Counsel was ineffective, and petitioner was prejudiced thereby, when counsel failed to advise the petitioner of his rights to testify in his own defense;

6.     Counsel was ineffective, and petitioner was prejudiced thereby, when counsel failed to move for a mistrial or exclusion of the victim's testimony on the grounds or coercion, threats and tampering with the witness;

7.     Counsel was ineffective, and petitioner was prejudiced thereby, when counsel failed to move for a mistrial or cautionary

instructions based on the introduction of hearsay evidence after the trial court sustained the objection;

8. Counsel was ineffective, and petitioner was prejudiced thereby, when counsel failed to object to the trial court's oral instructions to the jury;

9. Counsel was ineffective, and petitioner was prejudiced thereby, when counsel failed to move to suppress the statement of the petitioner on the grounds that it was the product of police coercion, threats and intimidation;

10) He was denied due process and fundamental fairness when the trial court imposed a sentence that exceeded the maximum allowed by law.

## CLAIMS RAISED ON DIRECT APPEAL

Shabazz did not raise any issues on appeal. He filed an <u>Anders</u> brief with the Alabama Court of Criminal Appeals.

## CLAIMS RAISED IN THE RULE 32 PETITION

Shabazz alleged the following claims in his Rule 32 petition:

1. He was denied his Sixth Amendment right to effective assistance of counsel when counsel failed to object to the trial court's erroneous consolidation of the charges for trial, without first giving him notice and the opportunity to be heard;

4

2.    Counsel was ineffective, and he was prejudiced thereby, when counsel failed to object to the prosecution's use of its peremptory strikes to remove males from serving on the petit jury;

3.    Counsel was ineffective, and petitioner was prejudiced thereby, when counsel failed to object to the trial court's failure to admonish the jury during the lunch recess; acting in the role of the prosecution;

4.    Trial counsel failed to object to the trial court acting in the role of the prosecution;

5.    Counsel was ineffective, and petitioner was prejudiced thereby, when counsel failed to advise the petitioner of his rights to testify in his own defense;

6.    Counsel was ineffective, and petitioner was prejudiced thereby, when counsel failed to move for a mistrial or exclusion of the victim's testimony on the grounds or coercion, threats and tampering with the witness;

7.    Counsel was ineffective, and petitioner was prejudiced thereby, when counsel failed to move for a mistrial or cautionary instructions based on the introduction of hearsay evidence after the trial court sustained the objection;

8.    Counsel was ineffective, and petitioner was prejudiced thereby, when counsel failed to object to the trial court's oral instructions to the jury;

9.    Counsel was ineffective, and petitioner was prejudiced thereby, when counsel failed to move to suppress the statement of the petitioner on the grounds that it was the product of police coercion, threats and intimidation;

10)    He was denied due process and fundamental fairness when the trial court imposed a sentence that exceeded the maximum allowed by law;

## EXHAUSTION OF CLAIMS RAISED
## IN THE FEDERAL HABEAS PETITION

### (A)

### EXHAUSTION

Shabazz's claims are exhausted because he raised the federal habeas claims in his Rule 32 petition.

### UNEXHAUSTED CLAIMS

Shabazz's petition contains no unexhausted claims.

### ARGUMENT

### I.

### SHABAZZ'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM IS PROCEDURALLY BARRED BECAUSE IT SHOULD HAVE BEEN RAISED ON DIRECT APPEAL.

### (A)

Shabazz alleges that he received ineffective assistance from counsel during the trial and that the trial court's sentence exceeded that allowed by law. The Court of Criminal Appeals concluded that the ineffective

6

assistance of counsel claim was procedurally barred pursuant to Rule

32.2(a) (4) of the <u>Alabama Rules Of Criminal Procedure</u> because it could

have been raised on direct appeal. Consequently, Shabazz is precluded from

review of the claim in this federal habeas petition.

A state court's rejection of a federal constitutional claim on procedural

grounds will preclude federal review of the claim if the state court's procedural

ruling rests upon an "independent and adequate" state ground. *See* <u>Coleman v.</u>

<u>Thompson</u>, 501 U.S. 722, 729 (1991)("This Court will not review a question of

federal law decided by a state court if the decision of that court rests on a state law

ground that is independent of the federal question and adequate to support the

judgment."). *See also* <u>Harris v. Reed</u>, 489 U.S. 255, 260 (1989) ("This Court long

has held that it will not consider an issue of federal law on direct review from a

judgment of a state court if that judgment rests on a state-law ground that is both

'independent' of the merits of the federal claim and an 'adequate' basis for the

court's decision"), quoting <u>Fox Film Corp. v. Muller</u>, 296 U.S. 207, 210 (1935).

"[A] federal claimant's procedural default precludes federal habeas review, like

direct review, only if the last state court rendering a judgment in the case rests its

judgment on the procedural default." <u>Harris</u>, at 262. "[If] it fairly appears that the

state court rested its decision primarily on federal law," this Court may reach the

federal question on review unless the state court's opinion contains a "'plain

statement' that [its] decision rests upon adequate and independent state grounds."
Id. at 261. "[T]he state court must actually have relied on the procedural bar as an
independent basis for its disposition of the case." Id. at 261-262.

The state court did not waive the procedural bar when it also reviewed the
merits of the claim, as an alternative basis for denial of relief. "[A] state court need
not fear reaching the merits of a federal claim in an alternative holding. Through its
very definition, the adequate and independent state ground doctrine requires the
federal court to honor a state holding that is a sufficient basis for the state court's
judgment, even when the state court also relies on federal law." Bailey v. Nagle,
172 F.3d 1299, 1305 (11th Cir. 1999). The state court actually relied on the state's
procedural bar to deny relief. Harris, at 261-262. Consequently, Shabazz's
ineffective assistance of counsel claim is procedurally defaulted.

**(B)**

**Even If This Court Found That The Claim Is Not Procedurally Barred, Shabazz Is Not Entitled To Relief Because The Decision By The State Court Was Not Contrary To Federal Law As Determined By The Supreme Court Of The United States, Nor Did It Constitute An Unreasonable Interpretation Of Federal Law As Determined By The Supreme Court Of The United States.**

Even though the Court of Criminal Appeals denied relief on the procedural grounds, it also indicated that Shabazz was not entitled to relief on the merits. That court reviewed the evidence presented at the evidentiary hearing and concluded that Shabazz failed to allege sufficient evidence, or failed to prove with sufficient evidence, that counsel rendered ineffective assistance at trial.

Shabazz's claims of ineffective assistance of counsel are governed by Strickland v. Washington, 466 U.S 668, 686 (1984), in which the Supreme Court stated the standard for proving such claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

9

The Supreme Court further stated that, to prove prejudice,

> [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 694. (Emphasis added.)

The Supreme Court also stated:

> [A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

Id. at 692.

Shabazz is not entitled to any federal habeas relief on these claims because he has not shown that the state court's application of Strickland was contrary to established federal law, or an unreasonable application to the facts of his case.

Title 28 U.S.C. S 2254(d), as amended by the AEDPA, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or

10

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme Court discussed the meaning of the "contrary to" and "unreasonable application" phrases contained in the AEDPA. The Court stated:

> Under § 2254(d) (1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id</u>. at 412.

The Court further stated:

> Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

<u>Id</u>. at 407.

Shabazz has not shown that the state court applied <u>Strickland</u> in a manner that was contrary to the Supreme Court's conclusion on this issue of law, and he has not shown that the state court unreasonably applied <u>Strickland</u> to the facts of his case.

The Court of Criminal Appeals's opinion discussed the reasons why Shabazz was not entitled to relief on the claim:

> An examination of the record, including the transcript of the evidentiary hearing, along with the trial court's order and the briefs on appeal, reveals that the trial court was correct in denying the petition. During the evidentiary hearing, evidence was presented that consolidation was proper because the charges arose out of the same set of facts and with the same defendant. Rule 13.3, Ala.R.Crim.P. Additionally, the appellant failed to present any evidence that he was prejudiced by counsel's failure to object.

> With regard to counsel's alleged failure to object to the State's racially discriminatory use of its peremptory strikes, pursuant to <u>Batson v. Kentucky</u>, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), trial counsel testified that t here was no ground for a <u>Batson</u> objection, and the appellant offers no specific evidence to the contrary.

> The appellant's claims that trial counsel was ineffective for failing to object to the trial court's failure to admonish the jurors before allowing them to separate for lunch; for failing to object to the trial court's questioning of a witness regarding a material element of the crime; and for failing to request a mistrial or cautionary instructions about the admission of hearsay evidence after the trial court sustained the objection, were insufficiently pleaded, and therefore, as the State argued in its motion for summary disposition, failed to state a claim upon which relief could be granted. Rule 32.3, Ala.R.Crim.P.; <u>Hinton v. State</u>, [Ms. CR-04-0940, April 28, 2006] ___ So.2d ___ (Ala.Crim.App. 2006).

The appellant claims that trial counsel was ineffective for not allowing him to testify in his own defense. However, the appellant admitted during the evidentiary hearing that although trial counsel advised him not to testify, he made the decision not to testify.

The appellant's claim that he was prejudiced by trial counsel's failure to move for exclusion of the victim's testimony on the ground that law enforcement officials and a case worked from the Department of Human Resources threatened the victim is without merit and unsupported by the record based on trial counsel's testimony at the evidentiary hearing that the alleged threats were brought out at trial through the victim's testimony. See Kennedy v. State, 421 So.2d 1351 (Ala.Crim.App. 1982) (defense counsel's testimony refuting the appellant's allegations of ineffective assistance of counsel was a sufficient basis for the trial court's denial of the Rule 32 petition.) Here, the appellant failed to plead and prove that his trial counsel rendered a deficient performance, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Lastly, the trial court, in its order, was correct in denying the appellant's ineffective assistance of trial counsel claims, not only on the merits of the respective claims, but also pursuant to the procedural bar of Rule 32.2(a)(4), Ala.R.Crim.P., stating that the claims could have been, but were not, raised on appeal.

(Court's Memorandum opinion, p-3-5) Clearly, the Alabama Court of Criminal

Appeals reasonably applied Strickland to the facts of Shabazz's case.

13

## II.

**SHABAZZ IS NOT ENTITLED TO RELIEF ON THE CLAIM THAT THE SENTENCE EXCEEDED THE MAXIMUM ALLOWED BY LAW BECAUSE THIS IS A STATE LAW ISSUE.**

Shabazz contends that his sentencing under the Habitual Felony Offender Act (HFOA) was illegal because the HFOA was not invoked before sentencing and that he never received notice of the prior convictions the State intended to use at sentencing. This claim does not present any federal constitutional issue because the question of whether the HFOA was properly invoked is a matter of state law.

"In a federal habeas corpus proceeding, a federal court is bound by the state court's interpretation of a state criminal statute." Garcia v. Perringer, 878 F.2d 360, 361(11th Cir.1989), citing Bronstein v. Wainwright, 646 F.2d 1048, 1050 (5th Cir. Unit B 1981). "This court is bound by the determination of the Alabama courts that no state law violation has occurred." *Walton v. Attorney General of State of Ala.*, 986 F.2d 472, 475 (11th Cir.(Ala.) Mar 23, 1993) citing Peek v. Kemp, 784 F.2d 1479, 1483 (11th Cir.1986) (state law violations may deprive a defendant of "due process rights grounded in the entitlement to procedures mandated by state law.").

14

Furthermore, "a state's interpretation of its own laws provides no basis for federal habeas relief since no question of a constitutional nature is involved." Beverly v. Jones, 854 F.2d 412, 416 (11th Cir.1988), citing Carrizales v. Wainwright, 699 F.2d 1053, 1054-55 (11th Cir.1983). [A] "state court construction of state law is binding on federal courts entertaining petitions for habeas relief." Tyree v. White, 796 F.2d 390, 392-93 (11th Cir.1986).

The state court's ruling that the State properly proved three prior convictions for use under the state habitual offender statute is not subject to federal review, and is not a ground for federal habeas relief.

**EXHIBITS**

1) Copy of Shabazz's transcript on direct appeal, Exhibit A;

2) Copy of Shabazz's brief on appeal, Exhibit B;

3) Memorandum opinion on direct appeal, Exhibit C;

4) Copy of Rule 32 transcript, Exhibit D;

5) Copy of Shabazz's brief on appeal, Exhibit E;

15

6) Copy of State's brief on appeal, Exhibit F;

7) Copy of Memorandum opinion, Exhibit G.

Respectfully submitted,

Troy King – KIN047
*Attorney General*
State of Alabama


s/James B. Prude
James B. Prude (PRU005)
Assistant Attorney General

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of March, 2008, I electronically filed the foregoing (including exhibits) with the Clerk of the Court using the CM/ECF system and I hereby certify that I have mailed by United States Postal Service the foregoing (including exhibits) to the following non-CM/ECF participants:  Ash-Shakur Halim Shabazz, AIS #244618, Holman Unit 3700, Holman Correctional Facility, Atmore, AL 36503.

s/James B. Prude
James B. Prude (PRU005)
Office of the Attorney General
Alabama State House
11 South Union
Montgomery, AL  36130-0152
Telephone:  (334) 242-7300
Fax:  (334) 242-2848
E-Mail:  JPrude@ago.state.al.us

398304/118431-001

COURT OF CRIMINAL APPEALS NO. _CR 05-0706_

# APPEAL TO ALABAMA COURT OF CRIMINAL APPEALS

### FROM

CIRCUIT COURT OF ____HOUSTON____ COUNTY, ALABAMA

CIRCUIT COURT NO   CC2005-1132 CC2005-1133

CIRCUIT JUDGE     LARRY K. ANDERSON

Type of Conviction/ Order Appealed From:     RAPE 2ND/SODOMY 2ND

Sentence Imposed:     26 YRS EACH, $3,000 FINE, $1,000 CVCC PLUS COSTS

Defendant Indigent:    ☑ YES   ☐ NO

## ASH-SHAKUR SHABAZZ

### NAME OF APPELLANT

DAVID HOGG          334-794-8559
(Appellant's Attorney)                    (Telephone No.)
P O BOX 1690
(Address)
   DOTHAN        AL      36302
(City)              (State)        (Zip Code)

### v.

## STATE OF ALABAMA

### NAME OF APPELLEE

(State represented by Attorney General)

NOTE: If municipal appeal, indicate above, and enter

name and address of municipal attorney below.

_____

_____

_____

(For Court of Criminal Appeals Use Only)

— EXhibit A —

CLERK'S INDEX

CASE ACTION SUMMARY CC 2005-1132 — 1-5

CASE ACTION SUMMARY CC 2005-1133 — 6-10

INDICTMENT CC 2005-1132 — 11-12

INDICTMENT CC 2005-1133 — 13-14

WRIT OF ARREST GJ #314 — 15

WRIT OF ARREST GJ #317 — 16

AFFIDAVIT OF SUBSTANTIAL HARDSHIP AND ORDER — 17-18

INMATE REQUEST FORM — 19

7-19-05 ORDER: PRESIDING JUDGE REQUESTED TO REASSIGN CASE AS MATT LAMERE HAS CONFLICT. — 20

7-20-05 ORDER:  CASE ASSIGNED TO JUDGE ANDERSON — 21

8-1-05 ORDER: CONTRACT ATTY MARTIN ADAMS IS APPOINTED AS COUNSEL FOR DEFENDANT. — 22

PLEA OF NOT GUILTY AND WAIVER OF ARRAIGNMENT — 23

RECIPROCAL DISCOVERY ORDER — 24

MOTION FOR SPEEDY TRIAL — 25-26

9-1-05 ORDER: MOTION FOR SPEEDY TRIAL IS NOTED. — 27

MOTION FOR BOND HEARING — 28-29

9-1-05 ORDER: MOTION TO REDUCE BOND IS SET FOR HEARING SEPTEMBER 30, 2005 AT 9:00 A.M., — 30

9-30-05 ORDER: BOND REDUCTION HEARING CONTINUED AND RESET FOR OCTOBERY 7, 2005 AT 9:00 AM — 31

10-7-05 ORDER: AS BAIL IS WITHIN THE RECOMMENDED RANGE, MOTION TO REDUCE BOND IS DENIED. — 32

CLERK'S INDEX – PAGE 2

MOTION TO SET FOR TRIAL

33

10-25-05 ORDER: MOTION TO SET FOR TRIAL IS NOTED.

34

JURY CONVICTION CC 2005-1132

35

JURY CONVICTION CC 2005-1133

36

JURY VERDICT CC 2005-1132

37

JURY VERDICT CC 2005-1133

38

SENTENCING ORDER CC 2005-1132

39

SENTENCING ORDER CC 2005-1133

40

LETTER TO ATTY JOHN STEENSLAND

41

NOTICE OF APPEAL

42

MOTION TO WITHDRAW

43-44

PENITENTIARY TRANSCRIPT  CC 2005-1132

45

PENITENTIARY TRANSCRIPT CC 2005-1133

46

1-10-06 ORDER: ATTY MARTIN ADAMS MOTION TO WITHDRAW IS
GRANTED.  NOTICE OF APPEAL NOTED.  FREE TRANSCRIPT ORDERED.
ATTY DAVID HOGG IS APPOINTED COUNSEL FOR DEFT.

47

CLERK'S NOTICE OF APPEAL CC 2005-1132

48

CLERK'S NOTICE OF APPEAL CC 2005-1133

49

COURT OF CRIMINAL APPEALS DOCKETING STATEMENT

50-51

REPORTER'S TRANSCRIPT ORDER

52

COURT REPORTER'S INDEX OF TRIAL EXHIBITS

53

STATE'S EXHIBIT NUMBER 1

54

REPORTER'S TRANSCRIPT – TRIAL

1-127

CLERK'S INDEX – PAGE 3

CERTIFICATE OF COMPLETION

182

**COURT OF CRIM**

**STATE OF A**



Lane W. Mann
Clerk
Sonja McKnight
Assistant Clerk

Februar

## CR-05-0706

Ash-Shakur Halim Shabazz v. State of Alaba
CC05-1132; CC05-1133)

**No**

You are hereby notified that the record on
filed on February 7, 2006.  Because the clerk':
3, 2006, the appellant's brief is due by March
extension of time for filing the brief, the reque:
accordance with the Court's policy as set out i
the appellant when this appeal was docketed.
be directed to the clerk's office.

cc: Hon. Judy Byrd, Circuit Clerk
    David K. Hogg, Attorney
    Office of Attorney General

```
          INFORMATION SYSTEM        CASE: CC 2005 001132.00
          ON SUMMARY
          CRIMINAL                  RUN DATE: 06/13/2005
========================================================
                                              JUDGE:
                                                    LKA
        VS       SHABAZZ ASH-SHAKUR HALIM
                 C/O HOUSTON COUNTY JAIL
                 901 E MAIN STREET
                 DOTHAN, AL  36301 0000
        CE: B  HT: 6 05  WT: 270   HR: BLK EYES: BRO
========================================================
   E01: RAP2  LIT: RAPE 2ND DEGRE TYP: F #: 001
        AGENCY/OFFICER: 0380100 JOHN CR
        DATE ARRESTED: 06/11/2005
        DATE    FILED: 06/13/2005
        DATE  HEARING:
           SURETIES:
               TIME: 0900 A
               TIME: 0830 A
        WR 2005 013910 00  /
        TYPE: C                              TYPE:
```

Martin Adams (A)         00000

```
========================================================
    NO: WR2005013910        GRAND JURY: 314-5
  D NO:   000000000         OPER: INM
  MAND: Y
========================================================
  r  AND NOTES
========================================================
```

*appointed atty. Motion for Bail
a (from deft)*

*Hearing Judge requested to
e a small ladder has*

*d to Judge Anderson Judge*
*J Rett, Judge*

artin Adams is appointed as counsel for

*Jerry K. Anderson, Judge*

*Bond hearing + attorney*
NMENT

OVER

## 05-0706

1

STATE OF ALABAMA vs. ASH_SHAKUR HALIM SHABAZZ    CC05-1132

RECIPROCAL DISCOVERY ORDER

_8-17-_, 20_05_

Within 14 days of this order, the State and Defendant will make available for inspection and copying all materials discoverable under the Alabama Rules of Criminal Procedure. In addition, the State will make any exculpatory materials available to the defense. The State will make its materials available at the District Attorney's office and the defense will do likewise at defense counsel's office.

_Terry K. Anderson, Judge_
CIRCUIT JUDGE

8-22-05  Motion for Speedy Trial (MAdams)
         Motion for Bond Hearing (MAdams)

9/1/05 - Motion for speedy trial is noted.
                                    _Terry K. Anderson, Judge_

9/1/05 - Motion to reduce bond is set for hearing September 30, 2005
         at 9:00 a.m.
                                    _Terry K. Anderson, Judge_

9-12-05 n: DA, M. Adams.

9-30-05 - Bond reduction hearing continued and reset for
          October 7, 2005 at 9:00 a.m.

OCT 6 2005  n: M. Adams, DA
                                    _Terry K. Anderson, Judge_

10-7-05  As bail is within the recommended range, motion
         to reduce bond is denied.

OCT 17 2005  n: M. Adams, DA
                                    _Anderson, Judge_

10/24/05 - Motion to set for trial.

10-25-05  Above Motion noted (see CC05-1133)

10-27-05  n: DA, M. Adams

**JURY CONVICTION**

## IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

STATE OF ALABAMA

**CRIMINAL DIVISION**

VS.

_Ash-Shakur Halim Shabazz_     CASE NO. _CC05-1132_

    The Defendant having been indicted and arraigned upon the Indictment on a charge of _Rape 2nd degree_, and heretofore having plead not guilty thereto the case was tried before a jury composed of _Wade Jones_, as foreperson and eleven others. The Jury having been duly empanelled, sworn and charged by the Court according to law, with the Defendant being present in open court with his attorney at each and every stage of proceedings, said jury has now on this date pursuant to their oath found the Defendant guilty of _Rape 2nd degree_ as charged in the Indictment (a lesser included offense of that charge in the Indictment).

    In accordance with the verdict of the Jury, Defendant is hereby adjudged guilty of _Rape 2nd degree_. Defendant being asked if he/she had anything to say why sentence of law should not be pronounced upon him/her, and Defendant says nothing.

    **IT IS THEREFORE ORDERED AND ADJUDGED BY THE COURT** that the Defendant is guilty of said charge.

    ( ) A Sentence hearing is set for the ____ day of _____, 20__ at o'clock ___.M.

    DONE, this the _15th_ day of _December_, 2005

_____
CIRCUIT JUDGE

**SENTENCING ORDER**

AS PUNISHMENT, DEFENDANT IS HEREBY FORMALLY SENTENCED:

( ) to hard labor for Houston County for a term of _____.

(X) to the penitentiary of the State of Alabama for a term of _26_ years. (X) FHOA

3

On the 30th day after the Clerk transmits to the Department of Corrections a copy of this judgment entry and sentence, if the Department has not directed the Sheriff where the Defendant shall be taken for confinement, the Sheriff is hereby ordered to transport Defendant forthwith to the Department's receiving center at Kilby/Tutweiler (circle) and effectuate the transfer of the Defendant to the custody of the Department.  In the event the Department refuses to accept the Defendant in compliance with state law, the Sheriff is ordered to secure the Defendant to the property at the Department's receiving center.

Said sentence shall run ( ) consecutive or (X) concurrent with case number (s)
_____ CC05−1133 _____.

( ) said sentence is suspended for _____ years on the condition of good behavior and payment of all fines, costs, and restitution.

( ) The Defendant is hereby given credit for the days spent incarcerated pending trial.

Defendant is also ordered to pay:

(X) A fine of $3,000.00 _____
(X) A Victim Compensation Assessment of $1,000.00 _____.
(X) All Court Costs.
( ) Restitution of $ _____ to _____.
( ) Drug Demand Reduction Act Assessment of $1,000.00.
( ) Alabama Forensics Sciences Trust Fund $100.00.
( ) Pay direct to Alabama Dept. of Forensic Sciences-Dothan Division
     $_____.
( ) Investigation restitution direct to ( )DPD ( ) HCSO $_____.

## ADDITIONAL SENTENCE PROVISION ORDERED ARE:

( ) Completion of a substance abuse program CRO
( ) The Department of Public Safety is ordered to comply with Alabama Code 13A-12-290 by suspending Defendant's drivers license for six months.
( ) Continued on same bond.
( ) Appeal bond is set at $ _____.
( ) Indigency status granted and free transcript is ordered.

## PROBATION:

( ) Defendant applies for probation.
( ) Defendant waives application for probation.
( ) Probation hearing is set for the _____ day of _____ 20__ at _____
( ) Defendant to remain on same bond pending probation hearing

DONE this the 15th day of December, 2005 ...

_____
CIRCUIT JUDGE

ACRO369   A L A B A M A   J U D I C I A L   I N F O R M A T I O N   C E N T E R
CASE ACTION SUMMARY
CONTINUATION
CASE: CC 2005 001132.00
JUDGE ID:  LKA

STATE  OF  ALABAMA                    VS      SHABAZZ ASH-SHAKUR HALIM

| DATE | ACTION, JUDGMENTS, CASE NOTES |
|------|------------------------------|
| 01-05-06 | Notice of appeal, CCA docketing statement and Motion to withdraw filed by Hon. Martin Adams. |
| 1/10/06 | Attorney Martin Adams' motion to withdraw is granted. Notice of appeal noted. Free transcript ordered. Attorney David Hogg is appointed counsel for defendant. |
| | _Larry K. Anderson, Judge_ |
| 01-13-06 | Clerk's notice of appeal and  CCA docketing statment to CCA, AG, AM and DH |
| 01-20-06 | Court Reporter's transcript order filed.  (1-25-06 N: CCA, AG, AM) |

```
ACRO372                ALABAMA JUDICIAL INFORMATION SYSTEM    CASE: CC 2005 001133.00
OPER: INM                      CASE ACTION SUMMARY
PAGE:   1                       CIRCUIT   CRIMINAL              RUN DATE: 06/13/2005
=================================================================================
IN THE CIRCUIT COURT OF  HOUSTON                                        JUDGE:

STATE  OF  ALABAMA                  VS        SHABAZZ ASH-SHAKUR HALIM
                                              C/O HOUSTON COUNTY JAIL
CASE: CC 2005 001133.00                       901 E MAIN STREET
                                              DOTHAN, AL  36301 0000

DOB: 07/12/1960          SEX: M  RACE: B  HT: 6 05  WT: 270  HR: BLK EYES: BRO
SSN: 138526572  ALIAS NAMES:
=================================================================================
CHARGE01: SODOMY 2ND DEGREE     CODE01: SOD2  LIT: SODOMY 2ND DEG TYP: F #: 001
OFFENSE DATE: 04/01/2004                      AGENCY/OFFICER: 0380100 JOHN CR

DATE WAR/CAP ISS:                        DATE ARRESTED: 06/11/2005
DATE    INDICTED: 06/09/2005             DATE    FILED: 06/13/2005
DATE    RELEASED:                        DATE  HEARING:
BOND      AMOUNT:      $20,000.00           SURETIES:

DATE 1: 08/16/2005  DESC: ARRG              TIME: 0900 A
DATE 2: 11/14/2005  DESC: JTRL              TIME: 0830 A

TRACKING NOS: DC 2005 001546 00  /  WR 2005 013911 00  /

    DEF/ATY: LAMERE MATTHEW C           TYPE: C                    TYPE:
             106 NORTH LENA STREET W/D  Martin Adams (A)
             DOTHAN        AL 36303                              00000

PROSECUTOR: VALESKA DOUGLAS A

=================================================================================
OTH CSE: DC200500154600 CHK/TICKET NO: WR2005013911    GRAND JURY: 317-5
COURT REPORTER:                    SID NO:  000000000
DEF STATUS: JAIL                   DEMAND: Y                        OPER: INM
=================================================================================
DATE        ACTIONS, JUDGEMENTS, AND NOTES
```

| DATE | ACTIONS, JUDGEMENTS, AND NOTES |
|------|-------------------------------|
| 7-15-05 | motion for court appointed atty, motion for Bail reduction (letter from deft) |
| July 19, 2005 | Presiding Judge requested to re-assign case as small known to conflict |
| 7/20/05 | Case assigned to Judge Anderson |
| 8/1/05 | Contract attorney Martin Adams is appointed counsel for defendant |
| 8/2/05 | N: M. Adams, DA     Larry K. Anderson, judge |
| 9-16-05 | Letter requesting Bond hearing + attorney |
| 8-16-05 | WAIVER OF ARRAIGNMENT |

STATE OF ALABAMA vs. ASH_SHAKUR HALIM SHABAZZ                    CC05-1133

## RECIPROCAL DISCOVERY ORDER

8-17- , 20 05

Within 14 days of this order, the State and Defendant will make available for inspection and copying all materials discoverable under the Alabama Rules of Criminal Procedure. In addition, the State will make any exculpatory materials available to the defense. The State will make its materials available at the District Attorney's office and the defense will do likewise at defense counsel's office.

_Larry K. Anderson, Judge_
CIRCUIT JUDGE

8-22-05    Motion for bond Hearing, Motion for Speedy Trial (M Adams)

9/1/05 - Motion for speedy trial is noted.

_Larry K. Anderson, Judge_

9/1/05 - Motion to reduce bond is set for hearing September 30, 2005 at 9:00 a.m.

_Larry K. Anderson, Judge_

9-12-05 n: DA, M. Adams)

9-30-05 - Bond reduction hearing continued and reset for October 7, 2005 at 9:00 a.m.

OCT - 6 2005 n. M. Adams. DA

_Larry K. Anderson, Judge_

10-7-05 - As bail is within the recommended range, motion to reduce bond is denied.

OCT 17 2005 n. M. Adams. DA

_Larry K. Anderson, Judge_

10/24/05 - Motion to set for trial

10/25/05 Motion to set for trial is noted.

_Anderson, Judge_

10-27-05 n: DA, M. Adams)

7

## JURY CONVICTION

## IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

STATE OF ALABAMA

CRIMINAL DIVISION

VS.

_Ash-Shakur Halim Shabazz_    CASE NO. _CC05-1133_

The Defendant having been indicted and arraigned upon the Indictment on a charge of _Sodomy 2nd degree_, and heretofore having plead not guilty thereto the case was tried before a jury composed of _Wade Jones_, as foreperson and eleven others. The Jury having been duly empanelled, sworn and charged by the Court according to law, with the Defendant being present in open court with his attorney at each and every stage of proceedings, said jury has now on this date pursuant to their oath found the Defendant guilty of _Sodomy 2nd degree_ as charged in the Indictment (a lesser included offense of that charge in the Indictment).

In accordance with the verdict of the Jury, Defendant is hereby adjudged guilty of _Sodomy 2nd degree_. Defendant being asked if he/she had anything to say why sentence of law should not be pronounced upon him/her, and Defendant says nothing.

**IT IS THEREFORE ORDERED AND ADJUDGED BY THE COURT** that the Defendant is guilty of said charge.

( ) A Sentence hearing is set for the ___ day of _____, 20___ at ___ o'clock ___.M.

DONE, this the _15_ day of _December_, 200**5**

_____
CIRCUIT JUDGE

### SENTENCING ORDER

AS PUNISHMENT, DEFENDANT IS HEREBY FORMALLY SENTENCED:

( ) to hard labor for Houston County for a term of _____.

(X) to the penitentiary of the State of Alabama for a term of _26_ years. (X) FHOA

8

On the 30th day after the Clerk transmits to the Department of Corrections a copy of this judgment entry and sentence, if the Department has not directed the Sheriff where the Defendant shall be taken for confinement, the Sheriff is hereby ordered to transport Defendant forthwith to the Department's receiving center at Kilby/Tutweiler (circle) and effectuate the transfer of the Defendant to the custody of the Department. In the event the Department refuses to accept the Defendant in compliance with state law, the Sheriff is ordered to secure the Defendant to the property at the Department's receiving center.

Said sentence shall run ( ) consecutive or (X) concurrent with case number (s) _____ CC05-1132 _____.

( ) said sentence is suspended for _____ years on the condition of good behavior and payment of all fines, costs, and restitution.

( ) The Defendant is hereby given credit for the days spent incarcerated pending trial.

Defendant is also ordered to pay:

(X) A fine of $ 3,000.00
(X) A Victim Compensation Assessment of $ 1,000.00.
(X) All Court Costs.
( ) Restitution of $ _____ to _____.
( ) Drug Demand Reduction Act Assessment of $1,000.00.
( ) Alabama Forensics Sciences Trust Fund $100.00.
( ) Pay direct to Alabama Dept. of Forensic Sciences-Dothan Division
     $_____.
( ) Investigation restitution direct to ( )DPD ( ) HCSO $_____.

## ADDITIONAL SENTENCE PROVISION ORDERED ARE:

( ) Completion of a substance abuse program CRO
( ) The Department of Public Safety is ordered to comply with Alabama Code 13A-12-290 by suspending Defendant's drivers license for six months.
( ) Continued on same bond.
( ) Appeal bond is set at $_____.
( ) Indigency status granted and free transcript is ordered.

## PROBATION:

( ) Defendant applies for probation.
( ) Defendant waives application for probation.
( ) Probation hearing is set for the _____ day of _____ 20__ at _____
( ) Defendant to remain on same bond pending probation hearing

DONE this the 15th day of December, 2005 ...

_____
CIRCUIT JUDGE

ACRO369    A L A B A M A    J U D I C I A L    I N F O R M A T I O N    C E N T E R
CASE ACTION SUMMARY
CONTINUATION
CASE: CC 2005 001133.00
JUDGE ID:    LKA

STATE  OF  ALABAMA                          VS      SHABAZZ ASH-SHAKUR HALIM

| DATE | ACTION, JUDGMENTS, CASE NOTES |
|------|------------------------------|
| 01-05-06 | Notice of appeal, CCA docketing statement and Motion to withdraw filed by Hon. Martin Adams |
| 1/10/06 | Attorney Martin Adams' motion to withdraw is granted. Notice of appeal noted. Free transcript ordered. Attorney David Hogg is appointed counsel for defendant. |
|  | *Tracy K. Williams, Judge* |
| 01-13-06 | Clerk's notice of appeal and CCA docketing statement to CCA, AG, DH & AM |
| 01-20-06 | Court reporter's transcript order filed. (1-26-06: N: CCA, AG, AM) |

Grand Jury No. 314        Case No. CC 05-1132

## INDICTMENT

The State of Alabama }        **CIRCUIT COURT**

Houston County        **TWENTIETH JUDICIAL**

**MAY TERM, 2005**

### COUNT 1

The Grand Jury of said county charge that, before the finding of this indictment, ASH-SHAKUR HALIM SHABAZZ whose name is otherwise unknown to the Grand Jury, a male, did engage in sexual intercourse with CANDACE MICHELE DOWNIE, a female, who was less than sixteen years of age and more than twelve years of age, the said ASH-SHAKUR HALIM SHABAZZ being sixteen years or older and at least two years older than the said CANDACE MICHELE DOWNIE, in violation of 13A-6-62 of the Code of Alabama, against the peace and dignity of the State of Alabama.

Douglas Albert Valeska

District Attorney

THE STATE OF ALABAMA
Houston County

**THE CIRCUIT COURT**
Twentieth Judicial Circuit

THE STATE
vs.

ASH-SHAKUR HALIM SHABAZZ

Witnesses for Agency No. 05-3356

BRIAN CHERRY, POLICE DEPT, DOTHAN, AL  36301
JOHN CRAWFORD, DOTHAN P.D., DOTHAN, AL  36301
CANDACE MICHELE DOWNIE, 250 PEARL ST, DOTHAN, AL  36301
MICHELLE DOWNIE, 250 PEARL STREET, DOTHAN, AL  36301
WANDA SANDERS, DHR--1605 RCC, DOTHAN, AL  36301

Charges: 1.  RAPE 2ND DEGREE

314

## A TRUE BILL

_Anna Hedwigh_
Foreman of the Grand Jury

Presented to the presiding Judge in open court foreman of the
Grand Jury, in the presence of _____14_____ Grand Jurors and
filed in open court by order of the court on this the _____9th_____
day of _June_, 20, _05_ .

_Judge Byrd_
CLERK

## INDICTMENT

### NO PROSECUTOR

Upon the arrest of Defendant let him be admitted to bail on
giving bond in the sum of

_$2,000_ _____ Dollars

With security to be approved by the Sheriff.

Judge Presiding

Grand Jury No. 317 )                                                    Case No. CC 05-1135

## INDICTMENT

The State of Alabama       }                    CIRCUIT COURT
Houston County                              TWENTIETH JUDICIAL
                                               **MAY TERM, 2005**

### COUNT 1

The Grand Jury of said county charge that, before the finding of this indictment, ASH-SHAKUR HALIM SHABAZZ, whose name is otherwise unknown to the Grand Jury, did engage in deviate sexual intercourse with CANDACE MICHELE DOWNIE, who was less than sixteen years of age and more than twelve years of age, he, the said ASH-SHAKUR HALIM SHABAZZ being sixteen years old or older, in violation of Section 13A-6-64 of the Code of Alabama, against the peace and dignity of the State of Alabama.

Douglas Albert Valeska
District Attorney

---

THE STATE OF ALABAMA
Houston County

THE CIRCUIT COURT
Twentieth Judicial Circuit

THE STATE
vs.
ASH-SHAKUR HALIM SHABAZZ

Witnesses for Agency No. 05-3356

BRIAN CHERRY, POLICE DEPT, DOTHAN, AL  36301
JOHN CRAWFORD, DOTHAN P.D., DOTHAN, AL  36301
CANDACE MICHELE DOWNIE, 250 PEARL ST, DOTHAN, AL  36301
MICHELLE DOWNIE, 250 PEARL STREET, DOTHAN, AL  36301
WANDA SANDERS, DHR--1605 RCC, DOTHAN, AL  36301

Charges: 1.  SODOMY SECOND DEGREE

317

# A TRUE BILL

_Anne Hudspeth_
Foreman of the Grand Jury

Presented to the presiding Judge in open court foreman of the
Grand Jury, in the presence of ___14___ Grand Jurors and
filed in open court by order of the court on this the ___9th___
day of ___June___, 20_05_.

_Judge Byrd_

CLERK

# INDICTMENT

NO PROSECUTOR

Upon the arrest of Defendant let him be admitted to bail on
giving bond in the sum of

___$ 20,000___ Dollars
With security to be approved by the Sheriff.

Judge Presiding

# WRIT OF ARREST

**The State of Alabama**
Houston County

CIRCUIT COURT

To Any Sheriff of the State of Alabama:

No. *314*

An indictment having been found against *Ash-Shakur Haleem Shabazz*

at the *May* Term *2005*, of the Circuit Court of said County

for the offense of *Rape, Second Degree*

you are therefore commanded forthwith to arrest the said Defendant and commit him to jail unless he gives bail to answer said Indictment, and you are further directed to make return of this writ according to law.

Dated this *9th* day of *June*, *2005*

*Judy Byrd* Clerk

Defendant lives at _____

The officer executing this writ may admit the Defendant to bail upon entering into Bond in the amount of *$20,000* Dollars with two or more good securities approved by said officers.

*Judy Byrd* Clerk

Received in office this the ____ day of **JUN 0 9 2005**, *Lamar Glover*

Sheriff _____

I have executed this writ by arresting the within named defendant and

☐ Taking Appearance Bond   ☒ Committing Defendant to Jail   ☐ Continued on Extising Bond

This the *11* day of *June*, *2005*

Sheriff *Lamar Glover*   Deputy Sheriff *Brian J. Crenshaw*

TRI-STATE / DOTHAN

# WRIT OF ARREST

The State of Alabama }
  Houston County

CIRCUIT COURT

To Any Sheriff of the State of Alabama:

No. _317_

An indictment having been found against _Ash-Shabur Halim Shabazz_

at the _May_ Term _2005_, of the Circuit Court of said County

for the offense of _Sodomy, Second Degree_

you are therefore commanded forthwith to arrest the said Defendant and commit him to jail unless he gives bail to answer said Indictment, and you are further directed to make return of this writ according to law.

Dated this _9th_ day of _June_, _2005_

_Judy Byrd_ Clerk

Defendant lives at _____

The officer executing this writ may admit the Defendant to bail upon entering into Bond in the amount of _$20,000_ Dollars with two or more good securities approved by said officers.

_Judy Byrd_ Clerk

Received in office this the ____ day of _____ JUN 0 9 2005

_Lamar Glover_

Sheriff _____

I have executed this writ by arresting the within named defendant and

☐ Taking Appearance Bond    ☒ Committing Defendant to Jail    ☐ Continued on Extising Bond

This the _11_ day of _June_, _2005_

Sheriff _Lamar Glover_    Deputy Sheriff _Bivens Curd_

TRI-STATE / DOTHAN

16

05-1132 & 05-1133

State of Alabama
Unified Judicial System

Form C-10
Page 1 of 2          Rev. 2/95

# AFFIDAVIT OF SUBSTANTIAL HARDSHIP AND ORDER

Case Number
Ind 314
Ind 317

IN THE **Circuit** COURT OF **Houston**, ALABAMA
(Circuit, District, or Municipal)          (Name of County or Municipality)

STYLE OF CASE: **State of Alabama** v. **Ash-Shakur Shabazz**
Plaintiff(s)                          Defendant(s)

TYPE OF PROCEEDING: **Criminal** CHARGE(S) (if applicable): **Rape 2nd, Sodomy 2nd**

☐ CIVIL CASE– I, because of substantial hardship, am unable to pay the docket fee and service fees in this case. I request that payment of these fees be waived initially and taxed as costs at the conclusion of the case.

☐ CIVIL CASE– (such as paternity, support, termination of parental rights, dependency) - I am financially unable to hire an attorney and I request that the court appoint one for me.

☒ CRIMINAL CASE– I am financially unable to hire an attorney and request that the court appoint one for me.

☐ DELINQUENCY/NEED OF SUPERVISION-- I am financially unable to hire an attorney and request that the court appoint one for my child/me.

## AFFIDAVIT

SECTION I.

1. IDENTIFICATION
   Full name **Ash-Shakur Shabazz**                    Date of birth **7/12/60**
   Spouse's full name (if married) **N/A**
   Complete home address **205 Pearl St Dothan, Alabama 36301**

   Number of people living in household **3**
   Home telephone number
   Occupation/Job **N/A**                    Length of employment **N/A**
   Driver's license number **N/A**          *Social Security Number **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**
   Employer **N/A**                          Employer's telephone number **N/A**
   Employer's address **N/A**

2. ASSISTANCE BENEFITS
   Do you or anyone residing in your household receive benefits from any of the following sources? (If so, please check those which apply.)

   ☐ AFDC    ☒ Food Stamps    ☐ SSI    ☐ Medicaid    ☐ Other

3. INCOME/EXPENSE STATEMENT
   Monthly Gross Income:
   Monthly Gross Income                                    $ 0
   Spouse's Monthly Gross Income (unless a marital offense)
   Other Earnings: Commissions, Bonuses, Interest Income, etc.
   Contributions from Other People Living in Household
   Unemployment/Workmen's Compensation,
     Social Security, Retirements, etc.
   Other Income (be specific)                              0
   **TOTAL MONTHLY GROSS INCOME**                    $ 0

   Monthly Expenses:
   A. Living Expenses
      Rent/Mortgage                                        $ 0
      Total Utilities: Gas, Electricity, Water, etc.
      Food                                                 140
      Clothing
      Health Care/Medical
      Insurance
      Car Payment(s)/Transportation Expenses
      Loan Payment(s)                    17              550

Form C-10  Page 2 of 2   Rev. 2/95

## AFFIDAVIT OF SUBSTANTIAL HARDSHIP AND ORDER

Monthly Expenses: (cont'd page 1)
Credit Card Payment(s)
Educational/Employment Expenses
Other Expenses (be specific) _____

Sub-Total

B.   Child Support Payment(s)/Alimony          $ _____

Sub-Total

C.   Exceptional Expenses                       $ ___ 0

TOTAL MONTHLY EXPENSES (add subtotals from A & B monthly only)   $ ___ 0

A  $ __ 0

B  $ _____

Total Gross Monthly Income Less total monthly expenses:

### DISPOSABLE MONTHLY INCOME                  $ ___ 0

**4.   LIQUID ASSETS:**
Cash on Hand/Bank (or otherwise available such as stocks,
bonds, certificates of deposit)
Equity in Real Estate (value of property less what you owe)
Equity in Personal Property, etc. (such as the value of
motor vehicles, stereo, VCR, furnishing, jewelry, tools,
guns, less what you owe)
Other (be specific)
Do you own anything else of value? ☐ Yes  ☑ No
(land, house, boat, TV, stereo, jewelry)
If so, describe _____

$ __ 0

### TOTAL LIQUID ASSETS                        $ ___ 0

**5.   Affidavit/Request**
I swear or affirm that the answers are true and reflect my current financial status. I understand that a false statement or answer to any question in the affidavit may subject me to the penalties of perjury. I authorize the court or its authorized representative to obtain records of information pertaining to my financial status from any source in order to verify information provided by me. I further understand and acknowledge that, if the court appoints an attorney to represent me, the court may require me to pay all or part of the fees and expenses of my court-appointed counsel.

Sworn to and subscribed before me this

_____ day of _____ 05

My Commission Expires: _____

_____
Judge/Clerk/Notary

_____
Affiant's Signature

Ash Shakur Shabazz
Print or Type Name

### ORDER OF COURT

**SECTION II.**
IT IS THEREFORE, ORDERED, AND ADJUDGED BY THE COURT AS FOLLOWS:
☐ Affiant is not indigent and request is DENIED.
☐ Affiant is partially indigent and able to contribute monetarily toward his/her defense; therefore defendant is ordered to pay
$ _____ toward the anticipated cost of appointed counsel. Said amount is to be paid to the clerk of court or as otherwise
ordered and disbursed as follows: _____
☐ Affiant is indigent and request is GRANTED.
☐ The prepayment of docket fees is waived.

IT IS FURTHER ORDERED AND ADJUDGED that _____, is hereby appointed as counsel to represent
affiant.
IT IS FURTHER ORDERED AND ADJUDGED that the court reserves the right and may order reimbursement of attorney's fees and
expenses, approved by the court and paid to the appointed counsel, and costs of court.
Done this _____ day of _____.

_____
Judge

CC05-1132 A
05-1133

## INMATE REQUEST FORM

Date: 8/14/05

To: Judy Byrd

From: Ash-shakur Shabazz

INMATES # 57268     B-1

C/O SIGNATURE _____

SR C/O SIGNATURE _____

NATURE OF REQUEST Cah you pleAse help me obtAin AN AttoRNEY and get A bond heARiNg. IF you ARE uNAble, pleAse give me the NAME ANd addRess oF who cAN help me with both oF these pRoblEm
Thank you

ACTION TAKEN

**FILED**

AUG 1 6 2005

JUDY BYRD, CLERK
HOUSTON CO., AL

8-17-05 Arraignment
11-14-05 Jury Trial

Houston Printing Co., Inc. • Form #5135 • Rev. 3-98   WO#54

19

July 18, 2005 - *[handwritten, partially illegible]* Hearing Judge requested to

Re Assign Case a small Judge has

Conflict

*[signature, illegible]*

7/20/05 Case assigned to Judge Anderson

J.J. Fuhrt, Judge

| 8/1/05 | Contract attorney Martin Adams is appointed as counsel for Defendant. |

_Larry K. Anderson, Judge_

| State of Alabama<br>Unified Judicial System | PLEA OF NOT GUILTY AND WAIVER OF<br>ARRAIGNMENT | Case Number |
|---|---|---|
| Form CR-9    Rev.3/95 | | cc-2005-1132 and 1133 |

IN THE __CIRCUIT__ _____ COURT OF __HOUSTON__ _____, ALABAMA
       (Circuit, District, or Municipal)             (Name of County or Municipality)

☒ STATE OF ALABAMA v. __ASH-SHAKUR HALIM SHABAZZ__ _____, Defendant

Comes now, the defendant in the above-styled matter, and to the offense charged enters a plea of

**FILED**

☒ Not Guilty
☐ Not Guilty by Reason of Mental Disease or Defect
☐ Not Guilty and Not Guilty by Reason of Mental Disease or Defect

AUG 1 6 2005

Defendant acknowledges receipt of the copy of the charge against him/her and further waives the right to have an arraignment at which the defendant is present in person, or at which the defendant is represented by an attorney.

But, the defendant specifically and expressly reserves the right upon the filing hereof to hereafter, during the 30 days on or before such date as may be set by the court, to interpose any defenses, objections, or motions which the defendant had the right as a matter of law or rule to interpose in this cause, prior to the filing hereof.

JUDY BYRD, CLERK
HOUSTON CO., ALA

Defendant's date of birth is __7-12-1960__ _____ Defendant's age is __45__
The defendant is not eligible for consideration by the court for youthful offender status as provided by law.

__8-16-05__ _____
Date

X _____ Defendant

__8-16-05__ _____
Date

R.MARTIN ADAMS (ADA046) _____
Attorney for Defendant

This is to certify that I am the attorney for the defendant in this matter, and that I have fully explained this form and all matters set forth herein, and pertaining hereto, to the defendant. I further state to the court that I have explained to the defendant his right to be arraigned in person and his right to have me represent him at arraignment. I further certify to the court that my client hereby knowingly, voluntarily, and intelligently waives these rights after a full and complete explanation of each and every one of them to him/her by me. BOTH MYSELF AND THE DEFENDANT UNDERSTAND THAT I AM RESPONSIBLE FOR ASCERTAINING WHAT DATE, IF ANY, HAS BEEN SET BY THE COURT FOR THE MAKING OR FILING OF ANY DEFENSES, OBJECTIONS, OR MOTIONS. I FURTHER UNDERSTAND THAT I AM RESPONSIBLE FOR NOTIFYING MY CLIENT OF THE DATE HIS/HER CASE IS SET FOR TRIAL, AND THAT I HAVE ADVISED AND INFORMED HIM/HER THAT IN THE EVENT HE/SHE FAILS TO APPEAR ON THE DATE HIS/HER CASE IS SET FOR TRIAL, ALL APPROPRIATE LEGAL ACTION WILL BE TAKEN BY THE COURT AGAINST THE DEFENDANT AND HIS/HER BOND. I further certify to the court that I have advised my client that he/she is responsible for obtaining the date his/her case is set for trail in this matter and that in the event he/she fails to appear on the date his/her case is set for trial all appropriate legal action will be taken by the court against the defendant and his/her bond, and I hereby certify that the defendant knows that he/she is personally responsible for obtaining the date his/her case is set for trial and for being present in court on that date.

__8-16-05__ _____
Date

_____
Attorney for Defendant Signature

I certify that I served a copy of the foregoing plea and waiver of arraignment on the Prosecutor by mailing/delivering a copy of the same to him/heron:

R.MARTIN ADAMS (ADA046) _____
Printed or Typed Attorney's Name

_____
Date

739 WEST MAIN ST, DOTHAN, AL 36301 _____
Address

This is to certify that my attorney has explained each and every matter and right set forth in this form and I have completely and fully read and do us understand each and every matter set forth in this form. I further state to the court that I do not wish to be personally present at an arraignment in this case and that I do not want to have an attorney represent me at an arraignment and WITH FULL KNOWLEDGE OF EACH OF THESE RIGHTS, I HEREBY EXPRESSLY WAIVE SUCH RIGHTS. I further state to the court that I have been informed of the charge against me and have received a copy of the charge.

__8-16-05__ _____
Date

X _____
Defendant Signature

Filed in office this date _____

_____ By _____
Clerk

23

RECIPROCAL DISCOVERY ORDER

8-17- 20 05

Within 14 days of this order, the State and Defendant will make
available for inspection and copying all materials discoverable under
the Alabama Rules of Criminal Procedure. In addition , the State will
make any exculpatory materials available to the defense. The State
will make its materials available at the District Attorney's office
and the defense will do likewise at defense counsel's office.

_____ K. _____, Judge

CIRCUIT JUDGE

24

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

STATE OF ALABAMA,                           *

V.                                          *     CASE NO: CC-2005-1132 AND 1133 A

ASH-SHAKUR HALIM SHABAZZ,                    *

DEFENDANT.                                   *

## **MOTION FOR SPEEDY TRIAL**

COMES NOW the defendant, ASH-SHAKUR HALIM SHABAZZ , in the above reference

case, and moves this Honorable Court to set this case for Trial at the Court's earliest convenience,

and as grounds therefore would say as follows:

1.    The defendant has been incarcerated since June, 2005 awaiting trial in this matter.

WHEREFORE, the defendant prays this Honorable Court will grant this motion and set it

for Trial at the Court's earliest convenience.

Dated this the 22nd  day of August, 2005.

PARKMAN, ADAMS & ASSOCIATES

**FILED**

**AUG 2 2 2005**

*Judy Byrd*

JUDY BYRD, CLERK
HOUSTON CO., AL

R. MARTIN ADAMS (ADA046)
ATTORNEY FOR DEFENDANT
739 WEST MAIN ST
DOTHAN, AL 36301
(334) 792-1900
(334) 712-1352 FAX

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon the District Attorney by placing a copy of same in the box provided for him at the Houston County Courthouse on this the 22ND day of August, 2005.

_____
OF COUNSEL

9/17/05 - Motion for speedy trial is noted.

Larry K. Anderson, Judge

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

STATE OF ALABAMA,                     *

V.                                    *    CASE NO: CC-2005-1132 AND 1133 A

ASH-SHAKUR HALIM SHABAZZ,             *

DEFENDANT.                            *

## MOTION FOR BOND HEARING

COMES NOW the defendant, ASH-SHAKUR HALIM SHABAZZ , in the above styled cause, and moves this Honorable Court to set a Bond Hearing at the Court's earliest convenience, and as grounds therefore would say as follows:

1. The defendant is currently incarcerated under a $20,000.00 bond on each case.

2. The defendant is entitled to a reduction of the bond to a reasonable amount under the Alabama Rules of Criminal Procedure.

3. The excessive bond amount is in violation of the defendant's right to a reasonable bond.

4. The defendant poses no flight risk if released on bond.

5. The defendant requests this Honorable Court to reduce the defendant's bond to a reasonable amount to which he is entitled according to the Constitution of the United States and the Constitution of the State of Alabama.

WHEREFORE, the defendant prays this Honorable Court will grant this motion and consider

**FILED**

AUG 2 2 2005

*Judy Byrd*

JUDY BYRD, CLERK
HOUSTON CO., AL

28

reduction of the defendant's bond amount for the reasons stated herein.

Dated this the 22nd day of August, 2005.

PARKMAN, ADAMS & ASSOCIATES

R. MARTIN ADAMS (ADA046)
ATTORNEY FOR DEFENDANT
739 WEST MAIN STREET
DOTHAN, AL 36301
(334) 792-1900
(334) 712-1352 FAX

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon the District Attorney by placing a copy of same in the U.S. mail, postage prepaid and properly addressed on this the 22ND day of AUGUST, 2005.

OF COUNSEL

9/1/05 - Motion to reduce bond is set for hearing September 30, 2005
       at 9:00 a.m.

                                    _Jerry K. Anderson, Judge_

9-30-05 ~ Bond reduction hearing continued and reset for
October 7, 2005 at 9:00 a.m.

OCT 6 2005    n: M. Adams, DA

Larry K. Anderson, Judge

10-7-05. As bail is within the recommended range, motion to reduce bond is denied.

Anderson, Judge

IN THE CIRCUIT COURT OF HOUSTON COUNTY

STATE OF ALABAMA

V.                                          CASE NO. CC05-1132-1133

ASH-SKAKUR HALIM SHABAZZ

## MOTION TO SET FOR TRIAL

COMES NOW the State of Alabama by and through the undersigned District Attorney and respectfully requests this Honorable Court set this matter for trial on the November term of Criminal Jury Trials. As grounds would offer the following:

1. That the defendant is in custody in the Houston County Jail

2. That the defendant has filed a motion for speedy trial..

Respectfully submitted this 24th day of October 2005.

*Douglas Albert Valeska*

Douglas Albert Valeska
District Attorney

### certificate of service

I hereby certify a copy of the above has been served on the attorney of record,_____
__Matthew Lamere____, by placing a copy in his box located at the Houston County Courthouse, this 24th day of October 2005.

*Douglas Albert Valeska*

Of Counsel

# FILED

**OCT 2 4 2005**

*Judy Byrd*

JUDY BYRD, CLERK
HOUSTON CO., AL

33

10/25/05   Motion to set for trial is noted.

Anderson, Judge

## JURY CONVICTION

### IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

STATE OF ALABAMA

**CRIMINAL DIVISION**

VS.

_Ash-Shakur Halim Shabazz_      CASE NO. _CC05-1132_

The Defendant having been indicted and arraigned upon the Indictment on a charge of _Rape 2nd degree_ , and heretofore having plead not guilty thereto the case was tried before a jury composed of _Wade Jones_ , as foreperson and eleven others. The Jury having been duly empanelled , sworn and charged by the Court according to law , with the Defendant being present in open court with his attorney at each and every stage of proceedings, said jury has now on this date pursuant to their oath found the Defendant guilty of _Rape 2nd degree_ as charged in the Indictment (a lesser included offense of that charge in the Indictment).

In accordance with the verdict of the Jury, Defendant is hereby adjudged guilty of _Rape 2nd degree_ . Defendant being asked if he/she had anything to say why sentence of law should not be pronounced upon him/her, and Defendant says nothing .

**IT IS THEREFORE ORDERED AND ADJUDGED BY THE COURT** that the Defendant is guilty of said charge.

( ) A Sentence hearing is set for the ___ day of _____ , 20__ at ___ o'clock ___ -M.

DONE, this the _15th_ day of _December_ , 2005

_____
CIRCUIT JUDGE

### SENTENCING ORDER

AS PUNISHMENT, DEFENDANT IS HEREBY FORMALLY SENTENCED:

( ) to hard labor for Houston County for a term of _____ .

(X) to the penitentiary of the State of Alabama for a term of _26_ years. (X) FHOA

## JURY CONVICTION

### IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

STATE OF ALABAMA

VS.

CRIMINAL DIVISION

Ash-Shakur Halim Shabazz    CASE NO. CC05-1133

The Defendant having been indicted and arraigned upon the Indictment on a charge of _Sodomy 2nd degree_ and heretofore having plead not guilty thereto the case was tried before a jury composed of _Wade Jones_, as foreperson and eleven others. The Jury having been duly empanelled, sworn and charged by the Court according to law, with the Defendant being present in open court with his attorney at each and every stage of proceedings, said jury has now on this date pursuant to their oath found the Defendant guilty of _Sodomy 2nd degree_ as charged in the Indictment (a ~~lesser included offense of that charge in the Indictment~~).

In accordance with the verdict of the Jury, Defendant is hereby adjudged guilty of _Sodomy 2nd degree_. Defendant being asked if he/she had anything to say why sentence of law should not be pronounced upon him/her, and Defendant says nothing.

**IT IS THEREFORE ORDERED AND ADJUDGED BY THE COURT** that the Defendant is guilty of said charge.

( ) A Sentence hearing is set for the ___ day of _____, 20__ at ____ o'clock ___.M.

DONE, this the _15_ day of _December_, 200**5**

_____
CIRCUIT JUDGE

### SENTENCING ORDER

AS PUNISHMENT, DEFENDANT IS HEREBY FORMALLY SENTENCED:

( ) to hard labor for Houston County for a term of _____.

(X) to the penitentiary of the State of Alabama for a term of _26_ years. (X) FHOA

36

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

STATE OF ALABAMA                    )
                                    )
        PLAINTIFF,                  )
                                    )
VS.                                 )  CASE NO. CC05-1132
                                    )
ASH-SHAKUR HALIM SHABAZZ,           )
                                    )
        DEFENDANT.                  )

We, the Jury, find the Defendant, Ash-Shakur Halim Shabazz, guilty of Rape in the Second Degree as charged in the Indictment.

___12/15/05___
Date

___Wade A. Jones___
Foreperson

___Judy Byrd___
Clerk

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

STATE OF ALABAMA     )
            )
  PLAINTIFF,     )
            )
VS.          ) CASE NO. CC05-1133
            )
ASH-SHAKUR HALIM SHABAZZ, )
            )
  DEFENDANT.     )

We, the Jury, find the Defendant, Ash-Shakur Halim Shabazz, guilty of Sodomy in the Second Degree as charged in the Indictment.


_12/15/05_____
Date

            _Wade C. Jones_____
            Foreperson

            _Judy Byrd_____
            Clerk

AS PUNISHMENT, DEFENDANT IS HEREBY FORMALLY SENTENCED:
(X) to the penitentiary of the State of Alabama for a term of 26 years. (X) FHOA

On the 30ᵗʰ day after the Clerk transmits to the Department of Corrections a copy of this judgment entry and sentence, if the Department has not directed the Sheriff where the Defendant shall be taken for confinement, the Sheriff is hereby ordered to transport Defendant forthwith to the Department's receiving center at Kilby/Tutweiler (circle) and effectuate the transfer of the Defendant to the custody of the Department. In the event the Department refuses to accept the Defendant in compliance with state law, the Sheriff is ordered to secure the Defendant to the property at the Department's receiving center.

Said sentence shall run ( ) consecutive or (X) concurrent with case number (s)
_____ CC05 – 1133 _____.

( ) said sentence is suspended for _____ years on the condition of good behavior and payment of all fines, costs, and restitution.

( ) The Defendant is hereby given credit for the days spent incarcerated pending trial.

Defendant is also ordered to pay:

(X) A fine of $3,000.⁰⁰
(X) A Victim Compensation Assessment of $1,000.⁰⁰.
(X) All Court Costs.
( ) Restitution of $ _____ to _____
( ) Drug Demand Reduction Act Assessment of $1,000.00.
( ) Alabama Forensics Sciences Trust Fund $100.00.
( ) Pay direct to Alabama Dept. of Forensic Sciences-Dothan Division
    $ _____.
( ) Investigation restitution direct to ( )DPD ( ) HCSO $_____

## ADDITIONAL SENTENCE PROVISION ORDERED ARE:

( ) Completion of a substance abuse program CRO
( ) The Department of Public Safety is ordered to comply with Alabama Code 13A-12-290 by suspending Defendant's drivers license for six months.
( ) Continued on same bond.
( ) Appeal bond is set at $_____.
( ) Indigency status granted and free transcript is ordered.

## PROBATION:

( ) Defendant applies for probation.
( ) Defendant waives application for probation.
( ) Probation hearing is set for the _____ day of _____ 20___ at _____
( ) Defendant to remain on same bond pending probation hearing

DONE this the 15ᵗʰ day of December, 2005...

_____
CIRCUIT JUDGE

AS PUNISHMENT, DEFENDANT IS HEREBY FORMALLY SENTENCED:
(x) to the penitentiary of the State of Alabama for a term of _26_ years. (x) FHOA

On the 30th day after the Clerk transmits to the Department of Corrections a copy of this judgment entry and sentence, if the Department has not directed the Sheriff where the Defendant shall be taken for confinement, the Sheriff is hereby ordered to transport Defendant forthwith to the Department's receiving center at Kilby/Tutweiler (circle) and effectuate the transfer of the Defendant to the custody of the Department. In the event the Department refuses to accept the Defendant in compliance with state law, the Sheriff is ordered to secure the Defendant to the property at the Department's receiving center.

Said sentence shall run ( ) consecutive or (x) concurrent with case number (s)
_CC05-1132_

( ) said sentence is suspended for _____ years on the condition of good behavior and payment of all fines, costs, and restitution.

( ) The Defendant is hereby given credit for the days spent incarcerated pending trial.

Defendant is also ordered to pay:

(x) A fine of $ _3,000.00_
(x) A Victim Compensation Assessment of $ _1,000.00_ .
(x) All Court Costs.
( ) Restitution of $ _____ to _____
( ) Drug Demand Reduction Act Assessment of $1,000.00.
( ) Alabama Forensics Sciences Trust Fund $100.00.
( )Pay direct to Alabama Dept. of Forensic Sciences-Dothan Division
$ _____ .
( ) Investigation restitution direct to ( )DPD ( ) HCSO $ _____ .

## ADDITIONAL SENTENCE PROVISION ORDERED ARE:

( ) Completion of a substance abuse program CRO
( ) The Department of Public Safety is ordered to comply with Alabama Code 13A-12-290 by suspending Defendant's drivers license for six months.
( ) Continued on same bond.
( ) Appeal bond is set at $ _____ .
( ) Indigency status granted and free transcript is ordered.

## PROBATION:

( ) Defendant applies for probation.
( ) Defendant waives application for probation.
( ) Probation hearing is set for the _____ day of _____ 20__ at _____
( ) Defendant to remain on same bond pending probation hearing

DONE this the _15th_ day of _December_ ,2005 ...

CIRCUIT JUDGE

, ecember 17, 2005

CC05-1132

Dear Mr. Steewsland,

I frist like to thank you for represent
ing me, in my most recent court trial. Obvious
the out come, wasn't what I expected, yet your
Legal representation was adequate. Again I
thank you.

The reason of this epistle is to ask of
you, your assistance to apply for a couple of Legal
things. The frist being, an appeal bond, also an
written appeal on my case, Last and not Least the
Liauscript on my trial.

I will appreciate it, if you can do this
straight away. Again I thank you for your time
and Legal representation

c.c.
FILE
Judy Byrd.

41

Sincerely
Ash-Shakur Shabazz
Ash-Shakur Shabazz

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

STATE OF ALABAMA,                        *

PLAINTIFF,                               *

V.                                       *     CASE NO: CC-05-1132,1133

ASH-SHAKUR SHABAZZ                       *

DEFENDANT.                               *

## NOTICE OF APPEAL

COMES NOW the defendant, Ash-Shakur Shabazz, in the above styled cause, and files

his Notice of Appeal to the Alabama Court of Criminal Appeals.

Dated this the ~~19th~~ 4th day of ~~December, 2005.~~ Jan, 2006.

**FILED**

JAN 0 5 2006

*Judy Byrd*
JUDY BYRD, CLERK
HOUSTON CO., AL

PARKMAN, ADAMS & WHTIE

_____
R. MARTIN ADAMS (ADA046)
ATTORNEY FOR DEFENDANT
739 WEST MAIN ST
DOTHAN, AL 36301
(334) 792-1900
(334) 712-1352 FAX

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon the District Attorney and
the Attorney General for the State of Alabama by placing a copy of same in the U.S. mail,
postage prepaid and properly addressed on this the ~~19th~~ 4th day of ~~December, 2005.~~ Jan, 2006

_____
OF COUNSEL

42

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

STATE OF ALABAMA,                         *

PLAINTIFF,                                *

V.                                        *    CASE NO: CC-05-1132,1133   *A*

ASH-SHAKUR SHABAZZ                        *

DEFENDANT.                                *

## MOTION TO WITHDRAW

COMES NOW R. Martin Adams, undersigned counsel for the defendant, and moves this Honorable Court to allow said counsel to withdraw, and as grounds therefore would say as follows:

1.    The undersigned counsel does not have sufficient time to research the legal issues, review the transcript and prepare an appellate brief in this matter due to the numerous contract cases represented by said counsel.

2.    The defendant's interests would be better served by the court appointing another attorney to represent said defendant on appeal.

WHEREFORE, the undersigned counsel prays this Court will allow him to withdraw for the reasons stated herein.

Dated this the ~~19th~~ 4th ~~day of December, 2005.~~ Jan, 2006

PARKMAN, ADAMS & WHITE

**FILED**

**JAN 0 5 2006**

*Judy Byrd*

JUDY BYRD, CLERK
HOUSTON CO., AL

_____
R. MARTIN ADAMS (ADA046)
ATTORNEY FOR DEFENDANT
739 WEST MAIN ST
DOTHAN, AL 36301
(334) 792-1900
(334) 712-1352 FAX

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon the District Attorney and the Attorney General for the State of Alabama by placing a copy of same in the U.S. mail, postage prepaid and properly addressed on this the ~~19th~~ day of ~~December, 2005.~~
4th    Jan, 2006

_____

OF COUNSEL

# COPY

ACR359

ALABAMA JUDICIAL DATA CENTER
HOUSTON COUNTY
TRANSCRIPT OF RECORD
CONVICTION REPORT

CC 2005 001132.00 01
LARRY K ANDERSON

CIRCUIT COURT OF HOUSTON COUNTY

COURT ORI: 038015 J

STATE OF ALABAMA          VS.
SHABAZZ ASH-SHAKUR HALIM     ALIAS:
C/O HOUSTON COUNTY JAIL     ALIAS:
901 E MAIN STREET
DOTHAN  AL  36301

DC NO: DC 2005 001545.00
G J:   314-5
SSN:   138526572
SID:   000000000
AIS:

DOB:  07/12/1960    SEX: M   HT: 6 05    WT: 270   HAIR: BLK    EYE: BRO
RACE: ( )W (X)B ( )O    COMPLEXION:           AGE:      FEATURES:

DATE OFFENSE: 04/01/2004    ARREST DATE: 06/11/2005    ARREST ORI: 0380100

CHARGES @ CONV     CITES          CT CL COURT ACTION              CA DATE
RAPE 2ND DEGREE    13A-006-062    01 B  CONVICTED                 12/15/2005
                                  00                              00/00/0000
                                  00                              00/00/0000

JUDGE: LARRY K ANDERSON                    PROSECUTOR: ATWELL DAVID MICHAEL

PROBATION APPLIED  (  GRANTED  DATE
( )Y ( )N          ( )Y ( )N          REARRESTED DATE    REVOKED  DATE
                                      ( )Y ( )N          ( )Y ( )N

15-18-8  CODE OF ALA 1975    IMPOSED     SUSPENDED    TOTAL      JAIL CREDIT
( )Y (X)N  CONFINEMENT :  26 00 000    00 00 000    26 00 000    00 00 241
           PROBATION  :   00 00 000                 00 00 000
DATE SENTENCED: 12/15/2005    SENTENCE BEGINS: 12/15/2005

PROVISIONS                       COSTS/RESTITUTION

                                                   DUE          ORDERED
VDOB=09081989                 RESTITUTION         $0.00          $0.00
PENITENTIARY                  ATTORNEY FEE      $750.00        $750.00
CONCURR SENT                  CRIME VICTIMS    $1000.00       $1000.00
HABITUAL OFDR                 COST              $281.00        $281.00
                              FINE             $3000.00       $3000.00
                              MUNICIPAL FEES      $0.00          $0.00
                              DRUG FEES           $0.00          $0.00
                              ADDTL DEFENDANT     $0.00          $0.00
                              DA FEES             $0.00          $0.00
                              COLLECTION ACCT     $0.00          $0.00
                              JAIL FEES           $0.00          $0.00

                              TOTAL
                                               $5031.00       $5031.00

APPEAL DATE       SUSPENDED        AFFIRMED              REARREST
(✓)Y ( )N 1-5-06  ( )Y ( )N        ( )Y ( )N          ( )Y ( )N

REMARKS:
                              THIS IS TO CERTIFY THAT THE
                              ABOVE INFORMATION WAS EXTRACTED
CONCURRENT WITH CC05-1133     FROM OFFICIAL COURT RECORDS
                              AND IS TRUE AND CORRECT.

                              JUDY BYRD

                              01/07/2006

OPERATOR: RHM
PREPARED: 01/07/2006

45

# COPY

ACR359

ALABAMA JUDICIAL DATA CENTER
HOUSTON COUNTY
TRANSCRIPT OF RECORD
CONVICTION REPORT

CC 2005 001133.00 01
LARRY K ANDERSON

CIRCUIT COURT OF HOUSTON COUNTY

COURT ORI: 038015 J

STATE OF ALABAMA    VS.
SHABAZZ ASH-SHAKUR HALIM    ALIAS:
C/O HOUSTON COUNTY JAIL    ALIAS:
901 E MAIN STREET
DOTHAN  AL  36301

DC NO: DC 2005 001546.00
G J: 317-5
SSN: 138526572
SID: 000000000
AIS:

DOB: 07/12/1960   SEX: M  HT: 6 05    WT: 270  HAIR: BLK   EYE: BRO
RACE: ( )W (X)B ( )O   COMPLEXION:    AGE:    FEATURES:

DATE OFFENSE: 04/01/2004   ARREST DATE: 06/11/2005   ARREST ORI: 0380100

CHARGES @ CONV    CITES    CT CL COURT ACTION    CA DATE
SODOMY 2ND DEGREE  13A-006-064    01 B  CONVICTED    12/15/2005
00    00/00/0000
00    00/00/0000

JUDGE: LARRY K ANDERSON    PROSECUTOR: ATWELL DAVID MICHAEL

PROBATION APPLIED    GRANTED   DATE    REARRESTED  DATE   REVOKED   DATE
( )Y ( )N    ( )Y ( )N    ( )Y ( )N    ( )Y ( )N

15-18-8  CODE OF ALA 1975    IMPOSED    SUSPENDED    TOTAL    JAIL CREDIT
( )Y (X)N   CONFINEMENT: 26 00 000   00 00 000   26 00 000   00 00 241
PROBATION: 00 00 000   00 00 000   00 00 000
DATE SENTENCED: 12/15/2005    SENTENCE BEGINS: 12/15/2005

PROVISIONS

VDOB=09081989
PENITENTIARY
CONCURR SENT
HABITUAL OFDR

COSTS/RESTITUTION    DUE    ORDERED

| | DUE | ORDERED |
|---|---|---|
| RESTITUTION | $0.00 | $0.00 |
| ATTORNEY FEE | $750.00 | $750.00 |
| CRIME VICTIMS | $1000.00 | $1000.00 |
| COST | $273.00 | $273.00 |
| FINE | $3000.00 | $3000.00 |
| MUNICIPAL FEES | $0.00 | $0.00 |
| DRUG FEES | $0.00 | $0.00 |
| ADDTL DEFENDANT | $0.00 | $0.00 |
| DA FEES | $0.00 | $0.00 |
| COLLECTION ACCT | $0.00 | $0.00 |
| JAIL FEES | $0.00 | $0.00 |
| TOTAL | $5023.00 | $5023.00 |

APPEAL DATE    SUSPENDED    AFFIRMED    REARREST
(✓)Y ( )N 1-5-06    ( )Y ( )N    ( )Y ( )N    ( )Y ( )N

REMARKS:

CONCURRENT WITH CC05-1132

THIS IS TO CERTIFY THAT THE
ABOVE INFORMATION WAS EXTRACTED
FROM OFFICIAL COURT RECORDS
AND IS TRUE AND CORRECT.

JUDY BYRD
01/06/2006

OPERATOR: RHM
PREPARED: 01/07/2006

| | |
|---|---|
| /10/06 | Attorney Martin Adams' motion to withdraw is granted. Notice of appeal noted. Free transcript ordered. Attorney David Hogg is appointed counsel for defendant. |

_Jerry K. Anderson, Judge_

ACR371
ALABAMA JUDICIAL DATA CENTER
NOTICE OF APPEAL TO THE ALABAMA COURT OF CRIMINAL APPEALS
BY THE TRIAL COURT CLERK
IN THE CIRCUIT COURT OF HOUSTON COUNTY
STATE OF ALABAMA VS SHABAZZ ASH-SHAKUR HALIM   JUDGE: LARRY K ANDERSON

APPEAL DATE: 01/05/2006

INDIGENCY STATUS:
GRANTED INDIGENCY STATUS AT TRIAL COURT:
APPT TRIAL COUNSEL PERMITTED TO W/D ON APPEAL:   X   YES   ___ NO
INDIGENT STATUS REVOKED ON APPEAL:   X   YES   ___ NO
INDIGENT STATUS GRANTED ON APPEAL:   ___ YES   X   NO
   X   YES   ___ NO

DEATH PENALTY: NO

APPEAL TYPE: STATE CONVICTION

THIS IS AN APPEAL FROM A CONVICTION.

DATE OF CONVICTION: 12/15/2005      DATE OF SENTENCE: 12/15/2005

YOUTHFUL OFFENDER STATUS: DENIED

CO/CASE NUMBER: 38/CC 2005 001132.00
CODE: RAP2   CONVICTION: RAPE 2ND DEGREE      ACTION: CONVICTED
                                               STATUTE: 13A-006-062
SENTENCE:   CONF: 26 YRS 00 MOS 000 DAYS
SENTENCE:   PROB: 00 YRS 00 MOS 000 DAYS      LIFE: NO   LIFEWO: NO

POST-JUDGMENT MOTIONS FILED:   DT FILED   DT DENIED   CON BY AGREE
___ MOTION FOR NEW TRIAL
___ MOTION FOR JUDG. OF ACQUIT
___ MOTION TO W/D GUILTY PLEA
___ MOTION FOR ATTY TO W/DRAW
___ OTHER

COURT REPORTER(S):            MARTIN, ANDREA E.
ADDRESS:                      C/O HON. LARRY K ANDERSON
                              DOTHAN          , AL 36302

APPELLATE COUNSEL #1:         HOGG DAVID KENNETH
ADDRESS:                      P O BOX 1690

PHONE NUMBER:                 DOTHAN          , AL 36302
                              334-794-8559

APPELLATE COUNSEL #2:
ADDRESS:

PHONE NUMBER:

APPELLANT (PRO SE):           SHABAZZ ASH-SHAKUR HALIM
ADDRESS:                      C/O HOUSTON COUNTY JAIL
                              DOTHAN          , AL 363010000
AIS #:

APPELLEE (IF CITY APPEAL):
ADDRESS:

I CERTIFY THAT THE INFORMATION PROVIDED                OPERATOR: RHM
ABOVE IS ACCURATE TO THE BEST OF MY          PREPARED: 01/13/2006
KNOWLEDGE AND I HAVE SERVED A COPY OF
THIS NOTICE OF APPEAL ON ALL PARTIES TO
THIS ACTION ON THIS 13th DAY OF January , 2006
                                              CIRCUIT COURT CLERK

48

ACR371

ALABAMA JUDICIAL DATA CENTER
NOTICE OF APPEAL TO THE ALABAMA COURT OF CRIMINAL APPEALS
BY THE TRIAL COURT CLERK
IN THE CIRCUIT COURT OF HOUSTON COUNTY
STATE OF ALABAMA VS SHABAZZ ASH-SHAKUR HALIM    JUDGE: LARRY K ANDERSON

APPEAL DATE: 01/05/2006

INDIGENCY STATUS:

| | | |
|---|---|---|
| GRANTED INDIGENCY STATUS AT TRIAL COURT: | X  YES | ___ NO |
| APP. TRIAL COUNSEL PERMITTED TO W/D ON APPEAL: | X  YES | ___ NO |
| INDIGENT STATUS REVOKED ON APPEAL: | ___ YES | X  NO |
| INDIGENT STATUS GRANTED ON APPEAL: | X  YES | ___ NO |

DEATH PENALTY: NO

APPEAL TYPE: STATE CONVICTION

THIS IS AN APPEAL FROM A CONVICTION.

DATE OF CONVICTION: 12/15/2005          DATE OF SENTENCE: 12/15/2005

YOUTHFUL OFFENDER STATUS: DENIED

CO/CASE NUMBER: 38/CC 2005 001133.00
CODE: SOD2    CONVICTION: SODOMY 2ND DEGRE      ACTION: CONVICTED
                                                STATUTE: 13A-006-064
SENTENCE:    CONF: 26 YRS 00 MOS 000 DAYS
SENTENCE:    PROB: 00 YRS 00 MOS 000 DAYS         LIFE: NO    LIFEWO: NO

| POST-JUDGMENT MOTIONS FILED: | DT FILED | DT DENIED | CON BY AGREE |
|---|---|---|---|
| ___ MOTION FOR NEW TRIAL | | | |
| ___ MOTION FOR JUDG. OF ACQUIT | | | |
| ___ MOTION TO W/D GUILTY PLEA | | | |
| ___ MOTION FOR ATTY TO W/DRAW | | | |
| ___ OTHER | | | |

COURT REPORTER(S):
ADDRESS:                                  MARTIN, ANDREA E.
                                          C/O HON. LARRY K ANDERSON
                                          DOTHAN          ,  AL  36302

APPELLATE COUNSEL #1:
ADDRESS:                                  HOGG DAVID KENNETH
                                          P O BOX 1690

PHONE NUMBER:                             DOTHAN          ,  AL  36302
                                          334-794-8559
APPELLATE COUNSEL #2:
ADDRESS:

PHONE NUMBER:

APPELLANT (PRO SE):
ADDRESS:                                  SHABAZZ ASH-SHAKUR HALIM
                                          C/O HOUSTON COUNTY JAIL
AIS #:                                    DOTHAN          ,  AL  363010000

APPELLEE (IF CITY APPEAL):
ADDRESS:

I CERTIFY THAT THE INFORMATION PROVIDED
ABOVE IS ACCURATE TO THE BEST OF MY                     OPERATOR: RHM
KNOWLEDGE AND I HAVE SERVED A COPY OF                   PREPARED: 01/13/2006
THIS NOTICE OF APPEAL ON ALL PARTIES TO
THIS ACTION ON THIS 13th DAY OF January 2006

                                          CIRCUIT COURT CLERK

State of Alabama
Unified Judicial System
Form ARAP-26 (front)    8/91

# COURT OF CRIMINAL APPEALS
## DOCKETING STATEMENT

Criminal Appeal Number
_____

## A. GENERAL INFORMATION:

☒ CIRCUIT COURT  ☐ DISTRICT COURT  ☐ JUVENILE COURT OF    Houston _____ COUNTY

Ash-Shakur Shabazz _____ , Appellant

V.  ☒ STATE OF ALABAMA    ☐ MUNICIPALITY OF _____

| Case Number | Date of Complaint or Indictment | Date of Judgment/Sentence/Order |
|---|---|---|
| CC-05-1132, 1133 | 4-15-05 | 12-15-05 |

| Number of Days of Trial/Hearing | Date of Notice of Appeal |
|---|---|
| 1 Days | Oral: 12-15-05    Written: 12-19-05 |

Indigent Status Requested: ☒ Yes  ☐ No          Indigent Status Granted: ☒ Yes  ☐ No

## B. REPRESENTATION:

Is Attorney Appointed or Retained?  ☒ Appointed  ☐ Retained.    If no attorney, will appellant represent self?  ☐ Yes  ☐ No

Appellant's Attorney (Appellant if pro se) (Attach additional pages if necessary).
request new attorney

Telephone Number

Address            City            State        Zip Code

## C. CODEFENDANTS: List each CODEFENDANT and the codefendant's case number.

| Codefendant | Case Number |
|---|---|
| Codefendant | Case Number |
| Codefendant | Case Number |

## D. TYPE OF APPEAL: Please check the applicable block.

1 ☒ State Conviction
2 ☐ Post-Conviction Remedy
3 ☐ Probation Revocation
4 ☐ Pretrial Order
5 ☐ Contempt Adjudication
6 ☐ Municipal Conviction
7 ☐ Juvenile Transfer Order
8 ☐ Juvenile Delinquency
9 ☐ Habeas Corpus Petition
10 ☐ Other (Specify)
_____

## E. UNDERLYING CONVICTION/CHARGE: Regardless of the type of appeal checked in Section D, please check the box beside each offense category for which the appellant has been convicted or charged as it relates to this appeal. Also include the applicable section of the Code of Alabama for State convictions.

1 ☐ Capital Offense - § _____
2 ☐ Homicide - § _____
3 ☐ Assault - § _____
4 ☐ Kidnapping/Unlawful Imprisonment - § _____
5 ☐ Drug Possession - § _____
6 ☐ Trafficking in Drugs - § _____
7 ☐ Theft - § _____
8 ☐ Damage or Intrusion to Property - § _____
9 ☐ Escape - § _____
10 ☐ Weapons/Firearms - § _____
11 ☐ Fraudulent Practices - § _____
12 ☐ Offense Against Family - § _____
13 ☐ Traffic - DUI - § _____
14 ☐ Traffic - Other - § _____
15 ☒ Miscellaneous (Specify):
rape/sodomy - § 13A-6-62
13A-6-64

## F. DEATH PENALTY:

Does this appeal involve a case where the death penalty has been imposed?  ☐ Yes  ☒ No

## G. TRANSCRIPT:

1. Will the record on appeal have a reporter's transcript?  ☒ Yes.  ☐ No
2. If the answer to question "1" is "Yes," state the date the Reporter's Transcript Order was filed.  12-19-05 (Date)
3. If the answer to question "1" is "No":
   (a) Will a stipulation of facts be filed with the circuit clerk?  ☐ Yes  ☐ No
   (b) Will the parties stipulate that only questions of law are involved and will the trial court certify the questions?  ☐ Yes  ☐ No

NOTE: If the appeal is from the district or juvenile court and the answer to question "1" is "No," then a positive response is required for question 3(a) or 3(b).

Form ARAP- 26 (back)   8/91

## COURT OF CRIMINAL APPEALS DOCKETING STATEMENT

**H. POST-JUDGMENT MOTIONS:** List all post-judgment motions by date of filing, type, and date of disposition (whether by trial court order or by the provisions of Rules 20.3 and 24.4 (ARCrP)):

| DATE OF FILING | | | TYPE OF POST-JUDGMENT MOTION | DATE OF DISPOSITION | | |
|-------|-----|------|---|-------|-----|------|
| Month | Day | Year | | Month | Day | Year |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**I. NATURE OF THE CASE:** Without argument, briefly summarize the facts of the case.

Defendant was arrested on 4-15-05 for rape, 2nd degree and sodomy 2nd degree. Defendant was indicted in May, 2005 and trial was held on December 15, 2005. Defendant was convicted on both charges and sentenced to 26 years CC. Oral Notice of Appeal was given.

**J. ISSUE(S) ON APPEAL:** Briefly state the anticipated issues that will be presented on appeal. *(Attach additional pages if necessary.)*

Trial Counsel is not aware of any appealable issues

**K. SIGNATURE:**

Date: 1-4-06

Signature of Attorney/Party Filing this Form

| State of Alabama<br>Unified Judicial System<br>Form ARAP-1C     8/91 | **REPORTER'S TRANSCRIPT ORDER -- CRIMINAL**<br>See Rules 10(c) and 11(b) of the<br>Alabama Rules of Appellate Procedure (A.R. App.P.) | Criminal Appeal Number<br><br>_____ - _____ |

TO BE COMPLETED BY COUNSEL FOR THE APPELLANT OR BY THE APPELLANT IF NOT REPRESENTED AND FILED WITH THE WRITTEN NOTICE OF APPEAL OR FILED WITHIN 7 DAYS AFTER ORAL NOTICE OF APPEAL IS GIVEN.

☑ CIRCUIT COURT ☐ DISTRICT COURT ☐ JUVENILE COURT OF   _Houston_ _____

_Ash-Shakur Shabazz_ _____, COUNTY

_____, Appellant

V. ☑ STATE OF ALABAMA    ☐ MUNICIPALITY OF _____

| Case Number<br>_CC 05-1132, 1133_ | Date of Judgment/Sentence/Order<br>_12-15-05_ |
| Date of Notice of Appeal<br>Oral: _12-15-05_     Written: _12-19-05_ | Indigent Status Granted:<br>☑ Yes    ☐ No |

**PART 1. TO BE SIGNED IF THE APPEAL WILL NOT HAVE A COURT REPORTER'S TRANSCRIPT:**

I CERTIFY THAT NO REPORTER'S TRANSCRIPT IS EXPECTED AND THAT THE RECORD ON APPEAL SHALL CONSIST OF THE CLERK'S RECORD ONLY. IF THE APPEAL IS FROM DISTRICT COURT OR JUVENILE COURT, I ALSO CERTIFY **(1)** THAT A STIPULATION OF FACTS WILL BE INCLUDED IN THE CLERK'S RECORD AND THAT THE APPELLANT WAIVES HIS RIGHT TO A JURY TRIAL IF SO ENTITLED; OR **(2)** THAT THE PARTIES HAVE STIPULATED THAT ONLY QUESTIONS OF LAW ARE INVOLVED AND THAT THE QUESTIONS WILL BE CERTIFIED BY THE JUVENILE/DISTRICT COURT FOR INCLUSION IN THE CLERK'S RECORD (SEE RULE 28(A)(1), ALABAMA RULES OF JUVENILE PROCEDURE, AND §12-12-72, *CODE OF ALABAMA 1975*).

Signature _____ Date _____ Print or Type Name _____

**PART 2. DESIGNATION OF PROCEEDINGS TO BE TRANSCRIBED.** Request is hereby made to the court reporter(s) indicated below for a transcript of the following proceedings in the above referenced case (see Rule 10(c)(2), Alabama Rules of Appellate Procedure (A.R.App.P.)):

**MARK PROCEEDINGS REQUESTED:**

                                                                 **COURT REPORTER(S)**

A. ☑ **TRIAL PROCEEDINGS** - Although this designation will include the judgment and sentence proceedings, a transcript of the organization of the jury and arguments of counsel must be designated separately.

B. ☐ **ORGANIZATION OF THE JURY** - This designation will include voir dire examination and challenges for cause. Note that in noncapital cases the voir dire of the jury will not be recorded unless the trial judge so directs. (See Rule 19.4, ARCrP.)

C. ☐ **ARGUMENTS OF COUNSEL** - Note that in noncapital cases the arguments of counsel will not be recorded unless the trial judge so directs. (See Rule 19.4, ARCrP.)

IN ADDITION TO ANY PROCEEDINGS DESIGNATED ABOVE, SPECIAL REQUEST IS HEREBY MADE TO INCLUDE THE FOLLOWING PROCEEDINGS IN THE REPORTER'S TRANSCRIPT PORTION OF THE RECORD ON APPEAL. (ATTACH ADDITIONAL PAGES IF NECESSARY):

| ADDITIONAL PROCEEDINGS REQUESTED | DATE | COURT REPORTER(S) |
|---|---|---|
| D. | | |
| E. | | |
| F. | | |
| G. | | |

**IMPORTANT NOTICE:** The court reporter who reported the proceedings for which a transcript is requested must be identified on this form to be effective. Additionally, it is important to note that the appellant may not be permitted to raise any issue on appeal relating to any proceedings in the case that are not specifically designated on this form for inclusion in the reporter's transcript. A general designation such as "all proceedings" is not sufficient. (See Rule 10(c)(2), A.R.App.P.)

**PART 3. MUST BE SIGNED IF THE APPEAL WILL HAVE A COURT REPORTER"S TRANSCRIPT:**

I CERTIFY THAT I HAVE DISTRIBUTED THIS FORM AS SET OUT BELOW. I ALSO CERTIFY **(1)** THAT I HAVE MADE SATISFACTORY FINANCIAL ARRANGEMENTS WITH EACH COURT REPORTER LISTED ABOVE FOR PREPARING HIS OR HER PORTION OF THE REPORTER'S TRANSCRIPT HEREIN REQUESTED; OR **(2)** THAT THE APPELLANT PROCEEDED AT TRIAL AS AN INDIGENT AND THAT THAT STATUS HAS NOT BEEN REVOKED; OR, **(3)** THAT THE APPELLANT HAS BEEN GIVEN PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS.

_David K Hogg_        _1-18-06_        _David K Hogg_
Signature                Date             Print or Type Name

**DISTRIBUTION:** Original filed with Clerk of Trial Court and copies mailed to:  **(1)** Clerk of the Court of Criminal Appeals,  **(2)** the District Attorney, **(3)** the Attorney General or the municipal prosecutor in lieu of the District Attorney and the Attorney General if the appeal is from a municipal conviction, and **(4)** to each Court Reporter who reported proceedings designated for inclusion in the reporter's transcript.

COURT REPORTER'S INDEX OF TRIAL EXHIBITS – ARAP RULE 11(e)
IN THE CIRCUIT COURT OF HOUSTON COUNTY
DOTHAN, ALABAMA – COUNTY SEAT

ASH-SHAKUR SHABAZZ,

                    Appellant,                    CCA CR-05-0706
VS.                                               Case No. CC-05-1132, 1133
                                                  State Criminal

STATE OF ALABAMA,

                    Appellee.

TO:    Judy Byrd, Clerk of the Circuit Court of Houston County.
FROM:  Andrea E. Martin, Official Court Reporter of the 20th
       Judicial Circuit of Alabama

## REPORTER'S INDEX TO EXHIBITS

     The following EXHIBITS were received by the Court Reporter in above Action and same
have been properly marked and identified.   Where capable said exhibit(s) have been
assembled herein (in flat file); where incapable of being assembled herein such
exhibit(s) placed in suitable separate container.   This index includes all exhibits
(herein assembled or separately housed – or – other, as indicated) and further indicates
those offered, admitted or not admitted into evidence, etc.

[NOTE:  (√) check appropriate]

| Party | Ex. No. | Description | Admit Yes | Admit No | Iden. Only | With-Drawn | Remarks |
|-------|---------|-------------|-----------|----------|------------|----------|---------|
| S | 1 | WAIVER OF RIGHTS | X | | | | |
| S | 2 | LETTER | | | | X | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

1) ABOVE INDEX RECEIVED & FILED _January 31_, 2005.   DATED THIS _31st_ DAY OF _Jan_, 2005.
2) EXHIBITS IN FILE AND/OR CONTAINER VERIFIED (except as noted)

/s/ _____          /s/ _____
   Clerk/Register or Authorized Assistant          Court Reporter-20th Judicial Circuit

# DOTHAN POLICE DEPARTMENT

NAME _Ash-Shakur Halim Shabazz_    PLACE _Dothan Polic Department_

CASE NUMBER _1-05-003356_    DATE/TIME _4-15-05    1700_

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish.

If you decide to answer questions now, without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

## WAIVER OF RIGHTS

I HAVE READ THIS STATEMENT OF MY RIGHTS AND I UNDERSTAND WHAT MY RIGHTS ARE. I AM WILLING TO MAKE A STATEMENT AND ANSWER QUESTIONS. I DO NOT WANT A LAWYER AT THIS TIME. I UNDERSTAND AND KNOW WHAT I AM DOING. NO PROMISES OR THREATS HAVE BEEN MADE TO ME AND NO PRESSURE OF ANY KIND HAS BEEN USED AGAINST ME TO GET ME TO MAKE A STATEMENT.

SIGNED _____

EDUCATION _G.E.D._

WITNESS _____

WITNESS _____

TIME _____

REFUSAL:

I have explained the right to remain silent and the right to counsel to _____, as well as all other rights to which he is entitled prior to questioning or interrogation by law enforcement officers. After having these rights explained, he refused to sign this statement.

SIGNED _____

WITNESS _____

TIME _____

54

| State of Alabama<br>Unified Judicial System<br>Form ARAP- 1C        8/91 | REPORTER'S TRANSCRIPT ORDER -- CRIMINAL<br>See Rules 10(c) and 11(b) of the<br>Alabama Rules of Appellate Procedure (A.R. App.P.) | Criminal Appeal Number<br>05.0706 |

**TO BE COMPLETED BY COUNSEL FOR THE APPELLANT OR BY THE APPELLANT IF NOT REPRESENTED AND FILED WITH THE WRITTEN NOTICE OF APPEAL OR FILED WITHIN 7 DAYS AFTER ORAL NOTICE OF APPEAL IS GIVEN.**

☒ CIRCUIT COURT   ☐ DISTRICT COURT   ☐ JUVENILE COURT OF ___Houston___ _____ COUNTY

___Ash-Shakur Shabazz_____ , Appellant

V.   ☒ STATE OF ALABAMA   ☐ MUNICIPALITY OF _____

| Case Number<br>CC-05-1132,1133 | Date of Judgment/Sentence/Order<br>12-15-05 |
| Date of Notice of Appeal<br>Oral: 12-15-05        Written:   12-19-05 | Indigent Status Granted:<br>☒ Yes      ☐ No |

**PART 1. TO BE SIGNED IF THE APPEAL WILL NOT HAVE A COURT REPORTER'S TRANSCRIPT:**
   I CERTIFY THAT NO REPORTER'S TRANSCRIPT IS EXPECTED AND THAT THE RECORD ON APPEAL SHALL CONSIST OF THE CLERK'S RECORD ONLY. IF THE APPEAL IS FROM DISTRICT COURT OR JUVENILE COURT, I ALSO CERTIFY (1) THAT A STIPULATION OF FACTS WILL BE INCLUDED IN THE CLERK'S RECORD AND THAT THE APPELLANT WAIVES HIS RIGHT TO A JURY TRIAL IF SO ENTITLED; OR (2) THAT THE PARTIES HAVE STIPULATED THAT ONLY QUESTIONS OF LAW ARE INVOLVED AND THAT THE QUESTIONS WILL BE CERTIFIED BY THE JUVENILE/DISTRICT COURT FOR INCLUSION IN THE CLERK'S RECORD (SEE RULE 28(A)(1), ALABAMA RULES OF JUVENILE PROCEDURE, AND §12-12-72, *CODE OF ALABAMA 1975*).

_____        _____        _____
Signature                              Date                                 Print or Type Name

**PART 2. DESIGNATION OF PROCEEDINGS TO BE TRANSCRIBED.** Request is hereby made to the court reporter(s) indicated below for a transcript of the following proceedings in the above referenced case (see Rule 10(c)(2), Alabama Rules of Appellate Procedure (A.R.App.P.)):

MARK PROCEEDINGS REQUESTED:                                                    COURT REPORTER(S)

A. ☒ **TRIAL PROCEEDINGS** - Although this designation will include the judgment and sentence        _____
proceedings, a transcript of the organization of the jury and arguments of counsel must        _____
be designated separately.

B. ☐ **ORGANIZATION OF THE JURY** - This designation will include voir dire examination and        _____
challenges for cause. Note that in noncapital cases the voir dire of the jury will not be        _____
recorded unless the trial judge so directs. (See Rule 19.4, ARCrP.)

C. ☐ **ARGUMENTS OF COUNSEL** - Note that in noncapital cases the arguments of counsel will        _____
not be recorded unless the trial judge so directs. (See Rule 19.4, ARCrP.)

IN ADDITION TO ANY PROCEEDINGS DESIGNATED ABOVE, SPECIAL REQUEST IS HEREBY MADE TO INCLUDE THE FOLLOWING PROCEEDINGS IN THE REPORTER'S TRANSCRIPT PORTION OF THE RECORD ON APPEAL. (ATTACH ADDITIONAL PAGES IF NECESSARY):

ADDITIONAL PROCEEDINGS REQUESTED                      DATE                   COURT REPORTER(S)

D. _____        _____        _____

E. _____        _____        _____

F. _____        _____        _____

G. _____        _____        _____

**IMPORTANT NOTICE:** The court reporter who reported the proceedings for which a transcript is requested must be identified on this form to be effective. Additionally, it is important to note that the appellant may not be permitted to raise any issue on appeal relating to any proceedings in the case that are not specifically designated on this form for inclusion in the reporter's transcript. A general designation such as "all proceedings" is not sufficient. (See Rule 10(c)(2), A.R.App.P.)

**PART 3. MUST BE SIGNED IF THE APPEAL WILL HAVE A COURT REPORTER"S TRANSCRIPT:**
   I CERTIFY THAT I HAVE DISTRIBUTED THIS FORM AS SET OUT BELOW. I ALSO CERTIFY (1) THAT I HAVE MADE SATISFACTORY FINANCIAL ARRANGEMENTS WITH EACH COURT REPORTER LISTED ABOVE FOR PREPARING HIS OR HER PORTION OF THE REPORTER'S TRANSCRIPT HEREIN REQUESTED; OR (2) THAT THE APPELLANT PROCEEDED AT TRIAL AS AN INDIGENT AND THAT STATUS HAS NOT BEEN REVOKED; OR, (3) THAT THE APPELLANT HAS BEEN GIVEN PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS.

_____        1-4-06        R. Martin Adams
Signature                              Date                         Print or Type Name

**DISTRIBUTION: Original filed with Clerk of Trial Court and copies mailed to:** (1) Clerk of the Court of Criminal Appeals, (2) the District Attorney, (3) the Attorney General or the municipal prosecutor in lieu of the District Attorney and the Attorney General if the appeal is from a municipal conviction, and (4) to each Court Reporter who reported proceedings designated for inclusion in the reporter's transcript.

1               IN THE STATE OF ALABAMA

2              FOR THE COUNTY OF HOUSTON

3            TWENTIETH JUDICIAL CIRCUIT

4                CRIMINAL DIVISION

5

6    STATE OF ALABAMA,

7          Plaintiff,

8    vs.                    Case No. CC-05-1132, 1133

9    ASH-SHAKUR HALIM SHABAZZ,

10         Defendant.
     ────────────────────────────

11

12

13      REPORTER'S OFFICIAL TRANSCRIPT ON APPEAL

14

15

16

17            Before the Honorable

18            Larry K. Anderson

19       at the Houston County Courthouse

20            Dothan, Alabama

21

22

23

24   Andrea E. Martin, RDR, CRR, CBC, CCP, CSR
            Official Court Reporter

25

```
 1                    EXAMINATION INDEX

 2      JURY TRIAL:   DECEMBER 15, 2005

 3      WITNESSES FOR THE STATE:

 4      CANDACE DOWNIE
             DIRECT BY MR. ATWELL              38
 5           CROSS BY MR. STEENSLAND           52
             REDIRECT BY MR. ATWELL            56
 6           RECROSS BY MR. STEENSLAND         59
             REDIRECT BY MR. ATWELL            61
 7           RECROSS BY MR. STEENSLAND         62

 8      JOHN CRAWFORD
             DIRECT BY MR. ATWELL              63
 9           CROSS BY MR. STEENSLAND           77
             REDIRECT BY MR. ATWELL            80
10           RECROSS BY MR. STEENSLAND         83

11      VERDICT OF THE JURY                    112

12      SENTENCING                             122

13      CERTIFICATE OF COMPLETION              127

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                        EXHIBIT INDEX

 2                                          MAR  /  ADM
          State's
 3          1       Waiver of Rights             68      85

 4          2       Letter                       80     W/D

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              IN THE STATE OF ALABAMA

2            FOR THE COUNTY OF HOUSTON

3           TWENTIETH JUDICIAL CIRCUIT

4               CRIMINAL DIVISION

5

6    STATE OF ALABAMA,

7            Plaintiff,

8    vs.                    Case No. CC-05-1132, 1133

9    ASH-SHAKUR HALIM SHABAZZ,

10           Defendant.

11   ————————————————————

12

13               *JURY TRIAL*

14            *DECEMBER 15, 2005*

15

16

17           Before the Honorable

18            Larry K. Anderson

19      at the Houston County Courthouse

20             Dothan, Alabama

21

22

23

24

25

```
 1                    A P P E A R A N C E S
 2      ON BEHALF OF THE STATE:
 3           MR. DAVID M. ATWELL
 4           Assistant District Attorney
 5           Dothan, Alabama
 6
 7      ON BEHALF OF THE DEFENDANT:
 8           MR. M. JOHN STEENSLAND, III
 9           MR. R. MARTIN ADAMS
10           MR. MARK JOHNSON
11           Attorneys at Law
12           Dothan, Alabama
13
14
15
16
17
18
19
20
21
22
23
24
25
```

<u>PROCEEDINGS</u>

1
2          THE COURT:  The Court calls the case of the
3     State of Alabama versus Ash-Shakur Halim
4     Shabazz.  Is the State ready?
5          MR. ATWELL:  State is ready, Your Honor.
6          THE COURT:  Defense ready, Mr. Steensland?
7          MR. STEENSLAND:  We're ready, Judge.
8          THE COURT:  Okay.  Good morning again,
9     ladies and gentlemen.  And again, let me
10    apologize to you for the delay.  This case was
11    not originally in the line-up because of some
12    witness problems.  But those witness problems
13    were resolved, and so we're ready to strike a
14    jury in this case.
15         Many of you have been in this courtroom
16    before.  And I think by now you know the
17    routine.  But for those of you who perhaps were
18    not here earlier, if there's any question that
19    is asked of you by the Court or later by the
20    attorneys that is sensitive in nature or might
21    tend to embarrass, just remember that the
22    question was asked and come forward at the
23    appropriate time.  It's not the intent of these
24    attorneys, nor the Court, to embarrass any of
25    you, nor will I allow any of you to be

1     embarrassed.

2          But from time to time, they may ask a

3     question that touches on a sensitive topic and

4     we understand that.  And when that happens, just

5     remember that it was asked and come forward at

6     the appropriate time.

7          Now, ladies and gentlemen, I'm going to ask

8     Ms. Brown to call the roll to make sure that all

9     jurors have returned.  As your name is called,

10    if you will, please stand and announce your

11    presence so that these attorneys might see you

12    and I might be able to hear you, particularly in

13    the back.

14          Ms. Brown.

15              (The roll was called.)

16          THE COURT:  Take 133 off your list.  We'll

17    go with the ones that we have.

18          Ladies and gentlemen, if all of you will,

19    please stand and raise your right hands as

20    Ms. Brown administers the oath.

21              (The jury venire was duly sworn.)

22          THE COURT:  Thank you.  Gentlemen, approach.

23              (The following proceedings were held at

24              the bench outside the hearing of the

25              jury venire:)

1        THE COURT:  I assume these are consolidated

2   for trial purposes.

3        MR. STEENSLAND:  I don't know if there was a

4   motion filed.

5        THE COURT:  I'm not aware of any motion.

6        MR. STEENSLAND:  I'm not opposed to it,

7   Judge.

8        THE COURT:  Not opposed to it.  Okay.  They

9   will be.

10            (The attorneys and the court reporter

11             left the bench and the proceedings

12             continued in open court.)

13        THE COURT:  Now, ladies and gentlemen, as I

14   said, I'm going to ask you a number of questions

15   that touch on your qualifications to serve with

16   respect to these two cases.  If there's any

17   question that is asked and it applies to you,

18   please raise your hand.

19        Before I ask any question to you, I want to

20   read to you the indictments in these two cases.

21   Please understand that the indictments are not

22   any evidence in the case.  It's merely the

23   formal means by which charges are brought

24   against the defendant and he is placed on trial

25   before you.

1      But I read these indictments to you because

2  I need to ask you two questions concerning these

3  indictments.  The first indictment is

4  CC-05-1133.  It reads as follows:

5          (The indictment was read.)

6      THE COURT:  That indictment charges the

7  defendant with sodomy in the second degree.

8      The other case is CC-05-1132.  The

9  indictment reads as follows:

10          (The indictment was read.)

11      THE COURT:  The two indictments charge the

12  defendant with rape in the second degree and

13  sodomy in the second degree.  The two questions

14  I need to ask you regarding these two

15  indictments are these:  First, did any of you

16  serve on the May 2005 term of the Houston County

17  Grand Jury that returned these indictments?

18  Does that apply to anyone?  If it does, please

19  raise your hand.

20      Okay.  I see no hands.

21      The second question I want to ask you is

22  whether or not any of you know anything about

23  the facts of these particular cases.  Now, I

24  recognize that the indictment contains

25  allegations which are sketchy at best.  But from

1   me reading those indictments to you or from

2   whatever source you may have gotten that

3   information, do any of you know anything about

4   the facts of these particular cases?  Does that

5   apply to anyone?  If it does, please raise your

6   hand.

7       Okay.  And I see no hands.

8       Ladies and gentlemen, are any of you related

9   by blood or by marriage, or do you know the

10  defendant, Ash-Shakur Halim Shabazz?

11      Mr. Shabazz, please stand so that the jurors

12  might see you.

13      Any of you related by blood or by marriage,

14  or do you know the defendant Shabazz?  Does that

15  apply to anyone?  Who is standing before you.

16      Thank you, Mr. Shabazz.

17      Anybody?  If so, please raise your hand.

18      Again, I see no hands.

19      It's anticipated that the following

20  witnesses will testify in this case.  And I need

21  to ask you the same questions regarding these

22  individuals.  Any of you related by blood or by

23  marriage, or do you know the alleged victim in

24  this case, Candace Michele Downie?  Does that

25  apply to anyone?  If it does, please raise your

```
 1        hand.

 2              What about John Crawford with the Dothan

 3        Police Department?  Any of you related by blood

 4        or by marriage, or do you know John Crawford?

 5              PROSPECTIVE JUROR:  I do.

 6              THE COURT:  There is a hand.  Yes, ma'am,

 7        your name?

 8              PROSPECTIVE JUROR:  Toni Jones.

 9              THE COURT:  Ms. Jones?

10              PROSPECTIVE JUROR:  I'm aware of he and his

11        wife.  And I know his in-laws and his son,

12        Cole.  I have a five-year-old daughter.

13              THE COURT:  Thank you, ma'am.  And I may

14        need to ask you some follow-up questions, but

15        let me go through this list first and do it all

16        at one time.  But thank you for answering.

17              Any of you related by blood or by marriage,

18        or do you know Wanda Sanders?  Does that apply

19        to anyone?

20              Brian Cherry with the Dothan Police.

21        Department, again same question?  Related by

22        blood or by marriage, or do you know Brian

23        Cherry?  Does that apply to anybody?

24              Now, you've got Candace Downie.  I assume

25        this is the mother, though, and not the
```

```
 1        daughter.
 2             MR. ATWELL:  Yes, sir.  Yes, sir.
 3             THE COURT:  They have or share the first
 4        same name.
 5             MR. ATWELL:  It's Candace Michele Downie.  I
 6        think they both share the same name.
 7             THE COURT:  Okay.  Any of you related by
 8        blood or by marriage, or do you know mother or
 9        daughter?  Does that apply to anyone?
10             Now, let me go back to you, Ms. Jones.
11        Forgive me.  I'm not trying to single you out or
12        pick on you, if you will, but I do need to ask
13        you some follow-up questions.
14             The fact that you know Officer Crawford, if
15        he were to testify in this case, could you put
16        aside that fact and base your decision solely on
17        the evidence and the law as I charge it and
18        render a fair and impartial verdict being
19        equally just to both sides?  Can you do that?
20             PROSPECTIVE JUROR:  Yes, sir.
21             THE COURT:  If he were to testify, would you
22        give his testimony more weight and credit or,
23        conversely, less weight and credit than you
24        would some other witness who might testify in
25        the case because you know him?
```

1      PROSPECTIVE JUROR:  It's been actually just

2  outside, just passing.  We don't socialize.  But

3  I mean our kids did have playtimes a couple of

4  years ago, but nothing any more frequent than

5  that.

6      THE COURT:  Okay.  So you could consider his

7  testimony along with all the other testimony in

8  the case without giving it undue weight and

9  credit or less weight and credit?

10     PROSPECTIVE JUROR:  Yes, sir.

11     THE COURT:  Thank you, ma'am.

12     Ladies and gentlemen, any of you expect to

13  be called as a witness in this case?  Does that

14  apply to anyone?  If it does, please raise your

15  hand.

16     Okay.  And I see no hands.

17     Any of you ever make any bond on behalf of

18  the defendant?  Does that apply to anyone?  If

19  it does, please let me know.

20     And again, I see no hands.

21     Do any of you have an interest in the

22  conviction or the acquittal of the defendant?

23  Does that apply to any juror?  If it does,

24  please raise your hand.

25     Have any of you made any promises or given

```
 1        any assurances that you will either convict or
 2        acquit the defendant in this case?  That is,
 3        have you told anybody that you intend to convict
 4        or acquit the defendant?  Does that apply to
 5        anybody?
 6             Do any of you have a fixed opinion as to the
 7        guilt or as to the innocence of the defendant
 8        which would bias your verdict in this case?
 9             As the defendant sits before you, he is
10        presumed to be innocent of these offenses.  Have
11        any of you made up your mind right now that he
12        is either guilty or not guilty of these
13        offenses?  Does that apply to anyone?  If it
14        does, please raise your hand.
15             Okay.  And I see no hands.
16             Ladies and gentlemen, representing the State
17        through its assistant district attorney,
18        Mr. David Atwell standing before you.  Any of
19        you related by blood or by marriage, or do you
20        know Mr. Atwell?  Does that apply to anyone?
21             Yes, ma'am, your name?
22             PROSPECTIVE JUROR:  Karen McCarroll.
23             THE COURT:  Ms. McCarroll?
24             PROSPECTIVE JUROR:  Yes.
25             THE COURT:  Anybody else?
```

1    Okay. Representing the defendant through

2 his attorney, Mr. John Steensland. Any of you

3 related by blood or by marriage, or do you know

4 Mr. Steensland? And I see some hands.

5    Ms. McCarroll.

6    Your name, sir?

7    PROSPECTIVE JUROR: Scott Kleback.

8    THE COURT: I'm sorry. Your last name?

9    PROSPECTIVE JUROR: Kleback.

10    MR. STEENSLAND: 124.

11    THE COURT: Thank you, Mr. Kleback.

12    PROSPECTIVE JUROR: Brandon Parsons.

13    THE COURT: Mr. Parsons, thank you.

14    Also with Mr. Steensland is Mark Johnson

15 standing before you. Any of you related by

16 blood or by marriage, or do you know

17 Mr. Johnson?

18    Mr. Land.

19    Now, he was in law school. I don't know. I

20 think he's out now. Are you?

21    MR. JOHNSON: I am, Judge.

22    THE COURT: Did you pass the bar?

23    MR. JOHNSON: I did, Judge.

24    THE COURT: Well, good. Congratulations.

25    MR. ATWELL: There's another hand, Judge.

1          THE COURT:  There is another hand.  Where?

2     I'm sorry, ma'am.

3          PROSPECTIVE JUROR:  Melissa Kingry.

4          THE COURT:  Melissa Kingry.  Thank you,

5     Ms. Kingry.

6          Now, let me go back to those who know these

7     attorneys and ask you all basically the same

8     questions.  They are not going to be testifying,

9     the lawyers will not be.

10          But the fact that you know these attorneys,

11     would that in any way influence your judgment

12     for or against either side?

13          Let's see.  Ms. McCarroll?

14          PROSPECTIVE JUROR:  No.

15          THE COURT:  Mr. Kleback, where are you?

16     There you are.  Is that going to affect your

17     judgment --

18          PROSPECTIVE JUROR:  No, sir.

19          THE COURT:  -- for one side or the other?

20          Okay.  Mr. Parsons?

21          PROSPECTIVE JUROR:  No, sir.

22          THE COURT:  Mr. Land?

23          PROSPECTIVE JUROR:  No, sir.

24          THE COURT:  And Ms. Kingry?  Where are you,

25     Ms. Kingry?

1        PROSPECTIVE JUROR:  No.

2        THE COURT:  Then I take it you all could put

3     aside the fact that you know these attorneys and

4     base your decisions solely on the evidence and

5     the law as I charge it and be fair to both

6     sides.

7        Can you do that, Ms. McCarroll?

8        PROSPECTIVE JUROR:  Yes.

9        THE COURT:  Mr. Kleback?

10       PROSPECTIVE JUROR:  Yes, sir.

11       THE COURT:  Mr. Parsons?

12       PROSPECTIVE JUROR:  Yes, sir.

13       THE COURT:  Mr. Land?

14       PROSPECTIVE JUROR:  Yes, sir.

15       THE COURT:  And Ms. Kingry?

16       PROSPECTIVE JUROR:  Yes.

17       THE COURT:  Thank you all.

18       Let's see.  Ladies and gentlemen, one last

19    question.  We all have religious convictions or

20    moral convictions.  And I want to ask you:  Do

21    any of you have a religious conviction or a

22    moral conviction which would prohibit you from

23    sitting in judgment on your fellow man?  Does

24    that apply to anyone?  If it does, please raise

25    your hand.

1        Okay.  I see no hands.

2        Ladies and gentlemen, those are all the

3   questions that I have of you presently.  I'll

4   now turn to Mr. Atwell for the State.

5        Mr. Atwell, any questions for the State?

6        MR. ATWELL:  Yes, sir.  Thank you.

7             (Voir dire examination was conducted by

8             Mr. Atwell on behalf of the State.)

9        THE COURT:  Thank you, Mr. Atwell.

10       Mr. Steensland, any questions for the

11   defense?

12       MR. STEENSLAND:  Thank you, Judge.

13            (Voir dire examination was conducted by

14            Mr. Steensland on behalf of the

15            defendant.)

16       THE COURT:  Thank you, Mr. Steensland.

17       Ladies and gentlemen, I indicated I'd give

18   you an opportunity to come forward with any

19   question that you deemed private.  If you need

20   to see me, please come forward now.  Anybody?

21            (A prospective juror approached the

22            bench and the following proceedings

23            were held outside the hearing of the

24            jury venire:)

25       THE COURT:  Good morning.  Your name, sir?

| | |
|---|---|
| 1 | PROSPECTIVE JUROR:  Richard McKinley. |
| 2 | THE COURT:  Yes, sir. |
| 3 | PROSPECTIVE JUROR:  And we just finished up |
| 4 | a case with the D.A.'s office against my |
| 5 | brother-in-law on sexual abuse on two of my |
| 6 | daughters.  Last week we finally sent him off. |
| 7 | THE COURT:  Okay.  Would that affect your |
| 8 | judgment in this case? |
| 9 | PROSPECTIVE JUROR:  I believe it would, sir. |
| 10 | THE COURT:  Any questions, Mr. Atwell? |
| 11 | MR. ATWELL:  Is there any way that you could |
| 12 | listen to this case and set aside all that and |
| 13 | just listen to it and base it on the facts as |
| 14 | you hear it from the witness stand? |
| 15 | PROSPECTIVE JUROR:  I don't think I could. |
| 16 | THE COURT:  Mr. Steensland, anything? |
| 17 | MR. STEENSLAND:  No. |
| 18 | THE COURT:  Thank you, Mr. McKinley. |
| 19 | MR. ATWELL:  Thank you. |
| 20 | (A prospective juror approached the |
| 21 | bench and the following proceedings |
| 22 | were held outside the hearing of the |
| 23 | jury venire:) |
| 24 | THE COURT:  Good morning. |
| 25 | PROSPECTIVE JUROR:  How are you all? |

1          THE COURT: Yes, sir, your name?

2          PROSPECTIVE JUROR: Sir, Walter Kinsey.

3          THE COURT: Walter?

4          PROSPECTIVE JUROR: Kinsey.

5          THE COURT: I've met you before, I think,

6    Mr. Kinsey.

7          PROSPECTIVE JUROR: Oh, yeah.

8          THE COURT: I think so. The name is

9    familiar and you look familiar. I'm sorry. Go

10   ahead.

11         PROSPECTIVE JUROR: I was arrested for

12   assault, but I never was indicted or anything

13   like that.

14         THE COURT: Okay.

15         PROSPECTIVE JUROR: It was dismissed.

16         THE COURT: It was dismissed?

17         PROSPECTIVE JUROR: Oh, yeah.

18         THE COURT: Would that affect your judgment

19   in this case?

20         PROSPECTIVE JUROR: Oh, no, no.

21         THE COURT: Could you put that aside and

22   base your decision solely on the evidence and

23   the law as I charge it and be fair to both

24   sides?

25         PROSPECTIVE JUROR: Yes, sir.

1          THE COURT:  Mr. Atwell, any questions of

2     Mr. Kinsey?

3          MR. ATWELL:  No, sir.

4          THE COURT:  Mr. Steensland?

5          MR. STEENSLAND:  No, Judge.

6          THE COURT:  Thank you, Mr. Kinsey.

7     Appreciate it.

8               (A prospective juror approached the

9               bench and the following proceedings

10              were held outside the hearing of the

11              jury venire:)

12         THE COURT:  Mr. Meeker.

13         PROSPECTIVE JUROR:  Hi.  I just remembered

14    that I barely know Mr. Johnson.  I don't know

15    him, really.  But we met one time at a Leisure

16    Services matter, but that was all.

17         THE COURT:  Would that affect your judgment

18    in this case?

19         PROSPECTIVE JUROR:  No.

20         THE COURT:  You could put that aside and

21    base your decision solely on the evidence and

22    the law as I charge it?

23         PROSPECTIVE JUROR:  Yeah, I just wanted to

24    be completely truthful.  It took me a moment to

25    make the connection.

```
 1          THE COURT:  Any questions, Mr. Atwell?
 2       MR. ATWELL:  No, sir.
 3          THE COURT:  Any questions, Mr. Steensland?
 4       MR. STEENSLAND:  No, thank you.
 5              (A prospective juror approached the
 6              bench and the following proceedings
 7              were held outside the hearing of the
 8              jury venire:)
 9          THE COURT:  Good morning.
10       PROSPECTIVE JUROR:  Morning.
11          THE COURT:  Yes, ma'am, your name?
12       PROSPECTIVE JUROR:  Lamartha Kelley.
13          THE COURT:  Yes, ma'am, Ms. Kelley.
14       PROSPECTIVE JUROR:  I was raped as a young
15    child.
16          THE COURT:  I'm sorry.  Ms. Kelley, would
17    that affect your judgment in this case?
18       PROSPECTIVE JUROR:  It might.  It might.
19    Because I would believe the female, that it
20    could have happened.
21          THE COURT:  Do you think you could put all
22    that aside and base your decision solely on the
23    evidence and the law as I charge it and be fair
24    to both sides?
25       PROSPECTIVE JUROR:  I don't know.  I don't
```

```
 1          know.
 2                 THE COURT:  Okay.  Any questions,
 3          Mr. Atwell?
 4                 MR. ATWELL:  No, sir.
 5                 THE COURT:  Mr. Steensland?
 6                 MR. STEENSLAND:  No, Judge.
 7                 THE COURT:  Thank you so much.  And again,
 8          I'm sorry.
 9                     (A prospective juror approached the
10                      bench and the following proceedings
11                      were held outside the hearing of the
12                      jury venire:)
13                 THE COURT:  Good morning.  Yes, sir, your
14          name, sir?
15                 PROSPECTIVE JUROR:  LaDell Newton.
16                 THE COURT:  Mr. Newton, yes, sir.
17                 PROSPECTIVE JUROR:  I had a stress-related
18          heart attack.  And I don't know if I need to be
19          under this kind of pressure or not.
20                 THE COURT:  You think that it would --
21                 PROSPECTIVE JUROR:  I just don't know.
22                 THE COURT:  -- be a hardship for you?
23                 PROSPECTIVE JUROR:  And I've had two
24          flare-ups since that time.  So I just don't know
25          if I need to be put under that kind of stress or
```

```
 1          not.
 2                  THE COURT:  We would not want that to
 3          happen.  I'm going to go ahead and release you
 4          then, Mr. Newton.  If you will, you can just
 5          turn your button in and you'll be free to go.
 6                          (The prospective juror left the bench
 7                          and the proceedings continued outside
 8                          the hearing of the jury venire.)
 9                  THE COURT:  Any strikes for cause from the
10          State?
11                  MR. ATWELL:  No, sir.
12                  THE COURT:  From the defense?
13                  MR. STEENSLAND:  Yes, Judge.  Number 140 and
14          number 117.
15                  THE COURT:  Give me the names.  I don't have
16          the numbers.
17                  MR. STEENSLAND:  140 would be Ms. Virginia
18          McKinney.
19                  THE COURT:  Who.
20                  MR. STEENSLAND:  I'm sorry.  Not 140.  I'm
21          sorry, Richard McKinley.
22                  MR. ATWELL:  142.
23                  MR. STEENSLAND:  142, I'm sorry, Judge.
24                  THE COURT:  I will grant that.  The other
25          one?
```

1          MR. STEENSLAND:  117.

2          THE COURT:  Who was that?

3          MR. STEENSLAND:  Ms. Kelley who said she was

4     raped.

5          THE COURT:  Do you want to say anything

6     about that, Mr. Atwell?

7          MR. ATWELL:  Judge, she never said

8     unequivocally that she couldn't be fair.  She

9     just said it would be difficult.

10         THE COURT:  She said she would believe the

11    victim, the female in the case.

12         MR. STEENSLAND:  Uh-huh.

13         THE COURT:  I will grant that one as well.

14         MR. STEENSLAND:  That's it, Judge.

15         THE COURT:  Okay.

16         MR. STEENSLAND:  117.

17         THE COURT:  Twenty minutes.

18         MR. STEENSLAND:  Yes, Judge.  That's fine.

19              (The attorneys and the court reporter

20              left the bench and the proceedings

21              continued in open court.)

22         THE COURT:  Ladies and gentlemen, as you

23    know, the process which is about to begin is

24    that of striking a jury.  The attorneys have not

25    longer than 20 minutes to strike a jury in this

1   case.

2       While they do that, you are welcome to stay

3   in the courtroom or go out into the hall or even

4   outside the building.  I only ask two things of

5   you, however:  One, that you not discuss the

6   case with anyone or allow anyone to discuss it

7   with you.  In fact, if that happens, bring that

8   to my attention immediately.  And two, that you

9   return to this courtroom at 11:05, and we'll

10  have a jury selected in this case.  Thank you so

11  much.

12          (A recess was had for the purpose of

13           striking the jury.)

14      THE COURT:  Ladies and gentlemen, it's

15  11:05.  We have a jury selected in the case of

16  the State of Alabama versus Ash-Shakur Halim

17  Shabazz.

18      As your name is called, if you will, please

19  come forward and have a seat in the jury box to

20  my left.

21          (The jury was seated in the jury box.)

22      THE COURT:  Gentlemen, approach.

23          (The following proceedings were held at

24           the bench outside the hearing of the

25           jury:)

1    THE COURT:  Any motions from either side?

2    MR. ATWELL:  No, sir.

3    MR. STEENSLAND:  No, Judge.

4        (The attorneys and the court reporter

5        left the bench and the proceedings

6        continued in open court.)

7    THE COURT:  Go ahead and swear the jurors

8    in.  If you all will, please stand and raise

9    your right hand.

10        (The jury was duly sworn.)

11    THE COURT:  Ladies and gentlemen, for those

12    of you not selected for the trial of this case,

13    I know it's been long in coming, but I have been

14    informed this will conclude your jury service.

15    We have a small check for you, the operative

16    word there is "small."

17        I know that it doesn't compensate you for

18    the time and trouble this week, but it's all

19    that the State will allow us to pay you.  So

20    please accept it with our gratitude and please

21    know that we thank you for being here and

22    helping us dispose of these cases.

23        So with that, have a merry Christmas.  And

24    you are free to go.  Go downstairs to the Jury

25    Assembly Room and someone will bring your checks

29

1    to you.  Thank you.

2         Ladies and gentlemen, for you unfortunate

3    souls that were selected for the trial of this

4    case, somebody has to be the last jury on the

5    last case of the last day; and you are it.  But

6    take heart, this case will not last longer than

7    today, so this too will conclude your jury

8    service, if that is any comfort.  And I'm sure

9    it's probably not.

10        Before we begin, I want to take up three

11   matters with you:  The first I call housekeeping

12   instructions; the second, to give you a

13   thumbnail sketch of how this trial will proceed;

14   and then the third matter is to discuss with you

15   briefly your duties and responsibilities as

16   jurors or fact-finders in this case.

17        Ladies and gentlemen, it is my practice to

18   take a recess approximately every hour and a

19   half.  Now, that's not for my benefit, but for

20   yours.  And I say that for this reason.  In the

21   event that we go a little longer than an hour

22   and a half, which we are apt to do sometimes, or

23   in the event an hour and a half is too long and

24   you need to stop, all you need do is raise your

25   hand and I'll stop immediately.  So just keep

1    that in mind as we go through the trial of this

2    case.

3        And while we're on the subject of time, as I

4    indicated from discussions with the attorneys,

5    we should be through with this case probably mid

6    afternoon to late afternoon and should finish

7    the case today.  However, we'll devote whatever

8    time is necessary to try the case properly.

9        But for your own planning purposes, I think

10   we will be through sometime before 5 o'clock.

11       Now, ladies and gentlemen, you've heard me

12   say not to discuss the case among yourselves or

13   allow others to discuss it with you or even

14   remain within the hearing and presence of anyone

15   discussing it.  There are good reasons for that

16   instruction, and those reasons are grounded in

17   the law and in common sense.  And I think if we

18   all thought about it for a moment, we'd probably

19   come to the same conclusion.

20       You see, the reason I say not to discuss the

21   case among yourselves is the law says it's only

22   after you have heard from both sides and I have

23   charged you with the law and released the

24   alternate, only then would you be able to go

25   back and discuss this case as a deliberative

1    body, only then.

2        As to discussing it or allowing others to

3    discuss it with you, well, there's a good reason

4    for that, too.  You see, as a jury, you're going

5    to decide this case based on legal evidence

6    before you and not something you might hear out

7    in the hall or out in the parking lot.  If that

8    does happen, bring that to my attention

9    immediately.

10        Now, ladies and gentlemen, there are 13 of

11    you.  Only 12 of you will decide the case.  It

12    is my practice to keep an alternate in any jury

13    trial, whether it's civil or criminal.  In the

14    event that one of your number becomes ill or a

15    family emergency takes one of you away from us,

16    then the alternate would stand in the place of

17    the missing juror.  And that's the reason there

18    are 13.

19        I want to say one last thing to you under

20    these housekeeping instructions or chores, if

21    you will.  Inevitably, in any jury trial, there

22    are some times when the attorneys must take up

23    certain matters with the Court and the Court

24    alone.  We keep those to minimum and the time

25    that we spend on those at a minimum as well, but

1   it will happen and I want you to be forewarned

2   that it will happen.  When that does happen,

3   you'll have to go back to the jury deliberation

4   room while the Court addresses those matters.

5       Now, ladies and gentlemen, let me move on

6   and address the second topic, and that is to

7   give you a *Reader's Digest* version, if you will,

8   of how this trial will proceed.

9       In a moment when I am through, the attorneys

10  are going to make their opening statements to

11  you.  The State will go first and will be

12  followed by the defense.

13      After the opening statements, we'll begin

14  with the presentation of evidence.  And again,

15  the State will go first.

16      And there's a good reason for the State

17  going first.  It's because the State has the

18  burden of proof in this case, as in every

19  criminal case, which is beyond a reasonable

20  doubt.

21      After the State presents its evidence and

22  rests, we'll then turn to the defense for any

23  evidence that he desires to present.  And once

24  he presents his evidence and rests, then that

25  will close the evidence in the case.

33

After all of that, the attorneys will make their closing arguments to you. Again, the State would go first and would be followed by the defense. And then the State would get one last opportunity to address you. And again, that's because the State carries the burden of proof.

After all of that, I will then charge you with the law that is applicable in these cases, release the alternate and submit the case to you for your deliberation.

Now, ladies and gentlemen, that's basically how the trial is going to proceed.

The last matter which I want to address briefly is to discuss with you your duties and responsibilities as jurors or fact-finders in this case.

I talked about opening statements and closing arguments by the attorneys. Now, these are designed or intended to help you in understanding the evidence and in applying the law. But keep in mind that what they say is not evidence and what they say is not the law. You would take your instructions concerning the law from the Court and the Court alone. And, of

1  course, it would be your duty to follow those

2  instructions as given to you by the Court.

3      It is your duty as jurors to determine the

4  facts and to determine the facts from the

5  testimony and evidence and any reasonable

6  conclusions arising from this evidence.  And in

7  so doing, you must not engage in any guesswork

8  or speculation.

9      In determining what the true facts are from

10  the evidence, you may take into consideration

11  any natural interest or bias a witness may have

12  as a result of any connection with the case.

13  You may take into consideration any natural

14  interest or bias a witness may have shown while

15  testifying.

16      You may take into consideration the demeanor

17  of any witness as to whether the witness has

18  apparently testified frankly or evasively.  You

19  may take into consideration any matter which you

20  would in your own everyday affairs in passing

21  upon the truthfulness and the accuracy of the

22  testimony in this case.

23      Weigh the testimony in the light of your own

24  common observation and experience and reach a

25  verdict that will be based upon the truth as you

35

1    determine it from all of the evidence.

2         Now, we talked about what's not evidence, so

3    let's take a moment and just talk about what is

4    evidence. Of course, evidence would be

5    basically any person who appears live before you

6    and testifies.

7         But it also includes exhibits, which would

8    be a document, an object, a photograph,

9    something of that nature that comes into

10   evidence.

11        Now, the admission of evidence in court is

12   governed by rules of law. And from time to

13   time, it may be the duties of the attorneys to

14   make objections to certain evidence. And it is

15   my duty to rule upon these objections as to

16   whether you can consider this evidence. You

17   must not concern yourself with the attorneys'

18   objections or my reasons for these rulings. You

19   must not consider testimony to which an

20   objection has been sustained or which has been

21   ordered stricken.

22        No statement, ruling or remark which I may

23   make during the course of this trial is intended

24   to indicate my opinion as to what the facts

25   are.  I have no opinion as to what the facts

36

1    are.

2         As I said, you alone determine the facts.

3    In this determination, you alone must decide

4    upon the believability of the evidence and its

5    importance and value.

6         In considering the importance and value of

7    the testimony of any witness, you may take into

8    consideration the appearance, attitude and

9    behavior of the witness, the relation of the

10   witness to any parties in the case, the interest

11   of the witness in the outcome of the case, the

12   inclination of the witness to speak truthfully

13   or not, the probability or improbability of the

14   witness's statements and all other facts and

15   circumstances in evidence.

16        Therefore, you may give the testimony of any

17   witness just such importance and value and

18   weight that you deem it entitled to.

19        You must not be influenced to any degree by

20   any personal feelings for or sympathy against or

21   prejudice against any party in this case.  Each

22   party is entitled to the same fair and impartial

23   consideration.

24        As I said earlier or at least alluded to,

25   you shall keep an open mind and you shall not

1   decide any issue in this case until after all

2   the evidence has been presented and I have

3   charged you with the law, released the alternate

4   and submitted the case to you for your

5   deliberation.

6       Now, ladies and gentlemen, that's what I

7   wanted to take up with you before we begin.

8   Having done so, I will now turn to Mr. Atwell

9   for his opening statement.

10      Mr. Atwell, you may make your opening

11  statement to the jury.

12      MR. ATWELL:  Thank you, Your Honor.

13          (An opening statement was given by

14          Mr. Atwell on behalf of the State.)

15      THE COURT:  Thank you, Mr. Atwell.

16      Mr. Steensland, you may make your opening

17  statement to the jury.

18      MR. STEENSLAND:  Thank you, Judge.

19          (An opening statement was given by

20          Mr. Steensland on behalf of the

21          defendant.)

22      THE COURT:  Thank you, Mr. Steensland.

23      Mr. Atwell, call your first witness.

24      MR. ATWELL:  Thank you, Your Honor.

25      THE COURT:  Are you Ms. Downie?

38

1      THE WITNESS: Yes.

2      THE COURT: Ms. Downie, if you will have a

3    seat beside me. There are a couple of steps

4    there. Be careful as you take your seat. Speak

5    into the microphone, please.

6                    CANDACE DOWNIE

7    having been first duly sworn, was examined and

8    testified as follows:

9                  DIRECT EXAMINATION

10   BY MR. ATWELL:

11   Q.   Candace, I need you to introduce yourself to the

12        jury, please.

13   A.   My name is Candace Downie.

14   Q.   Where do you live, Candace?

15   A.   205 Pearl Street.

16   Q.   How long have you lived there?

17   A.   Eight years.

18   Q.   Okay. And that's where you lived back in April,

19        November of 2004?

20   A.   Yes, sir.

21   Q.   Is that located here in Houston County?

22   A.   Yes, sir.

23   Q.   All right. And who over the last couple of

24        years have you lived there with?

25   A.   My mother.

1  Q.   What's her name?

2  A.   Michele Downie.

3  Q.   Is it Candace Michele Downie, too?

4  A.   Yes.

5  Q.   But she goes by Michele?

6  A.   Yes, sir.

7  Q.   All right.  Anybody else live there now?

8  A.   Just me and my baby.

9  Q.   All right.  What's your baby's name?

10  A.   Zaire.

11  Q.   What's his full name?

12  A.   Zaire Bashir Shabazz.

13  Q.   When was Zaire born?

14  A.   March 30, 2005.

15  Q.   All right.  And back in 2004, in the early part

16       of 2005, who else lived in your home?

17  A.   Mr. Ash-Shakur Shabazz.

18  Q.   How did you meet Ash Shabazz?  How did you come

19       to know him?

20  A.   My mother.  My mother.

21  Q.   How did -- what's the significance of that?

22       Your mother knew him?

23  A.   Yes.

24  Q.   Do you know where she met him at?

25  A.   No.

```
 1   Q.   All right.  But at some point, he came to live
 2        in your home?
 3   A.   Yes, sir.
 4   Q.   And what was -- do you know why he moved into
 5        your home?
 6   A.   Because he was going to marry my mother.
 7   Q.   He was going to marry your mother?
 8   A.   Yes.
 9   Q.   Do you remember when it was that he moved into
10        your home?
11   A.   November 2003.
12   Q.   And is it Mr. Shabazz here today?  Do you see
13        him here?
14   A.   Yes.
15   Q.   Where would he be?
16   A.   Sitting on the right side next to his attorney.
17   Q.   This fellow here in the white shirt?
18   A.   Yes.
19   Q.   Okay.  And that's the guy that moved into your
20        home in 2003 --
21   A.   Yes.
22   Q.   -- to marry your mother?
23   A.   Yes.
24   Q.   I guess you met him before he actually moved in,
25        right?
```

1    A.    No.

2    Q.    No?  He moved in and that's when you met him?

3    A.    Yes, sir.

4    Q.    All right.  And was he good to you when he first

5          moved in?

6    A.    Yes, sir.

7    Q.    Any problems?

8    A.    No, sir.

9    Q.    All right.  And how old were you when he moved

10         in?

11   A.    Fourteen.

12   Q.    Do you know how old he was?

13   A.    Forty-two, I think.

14   Q.    Forty-two?

15   A.    I think.

16   Q.    And did -- how was it in the home?  I mean, did

17         he act like a dad?  Or was he like a husband to

18         your mother?

19   A.    He was like a dad to me.

20   Q.    All right.  What about with your mom?

21   A.    A husband.

22   Q.    All right.  They were like husband and wife and

23         you were the daughter?

24   A.    Yes, sir.

25   Q.    Did you have a brother or anything living there

```
 1              then?

 2    A.    No.

 3    Q.    No.  Just you?

 4    A.    Yes, sir.

 5    Q.    Okay.  So how long did he actually live there?

 6    A.    A year before he was arrested, I think.

 7    Q.    But if he moved in in 2003, was he still there

 8          after Zaire was born?

 9    A.    Yes, sir.

10    Q.    Okay.  So probably more than a year.

11    A.    Yes, sir.

12    Q.    All right.  At some point did he start acting

13          like more than just a father with you?

14    A.    Yes.

15    Q.    Okay.  How long had he been there when this

16          started?

17    A.    About 10 months, I think.

18    Q.    And what, if anything, happened after about 10

19          months?

20    A.    We started having sex.

21    Q.    How did this come about?

22    A.    He was drinking.  And we started talking and one

23          thing led to another.

24    Q.    And what happened ultimately?

25    A.    We had sex.
```



| | | |
|---|---|---|
| 1 | Q. | Okay. Now, I need you to tell this to the |
| 2 | | jury. When you say that you had sex, I need you |
| 3 | | to tell in your own words what that means. What |
| 4 | | did he actually do? |
| 5 | A. | We had sexual intercourse. |
| 6 | Q. | Okay. Was this by him placing his penis in your |
| 7 | | vagina? |
| 8 | A. | Yes. |
| 9 | Q. | All right. And this was about 10 months after |
| 10 | | he came to live with you? |
| 11 | A. | Yes, sir. |
| 12 | Q. | And this took place in this home that you |
| 13 | | described. What did you say the address was? |
| 14 | A. | 205 Pearl Street. |
| 15 | Q. | And that's here in Houston County? |
| 16 | A. | Yes. |
| 17 | Q. | Where was your mother at when y'all had sex? |
| 18 | A. | At work. |
| 19 | Q. | Where did she work? |
| 20 | A. | Night Pro Alabama. |
| 21 | Q. | Night Pro? |
| 22 | A. | Yes, sir. |
| 23 | Q. | And did she work in the daytime or the |
| 24 | | nighttime? |
| 25 | A. | Daytime. |

44

1    Q.   And did Shabazz -- did he work?

2    A.   No, sir.

3    Q.   He just stayed home with you in the day?

4    A.   Yes, sir.

5    Q.   And he was drinking and y'all had sex the first

6        time?

7    A.   Yes, sir.

8    Q.   Did it end there?

9    A.   No, sir.

10    Q.   Did he ever use any type of condom or anything

11        when he had sex with you?

12    A.   Yes, sir.

13    Q.   Did he this first time?

14    A.   Yes, sir.

15    Q.   All right.  How long before y'all had sex again?

16    A.   Three weeks after that.

17    Q.   Three weeks?

18    A.   (Nods head affirmatively.)

19    Q.   What time of the day or night was this time?

20    A.   When my mom was at work.

21    Q.   So the daytime again?

22    A.   Yes, sir.

23    Q.   All right.  And was he drinking again?

24    A.   No, sir.

25    Q.   This time he was sober.  Well, I'm just

```
1              assuming.  You said drink.  Was he drunk the
2              first time or just drinking?
3      A.      Drinking.
4      Q.      But he wasn't drunk?
5      A.      (Shakes head negatively.)
6      Q.      So the second time he wasn't even drinking when
7              y'all had sex?
8      A.      Yes, sir.
9      Q.      All right.  And this again occurred in the home?
10     A.      Yes, sir.
11     Q.      Was he wearing a condom this time?
12     A.      Yes, sir.
13     Q.      All right.  So did y'all have sex ever again?
14     A.      Yes.
15     Q.      How much longer before y'all have sex again?
16     A.      Two weeks.
17     Q.      Two weeks.  And when did this occur?
18     A.      At home.
19     Q.      Again, in the daytime?
20     A.      Yes, sir.
21     Q.      Mom is at work?
22     A.      Yes, sir.
23     Q.      Was he drinking this time?
24     A.      No, sir.
25     Q.      No.  Did he wear a condom this time?
```

1  A.  Yes, sir.

2  Q.  Was there ever a time you had sex with him that

3      he didn't wear a condom?

4  A.  Yes.

5  Q.  When was that?

6  A.  Two weeks after that.

7  Q.  Okay.  Prior to becoming pregnant, how many

8      times would you say you had sex with Shabazz?

9  A.  Five.

10  Q.  Five times.  Okay.  And did you ever tell your

11      mom about this at any time?

12  A.  No, sir.

13  Q.  She was never home when it happened?

14  A.  No, sir.

15  Q.  Was it always in the home?

16  A.  Yes, sir.

17  Q.  And when did you discover that you were pregnant?

18  A.  When I was two months pregnant.

19  Q.  And then you said Zaire was born March 31st?

20  A.  Yes, sir, March 30th.

21  Q.  March 30th.  I'm sorry.  And you named him Zaire

22      Shabazz?

23  A.  Yes.

24  Q.  Why did you do that?

25  A.  I really don't know.

1   Q.   I mean, was there any doubt in your mind who the

2        father was?

3   A.   No, sir.

4   Q.   How do you come to that conclusion?

5   A.   Because that was the only person I had sex with.

6   Q.   All right.  Now, sometime after you gave birth

7        to Zaire, it's alleged that there was some other

8        type of sex acts going on with Mr. Shabazz,

9        correct?

10  A.   Yes, sir.

11  Q.   What was that about?

12  A.   Oral sex.

13  Q.   By oral sex, what do we mean here?  What did you

14       do with him?

15  A.   By sucking his personal part.

16  Q.   Yes.  That's what I'm getting at.  Did this

17       occur before or after Zaire was born?

18  A.   After.

19  Q.   All right.  Was there some particular reason why

20       the sexual intercourse stopped and you started

21       with this oral sex?

22  A.   Because I was bleeding.

23  Q.   So you were having some problems from the birth?

24  A.   Yes, sir.

25  Q.   All right.  So how many times did you have oral

```
1              sex with him?
2       A.     Twice.
3       Q.     Twice.  Was he still in the home after Zaire was
4              born?
5       A.     Yes.
6       Q.     And at what point did he leave the home?
7       A.     April 15th.
8       Q.     All right.  That would have been 15, 16 days
9              after the birth of your son?
10      A.     Yes, sir.
11      Q.     And that's about the time the police became
12             involved, correct?
13      A.     Yes, sir.
14      Q.     And Candace, now, you weren't really happy by
15             the fact that Shabazz got arrested for this,
16             correct?
17      A.     Correct.
18      Q.     Tell the jury why.
19      A.     Because I was feeling special because I was
20             falling in love with him.
21      Q.     You thought you were in love with him?
22      A.     Yes, sir.
23      Q.     That's carried on throughout this whole ordeal,
24             has it not?
25      A.     Yes.
```

1    Q.   Even today, you weren't real excited about

2          coming to court, were you?

3    A.   No.

4    Q.   That, again, was because you were in love with

5          Shabazz and didn't want to do this, right?

6    A.   Yes, sir.

7    Q.   And the whole time he was there, he was there

8          because he was your mother's boyfriend?

9    A.   Yes, sir.

10   Q.   Did he ever promise you anything or tell you

11        that he loved you or anything like that during

12        this time y'all were having sex?

13   A.   Yes.

14   Q.   And has he continued to do that since his arrest?

15   A.   Yes.

16   Q.   Did you ever try to protect him in any way

17        during the course of this ordeal?

18   A.   No, sir.

19   Q.   Did you ever cover up the fact that he was the

20        father of your child?

21   A.   Yes.

22   Q.   Why did you do that?

23   A.   Because I didn't want anybody to know.

24   Q.   Now that he's here and he's on trial for this

25        case, are you coming in here and telling the

1          jury the truth?

2    A.    Yes, sir.

3                MR. ATWELL:  That's all I have right now.

4                THE COURT:  Ma'am, do you need a tissue?

5          Thank you.  Cross?

6                MR. STEENSLAND:  May I approach, Judge?

7                THE COURT:  Yes.

8                     (The following proceedings were held at

9                     the bench outside the hearing of the

10                    jury:)

11               MR. STEENSLAND:  Judge, we are getting close

12         to lunch.  Is there any way I can delay cross

13         until 1 o'clock and start back then?  I want to

14         talk to my client briefly before starting

15         cross.  It won't take very long, Judge, but --

16         the cross won't.  But I would like a little

17         brief recess before then.

18               THE COURT:  Okay.

19                    (The attorneys and the court reporter

20                    left the bench and the proceedings

21                    continued in open court.)

22               THE COURT:  Ladies and gentlemen,

23         Mr. Steensland, has requested a brief recess.

24         And if I grant that brief recess, that's going

25         to take us up to close to lunch.  And I will

1    grant the recess.

2        But because of the hour, I'll just go ahead

3    and send you to lunch.  And we'll return at

4    1 o'clock.  When you return, return not to the

5    courtroom, but to the jury deliberation room,

6    which is this hall -- back hall, the last room

7    on your right in this back hall.

8        So just have a pleasant lunch and I'll see

9    you at 1 o'clock.

10                (The jury exited the courtroom.)

11        THE COURT:  You have your recess,

12    Mr. Steensland.

13        MR. STEENSLAND:  Thank you, Judge.

14                (A lunch recess was taken.)

15                (Mr. Johnson exited the proceedings and

16                Mr. Adams entered.)

17        THE COURT:   We're back within the hearing

18    and presence of the jury.  All 13 jurors have

19    returned.  The parties and their respective

20    attorneys are present.

21        Good afternoon, ladies and gentlemen.  I

22    trust you all had a pleasant lunch.  Just prior

23    to the recess, the State had Candace Downie on

24    the stand and had finished its direct

25    examination.

1             I'm now turn to Mr. Steensland for cross.

2            MR. STEENSLAND:  Thank you, Judge.

3                  CROSS-EXAMINATION

4  BY MR. STEENSLAND:

5  Q.   Ms. Downie, when the officers initially started

6       questioning you in this case, did they threaten

7       you in any way?

8  A.   No.  They just -- she told me that first I

9       wasn't going to say anything.  And then she had

10      told me that if I didn't say anything, that she

11      was going to go get a court order from the judge

12      to go get my son.

13  Q.   So initially, you didn't tell the police --

14  A.   No, sir.

15  Q.   -- anything?

16  A.   No, sir.

17  Q.   And then they threatened to take your child

18      away; and you agreed to give them a statement

19      then, correct?

20  A.   Yes, sir.

21  Q.   Did you initially tell them that a young person

22      by the name of Melton was the father of your

23      child?

24  A.   Yes.

25  Q.   Is that what you told them initially?

1    A.   Yes.

2    Q.   And then after more threats, did you change your

3         story?

4    A.   Yes.

5    Q.   And that was after they threatened to take away

6         your baby?

7    A.   Yes, sir.

8    Q.   Do you remember writing several letters to the

9         District Attorney's Office?

10   A.   Yes.

11   Q.   How many did you write?

12   A.   Three, I think.

13   Q.   Three.  And in those letters, you admit that you

14       told some lies, didn't you?

15   A.   Yeah.

16   Q.   You admitted numerous times in each of those

17       three letters that you lied; is that correct?

18   A.   Yes, sir.

19   Q.   Now, today when Mr. Atwell was just questioning

20       you, do you remember stating that Mr. Shabazz

21       moved in with you and your mother in November of

22       '03?

23   A.   Yes.

24   Q.   And do you remember a follow-up question was:

25       About how long after him moving in did you two

```
 1              have sex for the first time?  Do you remember
 2              that question?
 3      A.      Yes.
 4      Q.      Do you remember your answer being 10 months
 5              later?
 6      A.      Yes.
 7      Q.      Okay.  Do you also recall telling the police
 8              after they had threatened you into giving this
 9              statement --
10                  MR. ATWELL:  I'll object to the form of the
11              question.
12                  THE COURT:  Let him finish his question.
13                  MR. ATWELL:  Okay.
14      BY MR. STEENSLAND:
15      Q.      That you and Mr. Shabazz had had sex in April of
16              2004?  You want me to restate the question?
17      A.      Yes.
18      Q.      Okay.  Do you recall after giving another
19              statement, after the police threatened to take
20              away your child, that you told police you
21              initially had sex with Mr. Shabazz in April of
22              2004?
23      A.      Yes.
24      Q.      Do you remember that?
25      A.      Yes.
```

| | | |
|---|---|---|
| 1 | Q. | Okay.  You love Mr. Shabazz? |
| 2 | A. | Yes. |
| 3 | Q. | Do you love him like a father figure? |
| 4 | A. | Yes. |
| 5 | Q. | He treat you like a daughter? |
| 6 | A. | Yes. |
| 7 | Q. | Now, I know he was going to be your stepfather. |
| 8 | | But was he more of like a father to you? |
| 9 | A. | Yes, sir. |
| 10 | Q. | He didn't want to see your baby taken away from |
| 11 | | you, did he? |
| 12 | A. | No, sir. |
| 13 | Q. | He wanted you to keep that child, didn't he? |
| 14 | A. | Yes, sir. |
| 15 | Q. | Did the police ever offer or ask you to provide |
| 16 | | any DNA samples, like some saliva or any hair or |
| 17 | | blood? |
| 18 | A. | No, sir. |
| 19 | Q. | Did they ever ask you for that? |
| 20 | A. | No, sir. |
| 21 | Q. | Did they ever ask to take any of that from your |
| 22 | | child? |
| 23 | A. | No, sir. |
| 24 | Q. | Not at all? |
| 25 | A. | No, sir. |

1          MR. STEENSLAND:  No further questions,

2      Judge.

3          THE COURT:  Thank you.

4          Mr. Atwell, redirect?

5          MR. ATWELL:  Yes, sir.

6            REDIRECT EXAMINATION

7  BY MR. ATWELL:

8  Q.  Candace, first of all, what's your date of birth?

9  A.  September 8th, 1989.

10  Q.  1989?

11  A.  Yes, sir.

12  Q.  Okay.  You said that he treated you like a

13      father, and that you loved him.

14  A.  Yes, sir.

15  Q.  Did you love him like a father?

16  A.  Yes, sir.

17  Q.  All right.  Did you love him in other ways?

18  A.  Yes.

19  Q.  Okay.  So it was more than just a father thing,

20      right?

21  A.  Yes.

22  Q.  Did he ever -- when y'all were having this

23      period where y'all were having sex together, did

24      he ever make you any promises or tell you

25      anything that he would do for you in the future?

1    A.    Yes.

2          MR. STEENSLAND:  Objection.  Outside the

3          scope of cross.

4          THE COURT:  Overruled.

5    BY MR. ATWELL:

6    Q.    Go ahead.  What did he tell you?

7    A.    He said that me and Zaire was going to live with

8          him when I got older.

9    Q.    Did he tell you anything more than just live

10         together?

11   A.    Yes.

12   Q.    What did he tell you?

13   A.    That we was -- he said we was going to live

14         together and -- I don't remember that other

15         part.

16   Q.    Well, let me ask you this.  Was the impression

17         you got from him that you were going to continue

18         to live together as father/daughter with your

19         mother?

20         MR. STEENSLAND:  Objection, leading.

21         THE COURT:  Sustained.

22   BY MR. ATWELL:

23   Q.    What did he tell you?

24   A.    That it was going to be me, him and the baby.

25   Q.    Just you, him and the baby?

```
1     A.   Yes, sir.

2     Q.   Did you ever have any discussion about where

3          your mother, his girlfriend, would be?

4     A.   No.

5     Q.   Did he say where y'all would be living?

6     A.   No, sir.

7     Q.   Of course, did that ever come to pass?

8     A.   No, sir.

9     Q.   Okay.  Now, when you say that there were threats

10         to take your child, you said she said.  Was

11         there a police officer you talked to that was a

12         woman?

13    A.   No, the DH & R lady.

14    Q.   The DHR lady came to see you?

15    A.   Yes.  We was at the building where the old jail

16         was at.

17    Q.   All right.  So when you said that she threatened

18         to take your baby, you weren't talking about the

19         police?

20    A.   Huh-uh.

21    Q.   When you talked to the police, that was who?

22    A.   Wanda Sanders.

23    Q.   Wanda Sanders was the DHR lady, correct?

24    A.   Yes, sir.

25    Q.   Who was the police officer you talked to?
```

1    A.   Officer Crawford and Officer Cherry.

2    Q.   Officer Crawford and Officer Cherry ever

3         threaten you in any way?

4    A.   No.

5    Q.   And you told them a story about what happened?

6    A.   Yes.

7    Q.   And is it the same story that you have told the

8         jury here today?

9    A.   Yes, sir.

10       MR. ATWELL:  Thank you.  That's all I've

11      got.

12       THE COURT:  Thank you.

13       Recross, Mr. Steensland?

14       MR. STEENSLAND:  Briefly, Judge.  Briefly,

15      Judge.  Thank you.

16               RECROSS-EXAMINATION

17  BY MR. STEENSLAND:

18    Q.   Candace, do you remember me asking you about the

19         letters that you wrote to the District

20         Attorney's Office?

21    A.   Yes.

22    Q.   Do you remember at any point in time in those

23         letters stating that the police officers and the

24         social worker, Wanda Sanders, threatened to take

25         your child away?

1          MR. STEENSLAND:  Judge, may I approach the

2     witness?

3          THE COURT:  Yes, sir.

4  BY MR. STEENSLAND:

5  Q.   I want to show you something right here.  Take a

6      look at that and flip through it.  And then I'll

7      ask you some questions about it.  Okay?  Do you

8      recognize that letter?

9  A.   Yes.

10  Q.   Was that in your handwriting?

11  A.   Yes.

12  Q.   Is that your signature on the last page?

13  A.   Yes.

14  Q.   So this is one of the letters you wrote and sent

15      to the District Attorney's Office, correct?

16  A.   Yes.

17  Q.   Okay.  I want to direct your attention to this

18      part of the letter.  And read -- and read that

19      part right there that was highlighted.

20  A.   Right here?

21  Q.   And stop right there, that's correct.

22  A.   It says:  I was threatened by the officers and

23      the social worker, Wanda Sanders.

24  Q.   Thank you.  And in this, these are the letters

25      that you wrote where you admitted numerous times

1          that you lied; is that correct?

2     A.   Yes.

3               MR. STEENSLAND:  Thank you.  No further

4          questions, Judge.

5               THE COURT:  Thank you, Mr. Steensland.

6               Anything else, Mr. Atwell?

7               MR. ATWELL:  Yes, sir.

8                    REDIRECT EXAMINATION

9     BY MR. ATWELL:

10    Q.   Tell the jury why you wrote the letters.

11    A.   Because I had feelings and I didn't want him to

12         go to jail.

13    Q.   Why?

14    A.   Because I wanted him to help take care of Zaire.

15    Q.   Why?

16    A.   Why what?

17    Q.   Why did you want him out of jail and to come

18         help you take care of Zaire?

19    A.   Because I wanted -- because I wanted him to help

20         take responsibility because I didn't make Zaire

21         by myself.

22    Q.   Okay.  How old are you now?

23    A.   Sixteen.

24    Q.   Sixteen now.  And you have a baby that's how old

25         now?

1    A.    Eight months.
2    Q.    Okay.  And you wanted him out to help you take
3          care of him?
4    A.    Yes.
5    Q.    Why him?
6                MR. STEENSLAND:  Asked and answered, Judge.
7                THE COURT:  Sustained.
8    BY MR. ATWELL:
9    Q.    I mean, why not some other person to help you
10         take care of this baby?
11   A.    Because he was the father.
12   Q.    Did you have any feelings for him?
13   A.    Yes.
14               MR. ATWELL:  That's all.
15               THE COURT:  Thank you.
16               Anything else, Mr. Steensland?
17               MR. STEENSLAND:  Yes, sir, Judge.
18                       RECROSS-EXAMINATION
19   BY MR. STEENSLAND:
20   Q.    You already stated he was like a father to you,
21         correct?
22   A.    Yes.
23               MR. STEENSLAND:  No further questions.
24               THE COURT:  Thank you.
25               MR. ATWELL:  That's all.

1            THE COURT:  Miss, you may step down.  Be

2     careful as you leave your seat.  There are a

3     couple of steps there.

4            Call your next witness.

5            Officer Crawford, if you will, have a seat.

6     There are a couple of steps there.  Be careful

7     as you take your seat.  You were sworn in

8     earlier; is that correct?

9            THE WITNESS:  Yes, sir, I was.

10           THE COURT:  Please proceed.

11                 JOHN CRAWFORD

12  having been first duly sworn, was examined and

13  testified as follows:

14               DIRECT EXAMINATION

15  BY MR. ATWELL:

16  Q.  Would you introduce yourself to the jury,

17      please, sir?

18  A.  John Crawford.

19  Q.  How are you employed?

20  A.  I'm a detective with the City of Dothan Police

21      Department.

22  Q.  How long have you been with Dothan Police

23      Department?

24  A.  Ten years.

25  Q.  How long have you been an investigator there?

64

1   A.   I've been an investigator for four years.

2   Q.   Do you have a particular field of investigations

3       you work?

4   A.   At the time, I was working sex crimes against

5       juveniles and sex offenders.

6   Q.   And at the time we're talking about April of

7       '05, I believe, you got involved in this,

8       correct?

9   A.   Yes, sir.

10  Q.   How did you first become involved in this case?

11  A.   I was first notified by a tip from DHR   that

12      Ms. Candace Downie was possibly impregnated and

13      sleeping with her stepfather,

14      soon-to-be-stepfather, which would have been

15      mother's boyfriend at the time.

16  Q.   And when was it that you were tipped and became

17      aware of this?

18  A.   The exact date I'll have to refer to my official

19      report.  I'm sorry.  The first information we

20      got was on November the 4th, 2004.

21  Q.   And did you act on that information?

22  A.   Yes, we did.

23  Q.   All right.  At that time, was Candace Downie

24      pregnant?

25  A.   At that time, she was.

1   Q.   Did you know that?

2   A.   She told us that she was.

3   Q.   Okay.  So you went out and interviewed her?

4   A.   I did.

5   Q.   Were you able to --

6   A.   At the time that I talked with her, she told me

7        that it was another young man that was about her

8        age that had gotten her pregnant.

9   Q.   Were you ever able to find a young man that she

10       described?

11  A.   No.  She gave me the man's first name, young

12       man's first name and last name.  And I searched

13       throughout the Houston County school system, and

14       there was never such an individual.

15  Q.   So did you ever do anything more with the case?

16  A.   At that time, I just -- I went and talked to her

17       mother about it and asked her how she felt about

18       it.  And she didn't feel like anything was going

19       on.

20           At that point in time, we didn't have any

21       cooperation from the victim nor the victim's

22       mother.  So I told the victim's mother to

23       please -- if she heard anything else, to please

24       call us.  And that's when at a later date she

25       did call, and we got re-involved in the case.

1    Q.   The victim's mother called and got you back into

2         it?

3    A.   Yes.

4    Q.   Was this subsequent to the birth of the child?

5    A.   This was after the birth of the child.

6    Q.   And what, if anything, did you do when you got

7         back involved in it?

8    A.   We got back involved.  Went back over and

9         started talking with the mother.  I then asked

10       the mother to bring Candace down to the police

11       department for an interview.

12           At that point in time, I asked her about it

13       again.  She had denied it again.  And I did

14       advise her that at this time we are going to

15       test for DNA, we'll test the baby's DNA against

16       Mr. Shabazz's DNA.  And she started breaking

17       down crying and then said something happened.

18    Q.   And I guess at this point, you knew what she had

19       named the baby, correct?

20    A.   Right.

21    Q.   And that was what?

22    A.   Zaire Shabazz.

23    Q.   And gave the child his last name?

24    A.   She did.

25    Q.   Okay.  So then she gave you a statement about



1          what had been going on?

2     A.   She handwrote a statement of what was going on,

3          where she then admitted that they were having

4          sexual relations.

5     Q.   Now, when you got this information, did you make

6          some attempt to contact Mr. Shabazz?

7     A.   I did.  I went over to the residence in which he

8          was residing at 205 Pearl Street with several

9          other investigators.  And at that time, I took

10         Mr. Shabazz down to the police department where

11         we read him his rights and then interviewed him.

12    Q.   This 205 Pearl Street, he was still living in

13         the home with Candace's mother, Michele, and

14         Candace, the victim?

15    A.   That's correct.

16    Q.   So you bring him down to the police station.

17         Did you advise him of his Miranda warnings when

18         he got there?

19    A.   I did.

20    Q.   How did you do that?

21    A.   I read it word for word from a Waiver of Rights

22         form that we had.

23    Q.   Do you have a Waiver of Rights form that you use?

24    A.   I do.

25    Q.   Pull that out, if you would.

1                (State's Exhibit 1 was marked for

2                identification.)

3         MR. ATWELL:  You've seen it, correct?

4         MR. STEENSLAND:  Yes.

5    BY MR. ATWELL:

6    Q.   Let me show you State's Exhibit 1.  Is that the

7        exact Waiver of Rights form you used with

8        Mr. Shabazz?

9    A.   It is.

10   Q.   And what did you read to him?

11   A.   I did read it and advised him that:  Before we

12      ask you any question, you must understand your

13      rights.  You have the right to remain silent.

14      And after I asked him each and every single

15      one of them, I asked him did he understand each

16      and every one of them.  At that point in time,

17      he would say yes.  And then I would go on to the

18      next one.

19      Do you have anything -- anything you say can

20      be used against you in court.  Again, do you

21      understand that one?  He again, yes, I do.

22      You have the right to talk to a lawyer for

23      advice before we ask you any questions and have

24      him with you during the questioning.  Do you

25      understand that?  Again, yes.

1    If you cannot afford a lawyer, one will be
2    appointed for you before any questioning, if you
3    wish.  Do you understand that?  Again, he
4    advised yes.

5    If you decide to answer questions now
6    without a lawyer present, you still have the
7    right to stop answering questions at any time.
8    You also have the right to stop answering
9    questions at any time until you talk to a
10   lawyer.  Do you understand that?  And he says
11   yes.

12   I then read:  I have read this statement of
13   my rights and I understand what my rights are.
14   I am willing to make a statement and answer any
15   questions.  I do not want to talk to a lawyer at
16   this time.  I understand and I know what I am
17   doing.  No one has made promises or threats to
18   me, and no pressure of any kind has been used
19   against me to get me to make a statement.  Is
20   that correct?  Yes.

21   I then advised him to read over it himself.
22   And then after he completely understood it for
23   his own self again, I asked him to sign right
24   there and then place his signature here and his
25   grade -- last grade of education.

1    Q.    He signed it?

2    A.    Yes, he did.

3    Q.    And he agreed to make a statement?

4    A.    He did.

5    Q.    Did you threaten him or coerce him in any way to

6          get him to make a statement?

7    A.    I did not.

8    Q.    And did you question him about the allegations

9          regarding him and Candace Downie?

10   A.    Yes, I did.

11   Q.    And he gave you a taped statement?

12   A.    Yes, sir.

13   Q.    I guess you asked him about living in the

14         household, correct?

15   A.    Correct.

16   Q.    And he stated that he did?

17   A.    Yes, sir.

18   Q.    What kind of relationship did he tell you at the

19         beginning of the statement that he had with

20         Candace Downie?

21   A.    At first, he told me that his relationship with

22         her was more like a stepfather's relationship

23         with her.

24   Q.    Okay.  And did you ask him about Candace's baby?

25   A.    I did.

1 Q. What did he tell you about that?

2 A. He advised me that it was a possibility that it

3   was his baby.

4 Q. Did he indicate why he thought that might be a

5   possibility?

6 A. He indicated that because he was having sexual

7   relationships with her.

8 Q. Did he tell you about each and every time he had

9   had sex with her?

10 A. He couldn't remember the exact dates, but he did

11   advise me it was approximately four to five, six

12   times.

13 Q. All right.  Did you ask him about the use of

14   contraceptives when he had sex with her?

15 A. I did.  He advised me he did use condoms for the

16   first two or three times.  And then the last

17   couple of times one was not used.

18 Q. And did y'all talk about whether that time that

19   he used -- did not use a condom, whether it

20   coincided with the time of conception?

21 A. It did.

22 Q. And what was the outcome of that?

23 A. He advised me that -- I asked him if he found

24   out that -- or when she found out that she was

25   pregnant, and he did.  And he -- I said would

1    that coincide with the times.  Let me refer to

2    that, so I get it exactly right for you.  It was

3    approximately a two-week period.

4         Do you have that with you?

5  Q.  Page 6.

6  A.  I asked him:  Do you remember the exact date and

7    when it was that she got pregnant?  And his

8    answer was:  I think it was -- I'm not even sure

9    of it.  I know I went to the doctor with her.

10   It was in June or May, somewhere in there.

11 Q.  At the top of that page in the interview, you

12   asked -- said:  Y'all have been having sex for a

13   small period of time since you've been here; is

14   that correct?  His answer was what?

15 A.  My page may not be exactly the same as yours,

16   the printout.

17 Q.  Let me show you this and see if it refreshes

18   your recollection.  You've got a different

19   one?

20 A.  Yeah, mine is a different one.  Now, what was

21   your question again?  I'm sorry.

22 Q.  About the time that they had sex with regard to

23   the pregnancy.

24 A.  Can you remember when the first time was that

25   you had sex?  It was maybe like a month or so

1     before we found out she was pregnant.

2          I did ask him again:  Is there a possibility

3     that you are the baby's father?  And are you

4     aware of that?  And he said yes.

5   Q.  Okay.  Now, there has been some question about

6       DNA.  Did you ever take any DNA from either

7       Candace Downie or the defendant?

8   A.  I have a DNA swab that's locked up in the vault

9       on Mr. Shabazz.

10  Q.  I mean, I guess you could have sent this off to

11      the Department of Forensic Sciences.

12  A.  Yes, sir.

13  Q.  Is there some reason you didn't in this case?

14  A.  The reason why I didn't was because Mr. Shabazz

15      was full in cooperation and confessed.

16  Q.  And whether or not he's the father of the baby,

17      is that dispositive of anything in this case?

18  A.  No, sir.

19  Q.  Did you -- I guess you talked to him about how

20      many times they had had sex together, correct?

21  A.  Correct.

22  Q.  And did he -- was he candid with you and tell

23      you about all the sex acts he had had with her?

24  A.  He did advise how many -- approximately how many

25      times they had had sex, yes.

```
 1    Q.   What did he tell you?
 2    A.   It was approximately four to five, is what he
 3         advised.
 4    Q.   Did he talk to you about letters that he had
 5         gotten from her?
 6    A.   Yes.  He did advise that she writes him letters
 7         all the time and takes pictures of him all the
 8         time.
 9    Q.   And after the baby was born, did he indicate he
10         had any part in naming this child?
11    A.   They felt like beings in the relationship that
12         he and her mother was having, and the
13         possibility of a future relationship between all
14         of them as being a family, that he wanted to
15         name it Shabazz.
16    Q.   And speaking of relationship that they would
17         have in the future, did you ask him about any
18         promises or anything he may have said to Candace
19         about plans for the future between the two of
20         them?
21    A.   I did.
22    Q.   What did he tell you about that?
23    A.   He advised me -- I'm sorry.  I asked him if he
24         ever made the statement to Ms. Candace Downie
25         that he was going to marry her mother; later on
```

```
 1            whenever he had his disability and they moved,
 2            divorce the mother and then turn around and
 3            marry her.  And he said yes, he made that
 4            statement.
 5    Q.     To Candace Downie?
 6    A.     To Candace, yes.
 7    Q.     Promised to divorce her mother?
 8    A.     And marry her.
 9    Q.     And marry her?
10    A.     Right.
11    Q.     And did you ask him why he made such a
12            statement?
13    A.     The reason why he made such a statement, he
14            stated, was because Candace was always pushing
15            for a relationship with him.  And he felt like
16            if he did not tell her this, that she would tell
17            on him for the acts that were taking place.
18    Q.     That he had been having sex with her?
19    A.     That he had been having sex with her.
20    Q.     And did you ever talk to him about whether or
21            not he knew that having sex with her was wrong?
22    A.     I did.
23    Q.     What did he tell you about that?
24    A.     He said he did know that it was wrong.
25    Q.     Morally or statutorily or both?
```

1          MR. STEENSLAND:  Objection, leading.

2          THE COURT:  Sustained.

3     BY MR. ATWELL:

4     Q.   Did you talk to him about age?

5     A.   I did.

6     Q.   And what did he tell you about that?

7     A.   I'm sorry.  I did not.  That was Corporal Brian

8          Cherry talked to him about the age of the

9          victim, if he understood how old she was at the

10         time.

11         MR. STEENSLAND:  Objection, hearsay.

12         THE COURT:  Sustained.

13    BY MR. ATWELL:

14    Q.   Were you present during the interview?

15    A.   Yes.

16    Q.   What did he say about the age of the victim?

17    A.   He said that he knew how old she was, that she

18         was 14 at the time.

19    Q.   Did he talk to you about anything besides sexual

20         intercourse?

21    A.   There was a discussion during the interview in

22         reference to some oral sex.

23    Q.   What did he say about that?

24    A.   The oral sex took place on two occasions.

25    Q.   Did he tell you why or any reason for that?

1    A.   The reason why the oral sex had taken place was

2         due to the fact that Candace had just had the

3         baby and she was supposedly still bleeding.  And

4         he was also having some kidney problems.  And

5         that's when -- the only thing that they could do

6         at the time.

7              MR. ATWELL:  That's all I have.

8              THE COURT:  Thank you.

9              Cross?

10             MR. STEENSLAND:  Thank you, Judge.

11                    CROSS-EXAMINATION

12   BY MR. STEENSLAND:

13   Q.   Officer Crawford, I believe you testified that

14        you didn't feel like the DNA test would be --

15        would make this issue dispositive; is that

16        correct?

17   A.   Yes.

18   Q.   That is correct?

19   A.   Yes.

20   Q.   Did you know that Candace wrote many letters to

21        the District Attorney admitting she lied?

22   A.   Yes.

23   Q.   Did you know she sat here on the stand and

24        admitted she lied?

25   A.   I don't know what she had testified to in here

1     today.

2    Q.   Okay.  Well, given that she's admitted that

3         she's lied in these letters -- and I would say

4         to you that she did admit that she lied on the

5         stand -- don't you think DNA tests would have

6         made this dispositive?

7    A.   DNA tests would only have proven exactly who the

8         father was, yes.

9    Q.   Wouldn't that have been dispositive?

10    A.   The DNA test would only have been able to prove

11         who the father was.

12    Q.   Now, you admitted on direct that you did

13         threaten Candace with DNA testing if she didn't

14         give you a statement.

15    A.   I did not threaten anyone.  I just told her that

16         we could take DNA testing.

17    Q.   And that was in order to obtain a statement from

18         her; is that correct?

19    A.   That was not an order.  Just advising her what

20         steps were going to have to be taking place.

21    Q.   Were you ever present with Ms. Wanda Sanders, a

22         social worker?

23    A.   Yes.

24    Q.   And you were present during all those

25         conversations?

1    A.   Yes.

2    Q.   Every one of them?

3    A.   I don't know how many they have had together,

4         but I was present on some occasions when

5         Ms. Sanders was talking with Ms. Downie.

6    Q.   Were you present on the ones where she

7         threatened to take away the child from Candace

8         if she didn't give a statement to you?

9    A.   It was not a threat of taking the child away.

10        It was a:  That's what was going to happen.

11   Q.   That was one of the options that was going to

12        take place if she didn't --

13   A.   It was no option.  It was -- she was told what

14        was going to happen.  It was due to the fact of

15        the welfare of the baby itself.

16   Q.   Initially when you took the first statement from

17        Candace, she told you that a young person by the

18        name of Melton was the father of the child; is

19        that correct?

20   A.   She did.

21        MR. STEENSLAND:  Nothing further.  One

22        second, Judge.  I'm sorry.

23        Nothing further, Judge.  Thank you.  Thank

24        you, Officer.

25        THE COURT:  Mr. Atwell, redirect?

1    MR. ATWELL:  Yes, sir.  I need to see the

2    letter you've been referring to.

3    MR. STEENSLAND:  The same one in your file.

4    MR. ATWELL:  I didn't know which one you

5    were using.

6    Could I mark this as State's Exhibit 2?

7    (State's Exhibit 2 was marked for

8    identification.)

9    REDIRECT EXAMINATION

10   BY MR. ATWELL:

11   Q.   Let me show you what we've marked as State's

12   Exhibit 2 and ask is that -- do you recognize

13   what that is?

14   MR. STEENSLAND:  Objection, Judge.  That's

15   hearsay.

16   THE COURT:  It is hearsay.  You all have

17   used it.  Here is the problem with it.  You can

18   ask questions regarding the letter; but,

19   generally, those statements or the letter

20   itself -- the writing itself doesn't come in.

21   MR. STEENSLAND:  Judge, if he's going to ask

22   questions about the letter that was written by

23   Ms. Downie, who just testified -- I believe that

24   reference in that letter, that's hearsay that

25   he's looking in and testifying what's contained

1    in that letter, Judge.

2         THE COURT:  I don't know what his question

3    is.

4         MR. STEENSLAND:  I'm sorry, Your Honor.

5         THE COURT:  I don't know if he's trying to

6    testify from the letter or not.  I mean yes,

7    it's her -- supposedly it's her words, but I

8    don't know what his question is.  Ask the

9    question.

10   BY MR. ATWELL:

11   Q.   My question was:  Do you recognize that letter?

12        THE COURT:  I don't think that's hearsay,

13   just whether or not he recognizes it.

14        MR. STEENSLAND:  I'll withdraw the

15   objection, Judge.

16        THE COURT:  Just both of you understand that

17   the letter itself is generally not admissible.

18   BY MR. ATWELL:

19   Q.   Do you recognize it?

20   A.   Yes.

21   Q.   What do you recognize that as?

22   A.   A letter that Ms. Downie had wrote to the

23        District Attorney's Office.

24   Q.   Okay.  Now, Mr. Steensland asked you if you were

25        familiar with the letter.

1    A.    Yes.

2    Q.    And the content of it, did he not?

3    A.    Yes.

4    Q.    All right.  And asked you something about

5          whether or not she had indicated she had told

6          lies in her original statement?

7    A.    Correct.

8    Q.    What I'm asking you:  Did you read the whole

9          letter when it came in?

10   A.    I did at the time, yes.

11   Q.    What I'm asking you:  Was the substance of these

12         lies -- did she ever change her story about the

13         fact she was having sex with Mr. Shabazz?

14   A.    No.

15             MR. ATWELL:  Thank you.

16             THE COURT:  Recross?

17             MR. STEENSLAND:  Nothing further,

18   Your Honor.

19             THE COURT:  Thank you.  You all have further

20   need of Officer Crawford?

21             MR. ATWELL:  No, sir.

22             MR. STEENSLAND:  No, sir.

23             THE COURT:  Did you establish the age of the

24   defendant at the time of the statement?

25             THE WITNESS:  Fourteen.

1          THE COURT:  The defendant.

2          THE WITNESS:  Oh, of the defendant.  I'm

3     sorry.  Forty-four.

4          THE COURT:  And this was when?

5          THE WITNESS:  The statement was on April

6     15th, 2005.

7          THE COURT:  Thank you.  Anything else,

8     gentlemen?

9          MR. ATWELL:  That's all.

10         THE COURT:  Anything else, Mr. Steensland?

11         MR. STEENSLAND:  One more question, Judge.

12         THE COURT:  Okay.

13                    RECROSS-EXAMINATION

14    BY MR. STEENSLAND:

15    Q.   Officer Crawford, how accurate are DNA testing?

16    A.   I wouldn't be able to tell you.

17    Q.   In your experience, have you been able to review

18         the results of DNA tests?

19    A.   I've never been able to personally review any

20         DNA results.

21    Q.   Are you aware through any of your training that

22         there would be over 99 percent accuracy?

23    A.   From what I've understood, yes.

24         MR. STEENSLAND:  Thank you, Judge.  Nothing

25         further.

1    THE COURT:  Okay.  Thank you.  Anything

2    else, Mr. Atwell?

3        MR. ATWELL:  No, sir.

4        THE COURT:  Officer Crawford, you are free

5    to go.  Thank you so much for coming.  I guess

6    you want to take those with you.  Now, that

7    exhibit has to stay.

8        THE WITNESS:  The original?

9        MR. ATWELL:  That's not an original.

10       THE COURT:  The waiver, we can substitute a

11   copy.

12       THE WITNESS:  My waiver is the original.

13       THE COURT:  Okay.  We can substitute a copy

14   and get the original back to you.  And this

15   letter is marked.  It has to stay as well.

16       THE WITNESS:  I'm sorry, Judge.

17       THE COURT:  It's okay.  We'll make a copy

18   and give the original back to you.  Thank you.

19       THE WITNESS:  Thank you.

20       MR. ATWELL:  If I didn't move to introduce

21   State's Exhibit 1, I move to introduce State's

22   Exhibit 1.

23       THE COURT:  Any objections to State's

24   Exhibit 1, which is or purports to be a waiver?

25       MR. STEENSLAND:  No objections, Judge.

1      THE COURT:  All right.  It's admitted.

2              (The aforementioned exhibit was

3              admitted into evidence.)

4      THE COURT:  Call your next witness.

5      MR. ATWELL:  That's all we'd offer.  State

6  rests.

7      THE COURT:  State rests.  Ladies and

8  gentlemen, this is one of those times I must

9  take up a matter outside your presence.  If you

10  will, go back to the jury deliberation room

11  while I address this.  And hopefully, it will be

12  short.

13      Don't discuss the case while you're away or

14  allow anyone to discuss it with you.

15      You have no objections to a copy of the

16  waiver being admitted into evidence, do you?

17      MR. STEENSLAND:  No, Your Honor.

18      THE COURT:  We'll let him have his original

19  back.

20              (The jury exited the courtroom.)

21      THE COURT:  We're out of the hearing and

22  presence of the jury.  Any motions?

23      MR. STEENSLAND:  Your Honor, at this time,

24  the defendant would move for a judgment of

25  acquittal in that the State has failed to prove

1    a prima facie case, Your Honor.

2         THE COURT:  Anything specifically?

3         MR. STEENSLAND:  Just the testimony from the

4    victim and Officer Crawford.

5         THE COURT:  At this juncture, the evidence

6    must be viewed in the light most favorable to

7    the State and the State must be afforded all

8    inferences thereby.

9         There was testimony from a young girl who

10   testified that -- I think she was 14 at the

11   time.  She had sex with the defendant five times

12   and oral sex twice, that it occurred in Houston

13   County, and that the Officer testified that he

14   got a statement from your client and your client

15   admitted to having sex with her and oral sex,

16   and that the residence was indeed in Houston

17   County, and that he was 44 years old at the time

18   of the statement.  So he was probably --

19   what? -- 43, 42, at the time of the alleged

20   occurrences.

21        MR. ATWELL:  She testified 42.

22        THE COURT:  Yeah.  I think she did.  Yeah,

23   she testified as to the age as well.  But with

24   all that, certainly, your motion is denied.

25        MR. STEENSLAND:  Thank you, Judge.  Nothing

1    further.

2         THE COURT:  Do you have any evidence or

3    witnesses?

4         MR. STEENSLAND:  No, Your Honor.

5         THE COURT:  You're not going to present any

6    witnesses?

7         MR. STEENSLAND:  No, Your Honor.  No

8    witnesses.

9         THE COURT:  Then let's go on to requested

10   charges.  Does the State have any?

11        MR. ATWELL:  No, sir.

12        THE COURT:  Defense have any?

13        MR. STEENSLAND:  The Court's charges are

14   fine with us.

15        THE COURT:  How much time do you all need to

16   argue your respective charges?

17        MR. ATWELL:  Ten minutes.

18        MR. STEENSLAND:  Ten, 15, Judge, would be

19   fine.

20        THE COURT:  Not longer than 15 per side.

21        MR. STEENSLAND:  Could we have a brief

22   recess to prepare for them?

23        THE COURT:  We will.  That's fine.

24             (A recess was taken.)

25        THE COURT:  You all ready?

1      MR. ATWELL:  Yes, sir.

2      THE COURT:  Ready, Mr. Steensland?

3      MR. STEENSLAND:  Yes, Your Honor.

4      THE COURT:  You want to withdraw State's

5  Exhibit 2?

6      MR. ATWELL:  Sure.

7      THE COURT:  Bring in the jury panel.

8           (The jury entered the courtroom.)

9      THE COURT:  Back in the presence of the

10  jury.  All 13 jurors have returned and the

11  parties and their respective attorneys are

12  present.

13      Ladies and gentlemen, the State has rested.

14  You've heard all the evidence you're going to

15  hear from the State.  I'll now turn to the

16  defense.

17      Mr. Steensland.

18      MR. STEENSLAND:  Judge, the defense rests.

19      THE COURT:  The defense rests.

20      And I knew that before you came in, so I

21  went ahead and took care of another matter.  And

22  that's why it took a few more minutes than I had

23  anticipated.

24      Let me tell you where we are.  That closes

25  the evidence in the case.  The only thing that

1    remains is for the attorneys to make their

2    closing arguments to you.  Each side has not

3    longer than 15 minutes to argue its respective

4    case.  The State will go first and can divide

5    its time up however it chooses.

6         It is 1:55 or 54 -- 1:55 by the clock on the

7    wall.  You may argue your case to the jury.

8         MR. ATWELL:  Thank you, Your Honor.

9    Mr. Steensland.

10                   (A closing argument was given by

11                   Mr. Atwell on behalf of the State.)

12        THE COURT:  Thank you, Mr. Atwell.

13        Mr. Steensland, you may make your final

14   closing argument.  It is 1:57.

15                   (A closing argument was given by

16                   Mr. Steensland on behalf of the

17                   defendant.)

18        THE COURT:  Thank you, Mr. Steensland.

19        Mr. Atwell, you may make your final closing

20   argument.  It is 2:02.

21        MR. ATWELL:  Thank you, Your Honor.

22                   (A rebuttal closing argument was given

23                   by Mr. Atwell on behalf of the State.)

24        THE COURT:  Ladies and gentlemen, it is now

25   my duty to charge you with the law that is

1       applicable in these two cases.

2           Before I move on and address those two

3       subjects, I would be remiss if I did not commend

4       these two attorneys to you, Mr. Atwell for the

5       State and Mr. Steensland for the defense.  They

6       have both done an admirable job in representing

7       their respective clients.

8           You know, I have been in the legal

9       profession for 22 years.  And I have sat where

10      Mr. Atwell sits as an assistant district

11      attorney and I have sat where Mr. Steensland

12      sits as a defense attorney.  I have served you

13      as city attorney for about seven years, and I've

14      been your judge now for 10 years.

15          The reason I tell you all that is that the

16      longer I am in this system, the more I

17      appreciate the beauty of our system and the more

18      I appreciate how our system works if everybody

19      does their job.  Now, these attorneys have done

20      their job and they have done their jobs

21      remarkably.

22          In a moment, I'm going to move on and do my

23      job, after which time I submit this case to you

24      for you to do your job.

25          You see, I tried to impress upon you this

0

1    week the role that you play in the judicial

2    system.  You are an integral part of this

3    judiciary and we could not operate without you.

4         Let me now move on and charge you with the

5    law in these cases.  You know, every offense

6    made a crime by the laws of the State of Alabama

7    is comprised of elements.  And it is the State's

8    burden to prove to you each and every element of

9    the offense charged.

10        You will recall this morning that I read the

11   indictments to you because I needed to ask you a

12   couple of questions concerning those

13   indictments.

14        I'm going to read them to you again, this

15   time for a different reason.  Because, you see,

16   contained within these indictments are the

17   elements of the offenses of rape in the second

18   degree and sodomy in the second degree.

19        In CC-05-1132, the indictment reads as

20   follows:

21              (The indictment was read.)

22        THE COURT:  That indictment charges the

23   defendant with rape in the second degree.

24        The second indictment is CC-05-1133.  And it

25   reads as follows:

1      (The indictment was read.)

2      THE COURT:  That indictment charges the

3  defendant with sodomy in the second degree.

4      Now, those indictments contain the elements

5  of rape in the second degree and sodomy in the

6  second degree.  In a few minutes, we are going

7  to go over those elements and we're going to

8  cover them one at a time.  We're going to break

9  them out and go over them one at a time.  And

10  we're going to define any terms that are

11  applicable to those elements.

12      Now, ladies and gentlemen, as I told you

13  this morning, these indictments are not any

14  evidence in the case.  And the fact that the

15  defendant has been charged with these offenses

16  by indictment and the fact that I have read

17  these indictments to you is not to be considered

18  by you as any circumstance or evidence against

19  the defendant.  It is merely the formal means by

20  which charges are brought or preferred against

21  the defendant and he is placed on trial before

22  you.

23      Now, as to the charges in these indictments,

24  the defendant has entered a plea or pleas of not

25  guilty.  That is, the defendant says that he is

1    not guilty of any offense contained within those

2    indictments.

3        Now, there have been terms used in court

4    here today that are terms of art or words of

5    art, legal terms that carry with them their own

6    definition in the law, terms like presumption of

7    innocence, burden of proof, reasonable doubt or

8    beyond a reasonable doubt.  Let's take a moment

9    and go over those terms.

10       First, presumption of innocence:  The

11   defendant is presumed to be innocent until he is

12   proven guilty beyond a reasonable doubt by the

13   evidence in this case.  He comes into court

14   cloaked with this presumption.  And this

15   presumption follows him throughout the course

16   and proceedings of the trial until the evidence

17   produced by the State convinces each of you

18   beyond a reasonable doubt of his guilt.

19       The presumption of innocence is to be

20   regarded by you, the jury, as a matter of

21   evidence to the benefit of which the accused is

22   entitled.

23       In the defendant's case, as in all other

24   cases where a defendant pleads not guilty, the

25   burden of proof -- that's another one of those

1    terms, we'll talk about it in a minute -- the

2    burden of proof is upon the State to convince

3    each member of the jury beyond a reasonable

4    doubt as to the truth of the material

5    allegations contained in the indictment.

6         So this burden of proof, what is it?  And

7    where does it belong?  The burden of proof is

8    beyond a reasonable doubt and it lies with the

9    State.

10        Now, what does reasonable doubt mean or

11   beyond a reasonable doubt?  The doubt which

12   would justify an acquittal must be a doubt for

13   which you have a reason arising from the

14   evidence, any part thereof or any lack of

15   evidence and remaining after a careful

16   consideration of the testimony such as

17   reasonable and fair-minded and conscientious men

18   and women would entertain under all

19   circumstances.

20        Now the State is not required to prove guilt

21   beyond all doubt, but it is required to prove

22   guilt beyond a reasonable doubt.

23        If conflicting inferences may be drawn from

24   the same facts, the jury should draw an

25   inference consistent with innocence.

1    This morning, I took a moment and discussed

2    with you your duties and responsibilities as

3    jurors or fact-finders in this case.  I'm going

4    to now take a moment and go over some of that

5    with you again.  If some of it is repetitious,

6    please forgive me, but it is important

7    nonetheless.

8    You should base your decisions only on the

9    evidence admitted in this courtroom.  Not

10    everything you heard and saw in this courtroom

11    is evidence.  Now, of course, the testimony,

12    writings, objects and other things presented

13    during a trial are evidence.  But as I said to

14    you this morning, the statements made by the

15    attorneys are not evidence and should not be

16    used by you as evidence.

17    Once the evidence is admitted, only the jury

18    can decide two essential things about this

19    evidence:  First, whether it should be believed;

20    and second, how important is it.  You should

21    make these two decisions about each part of the

22    evidence by using your own common sense as

23    reasonable men and women.

24    You should not imagine things that cannot be

25    proven by the evidence.  Of course, you must

1    consider all the evidence in this trial without

2    bias, prejudice or sympathy to either side.  You

3    must be equally just to both sides in this case.

4         Your verdict must not be based on suspicion,

5    speculation or conjecture.

6         You are the sole judges of the evidence and

7    of the credibility of the witnesses.  You may

8    accept or reject any part of the testimony you

9    consider worthy or unworthy of belief.

10        In determining the weight to be accorded the

11   testimony of any witness, you may take into

12   consideration or consider the demeanor of the

13   witness while on the witness stand, his or her

14   apparent candor or evasion or the existence or

15   nonexistence of any bias or interest.

16        As I said to you earlier, you may take into

17   consideration any matter which you would in your

18   own everyday affairs in passing upon the

19   truthfulness and the accuracy of the testimony

20   in this case.

21        Weigh the testimony in the light of your own

22   common observation and experience and reach a

23   verdict that will be based upon the truth as you

24   determine it from all of the evidence.

25        Now, ladies and gentlemen, in Alabama, there

1    are two types of evidence or Alabama law
2    recognizes two types of evidence.  There is
3    what's known as direct evidence or sometimes we
4    call it eyewitness evidence.  And then there is
5    circumstantial evidence.
6        The guilt of a defendant may be proven by
7    circumstantial evidence, as well as by direct
8    evidence, or by a combination of both types of
9    evidence.
10       Now, circumstantial evidence means that it
11   is not any direct, positive, eyewitness evidence
12   of any person who saw the commission of a crime,
13   but it is the events, the happenings, the
14   circumstances surrounding it.
15       Now, where the State relies on
16   circumstantial evidence, either in whole or in
17   part to convict a party charged with the
18   commission of a crime, the degree of proof must
19   be the same, that is, beyond a reasonable doubt.
20       That does not mean, however, that because
21   testimony is circumstantial, that you should
22   disregard it and not consider it because it is
23   circumstantial.  But it does mean this:  It
24   means you must be satisfied beyond a reasonable
25   doubt, regardless of what kind of evidence is

1    relied upon by the State to establish the guilt

2    of a defendant.

3        Now, ladies and gentlemen, we have reached

4    that point in the Court's charge where I want to

5    cover the elements of rape in the second degree

6    and sodomy in the second degree.  Alabama law

7    has this to say about rape in the second degree.

8        A male 16 years of age or older commits the

9    crime of rape in the second degree if he engages

10   in sexual intercourse with a female who is less

11   than 16 years old, but more than 12 years old,

12   if the male is also at least two years older

13   than the female.

14       Now, that's it in a nutshell, but let's

15   break the elements out and go over them one at a

16   time.

17        To convict, the State must prove beyond a

18   reasonable doubt each of the following elements

19   of rape in the first degree:  Number one, that

20   the defendant, Ash-Shakur Halim Shabazz, a male,

21   engaged in sexual intercourse with Candace

22   Michele Downie, a female; and two, that the

23   defendant was 16 years old or older at that

24   time; and number three, that the defendant was

25   at least two years older than the female; and

1    number four, that Candace Michele Downie, was

2    less than 16 years old but more than 12 years

3    old at that time; and number five, that the

4    defendant acted knowingly; and number six, that

5    it occurred in Houston County, Alabama.  Now,

6    those are the six elements of rape in the second

7    degree.

8        Now, there were some terms used in that

9    charge that carry their own definition, and I do

10   need to cover those terms.  For example, sexual

11   intercourse has its ordinary meaning and occurs

12   upon any penetration, however slight.  Emission

13   is not required.  Consent is no defense to a

14   prosecution for this offense.

15       Ladies and gentlemen, if you find from the

16   evidence that the State has proved beyond a

17   reasonable doubt each of the above elements of

18   the offense of rape in the second degree as

19   charged in the indictment, then you shall find

20   the defendant guilty of rape in the second

21   degree.

22       However, if you find that the State has

23   failed to prove beyond a reasonable doubt any

24   one or more of the elements of the offense of

25   rape in the second degree, as charged, then, of

1    course, you cannot find the defendant guilty and
2    must, therefore, acquit him.
3        Now, the second charge is sodomy in the
4    second degree.  The law has this to say about
5    sodomy in the second degree.  A person 16 years
6    of age or older commits the crime of sodomy in
7    the second degree if he engages in deviant
8    sexual intercourse with another person who is
9    less than 16 years old, but more than 12 years
10   old.
11       To convict, the State must prove beyond a
12   reasonable doubt each of the following elements
13   of sodomy in the second degree:  Number one,
14   that the defendant, Ash-Shakur Halim Shabazz,
15   engaged in deviant sexual intercourse with
16   Candace Michele Downie; and number two, that
17   Candace Michele Downie was less than 16 years
18   old, but more than 12 years old at that time;
19   and number three, that the defendant was 16
20   years of age or older at that time; and number
21   four, that the defendant acted knowingly.
22       Now, the deviant sexual intercourse means
23   any act of sexual gratification between persons
24   not married to each other involving the sex
25   organs of one person and the mouth or anus of

1    another.  Again, in this charge, consent is no
2    defense to a prosecution for this offense.
3        And when I talk about knowingly, a person
4    acts knowingly with respect to a conduct or a
5    circumstance when he is aware that his conduct
6    is of that nature or that the circumstance
7    exists.
8        If you find from the evidence that the State
9    has proved beyond a reasonable doubt each of the
10   elements of the offense of sodomy in the second
11   degree as charged in the indictment, then you
12   shall find the defendant guilty of sodomy in the
13   second degree.
14       However, if you find that the State has
15   failed to prove beyond a reasonable doubt any
16   one or more of the elements of sodomy in the
17   second degree, then, of course, you cannot find
18   him guilty and must, therefore, acquit him.
19       Now, those are the elements of rape in the
20   second degree and sodomy in the second degree.
21       Now, ladies and gentlemen, my office has
22   prepared for your use verdict forms in these
23   cases.  There are two verdict forms per case.
24   And I want to take a moment and go over those
25   with you.

1     In the first case, CC-05-1132, the rape in
2     the second degree, as I said, there are two
3     possibilities.  Now, these verdict forms are
4     identical with respect to the style of the
5     case.  And what I'm talking about there is that
6     language which appears at the top in bold
7     capital letters.

8     And I'll just quickly read that:  In the
9     Circuit Court of Houston County, Alabama, State
10    of Alabama, plaintiff, versus Ash-Shakur Halim
11    Shabazz, defendant, Case Number CC-05-1132.
12    That language appears on both verdict forms.

13    Now, as I said, there are two
14    possibilities.  And I want to cover those with
15    you.  One possibility reads as follows -- and do
16    not place any significance on the order in which
17    these are read because none is intended by the
18    Court.

19    As I said, one possibility reads as
20    follows:  We, the jury, find the defendant,
21    Ash-Shakur Halim Shabazz, guilty of rape in the
22    second degree as charged in the indictment.

23    If this is the verdict of the jury or
24    corresponds with the jury's verdict, then your
25    foreperson shall sign and date this form.

1    However, if you are not convinced beyond a

2    reasonable doubt that the defendant is guilty of

3    rape in the second degree, then that brings us

4    to the second possibility.  And it reads as

5    follows:  We, the jury, find the defendant,

6    Ash-Shakur Halim Shabazz, not guilty.

7        If this is the verdict of the jury or

8    corresponds with the jury's verdict, then your

9    foreperson shall sign and date this form.

10       Those are the only two possibilities in that

11   case.

12       Now, the second case, as you know, is the

13   sodomy second case.  And again, there are two

14   possibilities in that case.  And again, each

15   verdict form in that case has the style on it.

16   And I won't read it again to you.  The only

17   difference is the case number is different by

18   one number.

19       But there are two possibilities in that case

20   as well.  And the first possibility reads as

21   follows:  We, the jury, find the defendant,

22   Ash-Shakur Halim Shabazz, guilty of sodomy in

23   the second degree as charged in the indictment.

24       If this is the verdict of the jury or

25   corresponds with the jury's verdict, then your

1    foreperson shall sign and date this form.

2        However, if the jury is not convinced beyond

3    a reasonable doubt that the defendant is guilty

4    of sodomy in the second degree, that brings us

5    to the second possibility.  And it reads as

6    follows:  We, the jury, find the defendant,

7    Ash-Shakur Halim Shabazz, not guilty.

8        If this is the verdict of the jury or

9    corresponds with the jury's verdict, then your

10    foreperson shall sign and date this form.  Those

11    are the only two possibilities in that case.

12        Now, ladies and gentlemen, the defendant did

13    not testify in his own behalf in this case or

14    these cases.  That must not and you cannot take

15    that into consideration either for or against

16    the defendant.  The defendant has the right to

17    testify in his own behalf or to not testify in

18    his own behalf.

19        And the fact that he does stay off the

20    witness stand and does not testify cannot be

21    taken and considered by the jury when it goes

22    out to weigh and consider all of the testimony

23    in this case and makes up its verdict as to the

24    guilt or innocence of the defendant.

25        I touched on this earlier, ladies and

1    gentlemen.  A judge is not permitted by law to

2    express his opinion or comment on the effect of

3    the evidence presented to you or on the

4    credibility of any of the witnesses.

5         Therefore, any ruling, statement, or

6    expression which may have been made by me during

7    the course of this trial is not to be considered

8    by you as any effort on my part to convey to you

9    any feelings or opinions about the facts in

10   these cases or the credibility of any of the

11   witnesses.

12        Now, when you go to the jury room to begin

13   your discussions about this case, you will take

14   with you any materials presented as evidence.

15   And I think there was one exhibit that came into

16   evidence.  You will take with you the verdict

17   forms which I read to you and have gone over

18   with you.  And you will take with you any notes

19   that you may have taken during the trial.

20        Did any of you take any notes?  If you did,

21   raise your hand.  Oh, several note-takers on

22   this jury.

23        And that's okay, because the law says it is

24   proper for the jurors to take notes, but the law

25   also says this about note-taking:  You can take

1    those notes back to the jury room with you, but

2    you cannot share them with the other jurors.

3         And you may wonder why that is.  Well, you

4    see, the law recognizes that there are 12 of

5    you.  And that's 24 eyes and 24 ears.  And

6    because somebody took notes, they are

7    transcribing what they thought the testimony to

8    be or characterized it in one way or the other

9    as they characterized it.

10        The other 11 may have heard it differently

11   or may have remembered it differently.  And

12   that's why the law says that if you take notes,

13   they are your notes and not to be shared with

14   the other jurors.

15        Now, once you enter the jury room to begin

16   your discussions about this case, you shall

17   first choose a foreperson, who may be either a

18   man or a woman.

19        Now, the foreperson's duties are these:

20   First, to keep order and to make sure that

21   everyone who wants to has an opportunity to

22   speak; second, to represent the jury in any

23   communications you may wish to make with the

24   Court and I emphasize the Court alone; and

25   third, to sign and present your verdict.

1    However, the verdict will be the verdict of
2    all 12 of you and the foreperson does not have
3    any more power than any other juror.  Your
4    verdict must be unanimous.  That is, all of you
5    would have to agree.
6        Each juror's verdict must be his or her own
7    and it should not be made out of a need to agree
8    with everyone else.  Yet, in order to bring 12
9    minds to the same decision, jurors have to
10   respect and listen to one another's opinions
11   honestly.
12       Now, you do not have to give up a
13   conscientious conclusion, which might be
14   different from your fellow jurors, but it is
15   your duty to discuss it with them carefully and
16   honestly.  It is your duty to be absolutely just
17   to both sides in this case.
18       In summary then, you should remember these
19   two rules when you disagree with other jurors:
20   First, respect and consider the opinions of
21   other jurors; but secondly, in the end, reach
22   your own conclusion.
23       As I said, all 12 of you would have to agree
24   before you can reach any verdict in this case.
25   Before you go to the jury room to begin your

1   discussions about this case, I'll give you the
2   verdict forms.  And when you've reached a
3   verdict, your foreperson shall sign and date the
4   verdict form that correctly corresponds with the
5   verdict of the jury.
6       Gentlemen, approach.
7           (The following proceedings were held at
8           the bench outside the hearing of the
9           jury:)
10  THE COURT:  Exceptions to the Court's oral
11  charge from the State?
12      MR. ATWELL:  No, sir.
13      THE COURT:  From the defense?
14      MR. STEENSLAND:  Judge, we just ask for one
15  of your charges about credibility of witnesses
16  that you normally give.
17      THE COURT:  I gave it, didn't I?
18      MR. STEENSLAND:  Did you give the normal?
19      MR. ADAMS:  You said you can disregard some
20  or all of their testimony if you believe they
21  have been untruthful.  I don't believe that
22  was --
23      THE COURT:  You didn't ask for a requested
24  charge.
25      MR. STEENSLAND:  I thought that was in your

1       oral charge.

2           THE COURT:  Between what I gave this morning

3       and what I gave now, I think I've covered that.

4           MR. ADAMS:  All right.

5           MR. STEENSLAND:  Satisfied, Judge.

6           THE COURT:  Unless you have a specific

7       charge.

8           MR. STEENSLAND:  Satisfied, Judge.  Thank

9       you, Judge.

10          THE COURT:  Yes, sir.

11              (The attorneys and the court reporter

12              left the bench and the proceedings

13              continued in open court.)

14          THE COURT:  Ladies and gentlemen, there are

15      13 of you.  Only 12 of you can go back and

16      decide this case.  Let me name the alternate.

17      As I call your name, if you will, please stand.

18          Karen McCarroll.  Where are you,

19      Ms. McCarroll?

20          Ms. McCarroll, you were the alternate in

21      this case.  I don't know.  You may or may not

22      have wanted to go back to decide this case.  Of

23      course, the law says you cannot.  You have

24      served nonetheless, and I thank you for your

25      service.  You have been very patient.

1    Perhaps, the only consolation is you get to
2    leave a little bit earlier than your colleagues
3    will.  So with that, if you will go to the
4    clerk's office, they have a check for you.  And
5    please accept it with our gratitude and you are
6    free to go.  Thank you so much, ma'am.
7        Ladies and gentlemen, you may now retire and
8    make up your verdict in these cases.
9            (The jury exited the courtroom.)
10   THE COURT:  We're out of the hearing and
11   presence of the jury.  Any exceptions to the
12   Court's oral charge or anything else that you
13   all want to place on the record?
14       MR. ATWELL:  No, sir.
15       MR. STEENSLAND:  No, Judge.
16       THE COURT:  It is 2:30 and we are adjourned
17   until the jury returns with a verdict.
18            (A recess was taken while the jury
19             considered its verdict.)
20            (The jury entered the courtroom.)
21       THE COURT:  Back within the hearing and
22   presence of the jury.  All 12 jurors have
23   returned.  And the parties and their respective
24   attorneys are present.
25       Ladies and gentlemen, I understand that you

1    all have reached a verdict in this case; is that

2    correct?

3         THE FOREPERSON:  Yes.

4         THE COURT:  Let me ask you a question.  Who

5    is your foreperson?

6         THE FOREPERSON:  Wade Jones.

7         THE COURT:  Mr. Jones.  Mr. Jones, has the

8    jury reached a verdict?

9         THE FOREPERSON:  Yes, sir, it has.

10         THE COURT:  Have you signed and dated the

11    verdict forms that correctly correspond with the

12    jury's verdict?

13         THE FOREPERSON:  Yes, I have.

14         THE COURT:  Will you hand them to the

15    deputy, please, sir?

16         I know it's obvious to all of you; but for

17    the benefit of this silent record, have you

18    handed them to the deputy who has now handed

19    them to the Court?

20         THE FOREPERSON:  Yes, sir, I have.

21         THE COURT:  I will now read the verdict of

22    the jury.  The defendant shall stand.

23         In Case Number CC-05-1132, in the Circuit

24    Court of Houston County, Alabama, State of

25    Alabama, plaintiff, versus Ash-Shakur Halim

1      Shabazz, defendant, the verdict of the jury

2      reads as follows:  We, the jury, find the

3      defendant, Ash-Shakur Halim Shabazz, guilty of

4      rape in the second degree as charged in the

5      indictment.  It is signed by Mr. Jones and dated

6      this, the 15th day of December, 2005.

7           In the second case, CC-05-1133, in the

8      Circuit Court of Houston County, Alabama, State

9      of Alabama, plaintiff, versus Ash-Shakur Halim

10     Shabazz, defendant, the verdict of the jury

11     reads as follows:  We, the jury, find the

12     defendant, Ash-Shakur Halim Shabazz, guilty of

13     sodomy in the second degree as charged in the

14     indictment.

15          Gentlemen, would you like for me to poll the

16     jurors individually?

17          MR. ATWELL:  No, sir.

18          MR. STEENSLAND:  No, Judge.

19          THE COURT:  Okay.  The defendant shall

20     approach.

21          You are Ash-Shakur Halim Shabazz, the

22     defendant in these two cases; is that correct?

23          THE DEFENDANT:  Yes.

24          THE COURT:  The jury having returned

25     verdicts of guilty of rape in the second degree

1    and guilty of sodomy in the second degree, it is

2    the judgment of this Court that you are guilty

3    of said offenses.  Do you have anything to say

4    as to why sentence of law should not be

5    pronounced upon you at this time?

6         MR. STEENSLAND:  Your Honor, we'd ask for a

7    presentence investigation to be done before

8    sentencing, Your Honor.

9         THE COURT:  Okay.  That's fine.  Alabama law

10   says that if either side requests a presentence

11   investigation, then the Court must order one.

12   And I order one.  However, I understand there

13   are a number of priors here.  Are there not,

14   Mr. Atwell?

15        MR. ATWELL:  Three plus.

16        THE COURT:  Three plus.  Tell me what they

17   are.  Didn't he meet this family while he was in

18   a New Jersey prison as a pen pal or something?

19        MR. ATWELL:  We've got a -- there's a

20   conspiracy to commit fraud with illegal use of

21   credit cards out of New Jersey, a robbery out of

22   New Jersey, aggravated assault, terrorist

23   threats, burglary and larceny, criminal

24   attempted forgery, aggravated assault with a

25   deadly weapon, aggravated assault with a

```
 1    weapon.  That could be the same case.  That's
 2    it.
 3            THE COURT:  Okay.  When is that sentencing?
 4    February 10th.  Sentencing is hereby scheduled
 5    for February the 10th of 2006 at 9 o'clock a.m.
 6    A probation officer will come over and do an
 7    investigation -- and do said presentence
 8    investigation and report those findings to this
 9    Court.  He's in custody, deputy.
10            MR. STEENSLAND:  Thank you, Judge.
11            THE DEFENDANT:  Thank you.
12            THE COURT:  Ladies and gentlemen, I want to
13    thank you for your service this week.  I know it
14    is a tough duty that citizens are called upon to
15    perform.  But I hope by serving with us this
16    week, you have come to appreciate your role in
17    your judicial system.
18            And the good news that I have is this will
19    conclude your jury service for the week.  I am
20    told that Ms. Byrd has your checks or, that is,
21    she is preparing those checks as we speak.  And
22    I am also told that you are to go to the Jury
23    Assembly Room, not to be picked for another
24    case, but to get those checks and go home.
25    Have a merry Christmas and thank you so much.
```

1          (The jury exited the courtroom.)

2          THE COURT:  Mr. Adams.

3          MR. ADAMS:  Judge, at this time, we would

4     withdraw our request for a presentence

5     investigation and go forward with sentencing if

6     the Court pleases.

7          THE COURT:  Does the State seek a

8     presentence investigation?

9          MR. ATWELL:  Well, I don't know.  Are you

10    admitting to the three plus priors?

11         MR. STEENSLAND:  Yeah.  We don't have a

12    problem with that.

13         MR. ADAMS:  I just -- we changed our mind.

14         MR. ATWELL:  Fine with me.

15         THE COURT:  Is that fine with you?

16         MR. ATWELL:  Yes, sir.

17         THE COURT:  Okay.  Bring him back in.  They

18    have withdrawn their request for a presentence

19    investigation and request to be sentenced, if

20    you've still got him out there.

21         THE DEPUTY:  Yes, sir.

22         THE COURT:  I'm going to hear from both of

23    you regarding the sentencing.  Okay.  It's my

24    understanding -- and I don't know that this was

25    on the record.  You approached moments ago --

1          MR. ADAMS:  Yes, sir.

2          THE COURT:  -- and said that the defendant

3     desires to withdraw his request for a

4     presentence investigation and go forward

5     presently as to sentencing; is that correct?

6          MR. ADAMS:  Yes, it is, Judge.

7          THE COURT:  Is that what you want,

8     Mr. Shabazz?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Okay.  What says the State

11    regarding going forward?

12         MR. ATWELL:  State is okay with that, Judge.

13         THE COURT:  Okay.  Then we'll go forward

14    with sentencing.  Would you like to be heard,

15    Mr. Steensland, concerning sentencing?

16         MR. STEENSLAND:  Your Honor, just very

17    briefly, Your Honor.  You know, Mr. Shabazz

18    exercised his constitutional right for a trial,

19    Judge, before a jury.  I ask that you not hold

20    that against him.  He accepts this verdict.

21        I think you heard him tell the jury thank

22    you when you were done pronouncing the guilty

23    verdicts on him, Your Honor.  And what we'd ask

24    for is a medium-range sentence in this case run

25    concurrently with each other, Judge.

1      THE COURT:  What says the State?  How many
2   priors are there total?
3      MR. ADAMS:  I believe there are five,
4   Your Honor, according to my client.
5      MR. STEENSLAND:  I've got four given to me.
6      THE DEFENDANT:  Four or five.
7      THE COURT:  Okay.  Mr. Shabazz, are you
8   admitting to this Court that you have previously
9   been convicted of four felonies?
10      THE DEFENDANT:  Yes.
11      THE COURT:  And did you have the benefit of
12   an attorney when you were found guilty or pled
13   guilty to those felonies?
14      THE DEFENDANT:  Yes.
15      THE COURT:  So we know there are at least
16   four felony convictions.
17      All right.  Now, what says the State
18   regarding sentencing?
19      MR. ATWELL:  Your Honor, you heard the facts
20   of the case, rape second and sodomy second.  But
21   these facts are particularly heinous I believe
22   in this case.  This man was living with his
23   girlfriend and having sex with her 14-year-old
24   daughter while he was at least 42 years of age.
25      I'm just inclined that, based on the facts

1    as we heard them, this needs a higher end range

2    of punishment on this case.

3          MR. STEENSLAND:  Your Honor, if you --

4          THE COURT:  Well, he's going to get that

5    just by virtue of the Habitual Offender Act.

6          MR. STEENSLAND:  Judge, the only thing I

7    wanted to add, Your Honor, is there was

8    reference of some letters that were written,

9    Judge.  And these were letters written from both

10    Candace and her mother about the defendant and

11    how they wished him not to go to jail.

12         And I think they afforded -- they earned the

13    right to possibly speak to this Court briefly

14    about what they would ask for and what they

15    would suggest to this Court since they are the

16    victim, Judge.

17         MR. ATWELL:  And, of course, they have the

18    right, I guess.  But I just want to point out to

19    the Court, you are aware of the difficulties we

20    had getting them here.

21         I think what we're going to find is that

22    Candace, the 14-year-old -- or now she's 16.

23    She was relying on correspondence that she

24    continued to get with the defendant while he was

25    incarcerated.

1      And when we finally got her in here,

2  Investigator Crawford sat down with Candace and

3  showed her the statement that Mr. Shabazz made

4  and the admissions that he made, about promises

5  he had made to her and promises he made her just

6  to get her to not talk -- I think we've had 180

7  degrees on their attitude as to the prosecution

8  of this case.  But certainly, if mom or Candace

9  would like to speak, I would invite it.

10     THE COURT:  Would one of you like to be

11  heard?  Ms. Downie?

12     MS. MICHELE DOWNIE:  I really don't know

13  what to say.

14     THE COURT:  There's no requirement that you

15  say anything, but it's my understanding that you

16  did want to be heard.

17     MS. MICHELE DOWNIE:  Well, I just -- well,

18  like he said, I did have a different attitude in

19  the beginning because what they were telling

20  me.  And today, after reading what he said on

21  paper and what she told me, you know, I do

22  have -- I am very angry as of right now.  I'm

23  really pissed off, excuse my words.

24     But I'm really angry right now because of

25  the things that I read, you know.  And so that's

1    all I have to say.  I'm real hurt, you know.

2        And now the little fellow there, it is not

3    his fault, but he still have to contend for it.

4        THE COURT:  That's a good point.

5        MS. MICHELE DOWNIE:  I'm a single parent.

6    And it was hard taking care of my three; and

7    trying to switch my shift around to come and

8    take him is even harder.  But like I say, it's

9    not his fault.

10        THE COURT:  It's not the child's fault,

11    right.

12        MS. MICHELE DOWNIE:  It's not his fault.

13    He's innocent.

14        THE COURT:  I agree.  I understand.

15        MS. MICHELE DOWNIE:  I just hated being lied

16    to and manipulated.  And that really hurts.

17        THE COURT:  Yes, ma'am.  Thank you.

18        Anything else, gentlemen?

19        MR. ATWELL:  Judge, if I may.  Based on what

20    I have read and what I have seen and in talking

21    to them, it seems apparent from what was said to

22    this young lady and then what -- based on the

23    statement that he gave to the police officers,

24    that's all it ever was -- was talk to manipulate

25    her at her young age to try and not prosecute

1    him and keep him away.

2            And I think it's apparent what he's done.

3    And that, to me, just adds to the heinous nature

4    of this crime.

5            THE COURT:  Thank you.

6            MR. STEENSLAND:  Judge, I don't know of

7    anything trying to talk them out of coming to

8    testify.  I want to be clear about that part of

9    it, Judge.  About him writing letters telling

10    them not to come testify, I don't know anything

11    about that, Judge.  And I ask you not to take

12    that into consideration, Your Honor.

13            THE COURT:  Alabama law says that in all

14    cases when it is shown that a criminal defendant

15    has been previously convicted of any three

16    felonies and, after such conviction has

17    committed another felony, he must be punished as

18    follows:  On conviction of a Class B felony, he

19    must be punished by imprisonment for life or any

20    term of not less than 20 years.

21            Anything else, gentlemen?

22            MR. ATWELL:  No, sir.

23            MR. STEENSLAND:  No, Your Honor.

24            THE COURT:  Approach.

25            You are Ash-Shakur Halim Shabazz, correct?

1      THE DEFENDANT:  Yes.

2      THE COURT:  And as I indicated to you

3  earlier, the jury having returned guilty

4  verdicts of rape in the second degree and sodomy

5  in the second degree, it's the judgment of this

6  Court that you are guilty of said offenses.

7      Do you have anything to say as to why

8  sentence of law should not be pronounced upon

9  you at this time?

10      THE DEFENDANT:  No.

11      THE COURT:  It is the judgment and sentence

12  of this Court that in each of these cases you

13  are hereby imprisoned in the penitentiary of the

14  State of Alabama for a term of 26 years.

15  Additionally, you are ordered to pay fines of

16  $3,000 in each case and assessments to the

17  Victim's Compensation Fund of $1,000 in each

18  case as well as costs of court.

19      You have 42 days from this date to appeal

20  within the parameters as I described them

21  earlier.

22      MR. STEENSLAND:  Your Honor, we'd ask for

23  those cases to be run concurrently with each

24  other.

25      THE COURT:  Mr. Atwell?

123

```
 1          MR. ATWELL:  Your Honor, we'd be opposed to
 2    CC time.
 3          THE COURT:  Well, I'm going to run them
 4    concurrently and I'll tell you why.  He's being
 5    punished for having sex with an underage girl.
 6    Additionally, he's being punished for having
 7    prior felony convictions.
 8          Now, I'm not saying that to say that there's
 9    any sympathy for him because he's got prior
10    felony convictions, but I'm just saying that the
11    sentence is enhanced for those reasons.
12          And with 26 years he is being punished for
13    all of those reasons.  As far as the sex act, it
14    was sexual intercourse and oral sex.
15          So the charge -- there are two indictments,
16    one for the sodomy and one for the rape.  And
17    while they constitute separate offenses, it is
18    the act of having sex with an underage girl.  Do
19    you understand what I'm saying?
20          MR. ATWELL:  Yes, sir.
21          THE COURT:  So I will run the two cases
22    concurrently, but he will do 26 years.
23          MR. STEENSLAND:  Thank you, Judge.
24          THE COURT:  Okay.  Thank you.  I think I
25    indicated 42 days from this date to appeal --
```

1          MR. STEENSLAND:  Yes, Your Honor.

2          THE COURT:  -- if you so choose.

3          MR. STEENSLAND:  At this point in time,

4     we'll give oral notice of appeal and follow it

5     up with a written motion for both cases.

6          THE COURT:  Thank you.

7                    END OF PROCEEDINGS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    REPORTER'S CERTIFICATE

2

3    STATE OF ALABAMA

4    HOUSTON COUNTY

5

6            I, Andrea E. Martin, RDR, CRR, CBC, CSR and

7    Official Court Reporter in and for the Twentieth

8    Judicial Circuit of Alabama, do hereby certify

9    that the above-styled and numbered cause was

10   reported stenographically by me and is a true

11   and correct transcript of the proceedings and

12   rulings of the Court, and was transcribed by me

13   or under my direction and control.

14           I further certify that I have filed all

15   exhibits offered in the trial of this cause, if

16   any, with the Circuit Clerk of Houston County,

17   Dothan, Alabama, for incorporation into the

18   record on appeal.

19           I further certify that I have, on this day,

20   filed with the Court of Criminal Appeals, and

21   parties here involved, a copy of the reporter's

22   index to the testimony and Certificate of

23   Completion of the transcript of said cause.

24           I further certify that I have filed the

25   original and three copies of this transcript in
```

1     the Office of the Circuit Clerk of the Circuit

2     Court of Houston County, Dothan, Alabama.

3          Dated this 31st day of January, 2006.

4

5

6

7     ANDREA E. MARTIN
      Official Court Reporter
8     Notary Public, State of
      Alabama at Large
9
      My Commission Expires:
10    August 12, 2008

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| State of Alabama<br>Unified Judicial System<br><br>Form ARAP 13 | **CERTIFICATE OF COMPLETION<br>REPORTER'S TRANSCRIPT** | Page Number<br>127 |
|---|---|---|

**TO:  The Clerk of the Court of Criminal Appeals**          Fax: (334)242-4689
           **P. O. Box 301555**
           **Montgomery, Alabama  36130-1555**

**Criminal Appeals Case Number**          **CR  05 - 0706**

<u>**ASH-SHAKUR SHABAZZ**</u>   VS.   <u>**STATE OF ALABAMA**</u>
**Appellant's Name                          Appellee**

On appeal from the:

| X | Circuit Court of | ] |
| | District Court of | ] |  Houston County
| | Juvenile Court of | ] |

Trial Court Case Number   <u>CC-05-1132, 1133</u>

Notice of Appeal Date   <u>12/15/05</u>

    I, <u>Andrea E. Martin</u>, certify that I have this date completed and filed with the clerk of the trial court an original and three copies of a true and correct transcript of all proceedings in the above referenced case that were reported by me and were specifically designated by the appellant for inclusion on the Reporter's Transcript Order.  The transcript, which is numbered serially in the upper right-hand corner of each page, begins with a copy of the Reporter's Transcript Order and an index of both the exhibits and testimony of the witnesses.  The original transcript concludes with the original of this notice and the copies of the transcript conclude with copies of this notice.  The page number appearing in the upper right-hand corner of this certificate is the last page of my portion of the transcript in this case.

    Done this the <u>31st</u> day of <u>January</u>, 2006.


_____
Court Reporter

---

**FILING AND SERVICE OF THIS FORM:  Pursuant to Rule 11(b), A.R.App.P., the court reporter should file a copy of this certificate with the Clerk of the Court of Criminal Appeals and should serve copies of the certificate on counsel for the appellant or the appellant if he or she is not represented by appellate counsel, the attorney general and the district attorney, unless the appeal is from a municipal appeal, in which event a copy of the form should be served on the municipal prosecutor rather than the attorney general and district attorney.**

| State of Alabama<br>Unified Judicial System<br><br>From ARAP - 14  Rev. 11 / 91 | **CERTIFICATE OF COMPLETION AND TRANSMITTAL OF RECORD ON APPEAL BY TRIAL CLERK** | Appellate Case Number<br><br>_____ |
|---|---|---|

| TO: THE CLERK OF<br>    THE COURT OF CRIMINAL APPEALS OF ALABAMA | DATE OF<br>NOTICE OF APPEAL:    01-05-06 |
|---|---|

APPELLANT

ASH-SHAKUR SHABAZZ

v. STATE OF ALABAMA

    I certify that I have this date completed and transmitted herewith to the appellate court the record on appeal by assembling in ( a single volume of __182__ pages) (_____ volumes of 200 pages each and one volume of _____ pages) the clerk's record and the reporter's transcript and that one copy each of the record on appeal has been served on the defendant and the Attorney General of the State of Alabama for the preparation of brief.

    I certify that a copy of this certificate has this date been served on counsel for each party to the appeal.

DATED this____3RD____ day of ___FEBRUARY___, __2006__.

Judy Byrd
Circuit Clerk

90083

CASE NO. CR 05-0706

IN THE COURT OF CRIMINAL APPEALS
OF THE STATE OF ALABAMA

ASH-SHAKUR HALIM SHABAZZ,    )
                              )
       APPELLANT,          )
                              )
                              )
                              )
STATE OF ALABAMA,          )
                              )
       APPELLEE.           )

APPEAL FROM THE CIRCUIT COURT OF

HOUSTON COUNTY, ALABAMA

CASE NOS. CC-05-1132, CC-05-1133

MOTION TO WITHDRAW AS COUNSEL
AND SUPPORTING BRIEF

David Kenneth Hogg
MERRILL, HARRISON AND ADAMS
Attorney for Appellant
State Bar Code ASB
4589-055D
P.O. Box 1690
Dothan, Alabama 36302
(334) 792-0965

— Exhibit B —

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . v

STATEMENT OF CASE . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . 2

STATEMENT OF THE STANDARD OF REVIEW . . . . . . . . 14

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . 15

ARGUMENT . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . 16

TABLE OF ADVERSE RULINGS . . . . . . . . . . . . . 16

## TABLE OF AUTHORITIES

<u>Anders v. California</u>, 386 US 738, 87 S.Ct. 1396,
      18 L.E.d. 2d 493 (1967)   . . . . . . . . . . . . . . 15

## STATEMENT OF THE CASE

Ash-Shakur Halim Shabazz was indicted by the Grand Jury of Houston County for the May term of 2005 on one count of second-degree rape (C. 11-12), and second-degree sodomy (C. 13-14). Shabazz submitted an Affidavit of Hardship. (C. 17-18.) The case action summary notes that Matthew Lamere initially represented Shabazz. (C. 1.) However, Mr. Lamere apparently asked to withdraw and the trial court requested the presiding judge to reassign the case. (C. 20.) Subsequently, Martin Adams was appointed to represent Shabazz. (C. 22.)

Shabazz filed a Plea of Not Guilty and Waiver of Arraignment. (C. 23.) He also filed a Motion for Speedy Trial (C. 25-26) which the court noted (C. 27). Shabazz also filed a Motion for Bond Reduction. (C. 28-29.) After a hearing the court denied the Motion to Reduce Bond. (C.32.) The District Attorney filed a Motion to set the case for trial, noting that Shabazz had filed a Motion for Speedy Trial. (C. 33.) Following a jury trial Shabazz was convicted of rape second degree and sodomy second degree. (C. 35-38.) In each case Shabazz was sentenced to twenty-six years in prison, fined $3,000.00, and assessed $1,000.00 under the Victim's Compensation Act. (C. 39-40.) Shabazz filed a Notice of

1

Appeal. (C. 42.)   Mr. Adams filed a Motion to Withdraw and to Appoint Appellant Counsel. (C. 43-44.)   New counsel was appointed to represent Shabazz on appeal. (C. 47.)

**STATEMENT OF THE ISSUE**

WHETHER THERE EXIST ANY ISSUES WHICH MERIT AN APPEAL.

**STATEMENT OF FACTS**

The court conducted Voir Dire of prospective jurors. (R. 7-19.)   A prospective juror named Toni Jones said she was familiar with a witness, John Crawford of the Dothan Police Department. (R. 12.) Ms. Jones said she could consider Office Crawford's testimony along with the other testimony without giving it undue weight and credit. (R. 13-14.) Several prospective jurors said they knew the attorneys representing the State and the Defendant. (R. 15-17.) However, each of them said that the fact they knew these attorneys would not influence their judgment. (R. 17-18.)

The attorneys conducted their Voir Dire. (R. 19.) Then, several prospective jurors gave private responses before the bench.  One of them, Richard McKinley, said he believed his judgment would be affected by a recent trial against his brother-in-law for sexual abuse against Mr. McKinley's two daughters.  Mr. McKinley said he did not think he could set

2

aside that experience in deciding the present case. (R. 20.)
A prospective juror, Walter Kinsey, said he was arrested for
assault but the charge was dismissed.  He said he could put
that experience aside and base his decision in the present
case solely on the evidence and law and be fair to both sides.
(R. 21.) A prospective juror named Mr. Meeker said he had
previously met one of the Defense attorneys but this would not
effect his judgment of the present case. (R. 22.) Another
juror, Lamartha Kelley, said she was raped as a young child.
She said she thought this experience might effect her judgment
and she did not know if she could put the experience aside in
deciding the present case. (R. 23-24.) A prospective juror,
LaDell Newton, said he had a stress-related heart attack and
did not believe he should serve because of the pressure he
anticipated in the case. (R. 24-25.) The court released Mr.
Newton. (R. 25.)

The Defense moved to strike Mr. McKinley and Ms. Kelley
for cause.  The court granted both strikes. (R. 25-26.)

A jury was selected and seated. (R. 27.) The court
provided the Defense an opportunity to make a <u>Batson</u> motion,
but none was made. (R. 28.) The jury was sworn. (<u>Id.</u>)  The
court gave opening instructions to the jury. (R. 29-37.) The

3

attorneys made opening statements. (R. 37.)

The State's first witness was Candace Downie ("Candace").
(R. 37-38.) In November of 2004 she lived at 205 Pearl Street
in Houston County. (R. 38.) During the last couple of years
she has lived with her mother, Michele Downie. (R. 38-39.)
Candace's baby, Zaire Bashir Shabazz ("Zaire") also lived with
them.  Zaire was born March 30, 2005. (R. 39.) In the early
part of 2005, the Defendant lived in the home with Candace and
her mother. (Id.)  She knew the Defendant through her mother.
(Id.)  He moved into their home because he was going to marry
her mother. (R. 40.) He moved in to their home in November of
2003. (Id.)  Candace identified the Defendant in court. (Id.)
She said the Defendant was good to her when he first moved in.
At the time, she was fourteen years old.  The Defendant was
forty two years old.  He was like a father to her, and like a
husband to her mother. (R. 41.) He continued to live there for
about a year after Zaire was born. (R. 42.)

After the Defendant had lived with them about ten months
he and Candace started having sex.  She said the Defendant was
drinking and they started talking and "one thing led to
another." (Id.)  Candace defined having sex as "sexual
intercourse."  This happened while her mother was at work

4

during the daytime. (R. 43.)  The Defendant did not work, but
stayed home with Candace during the day. (R. 44.)  The first
time they had sex, the Defendant wore a condom.  They had sex
again three weeks later.  This time he was not drinking. (Id.)
He wore a condom the second time. (R. 45.)  Two weeks later
they had sex again and the Defendant was not drinking.  (Id.)
He wore a condom on this occasion also. (R. 45-46.)  Two weeks
later they again had sex and he did not wear a condom. (R.
46.) Candace never told her mother about her involvement with
the Defendant. (Id.)

When she was two months pregnant, Candace realized that
she was pregnant. (Id.)  She is not sure why she named the
baby Zaire Shabazz, but she had no doubt who the father was.
(R. 46-47.) She said the Defendant is the only person with
whom she had sex.  After Zaire was born, she and the Defendant
stopped having sexual intercourse.  Instead, she performed
oral sex on him because she was bleeding due to problems from
giving birth. (R. 47.) Candace twice had oral sex with the
Defendant. (R. 47-48.)

The Defendant left their home on April 15, sixteen days
after Zaire was born. (R. 48.) Candace was not happy that the
Defendant was arrested because she was falling in love with

5

him. She said her feelings for the Defendant continued to exist. (<u>Id.</u>) She admitted she did not want to testify against him. (R. 49.) She said while he lived in their house, he was her mother's boyfriend. (<u>Id.</u>) She agreed that during the time they were having sex he told her that he loved her and has continued to tell her this. (<u>Id.</u>) Candace tried to cover up the fact that he was the father of her child because she did not want anyone to know. (<u>Id.</u>) However, she said she was telling the truth in court. (R. 49-50.)

At the conclusion of Candace's testimony the court called a lunch recess. (R. 50-51.) After lunch, the Defendant's attorney cross-examined Candace. (R. 51-52.) Candace said one of the police officers who questioned her threatened to get a court order from a Judge to take her son if she did not make a statement. (R. 52.) She initially told the police that a young person named Melton was the father of her child. <u>Id.</u> Candace admitted writing several letters to the District Attorney's office in which she admitted that she lied. (R. 53.) She acknowledged that, whereas she testified to having sex with the Defendant ten months after he moved into her mother's home in November of 2003, she had told police that she initially had sex with the Defendant in April of 2004. (R.

6

53-54.) Candace said the police never asked her to provide DNA samples from herself or from Zaire. (R. 55.) On redirect, Candace testified that her date of birth is September 8, 1989. Candace said during the time that she and the Defendant were having sex he promised that she and her baby would live with him when she got older. (R. 56-57.) He told her that it would be just him, Candace and the baby living together. (R. 57.) Candace said the threat to take her baby was made by a DHR worker instead of the police. (R. 58.) She said she told the police the same story she told the jury. (R. 58-59.) Candace acknowledged sending the District Attorney's office a letter in which she said that she was threatened by the police and by the DHR worker. (R. 60.) On redirect examination, Candace said she wrote the letters because she had feelings for the Defendant and did not want him to go to jail. She said she wanted him to help take care of her baby. (R. 61.) Candace is now sixteen years old. (Id.) Her baby is eight months old. (R. 61-62.)

The State next called John Crawford, a detective with the City of Dothan Police Department. (R. 63.) On November 4, 2004 Crawford was notified by DHR that Candace was possibly impregnated by her mother's boyfriend. (R. 64.) Crawford

7

investigated and learned from Candace that she was pregnant.
(R. 64-65.) Initially she told him that a young man who was
about her age had gotten her pregnant. (R. 65.) However,
Crawford was unable to find the person whom Candace had
identified as being the father in the Houston County School
System. (Id.)  Crawford said the victim's mother was also
uncooperative in the investigation, so he asked Candace's
mother to notify the police if she learned more information.
(Id.)

Candace's mother called the police after Zaire was born.
The police had her bring Candace to the Police Department for
an interview.  Candace initially denied that Shabazz was the
father.  However, Crawford told her they would test the baby's
DNA against Shabazz's DNA, whereupon Candace began crying and
admitted Shabazz was the father. (R. 66.) She then gave the
police a handwritten statement about her relationship with
Shabazz. (R. 67.) Crawford next took the Defendant to the
Police Department, read him his rights and interviewed him.
(Id.) The Waiver of Rights form signed by the Defendant was
marked as State's Exhibit number one. (R. 67-68.) Crawford
said the Defendant signed the form and agreed to make a
statement. (R. 69-70.) Crawford did not threaten or coerce the

8

Defendant into making a statement. (R. 70.) The Defendant admitted living in the household with Candace. (_Id._) Initially, the Defendant told Crawford that his relationship with Candace was like that of a step-father. (_Id._) The Defendant admitted that Candace's baby could possibly be his. (R. 70-71.) He admitted having a sexual relationship with Candace on about six occasions. He admitted using condoms during some of the occasions and not using them the last couple of times. (R. 71.) The Defendant admitted that the timing of Candace's pregnancy possibly coincided with his having unprotected sex with her. (R. 71-72.) He said he went to the doctor with Candace. (R.72.)

Crawford said he took a DNA swab from the Defendant. The swab is locked up in the police vault. Crawford said the swab was not sent to the laboratory for testing because the Defendant confessed and cooperated fully. (R. 73.) Crawford said that whether Shabazz is the father of the baby is not dispositive of the case. (_Id._) The Defendant admitted that he wanted to name the baby Shabazz. (R. 74.) The Defendant admitted telling Candace he would marry and later divorce her mother so he could marry Candace. (R. 74-75.) The Defendant told Crawford he made this statement because Candace was

9

always pushing for a relationship with him. (R. 75.) The Defendant admitted to Crawford that he knew it was wrong to have sex with Candace. (Id.) He admitted that he knew she was fourteen years old at the time. (R. 76.) The Defendant admitted that oral sex took place on two occasions. (Id.) He told Crawford they had oral sex because Candace had just had the baby and was still bleeding and having some kidney problems. (R. 76-77.)

On cross-examination, Crawford said he knew that Candace wrote letters to the District Attorney in which she admitted she lied. (R. 77.) Crawford acknowledged that DNA tests would prove who was the father of the baby. (R. 78.) Crawford denied that he or the DHR worker ever threatened Candace. (R. 78-79.)

On redirect examination, Crawford said that although Candace wrote letters to the District Attorney's office in which she admitted lying, she never changed her story about having sex with the Defendant. (R. 81-82.) Crawford said that the Defendant was forty-four years old at the time he gave his statement on April 15, 2005. (R. 82-83.) State's Exhibit One, the Waiver of Rights, was admitted into evidence. (R. 84-85.) The State rested. (R. 85.)

Out of the presence and hearing of the jury, the

10

Defendant moved for a Judgment of Acquittal based on the State's failure to prove a prima facie case. The court denied the Motion. (R. 85-86.)

The jury was returned and the Defendant rested. (R. 88.) The attorneys delivered closing arguments. (R. 89.) The court instructed the jury. (R. 89-108.) Neither party objected to the court's oral charge. (R. 108-09) The court discharged the alternate juror. (R. 109.) The jury retired to deliberate. Afterward, the jury returned with a verdict. (R. 110.) The verdicts were as follows: In case number CC-05-1132 the Defendant was found guilty of rape in the second degree as charged in the indictment. (R. 111-12.) In case number CC-05-1133 the verdict was guilty of sodomy in the second degree as charged in the indictment. (R. 112.) Neither party desired for the jury to be polled. (Id.) The Defendant initially requested a pre-sentence investigation. (R. 113.) The court ordered a pre-sentence investigation then said, "I understand there a number priors here. Are there not [prosecutor]?" The prosecutor replied, "Three plus." (Id.) The court asked the prosecutor to state what priors the Defendant had. The prosecutor replied, "Conspiracy to commit fraud with illegal use of credit cards out of New Jersey, a robbery out of New

11

Jersey, aggravated assault, terrorist threats, burglary and larceny, criminal attempted forgery, aggravated assault with a deadly weapon, aggravated assault with a weapon. That could be the same case. That's it." (R. 113-14.) The court then discharged the jury. (R. 114-15.) The Defendant then withdrew his request for a pre-sentence investigation. The court asked the prosecutor if he desired a pre-sentence investigation. The prosecutor replied, "Well, I don't know.  Are you admitting to the three plus priors?" Defense counsel replied, "Yeah.  We don't have a problem with that." (R. 115.) Counsel for the Defendant asked the court to impose medium-range sentences to run concurrently with each other. (R. 116.) The court inquired, "How many priors are there total?" Counsel for the Defendant replied, "I believe there are five, Your Honor, according to my client." (R. 117.) The following exchange then occurred:

> THE COURT: "Okay.   Mr. Shabazz, are you admitting to this Court that you have previously been convicted of four felonies?"
>
> THE DEFENDANT: "Yes."
>
> THE COURT: "And did you have the benefit of an attorney when you were found guilty or pled guilty to those felonies?"
>
> THE DEFENDANT: "Yes."

12

(Id.) The prosecutor argued for a higher end range of punishment. (R. 117-18.) The court replied, "Well, he's going to get that just by virtue of the Habitual Offender Act." (R. 118.) Defense counsel then argued that Candace and her mother had written letters expressing their wish for the Defendant to not go to jail. (Id.) The prosecutor responded that Candace had relied on correspondence which she received from the Defendant while he was incarcerated, but since reviewing the Defendant's statement and admissions to Officer Crawford, she has changed her mind. (R. 118-19.) Candace's mother addressed the court and said that she was very angry after reading the Defendant's statement. (R. 119-20.) She said she hated being lied to and manipulated. (R. 120.)

The court stated that under the Habitual Felony Offender Act the minimum sentence was twenty years. (Id.) The Defendant refused an opportunity for allocution. (R. 122.) The court sentenced him to twenty-six years on each case, a $3,000.00 fine in each case and a victim's compensation fund assessment of $1,000.00 in each case plus court costs. (R. 122.) The court granted the Defendant's Motion to run the sentences concurrently. (R. 122-23.) The court stated that its reason for running the sentences concurrently was because the

13

sentences were enhanced under the Habitual Felony Offender Act and the two different charges, sodomy and rape, "while they constitute separate offenses, it is the act of having sex with an underage girl." (R. 123.) The Defendant gave oral notice of appeal. (R. 124.)

## STATEMENT OF THE STANDARD OF REVIEW

Where appellate counsel finds Defendant's case to be wholly frivolous, after a conscientious examination of it, he should so advise the Court and request permission to withdraw. The request must, however, be accompanied by a brief reference to anything in the record that might arguably support the appeal.  A copy of counsel's brief should be furnished to the indigent and time allowed to him to raise any points he chooses; the court – not counsel – then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous.  If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires.  On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

14

Jones v. State, 2000 WL 681089 (Ala. Crim. App. 2000) citing

Anders v. California, 386 US 738, 87 S. Ct. 1396, 18 L.E.d. 2d

493 (1967).  See also US v. Gholston, 932 F.2d 904,905 (11th

Cir. 1991) ("It may be that our standard of review under Anders

is higher than in an ordinary appeal where appellate counsel

points out specific issues for us to review.")

### SUMMARY OF THE ARGUMENT

There are no issues for appellate review.  The evidence

at trial presented a question for the jury to decide and no

errors were preserved for appellate review.

### ARGUMENT

There are no issues for appellate review.  The evidence

at trial presented a question for the jury to decide and no

errors were preserved for appellate review.

### CONCLUSION

WHEREFORE, based upon the absence of arguable grounds for

appeal, the undersigned counsel moves for leave to withdraw as

counsel for the Defendant.

Respectfully submitted this February 23, 2006.

MERRILL, HARRISON AND ADAMS

David K. Hogg (HOG007)

15

Attorney for the Defendant
ASB 4589-O55D
P.O. BOX 1690
Dothan, Alabama 36302
(334) 792-0965

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the record on appeal upon Mr. Ahs-Shakur Halim Shabazz. I further certify that I have served a copy of the foregoing upon the following persons by placing a copy of same in the US Mail, postage prepaid and properly addressed this the 3ʳᵈ day of ~~February~~ March, 2006.

Hon. Troy King, Attorney General
11 Union Street
Montgomery, AL 36130

Mr. Ash-Shakur Halim Shabazz
AIS No. 244618
Kilby Correctional Facility
PO Box 150
Mt. Meigs, AL 36057


_David K. Hogg_

## TABLE OF ADVERSE RULING

| Page No. | Ruling |
|----------|--------|
| R. 57 | Overruling objection to question outside the scope of cross-examination. |

16

*EXHIBIT "A"*

Notice: This unpublished memorandum should not be cited as precedent. See Rule 54, Ala.R.App.P. Rule 54(d), states, in part, that this memorandum "shall have no precedential value and shall not be cited in arguments or briefs and shall not be used by any court within this state, except for the purpose of establishing the application of the doctrine of law of the case, res judicata, collateral estoppel, double jeopardy, or procedural bar."

# Court of Criminal Appeals

State of Alabama

Judicial Building, 300 Dexter Avenue

P. O. Box 301555

Montgomery, AL 36130-1555

RELEASED

AUG 11 2006

CLERK
ALA COURT CRIMINAL APPEALS

H.W."BUCKY" McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges

Lane W. Mann
Clerk
Gerri Robinson
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

## MEMORANDUM

CR-05-0706              Houston Circuit Court CC 05-1132, 1133

<u>Ash-Shakur Halim Shabazz v. State</u>

McMILLAN, Presiding Judge.

The appellant, Ash-Shakur Halim Shabazz, was convicted of one count of second-degree rape, in violation of § 13A-6-62, Ala. Code 1975, and one count of second-degree sodomy, in violation of § 13A-6-64, Ala. Code 1975. He was sentenced to 26 years' imprisonment on both counts, with the sentences to run concurrently. He was sentenced under the Habitual Felony

1         — *Exhibit C*

Offender Act, as a defendant with four prior felony offenses. He was also ordered to pay a $3,000 fine, a $1,000 assessment to the Victim's Compensation Fund, and to pay all court costs.

Shabazz's appointed counsel has filed a "no merit" brief in substantial compliance with Anders v. California, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), in which counsel states that he has thoroughly reviewed the record and can find no meritorious issues upon which to base an appeal. Shabazz was given an opportunity to present pro se issues to his counsel and to this Court, but has not done so.

We have also examined the record in this cause and have found no error harmful to the appellant's rights. Our review of the record established that the evidence was sufficient to support Shabazz's convictions for second-degree rape and second-degree sodomy. Accordingly, the judgment of the trial court is due to be affirmed.

**AFFIRMED.**

Cobb, Baschab, Shaw, and Wise, JJ., concur.

2

COURT OF CRIMINAL APPEALS NO. _____    CR -06-1124

# APPEAL TO ALABAMA COURT OF CRIMINAL APPEALS

**FROM**

CIRCUIT COURT OF _____ HOUSTON _____ COUNTY, ALABAMA

CIRCUIT COURT NO  CC2005-1132.60 CC2005-1133.60.

CIRCUIT JUDGE _____ LARRY K. ANDERSON

Type of Conviction/ Order Appealed From: _____ RULE 32 PETITION

Sentence Imposed: _____ PETITION DENIED

Defendant Indigent: ☑ YES  ☐ NO

## ASH-SHAKUR SHABAZZ

NAME OF APPELLANT

PRO-SE _____ #244618

(Appellant's Attorney) _____ (Telephone No.)

HOLMAN UNIT 3700

(Address)

ATMORE _____ AL. _____ 36503-3700

(City) _____ (State) _____ (Zip Code)

**v.**

## STATE OF ALABAMA

NAME OF APPELLEE

(State represented by Attorney General)

NOTE:  If municipal appeal, indicate above, and enter

name and address of municipal attorney below.

_____

_____

(For Court of Criminal Appeals Use Only)

EXhibit  D

CLERK'S INDEX

CASE ACTION SUMMARY  CC 2005-1132.60 — 1-2

CASE ACTION SUMMARY  CC 2005-1133.60 — 3-4

4-13-06 ORDER TAKEN FROM RULE 32: GRANTED AS TO FILING FEE. — 5

PETITION FOR RELIEF FROM CONVICTION OR SENTENCE. — 6-20

IN FORMA PAUPERIS DECLARATION — 21-23

4-13-06 ORDER:  RULE 32 HEARING IS SET  FOR MAY 26, 2006 AT 9:00 A.M. — 24

TRANSPORT  ORDER — 25

ORDER FROM CCA : CIRCUIT COURT DIRECTED TO HOLD THE RULE 32 IN ABEYANCE UNTIL THE APPEAL ON THE CASE IS RULED ON. — 26

5-4-069 ORDER:  PER ORER FROM COURT OF CRIMINAL APPEALS, RULE 32 PETITION IS STAYED PENDING APPEAL.  HEARING OF MAY 26 IS CANCELLED. — 27

MOTION FOR APPOINTMENT OF COUNSEL — 28-29

LETTER FROM DEFT: COURT MAY PROCEED WITH RULE 32 — 30

09-19-06 ORDER:  DEFENDANT'S CONVICTION WAS AFFIRMED ON APPEAL.  RULE 32 PETITION MAY NOW GO FORWARD.  ATRTORNEY ERIC DAVIS APPOINTED TO REPRESENT DEFENDANT ON HIS RULE 32 PETITION. — 31

MOTION FOR SUMMARY DISPOSITION — 32-35

03-02-07 ORDER:  RULE 32 HEARING IS SET FOR FEBRUARY 23, 2007 AT 9:00 A.M. — 36

TRANSPORT ORDER — 37

RULE 32 ORDER:  RULE 32 PETITION DENIED — 38-40

NOTICE OF APPPEAL TO THE COURT OF CRIMINAL APPEALS FILED BY ERIC DAVIS. — 41

MOTION TO WITHDRAW – ERIC DAVIS — 42

COURT OF CRIMINAL APPEALS DOCKETING STATEMENT — 43-44

CLERK'S INDEX – PAGE 2

COURT REPORTER'S TRANSCRIPT ORDER — 45

NOTICE OF APPEAL FILED BY DEFT. — 46

3-23-07 ORDER:  ATTY DAVIS IS ALLOWED TO WITHDRAW.  APPEAL NOTED.  THE COURT WILLNOT APPOINT APPELLANT COUNSEL. — 47

CLERK'S NOTICE OF APPEAL  CC 2005-1132.60 — 48

CLERK'S NOTICE OF APPEAL  CC 2005-1133.60 — 49

NOTICE OF APPEAL FILED BY DEFT. — 50-51

ORDER FROM CCA – TRANSCRIPT WILL BE ACCEPTED IF FILED BY MAY 25, 2007, ALTHOUGH FILED LATE. — 52

LETTER FROM DEFT. — 53

COURT REPORTER'S INDEX TO TRIAL EXHIBITS — 54

STATE'S EXHIBIT NUMBER  1 — 55

COURT REPORTER'S TRANSCRIPT OF RULE 32 HEARING — 1-28

CERTIFICATE OF COMPLETION — 84

```
   'R0372                 ALABAMA JUDICIAL INFORMATION SYSTEM      CASE: CC 2005 001132.60
      R: RHM                    CASE ACTION SUMMARY
   _SE:   1                      CIRCUIT  CRIMINAL
                                                                    RUN DATE: 04/07/2006
IN THE CIRCUIT COURT OF  HOUSTON
                                                                          JUDGE: LKA
STATE  OF  ALABAMA                  VS        SHABAZZ ASH-SHAKUR HALIM  244618
                                              C/O HOUSTON COUNTY JAIL   Holman unit 37O
CASE: CC 2005 001132.60                       901 E MAIN STREET
                                              DOTHAN, AL  36301 0000  atmore, Al 36503
DOB: 07/12/1960          SEX: M  RACE: B  HT: 6 05  WT: 270   HR: BLK EYES: BRO
SSN: 138526572  ALIAS NAMES:
CHARGE01: RULE 32-FELONY         CODE01: RULE   LIT: RAPE 2ND DEGRE TYP: F #: 001
OFFENSE DATE: 04/01/2004                 AGENCY/OFFICER: 0380100 JOHN CR
DATE WAR/CAP ISS:
DATE    INDICTED: 06/09/2005             DATE ARRESTED: 06/11/2005
DATE    RELEASED:                        DATE    FILED: 04/06/2006
BOND       AMOUNT:    $20,000.00         DATE  HEARING:
                                             SURETIES:
DATE 1:                 DESC:
DATE 2:                 DESC:            TIME: 0000
                                        TIME: 0000
TRACKING NOS: DC 2005 001545 00  /  WR 2005 013910 00  /
   DEF/ATY: PRO SE                      TYPE: A
                                                                          TYPE:
                           00000
                                                        00000
PROSECUTOR: VALESKA DOUGLAS A
```

```
OTH CSE: DC200500154500 CHK/TICKET NO: WR2005013910        GRAND JURY: 314-5
COURT REPORTER:                       SID NO:       000000000
   STATUS: JAIL                       DEMAND: Y                    OPER: RHM
NOTE:  4-7-06 RULE 32 FILED
DATE            ACTIONS,  JUDGEMENTS,  AND  NOTES
```

| DATE | ACTIONS, JUDGEMENTS, AND NOTES |
|---|---|
| 04-06-06 | Petition for relief from conviction or sentence.  In forma pauperis filed. |
| 4/13/06 | Rule 32 hearing is set for May 26, 2006 at 9:00 a.m. |
|  | N. Da & Deft                         Terry K. Anderson, Judge |
| 4-13-06 | Order taken from petition: Granted as to filing fee. |
|  | /s/ Anderson, Judge |
| 04-25-06 | Order from CCA - Motion to stay appeal on .00 case denied.  Circuit Court |
| 8 | directed to hold Rule 32 in abeyance until appeal on .00 is completed. |
| 5-1-06 | Per order from Court of Criminal Appeals Rule 32 petition is stayed pending appeal. Hearing of May 26 is cancelled.  5-10-06 N. Da & Deft   Anderson, Judge |

AOCRO369   A L A B A M A   J U D I C I A L   I N F O R M A T I O N   C E N T E R

CASE ACTION SUMMARY
CONTINUATION

CASE: CC 2005 001132.60
JUDGE ID:  LKA

STATE  OF  ALABAMA                        VS        SHABAZZ ASH-SHAKUR HALIM

| DATE | ACTION, JUDGMENTS, CASE NOTES |
|------|------------------------------|
| 9-19-06 | Defendant's conviction was affirmed on appeal. Rule 32 petition may now go forward. Attorney Eric Davis appointed to represent Defendant on his Rule 32 petition. <br> Anderson, Judge |
| | 9-28-06 N, DA, ED, Deft |
| 12-6-06 | Re-notified DA & ED |
| 12-13-06 | Motion for Summary disposition |
| 1/2/07 | Rule 32 hearing is set for February 23, 2007 at 9:00 a.m. <br> Terry K. Anderson, Judge |
| | 1-9-07 N, DA, ED, Jail |
| 1-30-07 | Transport order in file |
| 2-26-07 | Rule 32 Order, Petition Denied <br> 2-27-07 N, Da, Deft, ED. |
| 3-16-07 | Notice of appeal, motion to withdraw, CCA Docketing statement, Cr transcript order filed <br> 3-20-07 N, Da, SH |
| 3-23-07 | Attorney Davis is allowed to withdraw. Appeal noted. The Court will not appoint appellate counsel. <br> Anderson, Judge <br> 4-2-07 N, DA, ED, Deft |
| 04-02-07 | Clerk's notice of appeal, CCA docketing statement and CR transcript order to CCA, AG, SH, deft, DA |

2

```
7  0372              ALABAMA JUDICIAL INFORMATION SYSTEM      CASE: CC 2005 001133.60
   R: RHM                        CASE ACTION SUMMARY
 P GE:   1                       CIRCUIT   CRIMINAL              RUN DATE: 04/07/2006
=================================================================================
IN THE CIRCUIT COURT OF  HOUSTON
                                                                     JUDGE: LKA
STATE  OF  ALABAMA                    VS      SHABAZZ ASH-SHAKUR HALIM 244618
CASE: CC 2005 001133.60                       C/O HOUSTON COUNTY JAIL
                                              901 E MAIN STREET    Holman unit 3700
                                       DOTHAN, AL  36301 0000  Atmore, Al 36503
DOB: 07/12/1960         SEX: M  RACE: B  HT: 6 05  WT: 270  HR: BLK EYES: BRO
SSN: 138526572 ALIAS NAMES:
=================================================================================
CHARGE01: RULE 32-FELONY      CODE01: RULE  LIT: SODOMY 2ND DEG TYP: F #: 001
OFFENSE DATE: 04/01/2004             AGENCY/OFFICER: 0380100 JOHN CR

DATE WAR/CAP ISS:                        DATE ARRESTED: 06/11/2005
DATE  INDICTED: 06/09/2005               DATE  FILED: 04/06/2006
DATE  RELEASED:                          DATE  HEARING:
BOND   AMOUNT:    $20,000.00                   SURETIES:

DATE 1:            DESC:               TIME: 0000
DATE 2:            DESC:               TIME: 0000
TRACKING NOS: DC 2005 001546 00  /  WR 2005 013911 00  /
   DEF/ATY: PRO SE                   TYPE: A
                                                                    TYPE:
                        00000                          00000
PROSECUTOR: VALESKA DOUGLAS A

=================================================================================
OTH CSE: DC200500154600 CHK/TICKET NO: WR2005013911      GRAND JURY: 317-5
COURT REPORTER:              SID NO:     000000000
   STATUS: JAIL              DEMAND: Y                      OPER: RHM
NOTE: 4-7-06 RULE 32 FILED
=================================================================================
DATE            ACTIONS,  JUDGEMENTS,  AND  NOTES
=================================================================================
```

| DATE | ACTIONS, JUDGEMENTS, AND NOTES |
|---|---|
| 04-06-06 | Petition for relief from conviction or sentence. In forma pauperis filed. |
| 4/13/06 | Rule 32 hearing is set for May 26, 2006 at 9:00 a.m. |
|  | 4-17-06 N. Da & Deft   _Larry K. Anderson, Judge_ |
| 04-25-06 | Order to stay appeal on .00 case is denied. Circuit Court ordered to hold Rule 32 in abeyance until .00 appeal is completed. |
| 5-1-06 | Per order from Court of Criminal Appeals Rule 32 petition is stayed pending appeal. Hearing of May 26 is cancelled.   _Larry K. Anderson, Judge_ |
|  | 5-10-06 N. Da & Deft |

3

ACRO369   A L A B A M A   J U D I C I A L   I N F O R M A T I O N   C E N T E R

CASE ACTION SUMMARY
CONTINUATION

CASE: CC 2005 001133.60
JUDGE ID:  LKA

STATE OF ALABAMA                    VS    SHABAZZ ASH-SHAKUR HALIM

| DATE | ACTION, JUDGMENTS, CASE NOTES |
|------|-------------------------------|
| 9-19-06 | Defendant's conviction was affirmed on appeal. Rule 32 petition may now go forward. Attorney Eric Davis appointed to represent Defendant on his Rule 32 petition. Anderson Judge /S/ = CC 2005-1132 |
| 12-13-06 | Motion for Summary Disposition |
| 1/2/07 | Rule 32 hearing is set for February 23, 2007 at 9:00 a.m. Jerry K. Anderson, Judge |
| 1-9-07 | N.Da, EaD, Grid |
| 2-26-07 | Rule 32 order in file, Petition Denied. |
| -16-07 | Notice of appeal, CCA Docketing Statement, CR transcript order. Motion to withdraw. |
| 03-23-07 | Attorney Davis is allowed to withdraw.  Appeal noted.  The Court will not appointed appellant counsel.  /s/ Anderson, Judge |
| 04-02-07 | Clerk's notice of appeal, CCA docketing statement and CR transcript order to CCA, AG, SH, deft, DA |

4

PETI
CONVI

Alaba

Granted as to
filing fee. Anderson, Judge
4-13-06

IN THE _____    Cir

# PETITION FOR RELIEF FROM
# CONVICTION OR SENTENCE

### (Pursuant to Rule 32,
### Alabama Rules of Criminal Procedure)

*Granted as to filing fee Robson Judge 4-13-06*

Case Number

<u>CC</u>   <u>05</u> − <u>1132−1133</u>
  ID    YR     NUMBER

IN THE _____ Circuit _____ COURT OF Houston County ALABAMA

Ash − Shakur Halim Shabazz vs.   State of Alabama
Petitioner (Full Name)                          Respondent

[Indicate either the "State" or,
if filed in municipal court, the
name of the "Municipality"]

Prison Number 244618 _____ Place of Confinement Holman

County of conviction Houston County Circuit Court

### NOTICE: BEFORE COMPLETING THIS FORM, READ CAREFULLY THE ACCOMPANYING INSTRUCTIONS.

1. Name and location (city and county) of court which entered the judgment of conviction or sentence under attack Houston County Circuit Court Dothan, Alabama

2. Date of judgment of conviction _____

3. Length of sentence Twenty − Six (26) years

4. Nature of offense involved (all counts) Rape II; Sodomy II

_____

_____

_____

5. What was your plea? (Check one)

(a) Guilty _____

(b) Not guilty X

(c) Not guilty by reason of mental disease or defect _____

(d) Not guilty and not guilty by reason of mental disease or defect _____

6

6. Kind of trial: (Check one)

   (a)  Jury  _X_              (b)  Judge only _____

7. Did you testify at the trial?

   Yes _____              No _X_

8. Did you appeal from the judgment of conviction?

   Yes _X_                 No _____

9. If you did appeal, answer the following:

   (a)  As to the state court to which you first appealed, give the following information:

        (1)  Name of court ____ Alabama Court of Criminal Appeals

        _____

        (2)  Result ____ Pending

        _____

        (3)  Date of result _____

        _____

   (b)  If you appealed to any other court, then as to the second court to which you appealed, give the following information:

        (1)  Name of court _____ N/A

        _____

        (2)  Result _____

        _____

        (3)  Date of result _____

        _____

   (c)  If you appealed to any other court, then as to the third court to which you appealed, give the following information:

        (1)  Name of court _____ N/A

        _____

        (2)  Result _____

        _____

        (3)  Date of result _____

        _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

Yes _____          No _✗_

11. If your answer to Question 10 was "yes", then give the following information in regard to the first such petition, application, or motion you filed:

   (a)  (1)  Name of court _____ N/A _____

       (2)  Nature of proceeding _____

       (3)  Grounds raised _____

            _____

            _____

            _____

            (attach additional sheets if necessary)

       (4)  Did you receive an evidentiary hearing on your petition, application, or motion?

           Yes _____          No _____

       (5)  Result _____

       (6)  Date of result _____

   (b)  As to any second petition, application, or motion, give the same information:

       (1)  Name of court _____ N/A _____

       (2)  Nature of proceeding _____

       (3)  Grounds raised _____

            _____

            _____

            _____

            (attach additional sheets if necessary)

       (4)  Did you receive an evidentiary hearing on your petition, application, or motion?

           Yes _____          No _____

       (5)  Result _____

       (6)  Date of result _____

   (c)  As to any third petition, application, or motion, give the same information (attach additional sheets giving the same information for any subsequent petitions, applications, or motions):

       (1)  Name of court _____ N/A _____

(2) Nature of proceed _____

(3) Grounds raised _____

_____

_____

_____

_____

(attach additional sheets if necessary)

(4) Did you receive an evidentiary hearing on your petition, application, or motion?

Yes _____          No _____

(5) Result _____

(6) Date of result _____

(d) Did you appeal to any appellate court the result of the action taken on any petition, application, or motion?

(1) First petition, etc.       Yes _____          No _____

(2) Second petition, etc.      Yes _____          No _____

(2) Third petition, etc.       Yes _____          No _____

**ATTACH ADDITIONAL SHEETS GIVING THE SAME INFORMATION
FOR ANY SUBSEQUENT PETITIONS, APPLICATIONS, OR MOTIONS.**

(e) If you did not appeal when you lost on any petition, application, or motion, explain briefly why you did not:

_____ N/A _____

_____

_____

12. Specify every ground on which you claim that you are being held unlawfully, by placing a check mark on the appropriate line(s) below and providing the required information. Include all facts. If necessary, you may attach pages stating additional grounds and the facts supporting them.

# GROUNDS OF PETITION

Listed below are the possible grounds for relief under Rule 32. Check the ground(s) that apply in your case, and follow the instruction under the ground(s):

XX  A.  The Constitution of the United States or of the State of Alabama requires a new trial, a new sentence proceeding, or other relief.

For your information, the following is a list of the most frequently raised claims of constitutional violation:.

(1) Conviction obta... .d by plea of guilty which was unlawfully  )uced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(2) Conviction obtained by use of coerced confession.

(3) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(4) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(5) Conviction obtained by a violation of the privilege against self-incrimination.

(6) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(7) Conviction obtained by a violation of the protection against double jeopardy.

(8) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

XX (9) Denial of effective assistance of counsel.

**This list is not a complete listing of all possible constitutional violations.**

If you checked this ground of relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each constitutional violation that you claim, whether or not it is one of the nine listed above, and include under it each and every fact you feel supports this claim. Be specific and give details.

XX B. <u>The court was without jurisdiction to render the judgment or to impose the sentence.</u>

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

XX C. <u>The sentence imposed exceeds the maximum authorized by law, or is otherwise not authorized by law.</u>

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

_____ D. <u>Petitioner is being held in custody after his sentence has expired.</u>

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

_____ E. <u>Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:</u>

<u>The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to rule 24, or in time to be included in any previous collateral proceeding, and could not have been discovered by any of those times through the exercise of reasonable diligence; and</u>

<u>The facts are not merely cumulative to other facts that were known; and</u>

5
10

The facts do not merely amou.. .to impeachment evidence; and

If the facts had been known at the time of trial or sentencing, the result would probably have been different; and

The facts establish that petitioner is innocent of the crime for which was convicted or should not have received the sentence that he did.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

_____ F.  **The petitioner failed to appeal within the prescribed time and that failure was without fault on petitioner's part.**

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

13.  **IMPORTANT NOTICE REGARDING ADDITIONAL PETITIONS RULE 32.2(b) LIMITS YOU TO ONLY ONE PETITION IN MOST CIRCUMSTANCES. IT PROVIDES:**

"<u>Successive Petitions</u>. The court shall not grant relief on a second or successive petition on the same or similar grounds on behalf of the same petitioner. A second or successive petition on different grounds shall be denied unless the petitioner shows both that good cause exist why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice."

A.  Other than an appeal to the Alabama Court of Criminal Appeals or the Alabama Supreme Court, have you filed in state court any petition attacking this conviction or sentence?

Yes _____          No _X_

B.  If you checked "Yes," give the following information as to earlier petition attacking this conviction or sentence:

(a)  Name of court _____ ⏞ ﬀ _____

(b)  Result _____

(c)  Date of result _____
     (attach additional sheets if necessary)

C.  If you checked the "Yes" line in 13A, above, and this petition contains a different ground or grounds of relief from an earlier petition or petitions you filed, attach a separate sheet or sheets labeled: "EXPLANATION FOR NEW GROUND(S) OF RELIEF."

On the separate sheet(s) explain why "good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and [why the] failure to entertain [this] petition will result in a miscarriage of justice."

14.  Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?

Yes _X_          No _____

15. Give the name and address, known, of each attorney who represent you at the following stages of the case that resulted in the judgment under attack:

(a) At preliminary hearing _____

(b) At arraignment and plea __ Martin Adams  739 West Main St. Dothan, Al. 36301

(c) At trial __ John Steensland, / R. Martin Adams 739 West Main St. Dothan, Al. 36301

(d) At sentencing _____

(e) On appeal __ David Kenneth Hogg P.O. Box 1690 Dothan, Al. 36302

(f) in any post-conviction proceeding _____

_____

(g) On appeal from adverse ruling in a post-conviction proceeding _____

_____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?

Yes __X__          No _____

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes _____          No __X__

(a) If so, give name and location of court which imposed sentence to be served in the future: __N/A__

(b) And give date and length of sentence to be served in the future: _____ N/A

_____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes _____          No __X__

18. What date is this petition being mailed?

_____ 3/23/08 _____

Wherefore, petitioner prays that the court grant petitioner relief to which he may be entitled in this proceeding.

7
12

# PETITIONER'S VERIFICATION UNDER OATH
# SUBJECT TO PENALTY FOR PERJURY

I swear (or affirm) under penalty of perjury that the foregoing is true and correct.

Executed on ___3/22/06_____ .
                    (Date)

_____
Signature of Petitioner

SWORN TO AND SUBSCRIBED before me this the _22_ day of _March_____, _2006_

_____
Notary Public

My Commission Expires July 17, 2008

**OR \***

## ATTORNEY'S VERIFICATION UNDER OATH
## SUBJECT TO PENALTY FOR PERJURY

I Swear (or affirm) under penalty of perjury that, upon information and belief, the foregoing is true and correct. Executed on _____ .
                                                (Date)

_____
Signature of Petitioner's Attorney

SWORN TO AND SUBSCRIBED before me this the _____ day of _____, _____ .

_____
Notary Public

Name and address of attorney representing petitioner
in this proceeding (if any)

_____

_____

_____

_____

_____

\* If petitioner is represented by counsel, Rule 32.6(a) permits either petitioner or counsel to verify the petition.

ATTACHMENT TO PETITION FOR POSTCONVICTION
RELIEF PURSUANT TO RULE 32 A.R.CR.P.

I. GROUNDS OF PETITION

A. DENIAL OF EFFECTIVE ASSISTACNE OF COUNSEL

II. SUPPORTING FACTS:

Petitioner Ashe Sha Kur " Shabazz, submits that his trial
counsel's John Steensland; Marvin Adams, and Mark Johnson did
not render reasonably effective assistance of counsel, prior
to, during and after petitioner's trial.

Counsel errors and omissions were deficient and prejudice
the substantial rights of the petitioner to the extent that
petitioner was deprived of his Sixth and Fouteenth Amendment
rights to a fundamental fair trial.

Petitioner submits but for counsels error, there's a reason-
able, probability the results of the proceeding would have
been different.

Counsel errors and omissions inlcudes but is not limited
to the following:

1. Petitioner was denied his Sixth Amendment right to effective
asstistance of counsel when counsel fail to object to the trial
court erroneous consolidation of the charges for trial, without
first giving the petitioner notice and the opportunity to be
heard.

Petitioner submits that at the outset of trial, the record
reflects the following:

THE COURT: I assume these are consolidated for trial purposes.
MR. STEENSLAND: (Defense Counsel) I dont know if there was a
motion filed.
THE COURT: I'm not aware of any motion.
MR. STEENSLAND: I'm not opposed to it, Judge.
THE COURT: Not opposed to it. Okay they will be.
(R.8-9).

Petitioner argues that it was error for the court to con-
solidate the charges without following the procedure protections
required by law.

14

Counsel error in failing to object to this action was pre-
judical and denied the petitioner a fundamental fair trial.

2. Counsel was ineffective and petitioner was prejudice thereby
when counsel fail to object to the prosecution use of its per-
emptory, strikes to remove males from serving on the petit
jury., solely on the basis of the petitioner's gender.

Petitione submits that the record does not contain the
master jury list or the strike list, nor was the names, race
and gender of the petit jury transcribed in the record. Therefore
petitioner moves this court to order discovery of the same,
so that petitioner may present evidence proving his claim.

Further, petitioner request that this court take judicial
notice of the percentage of males and females in Houston County
Alabama.

However, the record does reflect that there was no objection
to the composition of the jury.

Petitioner contends that counsels error in this regard
prejudiced the fundamental rights of the petitioner.

3. Counsel was ineffective and peitioner was prejudice thereby
when counsel fail to object to the trial courts failure to admon-
ish, the jury during the lunch recess.

Petitioner submits that the record reflects, during the
lunch recess the trial court allowed the jurors to seperate
without admonishing the jury as required by Rule 19.3(b) A.R.Cr.
(R.50-51).

Petitioner avers that he was prejudice by counsel failure
to object or request instructions to the jury, as it allowed
the jury to consider outside influences in arriving at their
verdicts.

4. Counsel was ineffective and petitioner was prejudice thereby
when counsel fail to object to the trial court acting in the
role of the prosecution.

Petitioner avers that during his trial the trial court
questioned a witness on a material element of the case. Specif-
ically, the record relects the following, after counsels finish-
ed, questioning State witness John Crawford, a detective with
the City of Dothan Police Department.

THE COURT: Thank you. You all have further need of officer Craw-
ford?
MR. ATWELL: No Sir.
MR. STEENSLAND: No, Sir.
THE COURT: Did you establish the age of the defendant at the
time of the statement?
THE WITNESS: Fourteen.
THE COURT: The defendant.
THE WITNESS: Oh, of the defendant. I'm sorry forty-four.
THE COURT: And this was when?
THE WITNESS: The statement was on April 15,2005.
THE COURT: Thank You. Anything else, gentlemen?
MR. ATWELL: That's all. (R. 82-84)

Petitioner avers that knowledge of the victims age was
a crucial issue in the case, and the trial court questioning
of the witness to establish this element for the prosecution
was error.

Counsel failure to object to this action was prejudical
to the substantial rights of the petitioner and deprived the
petitioner of a fundamental fair trial.
5. Counsel was ineffective and petitioner was prejudiced thereby
when counsel fail to advise the petitioner of hi rights to test-
ify, in his own defense.

Petitioner avers that his trial counsel at no time prior
to during or after his trial avise the petitioner of his Con-
stitutional Right to take the witness stand and testify in his
own defense. Counsel never advised the petitioner that the right
to testify is personal and can only be waived by the petitioner.

Petitioner submits had he known he had the right to testify
in his own defense, he would have elected to do so and tell
the jury his side of the charges.

Counsels errors in this regards deprived the petitioner
of his fundamental rights.
6. Counsel was ineffective and petitioner was prejudice thereby
when counsel fail to move for a mistrial or exclusion of the
victims testimony on the grounds of coercion, threats and tamper-
ing, with the witness.

Petitioner avers that during the course of his trial it
was discovered that law enforcement officials and a case worker
with the Department of Human Resources had threaten the victim,
by threatenen to take away the victims child if she did'nt give
a statment.(R.52-54,58,79).

16

Petitioner avers, that initially the victim refused to give a statement and futher initially stated that someone else was the father of the child. (R.52).

It was only after the threats and coercion that the victim changed her story and implicated the petitioner.

Petitioner avers that counsel should have moved for a mistrial, or requested that the victims testimony be excluded on the grounds that her testimony was the product of illegal tactics by law enforcement officials and government agencies.

Certainly, counsel errors in this regard was prejudical to the fundamental Constitutional Rights of the petitioner and deprived the petitioner of a fair trial.

7. Counsel was ineffective and petitioner was prejudiced thereby when counsel fail to move for a mistrial or cautionary instructions, based on the introduction of hearsay evidence after the trial court sustained an objection.

During the direct examination of state witness John Crawford the record reflects the following:

By Mr. Atwell: (Prosecutor)

Q. Did you talk to him about age?

A. I did.

Q. And what did he tell you about that?

A. I'm sorry I did not. That was corporal Brian Cherry talked to him about the age of the victim, if he understood how old she was at the time.

Mr. Steensland: Objection, hearsay.

The Court: Sustained.

(R-75-76).

17

Petitioner avers that though the trial court sustained the objection the prosecution still illicited the hearsay evidence from the witness and considered by the jury. (R. 76-77).

Counsel should have moved for mistrial or requested that the trial court instruct the jury to disregard the hearsay evidence, as the evidence was on a material issue in the case.

Counsel errors in this regard was prejudical to the substantive Constitutional Rights of the petitioner, and deprived the petitioner of a fundamental fair trial.

8. Counsel was ineffective and petitioner was prejudice thereby when counsel fail to object to the trial court Oral Instructions to the jury.

Petitioner avers during the trial court's Oral Instructions to the jury the trial court commited errors and omissions that deprived the petitioner of a fair trial specifically:

(1.) The trial court erred in instructing the jury as to the law regarding the petitioner's rights to not testify in his own defense, during it's oral charge the court stated:

> Now, ladies and gentlemen, the defendant did not testify in his own behalf in this case or these cases. That must not and you can not take that into consideration either for or against the defendant. The defendant has the right to testify in his own behalf or to not testify in his own behalf.
> And the fact that he does stay off the witness stand and does not testify can not be taken and considered by the jury when it goes out to weigh and consider all of the testimony in this case and makes up its verdict as to the guilt or innocence of the defendant.

(R. 104)

Petitioner submits that this instruction is erroneous proposition of law, as the presumption of innocence attends the petitioner

throughout trial until overcome by proof beyond a reasonable
doubt. The Trial Court instructed the jury that petitioner's
election not to testify could not be considerd, however, the
law requires that it be considered in connection with the pre-
sumption of innocence.

Counsel should have objected in this regards, as the erron-
eous instructions deprived the petitioner of a fair trial.

(2). The Trial Court erred in allowing the jury to take their
personal notes into the jury deliberation room with them while
deliberating on the case. (R. 105-06)

Petitioner contends that this was error, as it allow
the jury to consider outside influence in arriving at its verdict.

Counsel should have objected to the erroneous instructions.

(3). The Trial Court fail to instruct the jury that they
must consider each charge seperately and that their verdict must
be unanimous with respect to each charge.

Petitioner submits that the Trial Court omission in this
regard was prejudical, as it allow the jury to find petitioner
guilty of all charges solely upon proof of only a single charge.

Counsel should have objected to the Trial Court's omission.

9. Counsel was ineffective and Petitioner was prejudiced
thereby when counsel fail to move to suppress the statement of
the petitioner on the grounds that it was the product of Police
Coercion, Threats and Intimidation.

Petitioner submits at the time of his arrest Detective
John Crawford of the Dothan Police Department, and several other
Investigators rushed into his resident to arrest him, and took
the petitioner down to the Police station for Questioning. (R.
67-68)

19

At the time of the interrogation, Petitioner was threatened Coercedf and Intimidated by the Officers, which resulted in petitioner giving an incriminating statements.

Petitioner submits that Counsel failure to move to suppress the stattements was prejudical to his substantial rights.

Wherefore, Premises considered, Petitioner praysd that this Court set this cause for a hearing, with appointment of counsel, and after hearing the evidence, Grant the Petitioner a New Trial. So it is forever Prayed.

Respectfully Submitted,

ASH SHAKUR HALIM SHABAZZ
A/YS# 244618
Holman Unit 3700
Atmore, Al. 36503-3700

CERTIFICATE OF SERVICE

, I hereby certify that I have this 23 day of March 2006, served a copy of the foregoing on all Parties to this action, by placing a copy of the same in the U.S. mail, postage prepaid and properly addressed.

ASH-SHAKUR HALIM SHABAZZ

20

Case Number

CC OS 1132-1133
ID  YR  NUMBER
(To be completed
by Court Clerk)

# IN FORMA PAUPERIS DECLARATION

In The Circuit Court of Houston County, Alabama
[Insert appropriate court]

Ash-Shakur Halim Shabazz
(Petitioner)

vs.

State of Alabama
(Respondent(s))

## DECLARATION IN SUPPORT OF REQUEST TO PROCEED
## IN FORMA PAUPERIS

I, Ash-Shakur Halim Shabazz , declare that I am the petitioner in the above entitled case; that in support of my motion to proceed without being required to prepay fees, costs, or give security therefor, I state that because of my poverty I am unable to pay the costs of said proceeding or to give security therefor; that I believe I am entitled to relief.

1. Are you presently employed?    Yes _____    No _X_

   a. If the answer is "yes", state the amount of your salary or wages per month, and give the name and address of your employer.

   _____ N/A _____

   _____

   b. If the answer is "no", state the date of last employment and the amount of the salary and wages per month which you received.

   _____ N/A _____

   _____

2. Have you received within the past twelve months any money from any of the following sources?

   a. Business, profession, or other form of self-employment?

   Yes _____    No _X_

   b. Rent payments, interest, or dividends?

   Yes _____    No _X_

   c. Pensions, annuities, or life insurance payments?

   Yes _____    No _X_

   d. Gifts or inheritances?

   Yes _____    No _X_

   e. Any other sources?

   Yes _X_    No _____

FILED

APR 0 6 2006

*Judy Byrd*
JUDY BYRD, CLERK
HOUSTON CO., AL

2

If the answer to any of t' 'above is "yes", describe each source money and state the amount received from each during the past twelve months.

_I receive funds from family members and friends to purchase necessities from prison canteen._

3. Do you own cash, or do you have money in a checking or savings account?

Yes __X__          No _____

(Include any funds in prison accounts.)

If the answer is "yes", state the total value of the items owned.

_See below certificate_

4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)?

Yes _____          No __X__

If the answer is "yes", describe the property and state its approximate value.

_N/A_

5. List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support.

_N/A_

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on __Mar. 22, 2006__
(Date)

X _____
Signature of Petitioner

## CERTIFICATE

I hereby certify that the petitioner herein has the sum of $ __0.00__ on account to his credit at the institution where he is confined. I further certify that petitioner likewise has the foregoing securities to his credit according to the records of said __Holman CF__ institution:

__3/23/2006__
DATE

_____
AUTHORIZED OFFICER OF INSTITUTION

Rule 32

MAR. 23, 2006              USER: 003SH PMOD CLERK                          INMADB
                        COMPUTE AVERAGE DAILY BALANCE


            ENTER THE INMATE'S AIS NUMBER ===>    244618

        ENTER THE 'AS OF' DATE (CCYYMMDD) ===>    20060323


            NO RECORDS FOUND WITHIN THE LAST 12 MONTHS
                    PRESS ENTER TO CONTINUE

| 4/13/06 | Rule 32 hearing is set for May 26, 2006 at 9:00 a.m. |
| | η Da & Deft ⸻ Tracy K. Anderson, Judge. |

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA
CRIMINAL DIVISION

| | |
|---|---|
| STATE OF ALABAMA, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | )     CC054-1132 & 1133 |
| | ) |
| ASH-SHAKUR HALIM SHABAZZ, | ) |
| | ) |
| DEFENDANT. | ) |

## ORDER

TO:  LAMAR GLOVER, HOUSTON COUNTY SHERIFF
AND THE STATE OF ALABAMA, BOARD OF CORRECTIONS

You are hereby requested to pickup and transport, ASH-SHAKUR
HALIM SHABAZZ, confined by the Alabama Correction System under
safe and secure conduct before the Circuit Court of Houston
County, Alabama, at Dothan, on or before May 26, 2006, for the
following purpose: For the Defendant has a hearing set for May
26, 2006 at 9:00 a.m. before Judge Larry Anderson.

Immediately afterward, you are requested to arrange for the
transport of the above-named person back into the custody of the
Board of Corrections, State of Alabama.

DONE AND ORDERED this the 20th day of April 2006.

**FILED**

APR 2 0 2006

*Judy Byrd*
JUDY BYRD, CLERK
HOUSTON CO., AL

*Larry K. Anderson, Judge*
LARRY K. ANDERSON, CIRCUIT JUDGE
20th Judicial Circuit of Alabama

5-1-06 Hearing
Cancelled — See
order on CFS

25

THE STATE OF ALABAMA - - JUDICIAL DEPARTMENT

THE ALABAMA COURT OF CRIMINAL APPEALS

**FILED**

CR-05-0706

APR 2 5 2006

*Judy Byrd*
JUDY BYRD CLERK
HOUSTON CO AL

Ash-Shakur Halim Shabazz, Appellant

vs.

State of Alabama, Appellee

Appeal from Houston Circuit Court No. CC-05-1132 and CC-05-1133

## ORDER

The appellant, Ash-Shakur Halim Shabazz, appeals his convictions for rape and sodomy and was sentenced to 26 years on each count. Shabazz filed a notice of appeal on January 5, 2006. Shabazz has moved that we stay the proceedings on this appeal so that his Rule 32 proceedings can go forward. Shabazz filed a Rule 32 petition in the Houston Circuit Court on April 6, 2006, and that case has been set for a hearing on May 26, 2006. (That case has been docketed as CC-05-1132.60; CC-05-1133.60.)

It is hereby ORDERED that Shabazz's motion to stay this appeal is due to be DENIED. Jurisdiction of one case cannot be in two courts at the same time. See Ex parte Hargett, 772 So. 2d 481 (Ala.Crim.App. 1999). Accordingly, the circuit court is DIRECTED to hold the Rule 32 petition in abeyance until this Court issues the certificate of judgment in this case. See Barnes v. State, 621 So. 2d 329 (Ala.Crim.App. 1992). The circuit court will be notified when a certificate of judgment is issued.

Done this 20th day of April, 2006.

_____
H. W. "BUCKY" McMILLAN, PRESIDING JUDGE

cc:    Hon. Larry K. Anderson, Judge
       Hon. Judy Byrd, Clerk
       Andrea Martin, Court Reporter
       David K. Hogg, Esq.
       Ash-Shakur Halim Shabazz, pro se
       Office of the Attorney General

| 5-1-06 | Per order from Court of Criminal Appeals Rule 32 petition is stayed pending appeal. Hearing of May 26 is cancelled. |
| | 5-10-06 N: Da & Def t    Anderson, Judge |

IN THE CIRCUIT COURT OF Houston COUNTY, ALABAMA

\*

Ash-Shakur Shabazz, **FILED**
Petitioner,

MAY 0 5 2006

Vs.

*Judy Byrd*
JUDY BYRD, CLERK
HOUSTON CO., AL

Case No: CC-05-1132-1133

State of Alabama,
Respondent.

\*

## MOTION FOR APPOINTMENT OF COUNSEL

Comes now the petitioner, Ash-Shakur Shabazz, Pro-Se, in the above styled cause, and hereby pursuant to Rule 32.7(c) [Ala. R.Crim.P], moves this Honorable Court for Appointment of Counsel to represent the petitioner in this action, and submits the following as grounds therefore:

[1.] Petitioner was charged and convicted of 2nd Rape + Sodomy, and subsequently sentenced to 20 years.

[2.] Petitioner currently has pending before this court a Rule 32, [Ala.R.Crim.P], petitioner challenging his conviction and sentence.

[3.] Petitioner is currently incarcerated; unemployed; indigent and is unable to afford counsel to represent him.

[4.] Petitioner is unskilled in law, and criminal proceedings and desires the guilding hand of a professional attorney to represent and assist him in this proceedings

[5.] The issues involved in this proceeding is complex and require extensive discovery and research to properly present the issues to the court.

5-10-06 Not/2
deft Rule 32 stayed.
Resubmit after. 00
o ave.

28

[6.] Petitioner desires the assistance of counsel and believe's counsel is necessary to assert and protect the fundamental and substantive, rights of the petitioner involved in this proceeding.

Wherefore, premises considered, petitioner prays that this Honorable, Court grant this motion, and appoint counsel to represent the petitioner

Respectfully Submitted,

/s./ ~~~~~~~~~
Holman Unit 3700
Atmore, Al 36503-3700

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 3 day of MAY , 2005 served a copy of the foregoing "Motion for Appointment of Counsel to District Attorney , P.O. Box 1632 Dothan, Al. BY PLACING THE SAME IN THE United States mail, via, postage prepaid and properly addressed.

/s./ ~~~~~~~~~

29

SEPTEMBER 7, 2006

ASH-SHAKUR HALIM SHABAZZ
AIS# 244618
Holman Unit 3700
Atmore, Al. 36503-3700

**FILED**

SEP 11 2006

*Judy Byrd*
JUDY BYRD, CLERK
HOUSTON CO., AL

Hon. Judy Byrd, Clerk
Houston County Circuit Court
P.O. Drawer 6406
Dothan, Al. 36302

Re: <u>Shabazz v. State CC05-1132 and CC05-1133</u>

Dear Clerk,

    Would you please inform the Court that the Certificate of Judgement has issued in the above case by the Alabama Court of Criminal Appeals, and that the Court may proceed with the pending Rule 32 Petition in the above referenced cases.

    Your immediate attention to this matter will be appreciated.

                         Respectfully Submitted,

                         ASH-SHAKUR HALIM SHABAZZ
                         AIS# 244618
                         Holman Unit 3700
                         Atmore, Al. 36503-3700

cc:file

30

| STATE OF ALABAMA | VS | SHABAZZ ASH-SHAKUR HALIM |
|---|---|---|

| DATE | ACTION, JUDGMENTS, CASE NOTES |
|---|---|
| 9-19-06 | Defendant's conviction was affirmed on appeal. Rule 32 petition may now go forward. Attorney Ernie Davis appointed to represent Defendant on his Rule 32 petition. |
| | Anderson, Judge |
| | 9-28-06 N' DA, ED, Deft |

31

EX PARTE,                              )        IN THE CIRCUIT COURT OF

ASH-SHAKUR HALIM SHABAZZ      )        HOUSTON COUNTY, ALABAMA

VS.                                   )

STATE OF ALABAMA                  )        CASE NO. <u>CC 2005-1132.60</u>

## <u>MOTION FOR SUMMARY DISPOSITION</u>

Comes now the State of Alabama and moves the Court for an order summarily dismissing the petition filed herein and for reason alleges the following:

1. The petition fails to state a claim for which relief may be granted.

2. The grounds alleged in the petition either were raised at trial or could have been but were not raised at trial.

3. The grounds alleged in the petition either were raised on appeal or could have been but were not raised on appeal.

4. The grounds alleged and facts stated do not amount to newly discovered evidence.

5. The petitioner appealed his conviction to the Court of Criminal Appeals and said conviction was affirmed with opinion.  In that opinion the appeals courts stated, "We have also examined the record in this cause and have found no error harmful to the appellant's rights."  See Exhibit "A" attached.

6. The State denies each and every material allegation contained within the petition..

Submitted this _13TH_ day of December 2006.

**FILED**

DEC 13 2006

_Judy Byrd_
JUDY BYRD, CLERK
HOUSTON CO., AL

_Gary R. Maxwell_
Gary R. Maxwell
Chief Assistant District Attorney

## CERTIFICATE OF SERVICE

I, Gary R. Maxwell, Chief Assistant District Attorney, hereby certify that I have placed a copy of the same in the U. S. mail, postage prepaid, to Ash-Shakur Halim Shabazz #244618, Holman Correctional, Holman 3700, Atmore, AL 36503-3700 on this ___*____ day of December 2006.

Gary R. Maxwell
Chief Assistant District Attorney

*EXHIBIT "A"*

Notice: This unpublished memorandum should not be cited as precedent. See Rule 54, Ala.R.App.P. Rule 54(d), states, in part, that this memorandum "shall have no precedential value and shall not be cited in arguments or briefs and shall not be used by any court within this state, except for the purpose of establishing the application of the doctrine of law of the case, res judicata, collateral estoppel, double jeopardy, or procedural bar."

# Court of Criminal Appeals

### State of Alabama
### Judicial Building, 300 Dexter Avenue
### P. O. Box 301555
### Montgomery, AL 36130-1555



RELEASED

AUG 11 2006

CLERK
ALA COURT CRIMINAL APPEALS

H.W."BUCKY" McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges

Lane W. Mann
Clerk
Gerri Robinson
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

## MEMORANDUM

CR-05-0706            Houston Circuit Court CC 05-1132, 1133

Ash-Shakur Halim Shabazz v. State

McMILLAN, Presiding Judge.

The appellant, Ash-Shakur Halim Shabazz, was convicted of one count of second-degree rape, in violation of § 13A-6-62, Ala. Code 1975, and one count of second-degree sodomy, in violation of § 13A-6-64, Ala. Code 1975. He was sentenced to 26 years' imprisonment on both counts, with the sentences to run concurrently. He was sentenced under the Habitual Felony

1

Offender Act, as a defendant with four prior felony offenses. He was also ordered to pay a $3,000 fine, a $1,000 assessment to the Victim's Compensation Fund, and to pay all court costs.

Shabazz's appointed counsel has filed a "no merit" brief in substantial compliance with <u>Anders v. California</u>, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), in which counsel states that he has thoroughly reviewed the record and can find no meritorious issues upon which to base an appeal. Shabazz was given an opportunity to present pro se issues to his counsel and to this Court, but has not done so.

We have also examined the record in this cause and have found no error harmful to the appellant's rights. Our review of the record established that the evidence was sufficient to support Shabazz's convictions for second-degree rape and second-degree sodomy. Accordingly, the judgment of the trial court is due to be affirmed.

**AFFIRMED.**

Cobb, Baschab, Shaw, and Wise, JJ., concur.

2

| | |
|---|---|
| 1/2/07 | Rule 32 hearing is set for February 23, 2007 at 9:00 a.m. |
| | 1-9-07 N. DATED, April ~~~~~ Jerry K. Anderson, Judge |

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA
CRIMINAL DIVISION

STATE OF ALABAMA,            )
                            )
        PLAINTIFF,          )
                            )
v.                          )    CC05-1132 & 1133
                            )
ASH-SHAKUR SHABAZZ,         )
                            )
        DEFENDANT.          )

ORDER

TO:  ANDY R. HUGHES, HOUSTON COUNTY SHERIFF
     AND THE STATE OF ALABAMA, BOARD OF CORRECTIONS

You are hereby requested to pickup and transport, ASH-SHAKUR

SHABAZZ, confined by the Alabama Correction System under safe and

secure conduct before the Circuit Court of Houston County,

Alabama, at Dothan, on or before February 23, 2007, for the

following purpose: For the Defendant has a Rule 32 hearing set

for February 23, 2007 at 9:00 a.m. before Judge Larry Anderson.

Immediately afterward, you are requested to arrange for the

transport of the above-named person back into the custody of the

Board of Corrections, State of Alabama.

DONE AND ORDERED this the 30ᵗʰ day of January 2007.

_____
LARRY K. ANDERSON, CIRCUIT JUDGE
20th Judicial Circuit of Alabama

N: DA, M.ADAMS, HCJAIL, DOC, COURT LIASON

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA
CRIMINAL DIVISION

| | | |
|---|---|---|
| STATE OF ALABAMA, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | CASE NO. CC05-1132 & 1133 |
| | ) | |
| ASH-SHAKUR SHABAZZ, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## RULE 32 ORDER

On or about April 13, 2006 the Defendant filed a petition for Rule 32 relief. A May hearing date was set. However, the Court of Criminal Appeals stayed any action concerning the Rule 32 petition as his convictions were on direct appeal. This Court entered an order September 19, 2006 that the Defendant's convictions were affirmed on appeal which allowed the Rule 32 petition to go forward. A hearing date was set for February 23, 2007.

A hearing was held this date. The Petitioner and his attorney were present. The State of Alabama was represented through its assistant district attorney, Mr. David Atwell. Evidence at said hearing went to the issue of ineffective assistance of counsel. Petitioner Shabazz testified to the following: (1) That trial counsel John Steensland should have

1

objected to a consolidation of charges; and (2) That attorney Steensland should have objected to the composition of the jury; and (3) That a suppression issue existed in that he was coerced into giving a statement; and (4) That the circuit court sentenced him improperly by treating him as a habitual offender.

Attorney John Steensland testified that no valid objection could be raised on the consolidation issue insofar as it was the same victim, same date and same incident. He further testified that there was no systematic exclusion of males or blacks on the jury panel. With respect to the suppression issue, Mr. Steensland stated that a waiver of rights statement specifically stated there were no threats or coercion used against the Defendant, which the Defendant signed.

As to prior convictions being used for enhancement under the habitual offender act the Defendant admitted that he had three or more felony convictions. Most damaging was a letter introduced as state's exhibit 1 wherein the Defendant stated that his representation was adequate. This letter was sent by the Defendant to Mr. Steensland after the trial of the case.

Based on the evidence, the Court is reasonably satisfied therefrom that Petitioner's ineffective assistance of counsel claim must fail. Additionally, most, if not all, of these issues could have been raised on appeal but were not.

Accordingly, it is therefore **ORDERED, ADJUDGED** and **DECREED**

2

that the Rule 32 petition be and is hereby denied.

ORDERED this the _26_ day of February 2007.

_Larry K. Anderson_
LARRY K. ANDERSON
CIRCUIT JUDGE

Notify district attorney, attorney Eric Davis and defendant.

**FILED**

FEB 2 6 2007

_Carla Woodall_
Carla Woodall, Clerk
Houston County, AL

3

| STATE OF ALABAMA, | IN THE CIRCUIT COURT OF |
| Plaintiff, | HOUSTON COUNTY, ALABAMA |
| v. | CC 05-1132.60, -1133.60 |
| ASH-SHAKUR SHABBAZ, | |
| Defendant. | |

## NOTICE OF APPEAL TO THE COURT OF CRIMINAL APPEALS

COMES NOW, the Defendant, by and through contract counsel, and gives notice of appeal the Alabama Court of Criminal Appeals.

Respectfully submitted the 16th day of March 2007.

Eric C. Davis (DAV 096)
Attorney at Law
Post Box 1103
Dothan, Alabama 36302-1103
(334) 671-7169

### Certificate of Service

I hereby certify that I have served a copy of this motion on Douglas Albert Valeska, District Attorney for the 20th Judicial Circuit by placing a copy in his courthouse box and the Attorney General by U.S. Mail to 11 S. Union St., Montgomery, Alabama 36130 this 16th of March 2007.

Eric C. Davis

**FILED**

MAR 1 6 2007

Carla Woodall
Carla Woodall, Clerk
Houston County, AL

41

**ORIGINAL**

| | |
|---|---|
| STATE OF ALABAMA<br>PLAINTIFF, | IN THE CIRCUIT COURT OF<br>HOUSTON COUNTY, ALABAMA |
| v. | CC 05-1132.60, -1133.60 |
| ASH-SHAKUR SHABBAZ,<br>DEFENDANT. | |

## MOTION TO WITHDRAW

COMES NOW, the undersigned counsel and moves this Honorable Court to allow him to withdraw as attorney for the Defendant and as grounds therefore asserts the following:

1. Counsel represented the Defendant at the time of his Rule 32 and the Defendant wishes to appeal.
2. All issues were addressed by the trial court, and Counsel respectfully declines any further representation of the Defendant and would likely file an <u>Anders</u> brief on appeal.

Respectfully submitted the 16th day of March 2007.

Eric C. Davis (DAV 096)
Attorney at Law
Post Box 1103
Dothan, Alabama 36302-1103
(334) 671-7169

### Certificate of Service

I hereby certify that I have served a copy of this motion on the Defendant, and on Douglas Albert Valeska, District Attorney for the 20th Judicial Circuit by placing a copy in their courthouse box or the U.S. mail postage paid this 16th day of March 2007.

Eric C. Davis

**FILED**

MAR 1 6 2007

Carla Woodall, Clerk
Houston County, AL

42

| State of Alabama<br>Unified Judicial System<br>Form ARAP- 26 (front)    8/91 | COURT OF CRIMINAL APPEALS<br>DOCKETING STATEMENT | Criminal Appeal Number<br>*ORIGINAL* |

## A. GENERAL INFORMATION:

☑ CIRCUIT COURT ☐ DISTRICT COURT ☐ JUVENILE COURT OF. **HOUSTON COUNTY** COUNTY

**ASH - SHAKUR SHABBAZ** , Appellant

V. ☑ STATE OF ALABAMA ☐ MUNICIPALITY OF _____

| Case Number<br>**CC 05-1132.60 , -1133.60** | Date of Complaint or Indictment<br>**6-9-05** | Date of Judgment/Sentence/Order<br>**2-26-07** |
| Number of Days of Trial/Hearing<br>**1** Days | Date of Notice of Appeal<br>Oral: | Written: **3-16-07** |
| Indigent Status Requested: ☑ Yes ☐ No | | Indigent Status Granted: ☑ Yes ☐ No |

## B. REPRESENTATION:

Is Attorney Appointed or Retained? ☑ Appointed ☐ Retained.    If no attorney, will appellant represent self? ☐ Yes ☐ No

| Appellant's Attorney (Appellant if pro se) (Attach additional pages if necessary)<br>**Eric C. Davis** | Telephone Number<br>**334-671-7169** |
| Address<br>**P.O. Box 1103** | City<br>**Dothan** | State<br>**AL** | Zip Code<br>**36302** |

## C. CODEFENDANTS: List each CODEFENDANT and the codefendant's case number.

| Codefendant | Case Number |
| Codefendant | Case Number |
| Codefendant | Case Number |

## D. TYPE OF APPEAL: Please check the applicable block.

1 ☐ State Conviction    4 ☐ Pretrial Order    7 ☐ Juvenile Transfer Order    10 ☐ Other (Specify)
2 ☑ Post-Conviction Remedy    5 ☐ Contempt Adjudication    8 ☐ Juvenile Delinquency
3 ☐ Probation Revocation    6 ☐ Municipal Conviction    9 ☐ Habeas Corpus Petition

## E. UNDERLYING CONVICTION/CHARGE: Regardless of the type of appeal checked in Section D, please check the box beside each offense category for which the appellant has been convicted or charged as it relates to this appeal. Also include the applicable section of the Code of Alabama for State convictions:

1 ☐ Capital Offense - § _____    6 ☐ Trafficking in Drugs - § _____    11 ☐ Fraudulent Practices - § _____
2 ☐ Homicide - § _____    7 ☐ Theft - § _____    12 ☐ Offense Against Family - § _____
3 ☐ Assault - § _____    8 ☐ Damage or Intrusion    13 ☐ Traffic - DUI - § _____
4 ☐ Kidnapping/Unlawful    to Property - § _____    14 ☐ Traffic - Other - § _____
    Imprisonment - § _____    9 ☐ Escape - § _____    15 ☑ Miscellaneous (Specify):
5 ☐ Drug Possession - § _____    10 ☐ Weapons/Firearms - § _____    **Rape 2nd Sodomy 2nd 13A-6-62 & -64**

## F. DEATH PENALTY:

Does this appeal involve a case where the death penalty has been imposed? ☐ Yes ☑ No

**FILED**

## G. TRANSCRIPT:

1. Will the record on appeal have a reporter's transcript? ☑ Yes ☐ No
2. If the answer to question "1" is "Yes," state the date the Reporter's Transcript Order was filed. _____
    (Date)
3. If the answer to question "1" is "No":
    (a)  Will a stipulation of facts be filed with the circuit clerk? ☐ Yes ☐ No
    (b)  Will the parties stipulate that only questions of law are involved and will the trial court certify the questions? ☐ Yes

NOTE:  If the appeal is from the district or juvenile court and the answer to question "1" is "No," then a positive response is required for question 3(a) or 3(b).

MAR - 6 2007

*Carla Woodall Clerk*
*Houston County, AL*

Form ARAP- 26 (back)    8/91    COURT OF CRIMINAL APPEALS DOCKETING STATEMENT

**H. POST-JUDGMENT MOTIONS:** List all post-judgment motions by date of filing, type, and date of disposition (whether by trial court order or by the provisions of Rules 20.3 and 24.4 (ARCrP)):

| DATE OF FILING | | | TYPE OF POST-JUDGMENT MOTION | DATE OF DISPOSITION | | |
|---|---|---|---|---|---|---|
| Month | Day | Year | | Month | Day | Year |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**I. NATURE OF THE CASE:** Without argument, briefly summarize the facts of the case.

Rape 2nd / Sodomy 2nd

**J. ISSUE(S) ON APPEAL:** Briefly state the anticipated issues that will be presented on appeal. *(Attach additional pages if necessary.)*

Denial of Rule 32 Petition

**K. SIGNATURE:**

3-16-07
Date

Signature of Attorney/ Party Filing this Form

ORIGINAL

| State of Alabama<br>Unified Judicial System<br>Form ARAP-1C    8/91 | REPORTER'S TRANSCRIPT ORDER -- CRIMINAL<br>See Rules 10(c) and 11(b) of the<br>Alabama Rules of Appellate Procedure (A.R. App.P.) | Criminal Appeal Number |

**TO BE COMPLETED BY COUNSEL FOR THE APPELLANT OR BY THE APPELLANT IF NOT REPRESENTED AND FILED WITH THE WRITTEN NOTICE OF APPEAL OR FILED WITHIN 7 DAYS AFTER ORAL NOTICE OF APPEAL IS GIVEN.**

☑ CIRCUIT COURT ☐ DISTRICT COURT ☐ JUVENILE COURT OF __HOUSTON COUNTY__ COUNTY

__ASH-SHAKUR SHABBAZ__, Appellant

V. ☑ STATE OF ALABAMA ☐ MUNICIPALITY OF _____

| Case Number<br>CC 05- | Date of Judgment/Sentence/Order |
| Date of Notice of Appeal<br>Oral:          Written: | Indigent Status Granted:<br>☐ Yes  ☐ No |

**PART 1. TO BE SIGNED IF THE APPEAL WILL NOT HAVE A COURT REPORTER'S TRANSCRIPT:**
I CERTIFY THAT NO REPORTER'S TRANSCRIPT IS EXPECTED AND THAT THE RECORD ON APPEAL SHALL CONSIST OF THE CLERK'S RECORD ONLY. IF THE APPEAL IS FROM DISTRICT COURT OR JUVENILE COURT, I ALSO CERTIFY (1) THAT A STIPULATION OF FACTS WILL BE INCLUDED IN THE CLERK'S RECORD AND THAT THE APPELLANT WAIVES HIS RIGHT TO A JURY TRIAL IF SO ENTITLED; OR (2) THAT THE PARTIES HAVE STIPULATED THAT ONLY QUESTIONS OF LAW ARE INVOLVED AND THAT THE QUESTIONS WILL BE CERTIFIED BY THE JUVENILE/DISTRICT COURT FOR INCLUSION IN THE CLERK'S RECORD (SEE RULE 28(A)(1), ALABAMA RULES OF JUVENILE PROCEDURE, AND §12-12-72, *CODE OF ALABAMA 1975*).

Signature _____    Date _____    Print or Type Name _____

**PART 2. DESIGNATION OF PROCEEDINGS TO BE TRANSCRIBED.** Request is hereby made to the court reporter(s) indicated below for a transcript of the following proceedings in the above referenced case (see Rule 10(c)(2), Alabama Rules of Appellate Procedure (A.R.App.P.)):

**MARK PROCEEDINGS REQUESTED:**                                              COURT REPORTER(S)

A. ☑ TRIAL PROCEEDINGS - Although this designation will include the judgment and sentence    _Sheila Hanson_
proceedings, a transcript of the organization of the jury and arguments of counsel must
be designated separately.                                                    _____

B. ☐ ORGANIZATION OF THE JURY - This designation will include voir dire examination and      _____
challenges for cause. Note that in noncapital cases the voir dire of the jury will not be
recorded unless the trial judge so directs. (See Rule 19.4, ARCrP.)          _____

C. ☐ ARGUMENTS OF COUNSEL - Note that in noncapital cases the arguments of counsel will      _____
not be recorded unless the trial judge so directs. (See Rule 19.4, ARCrP.)   _____

IN ADDITION TO ANY PROCEEDINGS DESIGNATED ABOVE, SPECIAL REQUEST IS HEREBY MADE TO INCLUDE THE FOLLOWING PROCEEDINGS IN THE REPORTER'S TRANSCRIPT PORTION OF THE RECORD ON APPEAL. (ATTACH ADDITIONAL PAGES IF NECESSARY):

ADDITIONAL PROCEEDINGS REQUESTED              DATE                 COURT REPORTER(S)

D. _____              _____              _____

E. _____              _____              _____

F. _____              _____              _____

G. _____              _____              _____

**IMPORTANT NOTICE:** The court reporter who reported the proceedings for which a transcript is requested must be identified on this form to be effective. Additionally, it is important to note that the appellant may not be permitted to raise any issue on appeal relating to any proceedings in the case that are not specifically designated on this form for inclusion in the reporter's transcript. A general designation such as "all proceedings" is not sufficient. (See Rule 10(c)(2), A.R.App.P.)

**PART 3. MUST BE SIGNED IF THE APPEAL WILL HAVE A COURT REPORTER'S TRANSCRIPT:**
I CERTIFY THAT I HAVE DISTRIBUTED THIS FORM AS SET OUT BELOW. I ALSO CERTIFY (1) THAT I HAVE MADE SATISFACTORY FINANCIAL ARRANGEMENTS WITH EACH COURT REPORTER LISTED ABOVE FOR PREPARING HIS OR HER PORTION OF THE REPORTER'S TRANSCRIPT HEREIN REQUESTED; OR (2) THAT THE APPELLANT PROCEEDED AT TRIAL AS AN INDIGENT AND THAT THAT STATUS HAS NOT BEEN REVOKED; OR (3) THAT THE APPELLANT HAS BEEN GIVEN PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS.

Signature _ECX_    Date _3-16-07_    Print or Type Name _Eric C. Davis_

**DISTRIBUTION:** Original filed with Clerk of Trial Court and copies mailed to:  (1) Clerk of the Court of Criminal Appeals,  (2) the District Attorney (3) the Attorney General or the municipal prosecutor in lieu of the District Attorney and the Attorney General if appeal is from a municipal conviction, and (4) to each Court Reporter who reported proceedings designated for inclusion in the reporter's transcript.

3-19-07 N. SH

45



IN THE CIRCUIT COURT OF HOUSTON COUNTY,
ALABAMA CRIMINAL DIVISION

ASH-SHAKUR SHABAZZ
    PETITIONER

VS.

               Case No. CC05-1132 & 1133

STATE OF ALABAMA
    PLAINTIFF

## NOTICE OF APPEAL

Now comes the Petitioner ASH-SHAKUR SHABAZZ, and hereby gives notice of Appeal Pursuant to Rule 3 and 4 of the Alabama Rules of Appellate Procedure from the denial of the Petitioner's Rule 32 Petition on the 26 day of February 2007.

RESPECTFULLY SUBMITTED,

ASH-SHAKUR SHABAZZ
# 244618 -
HOLMAN UNIT 3700
ATMORE, AL, 36503-3700

FILED
MAR 21 2007
Carla Woodall, Clerk
Houston County, AL

46

| 3-23-07 | Attorney Davis is allowed to withdraw. Appeal noted. & the Court will not appoint appellate counsel. |
| | Anderson, Judge |
| | 4-2-07  N-DA, ED, Deft |

47

ACR371

ALABAMA JUDICIAL DATA CENTER
NOTICE OF APPEAL TO THE ALABAMA COURT OF CRIMINAL APPEALS
BY THE TRIAL COURT CLERK
IN THE CIRCUIT COURT OF HOUSTON COUNTY
STATE OF ALABAMA VS SHABAZZ ASH-SHAKUR HALIM   JUDGE: LARRY K ANDERSON

APPEAL DATE: 03/16/2007

INDIGENCY STATUS:
GRANTED INDIGENCY STATUS AT TRIAL COURT:
APP TRIAL COUNSEL PERMITTED TO W/D ON APPEAL:          __X__ YES     ____ NO
INDIGENT STATUS REVOKED ON APPEAL:                     __X__ YES     ____ NO
INDIGENT STATUS GRANTED ON APPEAL:                     ____ YES      __X__ NO
                                                      __X__ YES     ____ NO

DEATH PENALTY: NO

APPEAL TYPE: RULE 32 PETITION

THIS APPEAL IS FROM AN ORDER DENYING A PETITION (I.E. RULE 32 PETITION,
WRIT OF HABEAS CORPUS, ETC) OR FROM ANY OTHER ISSUED BY THE TRIAL JUDGE.

CO/CASE NUMBER: 38/CC 2005 001132.60

ORDER ENTERED(DATE): 02262007 PETITION: ___ DISMISSED  X DENIED  ___ GRANTED

POST-JUDGMENT MOTIONS FILED:      DT FILED          DT DENIED        CON BY AGREE
____ MOTION FOR NEW TRIAL
____ MOTION FOR JUDG. OF ACQUIT
____ MOTION TO W/D GUILTY PLEA
____ MOTION FOR ATTY TO W/DRAW
____ OTHER

COURT REPORTER(S):
ADDRESS:                                 HANSON, SHEILA T.
                                         C/O HON. GARY L. MCALILEY
                                         ENTERPRISE     ,   AL   36331

APPELLATE COUNSEL #1:
ADDRESS:                                 PRO SE

PHONE NUMBER:                                                          00000
EMAIL ADDRESS:                           000-000-0000    ,

APPELLATE COUNSEL #2:
ADDRESS:

PHONE NUMBER:
EMAIL ADDRESS:

APPELLANT (PRO SE):
ADDRESS:                                 SHABAZZ ASH-SHAKUR HALIM
                                         #244618
AIS #:                                   ATMORE         ,   AL   365033700
                                         244618

APPELLEE (IF CITY APPEAL):
ADDRESS:

I CERTIFY THAT THE INFORMATION PROVIDED                         OPERATOR: RHM
ABOVE IS ACCURATE TO THE BEST OF MY                    PREPARED: 04/02/2007
KNOWLEDGE AND I HAVE SERVED A COPY OF
THIS NOTICE OF APPEAL ON ALL PARTIES TO
THIS ACTION ON THIS 2nd DAY OF _April_ ,2007       _____
                                                   CIRCUIT COURT CLERK

48

ACR371                    ALABAMA JUDICIAL DATA CENTER
        NOTICE OF APPEAL TO THE ALABAMA COURT OF CRIMINAL APPEALS
                    BY THE TRIAL COURT CLERK
                IN THE CIRCUIT COURT OF   HOUSTON COUNTY
STATE OF ALABAMA VS SHABAZZ ASH-SHAKUR HALIM   JUDGE: LARRY K ANDERSON

APPEAL DATE: 03/16/2007

INDIGENCY STATUS:
   GRANTED INDIGENCY STATUS AT TRIAL COURT:
   APP TRIAL COUNSEL PERMITTED TO W/D ON APPEAL:     _X_ YES      ___ NO
   INDIGENT STATUS REVOKED ON APPEAL:                _X_ YES      ___ NO
   INDIGENT STATUS GRANTED ON APPEAL:                ___ YES    _X_ NO
                                                     _X_ YES      ___ NO

DEATH PENALTY: NO

APPEAL TYPE: RULE 32 PETITION

THIS APPEAL IS FROM AN ORDER DENYING A PETITION (I.E.  RULE 32 PETITION,
WRIT OF HABEAS CORPUS, ETC) OR FROM ANY OTHER ISSUED BY THE TRIAL JUDGE.

CO/CASE NUMBER: 38/CC 2005 001133.60

ORDER ENTERED(DATE): 02262007 PETITION: ___DISMISSED  X DENIED   ___GRANTED

POST-JUDGMENT MOTIONS FILED:    DT FILED       DT DENIED      CON BY AGREE
   ___ MOTION FOR NEW TRIAL     _____        _____        _____
   ___ MOTION FOR JUDG. OF ACQUIT _____      _____        _____
   ___ MOTION TO W/D GUILTY PLEA _____       _____        _____
   ___ MOTION FOR ATTY TO W/DRAW _____       _____        _____
   ___ OTHER                    _____        _____        _____

COURT REPORTER(S):
ADDRESS:                         HANSON, SHEILA T.
                                 C/O HON. GARY L. MCALILEY
                                 ENTERPRISE        ,  AL  36331
APPELLATE COUNSEL #1:
ADDRESS:                         PRO SE

PHONE NUMBER:                                            00000
EMAIL ADDRESS:                   000-000-0000     ,

APPELLATE COUNSEL #2:
ADDRESS:                         _____
                                 _____
                                 _____
PHONE NUMBER:                    _____
EMAIL ADDRESS:                   _____

APPELLANT (PRO SE):
ADDRESS:                         SHABAZZ ASH-SHAKUR HALIM
                                 244618
AIS #:                           ATMORE           ,  AL  365033700
                                 244618
APPELLEE (IF CITY APPEAL):
ADDRESS:                         _____
                                 _____
                                 _____

I CERTIFY THAT THE INFORMATION PROVIDED
ABOVE IS ACCURATE TO THE BEST OF MY                   OPERATOR: RHM
KNOWLEDGE AND I HAVE SERVED A COPY OF          PREPARED: 04/02/2007
THIS NOTICE OF APPEAL ON ALL PARTIES TO        _Carla Woodall_
THIS ACTION ON THIS 2nd DAY OF april ,2007     CIRCUIT COURT CLERK

49

# IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA CRIMINAL DIVISION

CASE NO. CC05-1132 & 1133

ASH-SHAKUR SHABAZZ,
       Defendant

VS.

STATE OF ALABAMA
       PLAINTIFF,

## NOTICE OF APPEAL

Comes now the Petitioner ASH-SHAKUR SHABAZZ, and hereby gives notice of appeal Pursuant to rule 3 and 4 of the Alabama Rules of Appeallate Procedures from the denial of the Petitioner's Rule 32 Petition on the 26 day of february 2007.

RESPECTFULLY SUBMITTED,

ASH-SHAKUR SHABAZZ
A.I.S# 244618
Holman UNIT 3700
ATMORE, AL. 36503-3700

50

## CERTIFICATE OF SERVICE

I hereby that I have a copy of the foregoing in THE CIRCUIT COURT OF HOUSTON COUNTY by placing said in the United States mail postage prepaid and properly addressed this the 4/9/07 day of APRIL, 2007.

ASH. SHAKUR SHABAZZ

I declare under penalty of perjury that the foregoing is true and correct.

APPlicant

Chas Wutley
NOTARY PUBLIC   4/4/07

My Commission Expires July 17, 2008

51

Case 2:08-cv-00...-MEF-TFM Document... Filed .../2008 Page 55 of 88

# COURT OF CRIMINAL APPEALS
# STATE OF ALABAMA

PAMELA W. BASCHAB
Presiding Judge
H. W. "BUCKY" McMILLAN
GREG SHAW
A. KELLI WISE
SAMUEL HENRY WELCH
Judges



Lane W. Mann
Clerk
Gerri Robinson
Assistant Clerk
(334) 242-4590
Fax (334) 229-0521

## CR-06-1124

Ash-Shakur Halim Shabazz v. State of Alabama  (Appeal from Houston  Circuit Court:
CC05-1132.60; CC05-1133.60)

### ORDER

Transcript will be accepted if filed by May 25, 2007, although filed late.

Done this the 16th day of May, 2007.

*Pamela W. Baschab*

Pamela W. Baschab, Presiding Judge
Court of Criminal Appeals

cc: Hon. Larry K. Anderson, Circuit Judge
Hon. Carla Woodall, Circuit Clerk
Sheila Hanson, Court Reporter
Ash-Shakur Halim Shabazz, Pro Se
Office of Attorney General

A copy of my appeal record, will of the sent to you once the court reporter has transcribed everything you should receive it by the end of May 2007.

April 9, 2007

Dear Mr. Woodall;

I came in reception of your epitome on April 6, 2007, concerning my attorney Eric Harris motion to withdraw from my case, and my motion to appeal has been filed. While I am waiting for my appeal to be heard, I would like to receive the court transcript on my Rule #35, so that I can review them, for the next phase of my legal endeavors.

Also I would like to get a copy of the appeal motion that was filed in my behalf, if one was filed by my attorney, prior to his motion to withdraw.

I would greatly appreciate both of these documents, as soon as possible. I thank you in advance for your time, help and understanding.

Congratulations!!! on your new appointed position.

NEED CASE #    )CC-2005-1132    Respectfully
                )CC-2005-1133

C.C.
FILE:

Ish-Shahir Shebazz

53

COURT REPORTER'S INDEX OF TRIAL EXHIBITS – ARAP RULE 11(e)
IN THE CIRCUIT COURT OF HOUSTON COUNTY
DOTHAN, ALABAMA – COUNTY SEAT

Ash-Shakur Halim Shabazz,

                    Appellant,

VS.

STATE OF ALABAMA,

                    Appellee.

CCA CR-06-1124
Case No. CC-05-1132.60, 1133.60
State Criminal

TO:   Judy Byrd, Clerk of the Circuit Court of Houston County.
FROM: Sheila Hanson, Official Court Reporter of the 20th
      Judicial Circuit of Alabama

REPORTER'S INDEX TO EXHIBITS

The following EXHIBITS were received by the Court Reporter in above Action and same have been properly marked and identified. Where capable said exhibit(s) have been assembled herein (in flat file); where incapable of being assembled herein such exhibit(s) placed in suitable separate container. This index includes all exhibits (herein assembled or separately housed – or – other, as indicated) and further indicates those offered, admitted or not admitted into evidence, etc.

[NOTE:  (√) check appropriate]

| Party | Ex. No. | Description | Admit Yes | Admit No | Iden. Only | With- Drawn | Remarks |
|-------|---------|-------------|-----------|----------|------------|---------|---------|
| State | 1 | Letter from Mr. Shabazz | XX | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

1) ABOVE INDEX RECEIVED & FILED May 24, 2007, 2006.
   EXHIBITS IN FILE AND/OR CONTAINER VERIFIED (except as noted)

DATED THIS 24th DAY OF May, 2007.

/s/ Carla Woodall (rm)
    Clerk-Register-or Authorized Assistant

/s/ Sheila Hanson
    Court Reporter-20th Judicial Circuit

54

December 17, 2005

Dear Mr. Steensland;

I just like to thank you for representing me, in my most recent court trial. Obvious the out come, wasn't what I expected, yet your Legal representation was adequate. Again I thank you.

The reason of this epistle is to ask of you, your assistance to apply for a couple of Legal things. The first being, an appeal bond, also an written appeal on my case, Last and not Least the transcript on my trial.

I will appreciate it, if you can do this straight away. Again I thank you for your time and Legal representation

Sincerely

Ash-Shakur Shebazz

c.c.
FILE
Judy Byrd.

55

```
 1              IN THE STATE OF ALABAMA

 2             FOR THE COUNTY OF HOUSTON

 3             TWENTIETH JUDICIAL CIRCUIT

 4

 5

 6    ASH-SHAKUR HALIM SHABAZZ,

 7                Appellant,

 8

 9    vs.                    Case No.CC-05-1132.60
                                    CC-05-1133.60
10

11    STATE OF ALABAMA,

12                Appellee.

13

14

15

16              Rule 32 Hearing

17             February 23, 2007

18

19

20           BEFORE THE HONORABLE

21            LARRY K. ANDERSON

22    AT THE HOUSTON COUNTY COURTHOUSE

23             DOTHAN, ALABAMA

24    Taken by:  Sheila J. Hanson, CSR

25            Official Court Reporter
```

```
 1              A P P E A R A N C E S

 2           ON BEHALF OF THE RESPONDENT:

 3      Mr. David Atwell
        Attorney at Law
 4      Dothan, Alabama

 5

 6           ON BEHALF OF THE PETITIONER:

 7      Mr. Eric Davis
        Attorney at Law
 8      Dothan, Alabama

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

## <u>INDEX</u>

**EXAMINATION**

| **Witness Name** | **Page** |
|---|---|
| Ash-Shakur Shabazz | |
|     Direct By Mr. Davis ............................................. | 4 |
|     Cross By Mr. Atwell ............................................ | 12 |
| John Steensland | |
|     Direct By Mr. Davis ........................................... | 18 |
|     Cross By Mr. Atwell ........................................... | 27 |

**EXHIBITS**

| **Exhibit** | **Page** |
|---|---|
| State's Exhibit No. 1 Entered into Evidence | 18 |

```
 1
 2              THE COURT:  This case is Ash-Shakur
 3         Shabazz, Rule 32 petition.
 4              What is the nature of your petition,
 5         Mr. Davis?
 6              MR. DAVIS:  Ineffective assistance of
 7         counsel.
 8              THE COURT:  Do you have any evidence in
 9         that regard?
10              MR. DAVIS:  I call Mr. Shabazz to the
11         stand.
12              THE COURT:  Please come forward and have
13         a seat on the witness stand, please, sir.
14         This was appealed.  This is a trial?
15              MR. DAVIS:  Yes, sir.
16                   ASH-SHAKUR SHABAZZ,
17    having been first duly sworn to tell the truth,
18 testified as follows:
19                   DIRECT EXAMINATION
20 BY MR. DAVIS:
21              THE COURT:  Please proceed.
22    Q.   State your name, please.
23    A.   Ash-Shakur Shabazz.
24    Q.   You are the defendant in this underlining
25         criminal case?
```

| 1 | A. | Yes. |
| 2 | Q. | You filed a Rule 32 petition? |
| 3 | A. | Yes, sir. |
| 4 | Q. | Alleging ineffective assistance of counsel? |
| 5 | A. | Yes. |
| 6 | Q. | Mr. Steensland was your trial counsel? |
| 7 | A. | Yes, sir. |
| 8 | Q. | First of all, one of the grounds you allege |
| 9 | | was -- one of the other grounds -- was the |
| 10 | | Court was without jurisdiction to render |
| 11 | | judgment or impose sentence, and the |
| 12 | | sentence imposed was maximum authorized by |
| 13 | | law; correct? |
| 14 | A. | Yes. |
| 15 | Q. | Mr. Shabazz, have you ever been convicted of |
| 16 | | a felony in the State of Alabama prior to |
| 17 | | this? |
| 18 | A. | No, I have not. |
| 19 | Q. | Were you given notice by Mr. Steensland of |
| 20 | | any convictions that the State intended to |
| 21 | | use from any other state? |
| 22 | A. | No, I was not. |
| 23 | Q. | And at the time you were at the sentencing |
| 24 | | hearing, did the State provide any proof of |
| 25 | | any certified or exemplified convictions |

| | | |
|---|---|---|
| 1 | | from any other state? |
| 2 | A. | No, he did not. |
| 3 | Q. | At your sentencing hearing did you admit |
| 4 | | with specificity any convictions from any |
| 5 | | another state? |
| 6 | A. | I didn't tell them what kind of charge.  I |
| 7 | | did tell them that I was convicted of a |
| 8 | | charge in New Jersey.  They didn't ask me |
| 9 | | specific what the charge was. |
| 10 | Q. | Was there any inquiry as to whether those |
| 11 | | charges were felony convictions in the State |
| 12 | | of Alabama? |
| 13 | A. | I didn't understand that.  Can your repeat |
| 14 | | the question? |
| 15 | Q. | Let me put it this way:  To count for |
| 16 | | Habitual Offender Act purposes an offense |
| 17 | | committed in another state has to have a |
| 18 | | corresponding felony in the State of |
| 19 | | Alabama.  Did anybody ever make any inquiry |
| 20 | | as to whether that was the case? |
| 21 | A. | No, they did not. |
| 22 | Q. | Do you have any other evidence or testimony |
| 23 | | regarding that specific issue? |
| 24 | A. | I'm not too sure about the laws in Alabama |
| 25 | | because, like I said, that was my first |

```
 1              conviction in Alabama.  But I'm under

 2              this -- this knowledge that for a person to

 3              be convicted as a criminal they are suppose

 4              to be told ahead of time or be told -- the

 5              issue to them told about that.

 6                      I was never told that upon my time

 7              they was going to use my pad record from New

 8              Jersey against me or that they was going to

 9              seek career criminal against me.

10      Q.      Do you have anything else, other than that,

11              on that issue?

12      A.      No.

13              THE COURT:  I'm not following you on

14              that issue.  What was this, rape and

15              sodomy.

16              MR. DAVIS:  Yes, sir.  He is saying he

17              didn't get any proof -- he didn't receive

18              any notice as required by state law of proof

19              of any priors.  No priors were specifically

20              proven in sentencing hearing, no certified

21              photocopies were admitted.

22              THE COURT:  These are Class A felonies?

23              THE WITNESS:  No, it wasn't.

24              MR. DAVIS:  These are second degree.

25              THE COURT:  Was it second degree?  Oh,
```

```
 1              okay.  I thought this was rape first.  Is it
 2         second?
 3              MR. ATWELL:   Second.
 4              THE COURT:  Yeah, rape second.
 5                   Go ahead.
 6    Q.   (Mr. Davis)  Is there anything else you want
 7         to tell the Court or do you have any other
 8         evidence on that particular issue?
 9    A.   No.
10              THE COURT:  Couldn't this have been
11         raised on appeal?
12              THE WITNESS:  Excuse me?
13              THE COURT:  I am not referring to you,
14         Mr. Shabazz.  I'm not asking you anything.
15         I'm not asking you anything, and until I do
16         so, I suggest you just be quiet.
17                   Could this not have been raised on
18         appeal, Mr. Davis?
19              MR. DAVIS:  Yes, sir, it could have.  It
20         was not.  Mr. Hogg filed Anders brief with
21         the Court of Criminal Appeals.
22              THE COURT:  Okay.  Go ahead.
23    Q.   (By Mr. Davis)  Mr. Shabazz, in your
24         petition you allege that Mr. Steensland
25         should have objected to the consolidation of
```

| 1 | | the charges? |
|---|---|---|
| 2 | A. | Yes.  They wasn't brought up until at that |
| 3 | | point.  He didn't never even confer with me |
| 4 | | about it. |
| 5 | Q. | Was there ever a hearing held on that? |
| 6 | A. | No. |
| 7 | Q. | To your knowledge was there ever a motion to |
| 8 | | consolidate filed? |
| 9 | A. | Not to my knowledge. |
| 10 | Q. | You are saying that Mr. Steensland did not |
| 11 | | object to consolidation of the charges? |
| 12 | A. | No, he did not. |
| 13 | Q. | In your petition you also allege that |
| 14 | | Mr. Steensland did not object to the State's |
| 15 | | striking males and removing them from the |
| 16 | | jury venire? |
| 17 | A. | Yes. |
| 18 | Q. | To your knowledge how many were on the jury |
| 19 | | panel? |
| 20 | A. | I'm not positive.  It was quite a few of |
| 21 | | them.  I couldn't say in numbers. |
| 22 | Q. | Actually that sat on the jury -- |
| 23 | A. | Yes, sir. |
| 24 | Q. | -- there were numerous males? |
| 25 | A. | No.  Just two. |

| | | |
|---|---|---|
| 1 | Q. | Just two? |
| 2 | A. | Two or three, I believe. |
| 3 | Q. | Did you make any notes?  Do you have any |
| 4 | | evidence as far as the numbers or anything |
| 5 | | else regarding those strikes? |
| 6 | A. | I never was issued none of that |
| 7 | | information. |
| 8 | Q. | Were you given a copy of the record on |
| 9 | | appeal in this case? |
| 10 | A. | No. |
| 11 | Q. | Did Mr. Steensland make any objections to |
| 12 | | the composition to the jury? |
| 13 | A. | He made a few. |
| 14 | Q. | Regarding the composition of the jury? |
| 15 | A. | No.  No.  Not about composition, no. |
| 16 | Q. | Did Mr. Steensland advise you, you had the |
| 17 | | right to testify? |
| 18 | A. | Yes.  But he told me it would work against |
| 19 | | me if I did, it was best for me not to |
| 20 | | testify. |
| 21 | Q. | Okay.  And was it your choice not to |
| 22 | | testify? |
| 23 | A. | Yes. |
| 24 | Q. | Mr. Shabazz, you had some issue regarding |
| 25 | | alleged threats toward the victim.  Would |

```
 1            you explain your issue with that to the
 2            Court?
 3    A.    When she referred notify -- confirmed about
 4            the charges, she indicated there was
 5            somebody else that she had sex with.  And
 6            later on, after she had the baby, DHR and
 7            Officer Cherry and Officer Crawford
 8            threatened her saying they going to take her
 9            baby if she didn't implicate me that we had
10            sex.
11    Q.    Did she testify to that at trial?
12    A.    Yes, she did.
13    Q.    At trial was the statement you gave police
14            admitted into evidence?
15    A.    Excuse me.
16    Q.    At trial was the statement you gave police
17            admitted into evidence?
18    A.    Yes.
19    Q.    Was there ever a motion to suppress filed to
20            your knowledge?
21    A.    No.  I asked for motion for suppression be
22            done, but I don't think it was.
23    Q.    What were the grounds for the motion to
24            suppress?
25    A.    Coercing and threatening.
```

```
 1      Q.   Coercing and threatening you?

 2      A.   Yes.  Yes.

 3      Q.   Did you indicate to Mr. Steensland prior to

 4           trial that had happened?

 5      A.   Yes, I did.

 6      Q.   Mr. Shabazz, other than what I've already

 7           asked you about and what you have already

 8           testified to, are there any other issues

 9           that you have that you believe affected your

10           substantial rights to have a fair trial?

11      A.   That was basically it.

12                MR. DAVIS:  No more questions.

13                THE COURT:  Cross?

14                MR. ATWELL:   Yes, sir.

15                     CROSS-EXAMINATION

16  BY MR. ATWELL:

17      Q.   Mr. Shabazz, When you were found guilty on

18           December 15th of 2005, do you recall that

19           you waived your pre-sentence investigation

20           and admitted to having three or more

21           priors?

22      A.   I know when I came to sentencing, the Judge

23           asked me have I had priors.  And I admitted,

24           yes, I've had priors.  But he never asked

25           about what the priors was.
```



```
 1      Q.   Well, do you remember priors out of New

 2           Jersey --

 3      A.   Yeah.

 4      Q.   -- where you got five years up there for

 5           burglary?

 6      A.   That was never disclosed in my sentencing.

 7      Q.   I'm sorry?

 8      A.   You never disclosed none of that at my

 9           sentencing.  You just said did I have

10           priors.

11      Q.   You admitted to having three-plus prior

12           felony convictions at sentencing; correct?

13      A.   I said I have three priors.  I didn't say

14           specifically how many I had.

15      Q.   All right.  But you do have three prior

16           felony convictions; correct?  You weren't

17           lying to the Court when you said that, were

18           you?

19      A.   No.

20      Q.   In fact, you have a burglary out of New

21           Jersey that you got five years on; right.

22      A.   Uh-huh.

23      Q.   And a robbery out in New Jersey, as well,

24           that you got three years on?

25      A.   But you never had none of that at the time
```

```
 1          of --
 2     Q.   I'm just asking a simple question.
 3     A.   I'm just giving you a basic answer that I
 4          can give you.
 5     Q.   Do you have a robbery out in New Jersey that
 6          you got three years on?
 7     A.   Yeah.  But you never had that documents when
 8          you asked me that.  You bring that up now.
 9          You didn't have none of that before.
10     Q.   You also have a forgery out of New Jersey?
11     A.   Yes, I do.
12     Q.   We could agree that the alleged crimes that
13          you were convicted of, the rape second and
14          the sodomy second, all happened at the same
15          time.  That's what was alleged; correct.
16     A.   Correct.
17     Q.   Was there some kind of prejudice that you
18          indicate happened to you because these cases
19          were consolidated?
20     A.   I wasn't forewarned of this.
21     Q.   I'm asking how were you prejudiced by trying
22          those cases?
23     A.   Nobody asked me what I thought about
24          anything -- they just -- you did it.
25     Q.   Are you saying that you were not prejudiced
```

| | | |
|---|---|---|
| 1 | | in any way by consolidating the cases? |
| 2 | A. | I'm answering the best way I can.  I can't |
| 3 | | answer the way you want me to answer it. |
| 4 | Q. | Okay.  As to the jury panel, if there was |
| 5 | | somebody on the jury panel named James |
| 6 | | Jackson, can we agree he was a male? |
| 7 | A. | Yeah. |
| 8 | Q. | How about Jasper Jackson?  Would we agree he |
| 9 | | was a male? |
| 10 | A. | I wouldn't know. |
| 11 | Q. | Johnny Johnson?  Would that most likely be a |
| 12 | | male? |
| 13 | A. | Probably. |
| 14 | Q. | Wade Jones?  Would that most likely be a |
| 15 | | male? |
| 16 | A. | I don't know. |
| 17 | Q. | How about David Murphry?  Can we figure he |
| 18 | | would be a male? |
| 19 | A. | If you insinuating all of them was on the |
| 20 | | jury, you insinuating wrong, because they |
| 21 | | wasn't. |
| 22 | Q. | Okay.  You indicated something about threats |
| 23 | | being made to the victim by the police.  You |
| 24 | | said that was testified to; correct? |
| 25 | A. | Yes, it was. |

```
 1    Q.   That came out in trial?

 2    A.   Yes, it did.  Through her and basically

 3         through the officer that testified too.

 4    Q.   As far as your statement to the police, what

 5         specific threats were made to you to get you

 6         to make your statement?

 7    A.   They told me if I didn't testify they were

 8         going to charge me with everything they can

 9         charge me with and they going to take the

10         baby from her.

11    Q.   They told you --

12    A.   Yes, sir.

13    Q.   -- if you didn't testify --

14    A.   No -- they told me if I didn't make a

15         statement or admit it, they are going to

16         charge me with everything they could charge

17         me with and they going to take that baby

18         away.

19    Q.   Was there something else that you could be

20         charged with besides rape second and sodomy

21         second that you are aware of?

22    A.   They told me first degrees and 13 counts of

23         this and 13 counts of that.

24    Q.   Who was "they"?

25    A.   Sergeant Crawford and Sergeant Cherry.
```

| 1 | | MR. ATWELL:  Let me mark this State's |
| 2 | | Exhibit 1. |
| 3 | | (State's Exhibit No. 1 marked for |
| 4 | | identification.) |
| 5 | Q. | I show you this and ask if you recognize |
| 6 | | that? |
| 7 | A. | Yeah. |
| 8 | Q. | Is that a letter you wrote to Mr. Steensland |
| 9 | | after the case was tried to the jury? |
| 10 | A. | Yes, I did. |
| 11 | Q. | And you said that:  "Obvious the outcome |
| 12 | | wasn't what I expected, yet, your legal |
| 13 | | representation was adequate.  Again, thank |
| 14 | | you." |
| 15 | A. | And I told him I appreciated him |
| 16 | | representing me.  It just didn't happen the |
| 17 | | way I wanted it to but it didn't mean he |
| 18 | | represented me correctly. |
| 19 | Q. | Okay. |
| 20 | A. | I was just thanking him for his time. |
| 21 | Q. | So you don't have -- |
| 22 | | THE COURT:  Are you offering that? |
| 23 | | MR. ATWELL:  Yes, sir. |
| 24 | | THE COURT:  Any objection? |
| 25 | | MR. DAVIS:  No, sir.  Thank you. |

```
 1              THE COURT:  State's Exhibit No. 1 is
 2      admitted.
 3                  (State's Exhibit No. 1 admitted into
 4      evidence.)
 5          MR. ATWELL:  That's all I have.
 6          THE COURT:  Thank you.
 7              Redirect?
 8          MR. DAVIS:  No, sir.
 9          THE COURT:  Mr. Shabazz, you may step
10      down.  Be careful as you leave your seat.
11      Any other witnesses or evidence?
12          MR. DAVIS:  If I can have a second to
13      talk to Mr. Shabazz?
14          THE COURT:  Okay.
15          MR. DAVIS:  We call John Steensland.
16          THE COURT:  Okay.  Mr. Steensland,
17      Please come forward and have a seat.  There
18      are a couple of steps there.  Be careful as
19      you take your seat.
20                  JOHN STEENSLAND,
21  having been first duly sworn to tell the truth,
22  testified as follows:
23                  DIRECT EXAMINATION
24  BY MR. DAVIS:
25      Q.  State your name, please.
```

| | | |
|---|---|---|
| 1 | A. | John Steensland. |
| 2 | Q. | How are you employed? |
| 3 | A. | I am an attorney with Parkman, Adams and |
| 4 | | White.  Currently, I'm Judge Anderson's |
| 5 | | contract attorney. |
| 6 | Q. | Are you licensed to practice in the State of |
| 7 | | Alabama? |
| 8 | A. | Yes, sir. |
| 9 | Q. | How long? |
| 10 | A. | Would have past the bar in October of '03. |
| 11 | Q. | At the time this case was tried, how long |
| 12 | | had you been practicing? |
| 13 | A. | Just over two years. |
| 14 | Q. | Regarding proof of prior convictions, do you |
| 15 | | recall the sentencing hearing in this |
| 16 | | case? |
| 17 | A. | I do. |
| 18 | Q. | After Mr. Shabazz was convicted, was he |
| 19 | | sentenced immediately with the jury sitting |
| 20 | | in the box? |
| 21 | A. | No, I would not let that happen. |
| 22 | Q. | Okay.  For the record how did sentencing |
| 23 | | occur at that time? |
| 24 | A. | I initially requested a pre-sentence |
| 25 | | investigation be done.  And Judge Anderson |

| | | |
|---|---|---|
| 1 | | ordered one be done.  He dismissed the jury. |
| 2 | | And I knew from looking at the district |
| 3 | | attorney's file that I did not necessarily |
| 4 | | want all of Mr. Shabazz's history on the PSI |
| 5 | | in front of Judge Anderson, so I withdrew |
| 6 | | the motion and I asked to be sentenced then |
| 7 | | and Judge Anderson granted it. |
| 8 | Q. | Did you explain why to Mr. Shabazz? |
| 9 | A. | I'm sure I did.  I don't know if I did at |
| 10 | | the time or not.  I would think I did. |
| 11 | Q. | In your opinion would it have been more |
| 12 | | detrimental to have a pre-sentence |
| 13 | | investigation? |
| 14 | A. | Based on what I saw that would be included |
| 15 | | in the PSI report he would have gotten 15 or |
| 16 | | 20 more -- years maybe life. |
| 17 | Q. | At the time the Judge pronounced sentence, |
| 18 | | was Mr. Shabazz questioned regarding his |
| 19 | | prior convictions? |
| 20 | A. | Yes, he went through his normal procedure |
| 21 | | after the district attorney stood up. |
| 22 | Q. | For the record in this case what |
| 23 | | specifically was asked if you recall? |
| 24 | A. | I don't recall specifically words used.  I |
| 25 | | just know the normal protocol at sentencing |

```
 1              which Judge Anderson does, but I don't
 2              recall specific words used or --
 3         Q.   For the record -- and I'm aware of that
 4              protocol -- but for the record would you --
 5         A.   Yes.  Judge Anderson would have asked the
 6              district attorney to state what prior
 7              felonies were applicable to the sentencing
 8              for the Habitual Offender Act.  And, I
 9              guess, either Mr. -- the assist DA would
10              have stood up and told the Judge what the
11              priors are.  And Judge Anderson would have
12              listened to those and asked Mr. Shabazz
13              whether or not he admitted that he had been
14              convicted of at least three prior felonies.
15         Q.   Prior to sentencing had you been given a
16              copy of the notice under the Habitual
17              Offender Act?
18         A.   You know, you asked me about that yesterday.
19              I looked through my file and I actually did
20              not see the normal notice that was given in
21              these cases from the district attorney's
22              file.  I do recall looking over at length in
23              their file.  I guess it would have been NCIC
24              report and going through all the priors.
25              Because I asked Mr. Shabazz about it, and
```



1    his contention was they didn't apply because

2    they were from New Jersey.  But to answer

3    your question, no, I do not recall the

4    normal notification, written notification,

5    given.

6    Q.   To the best of your knowledge or

7    recollection, did you indicate at all to Mr.

8    Shabazz that he was about to be sentenced as

9    a habitual offender?

10   A.   We had discussed that before -- a number of

11   letters and he thinks that it shouldn't

12   apply because of the New Jersey cases.  But

13   as far as specifically before the PSI -- I'm

14   sorry -- specifically before the sentencing

15   hearing, I don't think so; but I discussed

16   it several times with him when discussing

17   the district attorney's offer and why it was

18   so high.

19   Q.   What was the district attorney's offer?

20   A.   Twenty-five years, run concurrently;

21   twenty-five-hundred-dollar fine and

22   two-thousand dollar Victim's Compensation

23   Fund.

24   Q.   With regard to consolidation of the

25   offenses, was there specifically a hearing

| 1 | | held? |
|---|---|---|
| 2 | A. | I will be honest with you, Mr. Davis, I |
| 3 | | don't recall specifically.  I didn't see in |
| 4 | | my file a written one.  I know through past |
| 5 | | experience there's usually an oral motion, |
| 6 | | but I do not recall a written motion in a |
| 7 | | specific hearing. |
| 8 | Q. | In your judgment and experience, would there |
| 9 | | have been any advantage to having the cases |
| 10 | | tried separately? |
| 11 | A. | I couldn't think of any.  The acts were |
| 12 | | committed along the same incident.  And I |
| 13 | | thought I would be a waste of time and |
| 14 | | potentially hurt him at sentencing with the |
| 15 | | Court. |
| 16 | Q. | In your opinion was there any valid legal |
| 17 | | ground for objecting? |
| 18 | A. | I was not aware of one. |
| 19 | Q. | In your opinion would the Judge have |
| 20 | | separated them had you objected? |
| 21 | A. | No. |
| 22 | Q. | With regard to the compilation of the |
| 23 | | composition of the jury, do you recall how |
| 24 | | many males were on the jury? |
| 25 | A. | No.  I do probably have that in my file.  It |

```
 1          would take me a while to look through the
 2          strike list.
 3     Q.   I believe Mr. Atwell made it through a list
 4          of at least five names.  Do you recall there
 5          being at least five males on the jury?
 6     A.   I have at least four, just looking at my
 7          rough notes on the strike list.
 8     Q.   When you were striking the jury in this
 9          particular case, did you pay attention to
10          how the State exercised the peremptory
11          challenge with regard not only sex but also
12          to race?
13     A.   Yes, I always keep track of that.  I did
14          find the fifth one by the way.
15     Q.   And in this particular case, based on your
16          judgment and experience did there seem to be
17          a systematic exclusion of males?
18     A.   No, I did not see one.
19     Q.   With regard to a motion to suppress, whether
20          it was filed or not, do you recall whether
21          one was filed?
22     A.   A motion to suppress --
23     Q.   Mr. Shabazz's statement?
24     A.   No, I never filed a written motion.
25     Q.   And why was that?
```



| | | |
|---|---|---|
| 1 | A. | In talking with Mr. Shabazz and reading of |
| 2 | | his statement and reviewing discovery, it |
| 3 | | didn't appear there was a specific ground |
| 4 | | that I thought would be grounds at |
| 5 | | pretrial. |
| 6 | Q. | At any point did you discuss with him |
| 7 | | whether there were statements made that were |
| 8 | | not contained in his taped statement? |
| 9 | A. | I don't recall that specifically, no. |
| 10 | Q. | Did he at any point in time tell you that he |
| 11 | | was threatened or coerced in order to get a |
| 12 | | statement? |
| 13 | A. | I would have to look all the way back in my |
| 14 | | file. I do want to say I remember him |
| 15 | | making a statement about the charges being |
| 16 | | brought. I don't remember specifically how |
| 17 | | it was, but that something along the lines |
| 18 | | what he testified earlier. |
| 19 | Q. | At the time he made the statement was he |
| 20 | | advised of his rights using the standard |
| 21 | | Dothan Police Department Waiver of Right's |
| 22 | | Form? |
| 23 | A. | Yes, he was. |
| 24 | Q. | Was that gone over with him at the time the |
| 25 | | taped statement was made. |

| 1 | A. | Yes. |
|---|----|------|
| 2 | Q. | At any time during the taping of that |
| 3 | | statement, did he indicate that he had been |
| 4 | | coerced or threatened in any form or |
| 5 | | fashion? |
| 6 | A. | No. |
| 7 | Q. | Do you recall how many African Americans |
| 8 | | served on that jury? |
| 9 | A. | I would have to look at the strike list.  I |
| 10 | | can get that for you. |
| 11 | Q. | Referring to my prior questioning, did there |
| 12 | | appear to be any systematic exclusion of |
| 13 | | African American jurors solely on the basis |
| 14 | | of their race? |
| 15 | A. | No.  I would have made a challenge to that. |
| 16 | Q. | At the time peremptory challenge was |
| 17 | | exercised by the State, did there appear to |
| 18 | | have been a valid race and gender neutral |
| 19 | | reason for each one of their strikes? |
| 20 | A. | I don't know about for each one, but there |
| 21 | | wasn't a pattern indicating they were |
| 22 | | randomly striking the jurors based on race |
| 23 | | or gender. |
| 24 | | MR. DAVIS:  No more questions. |
| 25 | | THE COURT:  Cross, Mr. Atwell. |

```
 1              MR. ATWELL:   Yes.
 2                    CROSS-EXAMINATION
 3   BY MR. ATWELL:
 4      Q.   The right's form that you referred to, did
 5           you see a written form that was signed by
 6           the defendant?
 7      A.   Yes, it was in the discovery.
 8              MR. ATWELL:   I don't have anything
 9           else.
10              THE COURT:  Thank you.  Anything else,
11           Mr. Davis?
12              MR. DAVIS:  No, sir.
13              THE COURT:  Thank you so much.
14                 Be careful as you leave your seat.
15                 Anything else, Mr. Davis?
16              MR. DAVIS:  No, sir.
17              THE COURT:  Any evidence from the State?
18              MR. ATWELL:  No, sir.
19              THE COURT:  Thank you all, gentlemen.  I
20           will take it under advisement and issue a
21           written ruling subsequently.
22                    (End of hearing)
23
24
25
```

# CERTIFICATE OF COMPLETION
## REPORTER'S TRANSCRIPT

TO: The Clerk of the Court of Criminal Appeals          Fax: (334)242-4689
.   P. O. Box 301555
    Montgomery, Alabama  36130-1555

Criminal Appeals Case Number          CR – 06-1124

ASH-SHAKUR HALIM SHABAZZ v. STATE OF ALABAMA
Appellant's Name                          Appellee

On appeal from the:    | X |    Circuit Court of     ]
                       |   |    District Court of    ]      Houston County
                       |   |    Juvenile Court of  ]

Trial Court Case Number    CC-2005-1132.60; CC-2005-1130.60

Notice of Appeal Date   MARCH 16,  2007

    I, Sheila Hanson, certify that I have this date completed and filed with the clerk of the trial court an original and three copies of a true and correct transcript of all proceedings in the above referenced case that were reported by me and were specifically designated by the appellant for inclusion on the Reporter's Transcript Order.  The transcript, which is numbered serially in the upper right-hand corner of each page, begins with a copy of the Reporter's Transcript Order and an index of both the exhibits and testimony of the witnesses.  The original transcript concludes with the original of this notice and the copies of the transcript conclude with copies of this notice.  The page number appearing in the upper right-hand corner of this certificate is the last page of my portion of the transcript in this case.

    Done this the  24th day of MAY, 2007.

    _Sheila Hanson_
    Court Reporter

**FILING AND SERVICE OF THIS FORM: Pursuant to Rule 11(b), A.R.App.P., the court reporter should file a copy of this certificate with the Clerk of the Court of Criminal Appeals and should serve copies of the certificate on counsel for the appellant or the appellant if he or she is not represented by appellate counsel, the attorney general and the district attorney, unless the appeal is from a municipal appeal, in which event a copy of the form should be served on the municipal prosecutor rather than the attorney general and district attorney.**

| State of Alabama<br>Unified Judicial System<br><br>From ARAP - 14  Rev. 11 / 91 | CERTIFICATE OF COMPLETION AND<br>TRANSMITTAL OF RECORD ON<br>APPEAL BY TRIAL CLERK | Appellate Case Number<br><br>CR-06-1124 |
| --- | --- | --- |

| TO: THE CLERK OF<br>    THE COURT OF CRIMINAL APPEALS OF ALABAMA | DATE OF<br>NOTICE OF APPEAL: | 03-16-2007 |
| --- | --- | --- |

APPELLANT

ASH-SHAKUR SHABAZZ

v. STATE OF ALABAMA

I certify that I have this date completed and transmitted herewith to the appellate court the record on appeal by assembling in ( a single volume of __84__ pages) (_____ volumes of 200 pages each and one volume of _____ pages) the clerk's record and the reporter's transcript and that one copy each of the record on appeal has been served on the defendant and the Attorney General of the State of Alabama for the preparation of brief.

I certify that a copy of this certificate has this date been served on counsel for each party to the appeal.

DATED this __29TH__ day of __MAY__, __2007__.


CARLA WOODALL
_____
Circuit Clerk

107298

7/16

CR: 06-1124

## IN THE ALABAMA COURT OF CRIMINAL APPEALS

### ASH-SHAKUR SHABAZZ

Appellant,

V.S.

### STATE OF ALABAMA

Appellee.

---

ON APPEAL FROM THE CIRCUIT COURT OF

HOUSTON COUNTY, ALABAMA

CASE# CC-05-1132.60

---

BRIEF AND ARGUMENT OF APPELLANT

ASH-SHAKUR SHABAZZ

# 244618

HOLMAN UNIT 3700

ATMORE, AL, 36503

ORAL ARGUMENT NOT REQUESTED
EXCEPT IN THE EVENT OF REMAND.

— Exhibit E —

## STATEMENT REGARDING ORAL ARGUMENT

No oral argument at this time, but like
to reserve that right upon remand.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENTS————————————————i

TABLE OF CONTENTS————————————————————————ii

TABLE OF AUTHORITIES————————————————————iii

ISSUES PRESENTED FOR REVIEW————————————————1

STANDARD OF REVIEW————————————————————2

STATEMENT OF CASE AND FACTS——————————————3~6

SUMMARY OF ARGUMENTS————————————————— 7

ARGUMENTS————————————————————————— 8 - 16

CONCLUSION————————————————————————— 16

CERTIFICATE OF SERVICE——————————————————17

## TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGES**

ARIZONA V. FULMINATE, 499 US 279 (1991)---------------------15
BATSON V KENTUCKY, 476 US 79 (1986)-------------------------11
BROWN V STATE, 588 So.2d 551 (Ala.Crim.App. 1991)--------10
CARTER V. KENTUCKY, 450 US 288 (1981)----------------------14
COOK V. STATE, 31 Ala.App. 449 (Ala.1952)-----------------12
ELSTON V. STATE, 687 So.2d 1239 (Ala.Crim.App. 1996)--------16
EPHRAIM V. STATE, 627 So.2d 1102 (Ala.Crim.App. 1993)------13
EX PARTE WILLIAMS, 510 So.2d 135 (Ala. 1987)---------------16
J.E.B. V. ALABAMA, 511 US 127 (1994)-----------------------11
EX PARTE YELDER, 575 So.2d 137 (Ala. 1991)----------------11
KIMMELMAN V. MORRISON, 477 US 365 (1986)------------------15
EX PARTE GRAU, 791 So.2d 345 (Ala. 2000)------------------8,9
KNOTTS V. STTAE, 586 So.2d 431 (Ala.Crim.App. 1995)----------15
PAYNE V. ARKANSASA, 356 U.S. 560 (1958)-------------------15
RICHARDSON V. STATE, 403 So.2d 293 (Ala.Crim.App. 1981)----12
R.J.S. V. STATE, 905 So.2d 76 (Ala.Crim.App. 2004)----------16
ROCK V. ARKANASAS, 356 U.S. 560 (1987)-------------------12
STRICKLAND V. WASHINGTON, 466 U.S. 668 (1984)---------------913

<u>OTHER AUTHORITIES</u>

Rule 32. 9 (d) Ala. R.Crim.P.-----------------------------------8
Rule 13.3(o) Ala.R.Crim.P.-------------------------------------10
Rule 19.3 (b) Ala.R.Crim.P.------------------------------------11

## ISSUES PRESENTED FOR REVIEW

### I.

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN ITS FAILURE TO MAKE SPECIFIC FINDINGS OF FACTS AS TO EACH CLAIM RAISED BY APPELLANT ?

### II.

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING RELIEF ON THE CLAIMS RAISED BY APPELLANT IN HIS RULE32 PETITION ?

## STANDARD OF REVIEW

The standard for reviewing a circuit courts judgement denying
a petition for post-conviction relief file pursuant to rule
32 ALA.R.CRIM.P. is whether the circuit court exceeded the scope
of it's discretion in denying the petition. STRICKLAND V STATE,
771 SO.2d 1123,1125, (Ala.Crim.App. 1999)

2.

## STATEMENT OF CASE AND FACTS.

This is a appeal from the conviction and denial of a Rule 32
Petition, in The Circuit Court of Houston County, Alabama.
On June 9,2005. Appellant was indicted for the charge of
Rape II; Sodomy II degree.(cr.1)

On June 11,2005. Appellant was arrested for those charges
then convicted of one-count of second degree Rape, In violation
of §13A-6-62 Ala.Code, and one count of second degree sodomy,
in violation of §13A-6-64 Ala.Code 1975,and sentenced to (26)
years imprisonment on both counts, with the sentence to run
concurrently under the Habitual Felony Offender Act. (r.6)
Appellant Appealed this conviction.

On April 6,2006. Appellant filed a Rule 32 Petition for Post-
Conviction Relief(cr.6-20)

On April 6,2006. In forma Paupris is granted. (cr.21-23)

On April 13, 2006. Rule 32 Hearing is Set. ( cr.24)

On April 25,2006. Motion to stay appeal, circuit court
directed to hold Rule 32 in abeyance until appeal is completed.
(cr.30-36)

On May 5,2006. Appellant filed a motion for appointment of
counsel Attorney Eric Davis was Appointed (cr.28-29)

On December 13,2006. State filed a motion for summary
disposition. (cr.32-35)

On January 2,2007. A hearing for appellants Rule 32 petition
was set. (cr.36)

On January 30,2007. Transport order was filed (cr.37)

On February 26,2007. Rule 32 Petition was denied. (cr.38-
40)

3.

On March 16,2007, Appellant filed a timely notice of appeal.
(cr.41)

On March 16,2007, Attorney Eric Davis filed a motion to
withdraw. (cr.42)

On April 2,2007, Clerk received notice of appeal, CCA
docketing staement and CR transcript order. (cr.34-44)

In Appellant's Rule 32 Petition Appellant stated these grounds
for relief:

A.

DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL.

1. APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL WHEN COUNSEL FAIL TO OBJECT TO THE TRIAL
COURT ERRONEOUS CONSOLIDATION OF THE CHARGES FOR TRIAL, WITHOUT
FIRST GIVING THE PETITIONER NOTICE AND THE OPPORTUNITY TO BE
HEARD. CR.14

2. COUNSEL WAS INEFFECTIVE AND PETITIONER WAS PREJUDICE THEREBY
WHEN COUNSEL FAIL TO OBJECT TO THE PROSECUTION USE OF ITS
PEREMPTORY STRIKES TO REMOVE MALES FROM SERVING ON THE PETIT
JURY, SOLELY ON THE BASIS OF THE PETITIONERS GENDER. CR.15

3. COUNSEL WAS INEFFECTIVE AND PETITIONER WAS PREJUDICE THEREBY
WHEN COUNSEL FAIL TO OBJECT TO THE TRIAL COURTS FAILURE TO
ABMONISH THE JURY DURING THE LUNCH RECESS. CR.15

4. COUNSEL WAS INEFFECTIVE AND PETITIONER WAS PREJUDICE THEREBY
WHEN COUNSEL FAIL TO OBJECT TO THE TRIAL COURT ACTING IN THE
ROLE OF THE PROSECUTION. CR.16

5. COUNSEL WAS INEFFECTIVE AND PETITIONER WAS PREJUDICE THEREBY
WHEN COUNSEL FAIL TO ADVISE THE PETITIONER OF HIS RIGHT TO
TESTIFY IN HIS OWN DEFENSE. CR.16

6. COUNSEL WAS INEFFECTIVE AND PETITIONER WAS PREJUDICE THEREBY
WHEN COUNSEL FAIL TO MOVE FOR A MISTRIAL OR EXCLUSION OF THE
VICTIMS TESTIMONY ON THE GROUNDS OF COERCION, THREATS, AND
TAMPERING WITH THE WITNESS. CR.16

7. COUNSEL WAS INEFFECTIVE AND PETITIONER WAS PREJUDICE THEREBY
WHEN COUNSEL FAIL TO MOVE FOR A MISTRIAL OR CAUTIONARY
INSTRUCTION BASED ON THE INTRODUCTION OF HEARSEY EVIDENCE AFTER
THE TRIAL COURT SUSTAINED AN OBJECTION. CR.17

8. COUNSEL WAS INEFFECTIVE AND PETITIONER WAS PREJUDICE THEREBY
WHEN COUNSEL FAIL TO OBJECT TO THE TRIAL COURT ORAL INSTRUCTION
TO THE JURY. CR.18

9. COUNSEL WAS INEFFECTIVE AND PETITIONER WAS PREJUDICED THERBY
WHEN COUNSEL FAIL TO MOVE TO SUPPRESS THE STATEMENT OF THE
PETITIONER ON THE GROUNDS THAT IT WAS THE PRODUCT OF POLICE
COERCION, THREATS AND INTIMIDATION. CR.19


B.

THE TRIAL COURT WAS WITHOUT JURISDICTION TO SENTENCE OR TO IMPOSE
JUDGEMENT.


C.

THE SENTENCE IMPOSED EXCEEDS THE MAXIMUM AUTHORIZED BY LAW OR
IS OTHERWISE NOT AUTHORIZED.


Appellant Ashe-shakur Shabazz, further submitted that his trial
counsel John Steensland, Marvin Adams and Mark Johnson did not
render reasonably effective assistance of counsel, prior to
, during and after his trial.


5.

Counsel errors and omissions were deficient and prejudice the substantial rights of the appellant, to the extent that he was deprived of his sixth and fourteenth amendment rights to a fundamental fair trial.

Appellant submits but for counsel error, there's a reasonable probability the results of the proceeding would have been different.

In the February 26,2007, order denying Appellants petition, as to Claim(1) The state adopted Attorney John Steensland testimony that no valid objection could be raised on the consolidation issue insofar as it was the same, victim, same date, and same incident, as to Claim (2) He further testified that there was no systematic exclusion of male or blacks on the jury panel. With respect to Claim(9) Mr Steensland stated that a waiver of rights statement specifically stated there were no threats or coercion used against the defendant which the defendant signed, As to claim (B) The state avers that the defendant admitted that he had three or more felony convictions. The Circuit court in its order never addressed Claims 3,4,5,6,7,8 or Claim C Of the Petition for Post-Conviction relief, simply referring to the Appellants letter he wrote to Attorney his personal letter stating his representation was adequate CR. 55. The trial court stated , Based on the evidence, the court is reasonablt satisfied therefrom that petitioners ineffective assistance of counsel claim must fail, additionally most, if not all, of these issues could have been raised on appeal but were not. CR.39

6.

## SUMMARY OF ARGUMENTS

### I.

Appellant argues that the Trial court's order fail to make specific findings of facts with respect to each issue presented. This court should Remand for an order addressing each issue presented.

### II.

The Appellant, Ash-Shakur Shabazz, was convicted of Rape and Sodomy second degree and received a sentence of Twenty-Six (26) years; He filed a Rule 32 Petition avering that he was denied the effective assistance of counsel; The court was without Jurisdiction to render the judgement or to impose sentence and The sentence imposed exceeds the maximum authorized by law. After conducting an evidentiary hearing, The Trial court denied the petition.

The Appellant argues that the Trial Court abused its discretion in denying the petition, As Shabazz met his burden of proof with respect to his claims raised in his Rule 32 petition.

7.

**ARGUMENTS**

## I.

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN ITS
FAILURE TO MAKE SPECIFIC FINDINGS OF FACTS AS TO EACH
CLAIM RAISED BY APPELLANT ?

In his Rule 32 petition, Appellant essentially presented Three
(3) grounds for relief;

1. Denial of Effective Assistance of Counsel;

2. The Trial Court was without Jurisdiction to render judgement
or to impose sentence, and

3. The Sentence imposed exceeds The maximum Authorized by Law.
(c.r.10)

During the Evidentiary Hearing, Appellant presented evidence
with respect to the grounds raised. (c.r.1-27)
However, The Trial Court in its order denying the petition failed
to make specific findings of facts as to each issue presented.
(c.r.38-40)

Rule 32.9 (d) Ala.R.Crim.P. requires that if an Evidentiary
Hearing is conducted on the rule 32 petition, The court shall
make specific findings of facts relating to each material issue
of facts presented. See EX PARTE GRAU, 791 So.2d 345 (Ala.2000)

In the instant case, The Appellant presented Nine instances
of Ineffective Assistance of counsel and a claim that his

8.

his sentence was illegal.

The trial court in denying the petition, only addressed and made findings with respect to three instances of the nine instances of Ineffective Assistance of Counsel claims presented.

Accordingly, this court should remand this case for the court to make specific findings of fact. Ex parte Grau, supra.

## II.

WHETHER THE TRIAL COURT ABUSED ITS
DISCRETION IN DENYING RELIEF ON THE
CLAIMS RAISED BY APPELLANT IN HIS
RULE 32 PETITION.

In his Rule 32 petition, Appellant raised the following Grounds for relief:

A.) Denial of Effective Assistance of Counsel

B.) The Trial Court was without Jurisdiction to render Judgment or to impose Sentence, and

C.) The Sentence imposed exceeds the maximum authorized by law. (C.R.10)

In support of the grounds for relief, Appellant identified nine specific instances of Ineffective Assistance of Counsel, and submitted facts, with citation to the original trial records where counsel errors or omissions prejudiced Appellant's defense, and deprived the Appellant of a fundamental fair trial within the meaning of the Supreme Court decision in Strickland v.Washington, 466 U.S. 668, 104 S.Ct.2052, 80 L.ed 2d 674 (1984) (C.R.14-20)

9.

In <u>Strickland</u>, the court set out the standard upon which a defendant must show to prevail on a claim of Ineffective Assistance of Counsel, he:

> " must show that counsel's performance
> was deficient. This requires showing
> that counsel made errors so serious that
> counsel was not functioning as the  counsel
> guaranteed in the Sixth Amendment, second,
> the defendant must show that the deficient
> performance prejudiced the defense. This
> requires showing that counsel's errors
> were so serious as to deprive the defendant
> of a fair trial, a trial whose result
> is unreliable."

Id 466 U.S. at 687

## A.

In the instant case, subjudica, Appellant argues that he was prejudiced by his trial counsel:

1.) Failure to object to the Trial Court consolidation of the charges without first giving the Appellant Notice and the opportunity to be heard. In violation of Appellant's fundamental rights and Due Process. <u>Brown v.State</u>, 588 So.2d 551,555 (Ala.Crim.App 1991) ( The fundamental requirement of Due Process is the opportunity to be heard at a meaningful time and in a meaningful manner). See also Rule 13.3 (c) Ala.R.Crim.P.

(However the court shall not order that the offenses .... be tried together without first providing the defendants or defendant and the prosecutor an opportunity to be heard )

The record reflects that there was never a motion filed by either party to consolidate the offenses, nor was the Appellant given the opportunity to be heard. (R.8-9)

10.

Accordingly, the trial erred in consolidating the offenses, and counsel failure to object was prejudicial to the fundamental rights of the Appellant.

2.) Failure to object to the prosecution use of its peremptory strikes to remove males from serving on the petit jury soley on the basis of gender.

In J.E.B. v.Alabama, 511 U.S.127, 128 L.ed 2d 89, 114 S.Ct. 1419 (1994), the United States Supreme Court extended its holding in Batson v.Kentucky, 476 U.S.79 (1986), to gender-based strikes.

In Ex parte Yelder, 575 So.2d 137 (Ala.1991), the Alabama Supreme Court held that when trial counsel fail to make a timely Batson objection to a prima facie case of purposeful discrimination by the State in the jury selection process through its use of peremptory challenges, prejudice is presumptively.

The record in this case did not contain the master jury list or the strike list, therefore, Appellant moved for discovery of such in the trial court , However, the Trial Court fail to order Discovery.

This Court should remand this cause with direction that the Trial Court order the Discovery and make it apart of the record on appeal in this case.

3.) Counsel was ineffective and Appellant was prejudiced thereby when counsel fail to object to the trial court failure to admonish the jury prior to allowing them to seperate for lunch, as required by Rule 19.3 (b) Ala.R.Crim.P.

11.

Appellant contends that he was prejudiced by counsels failure to object and/or request that the jury be admonished, as it allowed the jury to consider outside influences in arriving at their verdicts

4.) Appellant argues that he was prejudiced by counsel failure to object to the trial court questioning of a witness in this case concerning a material element of the charged offenses. (R.82-84); (C.R.15-16)

The trial court questioned the State's lead investigator, Detective John Crawford, to elicit evidence regarding the victim and Appellant's age. (Id.)

Appellant contends that this was error. See <u>Richardson v.State</u>, 403 So.2d 393 (Ala.Crim.App.1981); <u>Cook v. State</u> 36 Ala.App.449 (Ala.1952)

Counsel failure to object to this error prejudiced Appellant's defense and deprived Appellant of a fundamental fair trial.

5.) Appellant argues that the right of the accused to testify in his own behalf is firmly rooted in our legal system. See <u>Rock v. Arkansas</u>, 483 U.S.44 (1987)

The Alabama Constitution of 1901 Art. I § 6 grants to an accused, inter alia, the following rights:

> " That in all criminal prosecutions, the
> accused has a right to be heard by himself
> and counsel, or either; to demand the nature
> and cause of the accusation; and to have a
> copy thereof; to be confronted by the wit-
> nesses against him; to have compulsory
> process for obtaining witnesses in his favor;
> to testify in all cases, in his own behalf,
> if he elects so to do . . .

12.

Accord Ephraim v. State, 627 So.2d 1102 (Ala.Crim.App.1993)

In this case, Appellant argues that his trial counsel fail to inform him of this personal and fundamental right, and that he was prejudiced thereby, because counsel error deprived the Appellant of the opportunity to support his defense with his own testimony.

6.) Appellant argues that he was prejudiced by counsel failure to move for exclusion of the victim's testimony on the grounds that law enforcement officials and a case worker with the Department of Human Resources had threaten the victim.

The record reflects that initially the victim refused to give a statement and initially stated that someone else was the father of the child. (R.52-54,58, 73)

It was only after the threats; pressure and coercion did the victim changed her story to implicate the Appellant.(Id.)

Counsel error in failing to move for exclusion of the victim's testimony, based on the clear evidence in the record, was prejudical to the Appellant's fundamental rights to a fair trial. Strickland, Supra

7.) Appellant contends that he was prejudiced by his trial counsel failure to request a mistrial and/or cautionary instructions based on the introduction of hearsay evidence, after the trial court sustained an objection.

During direct examination of Detective Crawford, the trial court sustained an objection, on the grounds of hearsay, to the prosecution's attempt to establish that the Appellant knew the victim's age. (R. 75-76)

13.

In spite of the sustained objection, the prosecution still ill-icited the hearsay evidence from the witness. (R.76-77)

Appellant contends that counsel error and omission was prejudical to Appellant's fundamental rights to a fair trial, as it allowed the jury to consider inadmissible evidence on a material issue in the case in arriving at their verdicts.

6.) Appellant contends that he was prejudiced and denied a fundamental fair trial by counsel failure to object to the trial court erroneous oral instructions to the jury.

During the trial court's oral instructions to the jury , the trial court committed errors that deprived the Appellant of a **fundamental** fair trial.

Specifically, the trial court in instructing the jury made **three** (3) crucial errors:

1. The trial court erred in instructing the jury as to the law regarding the Appellant's rights to not testify, when the court stated: " That must not and you cannot take that into consideration either for or against the defendant . . . " (R.104)

Appellant argues that the instruction ran afoul of <u>Carter v.</u> <u>Kentucky</u>, 450 U.S.288 (1981), and infringed upon Appellant's rights to the presumption of innocence.

2. The trial court erred in allowing the jury to take their personal notes into the jury deliberation room. (R.105-06) Appellant argues that it allowed the jury to consider inaccurate and outside influences in arriving at their individual verdicts.

14.

3. The trial court fail to instruct the jury that they must consider each charge seperately and their verdict must be unanimous with respect to each charge.

Appellant argues that the error allowed the jury to find him guilty of all charges based on the evidence of a single charge. See Knotts v. State 686 So.2d 431 (Ala.Crim.App.1995)

Appellant contends that counsel error and omissions in these regards were prejudical to the fundamental Constitutional rights of the Appellant.

9.) Appellant argues that at the time of his arrest, Detective Crawford and several other law enforcement officials rushed into his resident, and forced him to the police station for interrogations Appellant was threatened, coerced and intimidated by the officers, which forced the Appellant into giving statements.(R.67-68)

In Payne v.Arkansas,356 U.S. 560 (1958), the Supreme Court held that the admission of a coerced confession vitiates the judgment.

See also Arizona v.Fulminate, 499 U.S. 279, 113 L.ed 2d 302, 111 S.Ct. 1246 (1991)

Appellant argues, under the circumstances, counsel failure to move for suppression of the statements was prejudical to the fundamental rights of the Appellant. Kimmelman v.Morrison, 477 U.S. 365 (1986)

### B.and C.

Appellant contends that the trial court was without Jurisdiction to Impose Sentence and his Sentence of twenty- six years for a Class B Felony exceeds the maximum authorized by law.

Appellant contends that his argument is two-fold regarding his illegal sentence, first, Appellant argues that the Habitual Offender Act was never invoked, because the prosecution never brought to the court's attention that it would seek application of the Habitual Offender Act, and the record reflects no Notice of the prior convictions was ever given.

In Ex parte Williams, 510 So.2d 135 (Ala.1987), the Alabama Supreme Court held that the Habitual Offender Act is not self-executing, the applicabilty of the Act must be called to the attention of the trial court prior to sentencing.

In this case, the Act was never invoked, therefore, the trial court was without authority to sentence the Appellant pursuant to the Act.

Secondly, Appellant argues that his sentence is illegal because the State fail to prove that any out-of-State prior convictions would have constituted a felony if the conduct was committed in Alabama.   See Elston v.State, 687 So.2d 1239 (Ala.Crim.App.1996); R.J.S. v.State, 905 So.2d 26 (Ala.Crim.App.2004)

### conclusion

Based on the foregoing, Appellant respectfully request that this Court Reverse the judgement of the Trial Court and Remand for a New Trial; New Sentecing Proceeding, or other relief as Justice requires in this case.

Respectfully Submitted,

ASH SHAKUR SHABAZZ
AIS# 244618
Holman Unit 3700
Atmore, Al. 36503-700

16.

## CERTIFICATE OF SERVICE

I hereby certify that I have this 23 day of June 2007, served a copy of the foregoing on the Appellee, by placing a copy of the same in the Prison internal Mailing system for mailing, postage prepaid and properly addressed as follows:

TROY KING
Alabama Attorney General
11 South Union  Street
Montgomery, Al. 36130

ANN   SHANOR ANASASI

# IN THE SUPREME COURT OF ALABAMA

*167298*
*Prude*



January 11, 2008

**1070373**

Ex parte Ash-Shakur Halim Shabazz.  PETITION FOR WRIT OF CERTIORARI TO THE COURT OF CRIMINAL APPEALS  (In re: Ash-Shakur Halim Shabazz v. State of Alabama)   (Houston Circuit Court: CC05-1132.60; CC05-1133.60; Criminal Appeals : CR-06-1124).

## CERTIFICATE OF JUDGMENT

### Writ Denied

The above cause having been duly submitted, IT IS CONSIDERED AND ORDERED that the petition for writ of certiorari is denied.

STUART, J. -  Cobb, C.J., and Lyons, Bolin, and Murdock, JJ., concur.

I Robert G. Esdale, Sr., as Clerk of the Supreme Court of Alabama, do hereby certify that the foregoing is a full, true and correct copy of the instrument(s) herewith set out as same appear(s) of record in said Court.

Witness my hand this 11th day of January, 2008

*Robert G Esdale Sr*

Clerk, Supreme Court of Alabama

/bb

# THE STATE OF ALABAMA - - JUDICIAL DEPARTMENT
# THE ALABAMA COURT OF CRIMINAL APPEALS

**CR-06-1124**

Ash-Shakur Halim Shabazz v. State of Alabama  (Appeal from Houston  Circuit Court:
CC05-1132.60; CC05-1133.60)

## CERTIFICATE OF JUDGMENT

WHEREAS, the appeal in the above referenced cause has been duly submitted and
considered by the Court of Criminal Appeals; and

WHEREAS, the judgment indicated below was entered in this cause on October 26th
2007:

### Affirmed by Memorandum.

NOW, THEREFORE, pursuant to Rule 41 of the Alabama Rules of Appellate
Procedure, it is hereby certified that the aforesaid judgment is final.

Witness. Lane W. Mann, Clerk
Court of Criminal Appeals, on this
the 11th day of January, 2008.

**Clerk**
**Court of Criminal Appeals**
**State of Alabama**

cc: Hon. Larry K. Anderson, Circuit Judge
Hon. Carla Woodall, Circuit Clerk
Ash-Shakur Halim Shabazz, Pro Se
James B. Prude, Asst. Atty. Gen.

CR-06-1124

## In the COURT of CRIMINAL APPEALS of ALABAMA

———————◆———————

### ASH-SHAKUR HALIM SHABAZZ,

*Appellant,*

v.

### STATE OF ALABAMA,

*Appellee.*

———————◆———————

On Appeal from the Circuit Court of
Houston County
(CC-05-1132.60 & cc-05-1133.60)

═══════════════════════════════

## BRIEF OF APPELLEE

Troy King
*Attorney General*

P. David Bjurberg
*Assistant Attorney General*

James B. Prude
*Assistant Attorney General*
Counsel of Record*

Attorneys for Appellee
Office of the Attorney General
Criminal Appeals Division
Alabama State House
11 South Union Street
Montgomery, Alabama 36130-0152
(334) 242-7300*

July 23, 2007    jprude@ago.state.al.us

— Exhibit F —

## STATEMENT REGARDING ORAL ARGUMENT

The State does not believe that oral argument will materially assist the Court in deciding the issue presented in this case.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ........................ i

TABLE OF CONTENTS ....................................... ii

TABLE OF AUTHORITIES ................................... iii

STATEMENT OF THE CASE ................................... 1

ISSUES PRESENTED FOR REVIEW ............................. 5

STATEMENT OF THE FACTS ................................. 5

STATEMENT OF THE STANDARD OF REVIEW .................... 9

SUMMARY OF THE ARGUMENT ............................... 10

ARGUMENT .............................................. 10

   I.   The Trial Court Properly Denied Relief On The
   Petition Because Shabazz Failed To Prove That He
   Received Ineffective Assistance Of Counsel At Trial .... 10

   II.   The Trial Court Properly Denied Relief On
   Shabazz's Claim That His Sentence Exceeded The Maximum
   Allowed By Law Because The Sentence Was Within The
   Limits Of The Habitual Felony Offender Statute ........ 23

CONCLUSION ............................................ 24

CERTIFICATE OF SERVICE ................................ 25

## TABLE OF AUTHORITIES

**Cases**

Batson v. Kentucky, 477 U.S. 365 (1986) .................. 13

Boyd v. State, 913 So. 2d 1113 (Ala. Crim. App. 2003) .... 22

Hammonds v. State, 777 So. 2d 750 (Ala. Crim. App.
   1999) ........................................... 15

Hinton v. State, CR-04-0940, 2006 WL 1125605 (Ala. Crim.
   App. Apr. 28, 2006) ................................ 14

Iabinett v State, 668 So. 2d. 170 (Ala. Crim. App.
   1995) ........................................... 19

Jones v. State, 816 So. 2d 1067 (Ala. Crim. App. 2000) ... 22

Kennedy v. State, 421 So. 2d 1351 (Ala. Crim. App.
   1982) ........................................... 23

Lewis v. State, 889 So. 2d 623 (Ala. Crim. App. 2003) .... 12

Strickland v. Washington, 466 U.S 668 (1984) ............ 18

**Rules**

ARCrP

   Rule 13.3(a) ....................................... 11

   Rule 13.3(c) ....................................... 11

   Rule 13.4(a) ....................................... 12

   Rule 32.3 ......................................... 113

   Rule 32.6 .......................................... 22

## STATEMENT OF THE CASE

Petitioner, Ash-Shakur Halim Shabazz, filed this Petition For Relief From Conviction Or Sentence Pursuant To Rule 32 of the <u>Alabama Rules of Criminal Procedure</u> in the Houston County Circuit Court on March 23, 2006, challenging convictions for second degree rape and second degree sodomy obtained in that court December 15, 2005. The petition was received by the Circuit Court on April 6, 2006. (C. 3, 6, 12) Shabazz filed this Rule 32 petition while his convictions were pending on direct appeal, and Shabazz asked this Court to stay the proceedings on the direct appeal until the Rule 32 petition was ruled on by the circuit court. This Court ruled that Shabazz could not proceed on this case in two courts at the same time, and directed the circuit court to hold the Rule 32 petition in abeyance until this Court issued the Certificate of Judgment after ruling on the direct appeal. (C. 26)

This Court affirmed Shabazz's convictions after his appointed counsel filed a "No Merit" brief in substantial compliance with <u>Anders v. California</u>, 386 U.S. 738 (1967), and this Court found no error harmful to Shabazz's rights after its examination of the record. <u>Shabazz v. State</u>, CR-

05-0706 (Ala. Crim. App. Aug. 11, 2006)(Mem. Op.). (C. 34,
35) Shabazz was then allowed to proceed with this Rule 32
petition.

In this petition, Shabazz alleged that he was entitled
to a new trial because he received ineffective assistance
of counsel at trial. He also alleged that the trial court
was without jurisdiction to render the judgment or to
impose the sentence. He also alleged that the sentence
imposed exceeds the maximum authorized by law, or is
otherwise not authorized by law. (C. 9, 10) Shabazz
alleged several different grounds of ineffective assistance
of counsel:

1. He was denied his Sixth Amendment right to
   effective assistance of counsel when counsel
   failed to object to the trial court's
   erroneous consolidation of the charges for
   trial, without first giving him notice and the
   opportunity to be heard;

2. Counsel was ineffective, and he was prejudiced
   thereby, when counsel failed to object to the
   prosecution's use of its peremptory strikes to
   remove males from serving on the petit jury;

3. Counsel was ineffective, and petitioner was
   prejudiced thereby, when counsel failed to
   object to the trial court's failure to
   admonish the jury during the lunch recess;
   acting in the role of the prosecution;

4. Trial counsel failed to object to the trial
   court acting in the role of the prosecution;

2

5.   Counsel was ineffective, and petitioner was prejudiced thereby, when counsel failed to advise the petitioner of his rights to testify in his own defense;

6.   Counsel was ineffective and petitioner

7.   Counsel was ineffective, and petitioner was prejudiced thereby, when counsel failed to move for a mistrial or exclusion of the victim's testimony on the grounds or coercion, threats and tampering with the witness;

8.   Counsel was ineffective, and petitioner was prejudiced thereby, when counsel failed to move for a mistrial or cautionary instructions based on the introduction of hearsay evidence after the trial court sustained the objection;

9.   Counsel was ineffective, and petitioner was prejudiced thereby, when counsel failed to object to the trial court's oral instructions to the jury;

10.  Counsel was ineffective, and petitioner was prejudiced thereby, when counsel failed to move to suppress the statement of the petitioner on the grounds that it was the product of police coercion, threats and intimidation.

(C. 14-20)

On December 13, 2006, the State filed a Motion for Summary Disposition. The State alleged that the petition failed to state a claim for which relief may be granted. The State also alleged that the claims raised in the petition were raised at trial and could have been raised at

3

trial; that the claims were raised on appeal or could have been raised on appeal. (C. 32) The State also alleged that the claims do not constitute newly discovered evidence. (C. 32)

The case came for an evidentiary hearing on February 23, 2007, before Circuit Judge Larry K. Anderson. (R. 1) On February 26, 2007, Judge Anderson issued an order denying relief on the petition. The court noted that Shabazz's attorney, John Steensland, testified that there was no valid objection to be raised on the consolidation issue, and testified that there was no systematic exclusion of males or blacks from the jury panel. The court also stated that Attorney Steensland stated that Shabazz signed a Wavier or Rights statement form which specifically informed him of his constitutional rights. (C. 39) The court also ruled that Shabazz admitted that he had three or more felony convictions that could be used to enhance his sentence under the Habitual Felony Offender Act. The court also noted that Shabazz had written a letter to his attorney in which Shabazz indicated that the representation was adequate. (C. 39)

4

On March 16, 2007, Shabazz's attorney filed a written Notice of Appeal.  (C. 41)

## ISSUES PRESENTED FOR REVIEW

1.  Did the trial court properly deny relief on the petition because Shabazz failed to prove that he received ineffective assistance of counsel at trial?

2. Did the trial court properly deny relief on Shabazz's claim that his sentence exceeded the maximum allowed by law where the sentence was within the limits of the habitual felony offender statute?

## STATEMENT OF THE FACTS

At the evidentiary hearing, Shabazz indicated that he filed a Rule 32 petition which alleged ineffective assistance of counsel on behalf of his trial counsel Mr. Steensland.  Shabazz alleged that he had never been convicted in the State of Alabama prior to this conviction, and that he was not given notice by Attorney Steensland that the State intended to use previous convictions from other states.  (R. 5)  Shabazz alleged that the State did

5

not introduce any previous convictions from any other

states, and, at the sentencing hearing, he did not tell the

State what specific conviction he had received in New

Jersey. (R. 5, 6) He alleged that no one inquired to

determine if the felony conviction in New Jersey would have

constituted a felony conviction under Alabama law.

Shabazz also alleged that his attorney did not object

to the consolidation of the two charges against. He also

alleged that Steensland did not object to the State's

striking male members from the jury venire. (R. 8, 9) He

also admitted that two or three males sat on the jury. (R.

9, 10) Shabazz also alleged that Steensland did not make

any objection to the composition of the jury. (R. 10)

Shabazz admitted that Steensland advised him of the right

to testify, but told him it was not in his best interest to

testify. Shabazz admitted that it was choice not to

testify at the trial. (R. 10) Shabazz testified that the

victim testified against him because of threats by the

Department of Human Resources and Officer Cherry and

Officer Crawford. He alleged that they told the victim

that she would lose her baby if she did implicate him in

the rape. (R. 10, 11)

6

Shabazz also alleged that he asked Steensland to file a Motion to Suppress his statement on the grounds of threats and coercion, but that a motion was not filed. (R. 11) Shabazz indicated that he told Steensland about the coercion and threats before the trial. (R. 12)

On cross-examination, Shabazz admitted that he waived his pre-sentence investigation and admitted to having three or more previous convictions. He admitted to a burglary conviction, a robbery conviction, and a forgery conviction, all out of New Jersey. (R. 13, 14) Shabazz also admitted that the facts underlying the second degree rape and second degree sodomy convictions all happened at one time. (R. 14) Shabazz was unable to give any testimony as to how he was prejudiced by the consolidation. (R. 14, 15) The State, at least five males sat on Shabazz's jury. (R. 15)

Shabazz admitted that any testimony regarding the coercion of the victim was brought out at trial through the victim's testimony. (R. 15, 16) Under questioning, Shabazz admitted that he was facing charges of first degree rape and sodomy and thirteen other counts when he made his statements. (R. 16) The State also introduced a letter

7

from Shabazz to Steensland in which Shabazz had indicated
the Steensland's trial representation was adequate.  (R.
17)

Attorney John Steensland indicated that he initially
requested a pre-sentence investigation, but withdrew it
shortly after Shabazz       he did not want Judge
Anderson to see Shabazz's criminal history.  He believed
that Shabazz would have gotten fifteen or twenty more
years, maybe life, if all of the information in the
district attorney's file had been put in a report before
Judge Anderson.  (R. 19, 20)  Steensland also indicated
that Shabazz was questioned about his previous convictions,
and asked whether or not he would admit to at least three
prior convictions.  Steensland indicated that he did not
have a copy of the prior convictions in his file, but he
did look through the district attorney's file and was aware
.  R. 21, 22) Steensland also asked Shabazz about the
prior convictions, but Shabazz contended that those prior
convictions did not apply because they were from New
Jersey.  (R. 21, 22)  Steensland also indicated that he
discussed the previous convictions and the application of
the Habitual Felony Offender Act when he informed Shabazz

8

about why the district attorney's offer of a guilty plea was so high.  (R. 22)

Steensland indicated that there were no grounds for objecting to the consolidation of the cases for trial because the acts arose out of the same incident.  (R. 23) Steensland indicated that there were no grounds to object to the composition of the jury because at least five male sat on the jury.  (R. 23, 24) Steensland also indicated that he did not file a motion to suppress Shabazz's statement because there was no specific ground to support the motion.  Steensland indicated that Shabazz did not indicate that he had been coerced or threatened in any form during the taping of the statement, and Shabazz had been advised of his rights before the statement was made.  (R. 25, 26)

Finally, Steensland indicated that there was no pattern striking of the jurors by race or gender.  (R. 26)

## STATEMENT OF THE STANDARD OF REVIEW

The standard of review is whether the trial court abused its discretion by denying the petition.  "The standard of review on appeal in a post conviction

9

proceeding is whether the trial judge abused his discretion when he denied the petition." <u>Strickland v. State</u>, 771 So. 2d 1123, 1125 (Ala. Crim. App. 1999), citing <u>Ex parte Heaton</u>, 542 So. 2d 931 (Ala. 1989).

## SUMMARY OF THE ARGUMENT

The trial court properly denied relief on Shabazz's ineffective assistance of trial counsel claims because the claims were without merit. Furthermore, defense counsel testified and disputed Shabazz's claims.

Shabazz was not entitled to any relief on the claim that his sentence exceeded that allowed by law because he was properly sentenced under the habitual felony offender statute.

## ARGUMENT

**I.** **The Trial Court Properly Denied Relief On The Petition Because Shabazz Failed To Prove That He Received Ineffective Assistance Of Counsel At Trial.**

Shabazz alleges that counsel was ineffective because he failed to object to the consolidation of the two charges for trial without giving him notice and the opportunity to

10

be heard. (Shabazz's brief, page 10)  Shabazz, however,

failed to present any evidence to show that he was

prejudiced by counsel's failure to object. Counsel

testified that there was no valid ground for an objection,

and that the trial judge would not have granted the motion.

Counsel also stated that consolidation was proper because

the charges arose out of the same set of facts. (R. 22-23)

Rule 13.3(c) of the <u>Alabama Rules of Criminal</u>

<u>Procedure</u>, provides, in part:

> "If offenses or defendants are charged in
> separate indictments, informations, or complaints,
> the court on its own initiative or on motion of
> either party may order that the charges be tried
> together or that the defendants be joined for the
> purposes of trial if the offenses or the
> defendants, as the case may be, could have been
> joined in a single indictment, information, or
> complaint."

Rule 13.3(a) of the <u>Alabama Rules of Criminal</u>

<u>Procedure</u>, provides, in part:

> "Two or more offenses may be joined in an
> indictment, information, or complaint, if they:
>
> "(1) Are of the same or similar character;
> or
>
> "(2) Are based on the same conduct or are
> otherwise connected in their commission; or
>
> "(3) Are alleged to have been part of a
> common scheme or plan."

11

Shabazz's charges arose out of the same act. (R. 14) Consequently, the charges could properly be consolidated for trial.

Rule 13.4(a) of the Alabama Rules of Criminal Procedure, however, allows the trial judge to sever charges that have been consolidated for trial. The trial court's denial of a motion to sever would be overturned only for an abuse of discretion. The defendant would have had to demonstrate compelling prejudice for this Court to reverse the trial court's denial on the motion to sever. Lewis v. State, 889 So. 2d 623, 660 (Ala. Crim. App. 2003). Shabazz has not shown that the trial court would have denied the State's motion for consolidation or granted any motion to sever that would have been made by trial counsel. He has also failed to show that he suffered compelling prejudice from the consolidation; thus, he has failed to show that the trial court would have abused any discretion by overruling any objection to the consolidation or denying any motion to sever, and that he would have been entitled to relief if the issue had been presented on appeal.

12

Shabazz, thus, has failed to show that he was prejudiced by trial counsel failure to object to the consolidation.

Shabazz alleges that trial counsel was ineffective because he failed to make an objection regarding the State's racially discriminatory use of its peremptory strikes pursuant to Batson v. Kentucky, 477 U.S. 365 (1986). (Shabazz's Brief, pages 11) Counsel, however, testified at the evidentiary hearing that there was no ground for a Batson objection. (C. 26) Counsel also testified that there was no basis for an objection for discriminatory use of strikes on the basis of gender because five male jurors sat on the jury. (R. 23-24, 25)

Shabazz alleges that counsel was ineffective because he failed to object to the trial court's failure to admonish the jurors before allowing them to separate for lunch. (Shabazz's brief, page 11)  Shabazz, however, presented no evidence at the evidentiary hearing to support this claim. Thus, this claim is deemed waived for purpose of appeal. First, this claim is waived under Rule 32.3 of the Alabama Rule of Criminal Procedure because Shabazz failed to plead or prove the facts necessary to entitle him to relief. See Hinton v. State, CR-04-0940, 2006 WL 1125605, at *46 (Ala.

13

Crim. App. Apr. 28, 2006).  Furthermore, Shabazz failed to

meet burden of proving the facts necessary to entitle him

to relief under Rule 32.3 because he presented no evidence

in support of his claim at the evidentiary hearing.

Hinton, Id.

Shabazz alleges that counsel was ineffective because he

failed to object to the trial court's questioning of a

witness regarding a material element of the crime.

(Shabazz's brief, page 12) This claim is waived under Rule

32.3 of the Alabama Rule of Criminal Procedure  because

Shabazz failed to plead or prove the facts necessary to

entitle him to relief. See Hinton v. State, CR-04-0940),

2006 WL 1125605, at *46 (Ala. Crim. App. Apr. 28, 2006).

Furthermore, Shabazz failed to meet burden of proving the

facts necessary to entitle him to relief under Rule 32.3

because he presented no evidence in support of his claim at

the evidentiary hearing.  Hinton, Id. In addition, Shabazz

has failed to show that counsel's failure to object

constituted error because the trial court has the authority

to ask question of witnesses. "The trial judge is more than

a mere moderator and it is his duty to conduct an orderly

trial and to make certain as far as possible that there is

14

no misunderstanding of the testimony of witnesses. Thus, he may ask any question which would be proper for the prosecutor or defense counsel to ask so long as he does not depart from a standard of fairness and impartiality." Hammonds v. State, 777 So. 2d 750, 771 (Ala. Crim. App. 1999).

Shabazz alleges that trial counsel was ineffective because he was not allowed to testify in his own behalf. (Shabazz's brief, page 12) This claim is without merit because Shabazz admitted at the evidentiary hearing that counsel only advised him not to testify, but that he made the decision not to testify. (R. 10)

Shabazz alleges that he was prejudiced by trial counsel's failure to move for exclusion of the victim's testimony on the ground that law enforcement officials and a case worker from the Department of Human Resources threatened the victim. (Shabazz's brief, page 12) This claim is without merit because the alleged threats were brought out at trial through the victim's testimony, and the jury assessed the credibility of her testimony. (R. 10-11)

15

Shabazz alleges that counsel was ineffective because counsel failed to request a mistrial or cautionary instructions about the admission of hearsay evidence after the court had sustained the objection. (Shabazz's brief, page 13)  This claim is waived under Rule 32.3 of the Alabama Rule of Criminal Procedure because Shabazz failed to plead or prove the facts necessary to entitle him to relief. See Hinton v. State, Id.  Furthermore, Shabazz failed to meet burden of proving the facts necessary to entitle him to relief under Rule 32.3 because he presented no evidence in support of his claim at the evidentiary hearing.  Hinton, Id. In addition, Shabazz has failed to show that counsel's failure to move for a mistrial constituted error. "'[A] **mistrial** is a **drastic remedy**, to be used only sparingly and only to prevent manifest injustice. Pettibone v. State, 891 So. 2d 280, 283 (Ala. Crim. App. 2003). A trial court's ruling on a motion for a mistrial will be reversed only upon "a clear showing of abuse of discretion." Shabazz failed to show that a mistrial or jury instruction was warranted, or that the trial court would have granted the motion for a mistrial.

16

Shabazz alleges that counsel was ineffective because counsel failed to object to the trial court's oral instructions. (Shabazz's brief, page 14) This claim is waived under Rule 32.3 of the Alabama Rule of Criminal Procedure because Shabazz failed to plead or prove the facts necessary to entitle him to relief. See Hinton v. State, Id. Furthermore, Shabazz failed to meet burden of proving the facts necessary to entitle him to relief under Rule 32.3 because he presented no evidence in support of his claim at the evidentiary hearing. Hinton, Id. In addition, Shabazz has failed to show that counsel's failure to object to the oral instructions constituted error. The trial court's instruction was proper, and Shabazz failed to show that the jury was subject to any outside influences. Shabazz also fails to show that the verdict against was not unanimous.

Shabazz alleges that counsel was ineffective because counsel failed to move to suppress the taped statements he gave to the police. (Shabazz's brief, page 15) The defense counsel testified, however, that Shabazz voluntarily made the statement after he was informed of his constitutional rights. (R. 25, 26)

17

The trial court properly denied relief on the ineffective assistance of counsel claims. Shabazz's claims of ineffective assistance of counsel are governed by Strickland v. Washington, 466 U.S 668, 686 (1984), in which the Supreme Court stated the standard for proving a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

The Supreme Court further stated that, to prove prejudice,

> [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 694. (Emphasis added.)

The Supreme Court also stated:

18

> [A]ny deficiencies in counsel's performance must
> be prejudicial to the defense in order to
> constitute ineffective assistance under the
> Constitution.

Id. at 692.

The State courts also apply the Strickland standard on

ineffective assistance claims.  In Iabinett v State, 668

So. 2d. 170, 172 (Ala. Crim. App. 1995), the Court stated:

> For the appellant to succeed on his argument that
> his trial counsel was ineffective, he must meet
> the two-pronged test promulgated by the United
> States Supreme in Strickland v. Washington, 466
> U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
> The appellant must show 1) that his trial
> counsel's performance was deficient and 2) that
> such deficient performance prejudiced his defense.
> Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.
> Furthermore, 'when this court is reviewing a claim
> of ineffective assistance of counsel, we indulge a
> strong presumption that counsel's conduct was
> appropriate and reasonable.'  Hallford v. State,
> 629 So.2d 6, 8 (Ala.Cr.App.1992).  The burden is
> on the appellant to show that his counsel's
> performance was deficient.  Luke v. State, 484
> So.2d 531 (Ala.Cr.App.1985).

"The performance component outlined in Strickland is an

objective one: that is, whether counsel's assistance,

judged under "prevailing professional norms," was

"reasonable considering all the circumstances."'  Daniels

v. State, 650 So. 2d 544, 552 (Ala. Crim. App. 1994), cert.

denied, [541 U.S. 1024, 115 S. Ct. 1375, 131 L. Ed. 2d 230

19

(1995)], quoting Strickland, 466 U.S. at 688, 104 S.Ct. at
2065. 'A court deciding an actual ineffectiveness claim
must judge the reasonableness of counsel's challenged
conduct on the facts of the particular case, viewed as of
the time of counsel's conduct.' Strickland, 466 U.S. at
690, 104 S.Ct. at 2066."' "The claimant alleging
ineffective assistance of counsel has the burden of showing
that counsel's assistance was ineffective. Ex parte
Baldwin, 456 So. 2d 129 (Ala. 1984), aff'd, 472 U.S. 372,
105 S. Ct. 2727, 86 L. Ed. 2d 300 (1985). 'Once a
petitioner has identified the specific acts or omissions
that he alleges were not the result of reasonable
professional judgment on counsel's part, the court must
determine whether those acts or omissions fall "outside the
wide range of professionally competent assistance."
[Strickland,] 466 U.S. at 690, 104 S.Ct. at 2066.'
Daniels, 650 So. 2d at 552. When reviewing a claim of
ineffective assistance of counsel, this Court indulges a
strong presumption that counsel's conduct was appropriate
and reasonable. Hallford v. State, 629 So. 2d 6 (Ala.
Crim. App. 1992), cert. denied, 511 U.S. 1100, 114 S. Ct.
1870, 128 L. Ed. 2d 491 (1994); Luke v. State, 484 So. 2d

20

531 (Ala. Crim. App. 1985).  'This court must avoid using

"hindsight" to evaluate the performance of counsel.  We

must evaluate all the circumstances surrounding the case at

the time of counsel's actions before determining whether

counsel rendered ineffective assistance.'  Hallford, 629

So. 2d at 9.  See also, e.g., Cartwright v. State, 645 So.

2d 326 (Ala. Crim. App. 1994)."'"  'Judicial scrutiny of

counsel's performance must be highly deferential.  It is

all too tempting for a defendant to second-guess counsel's

assistance after conviction or adverse sentence, and it is

all too easy for a court, examining counsel's defense after

it has proved unsuccessful, to conclude that a particular

act or omission of counsel was unreasonable.  A fair

assessment of attorney performance requires that every

effort be made to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct from

counsel's perspective at the time.  Because of the

difficulties inherent in making the evaluation, a court

must indulge a strong presumption that counsel's conduct

falls within the wide range of reasonable professional

21

assistance…" <u>Boyd v. State</u>, 913 So. 2d 1113, 1127–1128 (Ala. Crim. App. 2003).

Shabazz has not shown that his trial counsel was ineffective under the standards set forth in <u>Strickland</u>. He has not shown that his counsel committed any unreasonable errors, or that the errors affected the outcome of his trial. Furthermore, trial counsel had no duty to raise claims on which Shabazz was not entitled to any relief. "Counsel cannot be ineffective for failing to raise a meritless issue." <u>Jones v. State</u>, 816 So. 2d 1067, 1071 (Ala. Crim. App. 2000). Consequently, Shabazz has not shown that he is entitled to any relief on this claim.

In addition, under Rule 32.3 of the <u>Alabama Rules of Criminal Procedure</u>, the "petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." Furthermore, under Rule 32.6, "The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further

22

proceedings." Shabazz failed to provide sufficient facts to prove that he is entitled to any relief on these claims.

In addition, defense counsel's testimony, in which he denied Shabazz's allegations, was a sufficient basis for the trial court to deny the petition. Kennedy v. State, 421 So. 2d 1351 (Ala. Crim. App. 1982).

II. **The Trial Court Properly Denied Relief On Shabazz's Claim That His Sentence Exceeded The Maximum Allowed By Law Because The Sentence Was Within The Limits Of The Habitual Felony Offender Statute.**

Shabazz alleges that his sentence was excessive because the habitual offender statute was never invoked. (Shabazz's brief, page 16) This claim is without merit because Shabazz admits that he admitted to three previous felony convictions from New Jersey at the sentencing hearing. (R. 12-14)

## CONCLUSION

Shabazz failed to prove that he was entitled to any relief, and the trial court's denial of the petition is due to be affirmed.

Respectfully submitted,

Troy King
*Attorney General*

James B. Prude
*Assistant Attorney General*

24

## CERTIFICATE OF SERVICE

I hereby certify on this 23rd day of July, 2007, I

served a copy of the foregoing on Shabazz, by placing the

same in the United States Mail, first class, postage

prepaid and addressed as follows:

> Ash-Shakur Halim Shabazz
> AIS #244618
> Holman Unit 3700
> Atmore, Al 36503


_____
James B. Prude
Assistant Attorney General

ADDRESS OF COUNSEL:
Office of the Attorney General
Criminal Appeals Division
11 South Union Street
Montgomery, Alabama 36130-0152
(334) 242-7300
297214/107298-001

25

## CONCLUSION

Shabazz failed to prove that he was entitled to any relief, and the trial court's denial of the petition is due to be affirmed.

Respectfully submitted,

Troy King
*Attorney General*


/s/James B. Prude
James B. Prude
*Assistant Attorney General*

24

## CERTIFICATE OF SERVICE

I hereby certify on this 23rd day of June, 2007, I electronically filed the foregoing and served a copy on Shabazz, by placing the same in the United States Mail, first class, postage prepaid and addressed as follows:

>        Ash-Shakur Halim Shabazz
>        AIS #244618
>        Holman Unit 3700
>        Atmore, Al 36503

>        _____
>        James B. Prude
>        Assistant Attorney General

ADDRESS OF COUNSEL:
Office of the Attorney General
Criminal Appeals Division
11 South Union Street
Montgomery, Alabama 36130-0152
(334) 242-7300
297214/107298-001

25

Rel\10\26\2007

Notice: This unpublished memorandum should not be cited as precedent. See Rule 54, Ala.R.App.P. Rule 54(d),
states, in part, that this memorandum "shall have no precedential value and shall not be cited in arguments or
briefs and shall not be used by any court within this state, except for the purpose of establishing the application
of the doctrine of law of the case, res judicata, collateral estoppel, double jeopardy, or procedural bar."

# Court of Criminal Appeals

State of Alabama
Judicial Building, 300 Dexter Avenue
**P. O. Box 301555**
**Montgomery, AL 36130-1555**

PAMELA W. BASCHAB
Presiding Judge
H.W."BUCKY" McMILLAN
GREG SHAW
A. KELLI WISE
SAMUEL HENRY WELCH
Judges

Lane W. Mann
Clerk
Gerri Robinson
Assistant Clerk
(334) 229-0751
Fax (334) 229-0521

## MEMORANDUM

CR-06-1124    Houston Circuit Court 05-1132.60; 05-1133.60

Ash-Shakur Halim Shabazz v. State of Alabama

McMILLAN, Judge.

The appellant appeals from the trial court's order denying his Rule 32, Ala. R. Crim. P., petition.

In its order denying the petition, the trial court stated:

"A hearing was held this date. The Petitioner and his attorney were present. The State of Alabama was represented through its assistant district attorney, Mr. David Atwell.

1

— Exhibit G —

06=1124

Evidence at said hearing went to the issue of ineffective
assistance of counsel. Petitioner Shabazz testified to the
following: (1) That trial counsel John Steensland should have
objected to a consolidation of charges; and (2) That attorney
Steensland should have objected to the compositions of the
jury; and (3) That a suppression issue existed in that he was
coerced into giving a statement; and (4) That the circuit
court sentenced him improperly by treating him as a habitual
offender.

"Attorney John Steensland testified that no valid
objection could be raised on the consolidation issue insofar
as its was the same victim, same date and same incident. He
further testified that there was no systematic exclusion of
males or blacks on the jury panel. With respect to the
suppression issue, Mr. Steensland stated that a waiver of
rights statement specifically stated there were no threats or
coercion used against the Defendant, which the Defendant
signed.

"As to prior convictions being used for enhancement under
the habitual offender act the Defendant admitted that he had
three or more felony convictions. Most damaging was a letter
introduced as State's exhibit 1 wherein the Defendant stated
that his representation was adequate. This letter was sent by
the Defendant to Mr. Steensland after the trial of the case.

"Based on the evidence, the Court is reasonably satisfied
therefrom that Petitioner's ineffective assistance of counsel
claim must fail. Additionally, most, if not all, of these
issues could have been raised on appeal but were not."

On appeal, the appellant raises the following issues

contained in his Rule 32 petition and presented to the trial

court:

1) That he received ineffective assistance of trial
counsel because: a) counsel failed to object to the trial
court's erroneous consolidation of the charges for trial,
without giving him notice and opportunity to be heard; b)
counsel failed to object to the prosecution's use of its
peremptory strikes to remove males from the jury; c) counsel
failed to object to the trial court's failure to admonish the

2

06-1124

jury during the lunch recess; d) counsel failed to object to the trial court acting in the role of the prosecution; e) counsel failed to advise the petitioner of his rights to testify in his own defense; f) counsel failed to move for a mistrial or exclusion of the victim's testimony on the grounds of coercion, threats and tampering with the witness; g) counsel failed to move for a mistrial or cautionary instructions based on the introduction of hearsay evidence after the trial court sustained the objection; h) counsel failed to object to the trial court's oral instructions to the jury; and i) counsel failed to move to suppress the statement of the petitioner on the grounds that it was the product of police coercion, threats, and intimidation;

2) That the trial court was without jurisdiction to render the judgment or to impose the sentence; and

3) That the sentence imposed exceeds the maximum authorized by law.

An examination of the record, including the transcript of the evidentiary hearing, along with the trial court's order and the briefs on appeal, reveals that the trial court was correct in denying the petition. During the evidentiary hearing, evidence was presented that consolidation was proper because the charges arose out of the same set of facts and with the same defendant. Rule 13.3, Ala. R. Crim. P. Additionally, the appellant failed to present any evidence that he was prejudiced by counsel's failure to object.

With regard to counsel's alleged failure to object to the State's racially discriminatory use of its peremptory strikes,

3

06-1124

pursuant to <u>Batson v. Kentucky</u>, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), trial counsel testified that there was no ground for a <u>Batson</u> objection, and the appellant offers no specific evidence to the contrary.

The appellant's claims that trial counsel was ineffective for failing to object to the trial court's failure to admonish the jurors before allowing them to separate for lunch; for failing to object to the trial court's questioning of a witness regarding a material element of the crime; and for failing to request a mistrial or cautionary instructions about the admission of hearsay evidence after the trial court sustained the objection, were insufficiently pleaded, and therefore, as the State argued in its motion for summary disposition, failed to state a claim upon which relief could be granted.   Rule 32.3, Ala. R. Crim. P.; <u>Hinton v. State</u>, [Ms. CR-04-0940, April 28, 2006] ___ So. 2d ___ (Ala. Crim. App. 2006).

The appellant claims that trial counsel was ineffective for not allowing him to testify in his own defense.   However, the appellant admitted during the evidentiary hearing that although trial counsel advised him not to testify, he made the

4

06-1124

decision not to testify.

The appellant's claim that he was prejudiced by trial counsel's failure to move for exclusion of the victim's testimony on the ground that law enforcement officials and a case worker from the Department of Human Resources threatened the victim is without merit and unsupported by the record based on trial counsel's testimony at the evidentiary hearing that the alleged threats were brought out at trial through the victim's testimony. See <u>Kennedy v. State</u>, 421 So. 2d 1351 (Ala. Crim. App. 1982) (defense counsel's testimony refuting the appellant's allegations of ineffective assistance of counsel was a sufficient basis for the trial court's denial of the Rule 32 petition.) Here, the appellant failed to plead and prove that his trial counsel rendered a deficient performance, and that he was prejudiced thereby. <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Lastly, the trial court, in its order, was correct in denying the appellant's ineffective assistance of trial counsel claims, not only on the merits of the respective claims, but also pursuant to the procedural bar of Rule 32.2(a)(4), Ala. R. Crim. P., stating that the claims could

5

06-1124

have been, but were not, raised on appeal.

The appellant claims that the trial court was without jurisdiction to render judgment or impose sentence because the sentence exceeds the maximum authorized by law. In support of his claim, he argues that his sentence was excessive because the habitual felony offender act was never invoked. The record supports the trial court's finding of fact, and defense counsel's testimony at the evidentiary hearing, that the appellant admitted to three prior felony convictions from New Jersey at the sentencing hearing. Pigg v. State, 925 So. 2d 1001 (Ala. Crim. App. 2005).

The judgment of the trial court is affirmed.

AFFIRMED.

Wise and Welch, JJ., concur. Baschab, P.J., and Shaw, J., concur in the result.

6